SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
DAVID R. BUCHANAN
JENNIFER R. SCULLION (*pro hac vice* request pending)
550 Broad Street, Suite 920
Newark, NJ  07102
Telephone:  973/639-9100
973/639-9393 (fax)

Local Counsel

ROBBINS GELLER RUDMAN
& DOWD LLP
DANIELLE S. MYERS
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEHIGH COUNTY EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> NOVO NORDISK A/S, et al., <br><br> Defendants. | No. 3:17-cv-00209-BRM-LHG <br><br> CLASS ACTION <br><br> MOTION DAY: April 17, 2017 <br><br> Oral Argument Requested If Opposition Is Filed |

[Caption continued on following page.]

MEMORANDUM OF LAW IN SUPPORT OF CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL

1242757_1

| | |
|---|---|
| DON ZUK, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>  vs.<br><br>NOVO NORDISK A/S, et al.,<br><br>                Defendants. | No. 3:17-cv-00358-BRM-LHG<br><br><u>CLASS ACTION</u> |
| JOSEPH R. ZALESKI, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>  vs.<br><br>NOVO NORDISK A/S, et al.,<br><br>                Defendants. | No. 3:17-CV-00506-BRM-LHG<br><br><u>CLASS ACTION</u> |

1242757_1

## I. INTRODUCTION

Three putative class action lawsuits (the "Related Actions") are pending before this Court on behalf of purchasers of Novo Nordisk A/S ("Novo Nordisk" or the "Company") American Depository Receipts ("ADRs") between February 5, 2015 and October 27, 2016 (the "Class Period") seeking to pursue remedies under the Securities Exchange Act of 1934 ("1934 Act") against the Company and two senior executive officers.[1] The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires district courts to resolve consolidation before appointing a lead plaintiff in securities cases. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). Here, the Related Actions should be consolidated because each asserts identical claims against the same defendants on behalf of similar classes of investors that purchased Novo Nordisk securities during overlapping time periods. *See* Fed. R. Civ. P. 42(a); §III.A., *infra*.

As soon as practicable after its decision on consolidation, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). The lead plaintiff is the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). Here, Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund") should be appointed as lead plaintiff because it: (1) timely filed this Motion; (2) has the largest financial interest in the outcome of this litigation of any person or group of

---

[1] The Related Actions are: *Lehigh Cty. Emps.' Ret. Sys. v. Novo Nordisk A/S*, No. 3:17-cv-00209 (D.N.J.); *Zuk v. Novo Nordisk A/S*, No. 3:17-cv-00358 (D.N.J.); and *Zaleski v. Novo Nordisk A/S*, No. 3:17-cv-00506 (D.N.J.). All emphasis is added and all citations are omitted unless otherwise noted.

persons of which it is aware; and (3) will adequately represent the interests of the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). In addition, the Pension Fund's selection of Robbins Geller Rudman & Dowd LLP as lead counsel for the class should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Novo Nordisk is a pharmaceutical company based in Denmark. Its U.S. headquarters are in New Jersey. Novo Nordisk ADRs trade on the New York Stock Exchange under the ticker symbol NVO.

Novo Nordisk is focused on producing insulin and other diabetes treatments. Diabetes is a metabolic condition in which a person's pancreas cannot produce insulin, a hormone that controls blood sugar levels. Patients with diabetes – about 30 million in the United States and another 360 million worldwide – are primarily treated through daily injections of insulin.

While there are millions of patients with the condition, the world market for insulin is dominated by just a handful of companies. Other than Novo Nordisk, only a few other companies manufacture insulin-based medicines, with the main manufacturers being Sanofi, Eli Lilly and Merck. However, unlike its competitors, Novo Nordisk is less diversified and more than 80% of its revenues come from selling insulin-based medications. Over the past two decades, Novo Nordisk has raised the prices on its insulin medication at a rate that exceeded the rate of inflation by approximately 450%.

The complaints allege that defendants made materially false and misleading statements or failed to disclose the following material information during the Class Period:

- Novo Nordisk's reported earnings and forecasts were inflated through collusive price fixing of the Company's insulin drugs;

- Novo Nordisk was engaging in illegal collusive activity with several of its competitors to keep the price of its insulin drugs artificially high in the face of significant pricing pressure;

- Novo Nordisk lacked effective internal controls over financial reporting; and

- Novo Nordisk's revenues were the result of illegal conduct.

On August 5, 2016, the Company announced disappointing earnings for the second quarter of 2016 because, despite its scheme, Novo Nordisk was finally unable to conceal the significant pricing pressures it was experiencing across its portfolio. Significantly, these pricing pressures forced the Company to lower its sales and operating growth targets for 2016. According to an August 5, 2016 Deutsche Bank analyst report, the fact that Novo Nordisk had finally acknowledged the "elephant in the room" with regard to intensifying pricing pressure had "unnerved" investors and "created a stampede." Similarly, an analyst report issued by SEB Equities on August 8, 2016 stated that "it is . . . evident that Novo had to offer large discounts across its franchise in order to maintain market access," and it is an "ongoing challenge for Novo Nordisk to convince the largest PBM in the US market, Express Scripts, to include its products on their national drug lists." Despite losing contracts with two large pharmaceutical benefits managers ("PBM"), CEO Lars Rebien Sørensen ("Sørensen") assured investors that the Company would still be able to increase prices

in certain instances and reaffirmed Novo Nordisk's ability to grow its operating profit at a 10% rate. This news regarding the lost contracts caused the price of the Company's ADRs to decline from $55.20 per ADR on August 4, 2016 to under $50 per ADR on August 5, 2016, a drop of nearly 10%. However, due to Sørensen's statements, the price of the Company's ADRs continued to be artificially inflated.

In addition, Novo Nordisk held a Management Roundtable discussion in London on August 5, 2016, to provide more detail on the Company's business and pricing strategy. This news caused the price of Novo Nordisk ADRs to decline from $49.87 per ADR on August 5, 2016 to $47.13 per ADR on August 8, 2016, a drop of nearly 6%. On September 1, 2016, Novo Nordisk announced a series of executive changes, including Sørensen's resignation from the Company by the end of 2016, despite the fact that his contract was not scheduled to expire until 2019.

Then, on October 28, 2016, Novo Nordisk cut its long-term profit growth forecasts by 50%, specifically citing the increased pricing pressures on diabetes drugs in the United States. In addition, the Company further cut its 2016 sales growth and operating profit growth targets. The Company also announced that it had received a Civil Investigative Demand from the U.S. Attorney's Office for the Southern District of New York seeking information relating to Novo Nordisk's contracts and business relationships with PBMs and its insulin products NovoLog, Novolin and Levemir. As a result of this news, the price of Novo Nordisk ADRs declined from $40.94 per ADR on October 27, 2016 to $35.66 per ADR on October 28, 2016, a drop of nearly 13%. This was the largest decline in the price of Novo Nordisk ADRs in more than 14 years.

Subsequently, on November 3, 2016, Senator Bernie Sanders and Representative Elijah Cummings sent a letter to the U.S. Department of Justice and the Federal Trade Commission calling on federal antitrust regulators to probe whether Novo Nordisk and the three other major insulin producers – Sanofi, Eli Lilly and Merck – had been colluding to set the prices for insulin and other diabetes drugs. That letter specifically cited the skyrocketing prices of insulin over the past 15 years, asserted that many of the price increases occurred at the same time (including the identification of at least 13 tandem price increases between Novo Nordisk and Sanofi since 2009), and questioned the true reasons for the price increases. In a clean break from its alleged anti-competitive scheme, Novo Nordisk committed publicly on November 30, 2016, to limit all future drug list price increases to single-digit percentages and further pledged to link the costs of its drugs to the results the Company delivered for its patients.

### III.  ARGUMENT

#### A.  The Related Actions Should Be Consolidated

The Court may consolidate actions if they "involve a common question of law or fact." Fed. R. Civ. P. 42(a). Here, the Related Actions each assert claims on behalf of purchasers or acquirers of Novo Nordisk ADRs during similar periods against the same defendants for alleged violations of the federal securities laws:

| COMPLAINT | DEFENDANTS | CLASS PERIOD |
|---|---|---|
| *Lehigh Cty. Emps.' Ret. Sys. v. Novo Nordisk A/S*, No. 3:17-cv-00209 | Novo Nordisk A/S, Lars Rebien Sørensen, Jesper Brandgaard | 4/30/15-10/27/16 |
| *Zuk v. Novo Nordisk A/S*, No. 3:17-cv-00358 | same | 02/05/15-10/27/16 |

| *Zaleski v. Novo Nordisk A/S*, No. 3:17-cv-00506 | same | same |

The factual allegations, class periods, defendants and claims are substantially similar. Accordingly, the Related Actions should be consolidated.

### B. The Pension Fund Should Be Appointed Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. §78u-4(a)(l); *see also* 15 U.S.C. §78u-4(a)(3)(B). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). Next, the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that –

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *see also In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001). Finally, the presumption may be rebutted "only upon proof by a member of the purported plaintiff class" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II); *Cendant*, 264 F.3d at 268.

The Pension Fund meets each of these requirements and should therefore be appointed as Lead Plaintiff.

### 1. The Pension Fund Has Satisfied the PSLRA's Procedural Requirement

Pursuant to the PSLRA, notice was published on *PR Newswire,* a widely-circulated, national, business-oriented news reporting wire service, on January 11, 2017, advising class members of the pendency of the action, the claims asserted, the proposed Class Period and the right to move the Court to be appointed as lead plaintiff within 60 days, or by March 12, 2017. *See* Declaration of Christopher A. Seeger in Support of the Pension Fund's Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Seeger Decl."), Ex. A; 15 U.S.C. §78u-4(a)(3)(A). March 12th was a Sunday. Pursuant to Rule 6(a)(1)(C), the "next day that is not a Saturday, Sunday, or legal holiday" is Monday, March 13th. Fed. R. Civ. P. 6(a)(1)(C). As the Pension Fund has filed its motion by the statutory deadline, it is entitled to be considered for appointment as lead plaintiff.

### 2. The Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, the Pension Fund expended more than $15.4 million acquiring 314,721 Novo Nordisk ADRs at artificially inflated prices and suffered nearly $4 million in losses as a result of defendants' alleged wrongdoing. *See* Seeger Decl., Exs. B-C. To the best of its counsel's knowledge, there are no other plaintiffs with a larger financial interest. Therefore, the Pension Fund satisfies the PSLRA's prerequisite of having the largest financial interest.

### 3. The Pension Fund Satisfies Rule 23's Typicality and Adequacy Requirements

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4); *Cendant*, 264 F.3d at 263 (inquiry "should be confined to determining whether the movant has made a prima facie showing of typicality and adequacy").

When making the typicality determination, the court "should consider whether the circumstances of the movant with the largest losses 'are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based.'" *Id.* at 265 (alteration in original). And, in "assessing whether the movant satisfies Rule 23's adequacy requirement, courts should consider whether it 'has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class.'" *Id.* (alteration in original). The Pension Fund satisfies these requirements.

Indeed, the Pension Fund is one of the nation's largest multi-employer defined benefit pension plans with more than 400,000 participants across the country. The Pension Fund has experience serving as lead plaintiff in securities class action cases and is highly incentivized to maximize the recovery for putative class members

- 8 -

harmed by defendants' alleged wrongdoing based on the substantial losses it suffered. As its Certification confirms, the Pension Fund is entirely typical and adequate to represent the putative class here.

### C. The Court Should Approve the Pension Fund's Choice of Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). The Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). The Pension Fund has selected the law firm of Robbins Geller as Lead Counsel.

Robbins Geller, a 200-attorney firm with offices nationwide, is actively engaged in complex litigation, particularly securities litigation. *See* Seeger Decl., Ex. D. Indeed, this Court has previously recognized that "Robbins Geller has extensive experience with complex securities litigation and a successful track record." *Grodko v. Cent. European Distrib. Corp.*, No. 12-5530 (JBS-KMW), 2012 U.S. Dist. LEXIS 178478, at *31 (D.N.J. Dec. 17, 2012). Class members will receive the highest caliber of legal representation available from Robbins Geller if this Motion is granted.

Based upon Robbins Geller's extensive experience and proven track record, the Pension Fund's selection of Robbins Geller as Lead Counsel should be approved.

### IV. CONCLUSION

The Related Actions share common questions of law and fact and should be consolidated. In addition, the Pension Fund has satisfied each of the PSLRA's requirements for appointment as lead plaintiff. Accordingly, the Pension Fund

respectfully requests that the Court grant its motion for consolidation, appointment as lead plaintiff, approve its selection of counsel and grant such other relief as the Court may deem just and proper.

DATED:  March 13, 2017            Respectfully submitted,

                                        SEEGER WEISS LLP
                                        CHRISTOPHER A. SEEGER
                                        DAVID R. BUCHANAN
                                        JENNIFER R. SCULLION (*pro hac vice* request pending)

                                                s/ Christopher A. Seeger
                                        CHRISTOPHER A. SEEGER

                                        550 Broad Street, Suite 920
                                        Newark, NJ  07102
                                        Telephone:  973/639-9100
                                        973/639-9393 (fax)

                                        Local Counsel

                                        ROBBINS GELLER RUDMAN
                                        & DOWD LLP
                                        DANIELLE S. MYERS
                                        655 West Broadway, Suite 1900
                                        San Diego, CA  92101-8498
                                        Telephone:  619/231-1058
                                        619/231-7423 (fax)

                                        [Proposed] Lead Counsel for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 13, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 13, 2017.

                                             <u>s/ CHRISTOPHER A. SEEGER</u>
                                             CHRISTOPHER A. SEEGER

                                             SEEGER WEISS LLP
                                             550 Broad Street, Suite 920
                                             Newark, NJ  07102
                                             Telephone:  973/639-9100
                                             973/639-9393 (fax)

                                             E-mail:       cseeger@seegerweiss.com