James E. Cecchi
Donald A. Ecklund
**CARELLA, BYRNE, CECCHI,**
  **OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700

*Liaison Counsel for Proposed Lead*
*Plaintiff the Public Pension Funds and*
*Proposed Liaison Counsel for the Class*

Gerald H. Silk (*pro hac vice* forthcoming)
Hannah Ross (*pro hac vice* forthcoming)
Avi Josefson (*pro hac vice* forthcoming)
**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400

Maya Saxena (*pro hac vice* forthcoming)
Joseph E. White, III (*pro hac vice* forthcoming)
Lester R. Hooker (*pro hac vice* forthcoming)
**SAXENA WHITE P.A.**
5200 Town Center Circle, Suite 601
Boca Raton, Florida 33486
Telephone: (561) 394-3399

*Counsel for Proposed Lead Plaintiff*
*the Public Pension Funds and Proposed*
*Co-Lead Counsel for the Class*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEHIGH COUNTY EMPLOYEES' RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>     Plaintiff,<br><br> v.<br><br>NOVO NORDISK A/S, LARS REBIEN SØRENSEN, and JESPER BRANDGAARD,<br><br>     Defendants. | No. 3:17-cv-00209-BRM-LHG<br>Hon. Brian R. Martinotti<br><br><br>**MOTION DAY:  APRIL 17, 2017**<br><br>**ORAL ARGUMENT REQUESTED** |

*Caption continued on next page.*

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE PUBLIC PENSION FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF THEIR SELECTION OF LEAD AND LIAISON COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS, AND IN OPPOSITION TO THE COMPETING MOTIONS**

| | |
|---|---|
| DON ZUK, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br>      v.<br><br>NOVO NORDISK A/S, LARS REBIEN SØRENSEN, and JESPER BRANDGAARD,<br><br>            Defendants. | No. 3:17-cv-00358-BRM-LHG |
| JOSEPH R. ZALESKI, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br>      v.<br><br>NOVO NORDISK A/S, LARS REBIEN SØRENSEN, and JESPER BRANDGAARD,<br><br>            Defendants. | No. 3:17-cv-00506-BRM-LHG |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT .............................................................................. 1

ARGUMENT .............................................................................................................. 5

I.      The Public Pension Funds Should Be Appointed Lead Plaintiff ...................... 5

        A.      The Public Pension Funds Have the Largest Financial Interest in the Relief
                Sought by the Class ........................................................................................ 5

        B.      The Public Pension Funds are an Ideal Lead Plaintiff Group Under
                Controlling Third Circuit Precedent ............................................................. 8

        C.      The Public Pension Funds Otherwise Satisfy Rule 23's Typicality and
                Adequacy Requirements ................................................................................. 14

        D.      Central States' Fiduciary Failures, Violations of Law, Impending Insolvency,
                and Related Government Investigations and Lawsuit Render It Inadequate ........ 16

II.     The Public Pension Funds' Selection of Lead and Liaison Counsel Should Be
        Approved ...................................................................................................................... 24

CONCLUSION ............................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**                   **Page(s)**

*A.F.I.K. Holding SPRL v. Fass*,
216 F.R.D. 567 (D.N.J. 2003)..................................................................9, 11

*In re Advanced Tissue Scis. Sec. Litig.*,
184 F.R.D. 346 (S.D. Cal. 1998) ...............................................................12

*In re Am. Bus. Fin. Servs., Inc.*,
2005 WL 724088 (E.D. Pa. Mar. 29, 2005).................................................9

*Amswiss Int'l Corp. v. Heublein, Inc.*,
69 F.R.D. 663 (N.D. Ga. 1975)..................................................................23

*Baker v. Arnold*,
No. 03 C 05642 (JF), slip op. (N.D. Cal. May 17, 2004) ....................17, 19, 21, 22

*Bang v. Acura Pharm., Inc.*,
2011 WL 91099 (N.D. Ill. Jan. 11, 2011)..................................................12

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
258 F.R.D. 260 (S.D.N.Y. 2009) .............................................................9, 12

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006)....................................................................5, 21

*Bo Young Cha v. Kinross Gold Corp.*,
2012 WL 2025850 (S.D.N.Y. May 31, 2012) ..........................................6

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ....................................................................5

*In re Cell Pathways, Inc., Sec. Litig. II*,
203 F.R.D. 189 (E.D. Pa. 2001)...............................................................12

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)................................................................. *passim*

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949)..................................................................................15

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
288 F.R.D. 26 (S.D.N.Y. 2012) .................................................................6

*Garber v. Pharmacia Corp.*,
2003 WL 27375058 (D.N.J. Aug. 12, 2003) .............................................8

ii

*Greater Pa. Carpenters Pension Fund v. Adolor Corp.*,
    2004 WL 3019235 (E.D. Pa. Dec. 29, 2004) ........................................................................9

*Janovici v. DVI, Inc.*,
    2003 WL 22849604 (E.D. Pa. Nov. 25, 2003) ....................................................................9

*Johnson v. Dana Corp.*,
    236 F.R.D. 349 (N.D. Ohio 2006) ......................................................................................6

*Landry v. Price Waterhouse Chartered Accountants*,
    123 F.R.D. 474 (S.D.N.Y. 1989) .....................................................................................22

*Lewis v. Lipocine Inc.*,
    2016 WL 7042075 (D.N.J. Dec. 2, 2016)................................................................. *passim*

*Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*,
    2000 WL 33173017 (D.N.J. Nov. 16. 2000) ...............................................................8, 12

*In re Network Assocs., Inc., Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) .............................................................................16

*Newman v. Eagle Bldg. Techs.*,
    209 F.R.D. 499 (S.D. Fla. 2002) ..........................................................................16, 21, 23

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
    2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007)......................................................17, 21, 23

*Reiger v. Altris Software, Inc.*,
    1998 WL 1986953 (S.D. Cal. Sept. 14, 1998).................................................................12

*Reimer v. Ambac Fin. Grp., Inc.*,
    2008 WL 2073931 (S.D.N.Y. May 9, 2008) ...............................................................9, 12

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*,
    2012 WL 1339678 (N.D. Ill. Apr. 18, 2012) ...............................................................6, 12

*Richman v. Goldman Sachs Grp., Inc.*,
    274 F.R.D. 473 (S.D.N.Y. 2011) ....................................................................................5, 7

*In re Safeguard Scientifics*,
    216 F.R.D 577 (E.D. Pa. Aug. 26, 2003) .........................................................................22

*Sapir v. Averback*,
    2015 WL 858283 (D.N.J. Feb. 26, 2015) ..........................................................................5

*Steamfitters Local 449 Pension Fund v. Cent. European Distrib. Corp.*,
    2012 WL 3638629 (D.N.J. Aug. 22, 2012) .....................................................................18

*In re Surebeam Corp. Sec. Litig.*,
   2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) ................................................................16, 21, 23

*In re Universal Access, Inc. Sec. Litig.*,
   209 F.R.D. 379 (E.D. Tex. 2002) ...........................................................................................11

*In re Vicuron Pharm., Inc. Sec. Litig.*,
   225 F.R.D. 508 (E.D. Pa. 2005) ...............................................................................................9

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
   2007 WL 2683636 (D.N.J. Sept. 7, 2007) ...........................................................................5, 7

*W. Palm Beach Police Pension Fund v. DFC Global Corp.*,
   2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) ................................................................ *passim*

*Zemel Family Trust v. Philips Int'l Realty Corp.*,
   205 F.R.D. 434 (S.D.N.Y. 2002) ...........................................................................................23

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................................................14

15 U.S.C. § 78u-4(a)(3)(B)(v) .....................................................................................................23

29 U.S.C. § 1082(a) .....................................................................................................................18

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995) ....................14

The Public Pension Funds respectfully submit this brief in further support of their Motion for appointment as Lead Plaintiff and in opposition to the competing motions filed by Central States, Southeast and Southwest Areas Pension Fund ("Central States"), Brian Lundstrom ("Lundstrom"), and Longview Firemen's Relief & Retirement Fund ("Longview").  *See* ECF Nos. 6, 8, 12.[1]

## PRELIMINARY STATEMENT

The Public Pension Funds should be appointed Lead Plaintiff because they have the "largest financial interest" of any qualified movant and have made the *prima facie* showing of typicality and adequacy that Rule 23 requires.  *In re Cendant Corp. Litig.*, 264 F.3d 201, 223, 270 (3d Cir. 2001) (affirming district court's appointment of group of three institutional investors that incurred largest loss).  At the Lead Plaintiff stage, this Court, consistent with the Third Circuit and virtually every court in the country, has held that a movant's loss is the most important factor in determining whether a movant has the largest financial interest in the litigation.  *See id.* at 263-64 (PSLRA sequential process of appointing Lead Plaintiff begins with movant that asserts "the largest financial losses"); *Lewis v. Lipocine Inc.*, 2016 WL 7042075, at *4 (D.N.J. Dec. 2, 2016) (Martinotti, J.) ("District courts in this Circuit have accorded the 'largest financial loss' element the most weight in the analysis for appointment of a lead plaintiff") (citation omitted).

Courts in the Third Circuit and elsewhere also uniformly hold that the most acceptable and appropriate method of calculating a movant's loss is the last-in, first-out ("LIFO") accounting methodology.  As these courts explicitly recognize, "the main advantage of LIFO is that, unlike FIFO [or, first-in, first-out], it takes into account gains that might have accrued to plaintiffs during

---

[1] All capitalized terms are defined in the Public Pension Funds' initial brief (*see* ECF No. 8-1), unless otherwise indicated.  All citations to "ECF" are to the *Lehigh* docket, unless otherwise indicated.

the class period due to the inflation of the stock price," while FIFO, on the other hand, may ignore sales that occurred during the class period and hence exaggerate losses by failing to consider offsetting gains. *W. Palm Beach Police Pension Fund v. DFC Global Corp.*, 2014 WL 1395059, at *6 (E.D. Pa. Apr. 10, 2014) (citation omitted). Central States, the movant with the second-largest loss, is well-aware of this settled law, having endorsed the application of loss—and more specifically, LIFO loss—when arguing that it had the largest financial interest in prior litigation.

Under LIFO, there can be no dispute that the Public Pension Funds have, by far, the largest financial interest of any Lead Plaintiff movant. Specifically, the Public Pension Funds suffered a loss of more than $2.6 million as a result of their Class Period purchases of Novo Nordisk ADRs—a loss that dwarfs the loss suffered by any other movant, and is in fact more than 21% larger than the loss incurred by Central States, as illustrated by the chart below.[2]



---

[2] Longview recognizes that it "does not assert the largest financial interest" in this case and does not oppose the appointment of the Public Pension Funds. ECF No. 19. Lundstrom also recognizes that he lacks the largest financial interest. *See* ECF No. 25 at 3. Lundstrom's support for Central States is based solely on Central States' incorrect citation of a FIFO loss, and does not account for Central States' numerous adequacy issues that are discussed herein. *Id.*

2

Further, the Public Pension Funds perfectly satisfy Rule 23's adequacy and typicality requirements as required by the PSLRA. The Public Pension Funds are a small, cohesive group of sophisticated institutional investors that have demonstrated their ability to vigorously prosecute this case and monitor counsel—the exact type of investors that the PSLRA and the Third Circuit contemplate serving as Lead Plaintiff. The Public Pension Funds have substantial experience serving as Lead Plaintiff in securities class actions, and the Public Pension Funds include Lehigh ERS, which conducted a comprehensive investigation and filed the first of the Related Actions against Novo Nordisk. *See* ECF No. 8-3 ¶2; ECF No. 1.

The Public Pension Funds have also submitted a Joint Declaration, signed by each of its members, attesting to their willingness and ability to work together to prosecute this important action. *See* ECF No. 8-3. In circumstances virtually identical to those presented here, the Third Circuit held that a cohesive group of institutional investors is an ideal Lead Plaintiff, *see Cendant*, 264 F.3d at 266-67, and since *Cendant*, countless courts in this District, Circuit, and elsewhere have appointed groups of similar size and structure. *See Lipocine*, 2016 WL 7042075, at *1, *6 (Martinotti, J.) (appointing group of two institutional investors and one individual investor as Lead Plaintiff); *DFC*, 2014 WL 1395059, at *7 (appointing group of four institutional investors that took "full responsibility for providing fair and adequate representation and overseeing counsel"). In fact, Central States acknowledged in court filings that the appointment of a group of investors is preferred and that "[t]he danger of appointing a *sole* lead plaintiff . . . cannot be ignored" because "defects [] uncovered against the *only* lead plaintiff [] can have disastrous effects . . . Why expose any class to this risk where, as here, a viable, cohesive group of investors exists which can insulate

the class from such threats[.]"[3]  In sum, there is no question that the Public Pension Funds are an adequate Lead Plaintiff.

In contrast, Central States suffers from myriad infirmities that strike at the core of a Lead Plaintiff's responsibilities, and without question render Central States inadequate and atypical. Specifically, Central States:

- is in "Critical and Declining" financial status and "is projected to run out of money within ten years, or even less" (Cecchi Decl., Exs. B at 1 & C at 1);

- designed a plan to stabilize its finances that the U.S. Treasury rejected because it violated federal regulations;

- is unable to develop a satisfactory plan given its poor financial circumstances and, significantly, has confirmed that without such a plan Central States' insolvency is unavoidable;

- has a well-documented history of failing to fulfill its fiduciary responsibilities to its own members;

- has twice been rejected as an inadequate Lead Plaintiff under the PSLRA;

- is currently facing two government investigations being conducted by the U.S. Government Accountability Office arising out of Central States' "dire financial circumstances," to determine whether Central States failed to "protect the interests of participants and beneficiaries" (Cecchi Decl., Ex. D at 1);

- is currently being sued by its own members for breaches of the duties of loyalty and prudence;

- is operating under the supervision of the federal government pursuant to a Consent Decree; and

- is violating that Consent Decree as well as federal law.

---

[3] *See* Declaration of James E. Cecchi in Further Support of the Motion of the Public Pension Funds for Appointment as Lead Plaintiff, Approval of Their Selection of Lead and Liaison Counsel, and Consolidation of Related Actions, and in Opposition to the Competing Motions ("Cecchi Decl."), Ex. A at 9 (emphasis in original).

It goes without saying that a Lead Plaintiff movant that is in "Critical and Declining" financial status, facing imminent insolvency, and under wide-ranging federal investigation precisely because of its investment strategies and failed oversight should not and cannot be appointed Lead Plaintiff.  These issues not only threaten to overwhelm a trial, but create the highly material risk that the Class' interests will be greatly prejudiced by the appointment of a clearly infirm Lead Plaintiff candidate whose very existence is in jeopardy.  *See Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006) (class representative is neither typical nor adequate if it is subject to infirmities that are likely to become a major focus of the litigation).  The Class should not be exposed to this risk, particularly since the Public Pension Funds are indisputably adequate and have the largest financial interest of any movant.

## **ARGUMENT**

### I.     **The Public Pension Funds Should Be Appointed Lead Plaintiff**

####      **A.     The Public Pension Funds Have the Largest Financial Interest in the Relief Sought by the Class**

The Public Pension Funds have, by a substantial margin, the largest financial interest in the relief sought by the Class.  The Third and Ninth Circuits, this Court, and courts throughout the country have held that a movant's loss is the most important factor in determining whether a movant has the largest financial interest in the litigation.  *See Cendant*, 264 F.3d at 263-64 (PSLRA sequential process of appointing Lead Plaintiff begins with movant that asserts "the largest financial losses"); *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status"); *Lipocine*, 2016 WL 7042075, at *4 ("District courts in this Circuit have accorded

the 'largest financial loss' element the most weight in the analysis for appointment of a lead plaintiff")(citation omitted).[4]

As demonstrated by the table below, the Public Pension Funds' loss is over 21% greater than the loss claimed by Central States; 156% greater than the loss claimed by Lundstrom; and 4,852% greater than the loss claimed by Longview.

| Movant | Loss[5] |
| --- | --- |
| Public Pension Funds | $2,615,927 |
| Central States | $2,158,544 |
| Lundstrom | $1,022,240 |
| Longview | $52,823 |

It is well-settled that LIFO, as opposed to FIFO, is the most accepted and accurate method to calculate losses in the Lead Plaintiff context.  *See DFC*, 2014 WL 1395059, at *6 ("[C]ourts have preferred LIFO and have generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases.") (citation omitted); *Bo Young Cha v. Kinross Gold Corp.*, 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) ("the overwhelming trend both in this district and

---

[4] *See also Sapir v. Averback*, 2015 WL 858283, at *2 (D.N.J. Feb. 26, 2015) ("The determination of which candidate has the largest loss is by far the most important factor in determining who should be the lead plaintiff"); *In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, 2007 WL 2683636, at *4 (D.N.J. Sept. 7, 2007) ("The Third Circuit has concluded that 'largest financial interest' means the largest loss") (citing *Cendant*, 264 F.3d at 223); *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 477-79 (S.D.N.Y. 2011) ("Most courts agree that the largest loss is the critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures," and explaining courts' "strong preference" for LIFO); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 36 (S.D.N.Y. 2012) ("[C]ourts have consistently held that . . . the magnitude of the loss suffered is the most significant" factor in determining financial interest).

[5] These losses are presented under the LIFO accounting methodology.  As discussed herein, the substantial majority of courts to consider the issue of how to calculate a movant's loss for purposes of determining financial interest at the Lead Plaintiff stage have adopted LIFO.  While Central States did not provide its LIFO loss to the Court, counsel for the Public Pension Funds calculated that loss based on the purchase and sale information Central States submitted with its motion.  *See* Cecchi Decl., Ex. E.

nationwide has been to use LIFO to calculate such losses"); *Johnson v. Dana Corp.*, 236 F.R.D. 349, 353 (N.D. Ohio 2006) ("Using FIFO, plaintiffs with significant pre-existing holdings of defendants' securities can profit substantially from defendant's misconduct and then turn around and show a loss for purposes of litigation"); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2012 WL 1339678, at *5 (N.D. Ill. Apr. 18, 2012) ("courts in this district and others have preferred LIFO over FIFO as the appropriate method to calculate losses"). This is because the "main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price," while FIFO, on the other hand, may ignore sales occurring during the class period and hence exaggerate losses by failing to consider offsetting gains. *DFC*, 2014 WL 1395059, at *6 (citation omitted).

Although the Public Pension Funds clearly have the largest financial interest of any movant, Central States may attempt to obfuscate the analysis by urging this Court to adopt the less accurate FIFO method, or to assign dispositive weight to a variety of other financial interest metrics that are far less important than the actual loss, particularly in a case such as this one. However, any such efforts should be rejected. As an initial matter, Central States itself has previously argued in favor of LIFO when seeking appointment as Lead Plaintiff, observing that "[t]he main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price." Cecchi Decl., Ex. F at 5. Moreover, because there is a significant disparity between the movants' LIFO losses, the Court should not consider other measures of financial interest. Indeed, "[t]he Third Circuit has concluded that 'largest financial interest' means the largest loss," and it is only in rare circumstances—such as when it is unclear which movant incurred the largest loss—that courts give conclusive weight to other metrics of financial interest. *Vonage*, 2007 WL 2683636, at *4 (citing *Cendant*, 264 F.3d at

223); *see also Goldman*, 274 F.R.D. at 479 (rejecting argument seeking to apply different measures of financial interest and appointing the movant group that incurred the largest financial loss).[6]

Central States is well-aware of this settled law.  It has contended correctly in similar litigation that "Courts . . . across the country [] hold that small groups of institutional investors with large losses **can and should** be appointed lead plaintiff **if**, of course, they have the largest loss."  Cecchi Decl., Ex. A at 2 (emphasis in original).  Central States has also argued correctly in favor of LIFO.  *See* Cecchi Decl., Ex. F at 5.  Accordingly, under the analysis articulated by the Third Circuit (as well as Central States), the Public Pension Funds have the largest financial interest in this case.

### B.   The Public Pension Funds are an Ideal Lead Plaintiff Group Under Controlling Third Circuit Precedent

The Third Circuit made unequivocally clear in *Cendant* that a group of investors—such as the Public Pension Funds—is an appropriate Lead Plaintiff under the terms of the PSLRA.  *See Cendant*, 264 F.3d at 266 ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff") (citation omitted).  Specifically, the Third Circuit held that a small, cohesive group of sophisticated investors that has demonstrated its ability to vigorously prosecute the case and monitor counsel is an ideal group under the PSLRA.  *See id.* at 268 (affirming appointment of group of three pension funds as Lead Plaintiff when there was no "reason to doubt that its members could operate effectively as a single unit").

Following *Cendant*, this Court and countless others in this District, Circuit, and throughout the United States have consistently appointed Lead Plaintiff groups that are virtually identical in size, structure and sophistication to the Public Pension Funds.  *See, e.g.*, *Lipocine*, 2016 WL

---

[6] Regardless of the method used to determine financial interest, Central States cannot address its inadequacy and prevent the myriad unique defenses that Defendants will assert if it is appointed Lead Plaintiff.

7042075, at *5-6 (appointing group of three investors whose "large financial loss creates a strong incentive for them to fully prosecute this action"); *Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*, 2000 WL 33173017, at *2-4 (D.N.J. Nov. 16. 2000) (appointing group of five institutional investors that demonstrated an ability to manage the litigation); *DFC*, 2014 WL 1395059, at *7 (appointing group of four institutional investors that took "full responsibility for providing fair and adequate representation and overseeing counsel"); *Garber v. Pharmacia Corp.*, 2003 WL 27375058, at *2 (D.N.J. Aug. 12, 2003) (appointing group of five institutional investors that demonstrated ability to act cohesively); *A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 576-77 (D.N.J. 2003) (appointing group of two investors given that "[i]n the Third Circuit, no such preexisting relationship is necessary"); *In re Vicuron Pharm., Inc. Sec. Litig.*, 225 F.R.D. 508, 512 (E.D. Pa. 2005) (appointing group of three institutional investors as Lead Plaintiff when it hired "competent and experienced counsel" and "[t]here [was] no evidence of conflict between this plaintiff and other class members"); *In re Am. Bus. Fin. Servs., Inc.*, 2005 WL 724088, at *2 (E.D. Pa. Mar. 29, 2005) (appointing group of five unrelated individual investors as Lead Plaintiff because "[w]ith the largest financial interest in the outcome of the litigation, [the group] clearly has an incentive to represent the claims of the class with vigor").[7]   Appointing such groups

---

[7] *See also Greater Pa. Carpenters Pension Fund v. Adolor Corp.*, 2004 WL 3019235, at *3 (E.D. Pa. Dec. 29, 2004) (appointing group of two institutional investors as Lead Plaintiff when there was "no evidence of antagonism between the interests of Movants and the interests of the other members of the class"); *Janovici v. DVI, Inc.*, 2003 WL 22849604, at *12 (E.D. Pa. Nov. 25, 2003) (appointing group of two institutional investors and one individual investor as Lead Plaintiff when opposing movants submitted no proof that the group would be unable to oversee counsel or the litigation); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (appointing group of five institutions that "may not have functioned as a group in the past, for purposes of this litigation, it is clear they have functioned as a group and intend to continue to do so"); *Reimer v. Ambac Fin. Grp., Inc.*, 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) (appointing group of three institutions that were "cooperating and pursuing the litigation separately and apart from their lawyers").

comports with the statutory structure and the legislative history of the PSLRA, as the Third Circuit recognized in *Cendant*. *See* 264 F.3d at 267.

Here, the Public Pension Funds submitted detailed evidence regarding their adequacy to represent the Class. As established by the Joint Declaration submitted with the Public Pension Funds' Motion, the Public Pension Funds are sophisticated institutional investors that manage the retirement benefits for public service workers—over $8 billion in total—and understand the obligations and fiduciary responsibilities with which a Lead Plaintiff is charged under the PSLRA. *See* ECF No. 8-3 ¶¶2-5. The Public Pension Funds are dedicated to overseeing proposed Lead Counsel's prosecution of this litigation, and ensuring that it is litigated in the best interests of all Class members. *See id.* ¶¶6, 10-12, 15. Lehigh ERS has already taken significant steps to protect the Class' interests by conducting a thorough investigation and filing the first of the Related Actions in this case. *See id.* ¶¶2, 6. Moreover, the Public Pension Funds have prior experience serving as fiduciaries, including as part of Lead Plaintiff groups, and selecting, hiring and overseeing lawyers in complex litigation akin to this one which will ensure that the case is prosecuted vigorously and efficiently against all potentially culpable parties. *See id.* ¶¶8-9.

Further demonstrating that the Public Pension Funds are independent of their attorneys and capable and incentivized to prosecute the litigation and supervise counsel, the Joint Declaration makes clear that the Public Pension Funds came together of their own volition. *See id.* ¶¶7-10. Specifically, after learning of the filing of Lehigh ERS' complaint, and recognizing Lehigh ERS' commitment to protecting the interests of the Class, Oklahoma Firefighters, BRS and Clearwater EPP spoke to their respective counsel regarding whether Lehigh ERS would be interested in prosecuting this action on a joint basis. *See id.* ¶¶6-7. The Public Pension Funds' determination to consider jointly prosecuting this case is informed by their prior experience litigating securities

class actions as part of groups of institutional investors, their common understanding that such groups provide for the sharing of experiences and resources, and their belief that this case should be led by sophisticated investors with experience acting as fiduciaries and overseeing counsel. *See id.* ¶¶6-8.

Based on the Public Pension Funds' discussions regarding their shared objectives and interests in the litigation, the Public Pension Funds determined that it would be in their and other class members' best interests to seek joint appointment as Lead Plaintiff in this case. *See id.* The structure and functioning of the Public Pension Funds not only guarantees the efficient oversight of this action by sophisticated parties through the sharing of resources, but it also provides the Class with additional benefits, such as the diversity of views and opinions, their shared drive to maximize the recovery for the Class, and the wealth of experience they achieved through their participation in prior securities class actions, including as part of Lead Plaintiff groups. *See id.* ¶¶6-9; *see also In re Universal Access, Inc. Sec. Litig.*, 209 F.R.D. 379, 384 (E.D. Tex. 2002) ("Courts . . . have routinely held that the appointment of a group of persons to act [sic] as lead plaintiff is appropriate under the PSLRA and, indeed, is sometimes favored in light of the diversity of experience and interests of the group members.").

On March 13, 2017, the Public Pension Funds held a conference call during which they discussed the joint prosecution of the action, including: the significant losses the Public Pension Funds incurred; the strength of the claims against Defendants; litigation strategy; the benefits that the class will receive from the leadership of a coordinated group of sophisticated investors each of which are dedicated to maximizing the recovery for investors; the Public Pension Funds' interests in prosecuting the case in a collaborative, like-minded manner; the advantages that Lead Plaintiff groups provide to the class; and that proposed Lead Counsel shall act only pursuant to the Public

Pension Funds' instructions. *See* ECF No. 8-3 ¶¶11-12. As such, the Public Pension Funds have already demonstrated their ability to vigorously prosecute this case separate and independent of counsel, and any challenge to the group's ability to effectively manage the litigation should be rejected. *See Cendant*, 264 F.3d at 224, 265-69 (finding "no indication" that Lead Plaintiff group was artificially created by its lawyers because it made affirmative showings of its independence); *Fass*, 216 F.R.D. at 573 (individual and institution were an appropriate Lead Plaintiff group based on affidavits that the members were "ready, willing, and able to represent the class"); *Honeywell Int'l*, 2000 WL 33173017, at *4 (appointing group of five institutional investors that "through declarations [] has advised of its sophistication, ability and inclination to actively oversee this litigation"); *DFC*, 2014 WL 1395059, at *7 (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members).[8]

When presented with such a small, like-minded and cohesive group such as the Public Pension Funds, courts throughout the country have repeatedly held that the larger loss asserted by a small number of joint applicants is entitled to the statutory presumption and prevails over the smaller loss of a single Lead Plaintiff movant. *See, e.g.*, *DFC*, 2014 WL 1395059, at *4 (appointing group of institutional investors in favor of the "single institutional investor with the largest individual loss"); *Bang v. Acura Pharm., Inc.*, 2011 WL 91099, at *3 (N.D. Ill. Jan. 11,

---

[8] *See also In re Cell Pathways, Inc., Sec. Litig. II*, 203 F.R.D. 189, 193-94 (E.D. Pa. 2001) (affidavits of four investors describing their commitment to vigorously prosecute the action in the best interests of the Class demonstrated the group was "capable of monitoring counsel" and thus an adequate Class representative); *Bank of Am.*, 258 F.R.D. at 270 ("cooperation among plaintiffs, particularly plaintiffs that are sophisticated institutional investors" demonstrates that the group can oversee counsel and the litigation); *Ambac*, 2008 WL 2073931, at *3 (appointing group of institutional investors whose joint declaration established that the group was "cooperating and pursuing the litigation separately and apart from their lawyers"); *Hospira*, 2012 WL 1339678, at *7-8 (appointing group of institutional investors based on declaration demonstrating that group is "committed to a zealous, yet efficient, prosecution of this case and will continue to be actively involved in this litigation").

2011) (appointing group of unrelated investors in favor of a movant with largest individual loss and ruling that such an outcome is "[c]onsistent with the Third Circuit's holding in *Cendant* that small groups of unrelated investors can aggregate their losses for purposes of calculating the financial interest"); *Reiger v. Altris Software, Inc.*, 1998 WL 1986953, at *4 (S.D. Cal. Sept. 14, 1998) (rejecting "single largest loss" argument because [t]he statutory presumption applies to "the person or ***group of persons***") (emphasis in original); *In re Advanced Tissue Scis. Sec. Litig.*, 184 F.R.D. 346, 350 n.11 (S.D. Cal. 1998) ("the appropriate analysis for the Court involves a comparison of aggregate group losses, as opposed to an examination of which group contains the member, or members, with the largest individual losses").

In fact, Central States itself has touted the benefits that groups provide. Central States has sought to serve or has served as part of a Lead Plaintiff group in nearly 20 PSLRA cases, working with both institutional and retail investors with which it had no prior relationship. *See* Cecchi Decl., Ex. G. In so doing, Central States has expressly and correctly recognized that:

- "As the Third Circuit articulated in *In re Cendant* . . . the PSLRA contains no requirement mandating that the members of a proper group be 'related' in some manner; it requires only that any such group 'fairly and adequately protect the interests of the class.'" Cecchi Decl., Ex. H at 2 (quoting *Cendant*, 264 F.3d at 266).

- "Courts . . . across the country [] hold that small groups of institutional investors with large losses ***can and should*** be appointed lead plaintiff ***if***, of course, they have the largest loss." Cecchi Decl., Ex. A at 2 (emphasis in original).

- "The danger of appointing a ***sole*** lead plaintiff . . . cannot be ignored. What if, for instance, [a movant] was appointed the sole lead plaintiff and later decided to withdraw? . . . Such an event could throw the case into turmoil, requiring the location and appointment of a new lead plaintiff and new lead counsel—proceedings that take time and cause delay." *Id*. at 9 (emphasis in original).

- "[T]he appointment of a single lead plaintiff also gives defendants a tempting prized target to attack on class certification and again at trial. If defects are uncovered against the ***only*** lead plaintiff, this can have disastrous effects. . . . Why expose any class to this risk where, as here, a viable, cohesive group of investors exists which can insulate the class from such threats[.]" *Id*. (emphasis in original).

Accordingly, any attempt by Central States to challenge the propriety of the Public Pension Funds must be rejected.  *See DFC*, 2014 WL 1395059, at *8 (rejecting arguments of Lead Plaintiff movant when movant made contrary arguments in prior cases).

Appointing a small group of sophisticated movants such as the Public Pension Funds as Lead Plaintiff not only comports with the PSLRA and controlling Third Circuit law, but it also makes good and practical sense.  Given the high likelihood that Central States will be found atypical or inadequate during the class certification stage, the Court risks subjecting the Class to needless and unnecessary risks by appointing Central States as Lead Plaintiff.  An adverse finding against Central States at the class certification stage would leave the Class leaderless in the midst of this complex litigation.  This is particularly true in the case of Central States which, as discussed further below, is on the brink of insolvency and under federal investigation, and will undoubtedly be required to dedicate a substantial amount of its time and resources to its ongoing funding issues and the related government investigations and litigation.  By jointly serving as Lead Plaintiff, the Public Pension Funds will ensure that the Class is, and will be, adequately protected at all stages of the case.

Accordingly, the Public Pension Funds have fully demonstrated that they are not only the presumptive Lead Plaintiff under *Cendant* and its progeny, but also the best suited to serve as Lead Plaintiff in this case.

### C.    The Public Pension Funds Otherwise Satisfy Rule 23's Typicality and Adequacy Requirements

As demonstrated in their opening brief, the Public Pension Funds are typical Class representatives.  Like all other Class members, the Public Pension Funds purchased Novo Nordisk ADRs during the Class Period at prices artificially inflated by Defendants' materially false and

misleading statements and/or omissions, and were damaged when the truth regarding the Company's business practices began to be revealed. *See Lipocine*, 2016 WL 7042075, at *4.

The Public Pension Funds are also adequate because they are capable of "fairly and adequately protect[ing] the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The Public Pension Funds are all sophisticated institutional investors—the very type of plaintiffs that Congress intended to lead securities class actions under the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at *34, (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that increasing the role of institutional investors in securities class actions will benefit shareholders and assist courts by improving the quality of representation).  And as set forth above, the Public Pension Funds have successfully supervised the prosecution of complex securities actions, including as part of Lead Plaintiff groups.  Additionally, there is no conflict of interest between the interests of the Public Pension Funds and those of other Class members.

The Public Pension Funds have further demonstrated their adequacy by selecting Bernstein Litowitz and Saxena White—law firms that have a demonstrated track record of successfully prosecuting securities cases and managing complex litigation efficiently, both alone and together—to serve as proposed Lead Counsel for the Class.  In addition, the selection of Carella Byrne—one of the leading New Jersey and New York area law firms for general and complex litigation—to serve as proposed Liaison Counsel for the Class further supports the adequacy of the Public Pension Funds. *See* ECF No. 8-1 at 13-16.  Accordingly, because the Public Pension Funds have the largest financial interest in the relief sought by the Class and otherwise satisfy Rule 23, the Court should appoint them Lead Plaintiff.

15

### D. Central States' Fiduciary Failures, Violations of Law, Impending Insolvency, and Related Government Investigations and Lawsuit Render It Inadequate

It is well-settled that a Lead Plaintiff has a fiduciary responsibility to all Class members, and that in order to adequately represent a Class, the Lead Plaintiff must exhibit characteristics of "diligence, wisdom and integrity." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949). This is because the Lead Plaintiff does not prosecute the action solely for its own benefit, but as a representative of all those similarly situated, putting the Lead Plaintiff in a powerful position of trust and confidence to vigorously represent the entire Class' interests. *See id.*

Given the importance of the Lead Plaintiff's fiduciary status, courts routinely reject movants seeking to serve as Lead Plaintiff when those movants appear to have abdicated their fiduciary responsibilities or otherwise engaged in misconduct that casts doubt on their ability to act in the best interests of others. A movant cannot seek to serve in a fiduciary capacity on behalf of a class of investors when that movant may have failed to fulfill its fiduciary responsibilities in similar contexts. *See In re Surebeam Corp. Sec. Litig.*, 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004) (disqualifying lead plaintiff movant due to improper securities-related misconduct that implicated movant's "ability to serve as a fiduciary" and raised "at least a potential that [the movant] will be subject to unique defenses and will not fairly and adequately protect the interests of the class"); *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504-05 (S.D. Fla. 2002) (finding that financial-related misconduct rendered lead plaintiff movant inadequate given concerns about possible defenses and his moral character); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (refusing to appoint lead plaintiff movant that was under investigation for fraud given that it must serve "in a position of trust and confidence").

Here, Central States' ability to represent the Class is tainted by its failure to satisfy its fiduciary obligations to its own members, a failure that has left Central States facing insolvency.

For the past 35 years, Central States has operated under the supervision of the U.S. government pursuant to a Consent Decree with the U.S. Department of Labor ("DoL").  *See* Cecchi Decl., Ex. I.  The U.S. District Court for the Northern District of Illinois instituted the Consent Decree in an attempt to correct breaches of duty, fraud, corruption, and the influence of organized criminals at Central States.  *See* Cecchi Decl., Ex. J.  According to *The New York Times*, Central States was a "wellspring of [] corruption.  Tens of millions of dollars were loaned to racketeers who used the money to gain control of Las Vegas casinos.  Administrative jobs were awarded to favored insiders who paid themselves big fees.  A former [] pension trustee was convicted of trying to bribe a United States Senator."  *Id.* at 1.

Since the imposition of the Consent Decree, federal judges in New York and California have refused to appoint Central States as Lead Plaintiff.  This is not only because of Central States' "checkered past," but also because it was experiencing significant "funding deficienc[ies]."  *Baker v. Arnold*, No. 03 C 05642 (JF), slip op. at 5-7 (N.D. Cal. May 17, 2004) ("*Baker*") (Cecchi Decl., Ex. K); *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 2007 WL 7952453, at *3 (S.D.N.Y. Feb. 21, 2007).  Indeed, Central States' financial circumstances led Judge Fogel to conclude that "the best interests of the class may not be served adequately" by appointing Central States given that it "remains under federal supervision as to its financial condition and is not entirely a 'free agent,'" which would prejudice the class during settlement negotiations, "which are a normal, if not universal, occurrence in securities class actions."  *Baker* at 6 (Cecchi Decl., Ex. K).

Critically, in the years following *Baker* and *SafeNet*, Central States' fiduciary failings have caused its financial situation to continue to deteriorate, further confirming its inability to represent the Class here.  The fund is now facing government investigations and a lawsuit relating to its

17

breaches of duty, has publicly acknowledged that its own insolvency is unavoidable, and needs a government bailout to continue operating. *See* Cecchi Decl., Exs. C-D. Significantly, the court in *Baker* found Central States to be an inadequate Lead Plaintiff simply when "a funding deficiency or other violations of the consent decree is imminent." *Baker* at 6 (Cecchi Decl., Ex. K). Here, those conditions have already occurred, and will remain for the foreseeable future.

Specifically, according to the DoL, Central States is currently in "Critical and Declining Status" and has accumulated a funding deficiency for the next decade, which places it in violation of the Consent Decree as well as ERISA. Cecchi Decl., Ex C.[9] In May 2016, the U.S. Treasury rejected a rescue plan designed to save Central States, finding that the plan would not avoid the fund's insolvency, was based on flawed assumptions, imposed uneven benefit cuts among retirees, and failed to provide notices to those covered by Central States that could be easily understood. *See* Cecchi Decl., Ex. L at 2. Central States' failed rescue plan—which unfairly favored some members over others and failed to provide adequate notice—is further evidence of the risks that Central States' appointment would pose to the Class. *See Steamfitters Local 449 Pension Fund v. Cent. European Distrib. Corp.*, 2012 WL 3638629, at *14 (D.N.J. Aug. 22, 2012) ("the objective here is to determine which plaintiff will best serve the class' interests. 'The lead plaintiff is not the sole client in a PSLRA class action; instead, the lead plaintiff serves as a fiduciary for the entire class'") (quoting *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 198 (3d Cir. 2005)).

---

[9] ERISA requires Central States to avoid "as of the end of [every] such plan year . . . [,] an accumulated funding deficiency." 29 U.S.C. § 1082(a). The Consent Decree requires Central States to "operate in full compliance with ERISA." Cecchi Decl., Ex. I at 3.

Central States' funding issues are linked to its failure to oversee the "Named Fiduciary" that it selects to manage its assets pursuant to the Consent Decree.[10]  While the Named Fiduciary manages Central States' assets, the Consent Decree obligates Central States to monitor the activities of the Fiduciary, empowers Central States to replace it, and requires Central States' Board to otherwise actively monitor and act as fiduciaries to the fund.  *See* Cecchi Decl., Ex. I at 4-12.

Central States' Named Fiduciary is Northern Trust, and it has served in that capacity since 2005.  *See* Cecchi Decl., Ex. M at 2.  Like Central States, Northern Trust—as well as other prior Named Fiduciaries—has been accused of: (1) mismanaging the fund's assets, leading to "extreme underperformance;" (2) "pushing questionable investment strategies while raking in exorbitant management fees;" and (3) making unsuitable and risky investments based on conflicts of interest.  Cecchi Decl., Exs. M at 1 & N at 4.  Central States, however, has not removed Northern Trust as the Named Fiduciary, even despite the fact that Central States is facing its most serious financial crisis ever and is approaching insolvency.  Regardless of Central States' lack of oversight of the Named Fiduciaries, the fact that a federal court and the DoL prohibit Central States from managing the assets of its own beneficiaries is reason enough to deny its motion.  *See Baker* at 6 (Cecchi Decl., Ex. K) (rejecting Central States as Lead Plaintiff given that "Central States is not even permitted to manage the assets and pension funds of its own beneficiaries independently").

As a result of these and other issues, in June 2016, the U.S. Government Accountability Office ("GAO") opened an investigation into Central States to probe the decisions that led to its

---

[10] Central States "operates in a unique circumstance where all discretionary investment decisions are made by financial firms rather than by the Fund's Board of Trustees."  Cecchi Decl., Ex. D at 1.  This is the result of the Consent Decree.

"dire financial circumstances" and impending insolvency.[11]  Cecchi Decl., Exs. D at 1 & P.  The

investigation—which was requested by 10 U.S. Senators and 41 U.S. Representatives—seeks

information over the past thirty-five years relating to, among other things:

- Whether Central States and the Named Fiduciaries failed to "protect the interests of participants and beneficiaries," whether their "behavior was inadequate," and what if any steps they took to "ensure the Fund received conflict-free investment advice with reasonable fees."  Cecchi Decl., Ex. P at 2.

- Whether Central States breached its fiduciary duties by failing to respond to market and macroeconomic factors such as stock market losses, industry deregulation, and employer withdrawals, in light of its critical and declining financial status.  *See id.*

- Whether Central States' investment committee acted in a self-interested manner when making investment strategies and decisions, and whether those decisions exposed Central States to greater than appropriate levels of volatility.  *See id.*

- Whether Central States paid excessive fees for its investments.  *See* Cecchi Decl., Ex. D at 1-2.

- Whether Central States' investment strategy relied too heavily on aggressive or alternative investments in violation of ERISA (which would, in turn, violate the Consent Decree).  *See* Cecchi Decl., Ex. P at 2.

- Whether Central States' assets were otherwise properly allocated.  *See id.*

The fact that a proposed Lead Plaintiff is under federal investigation for, among other

things, breach of fiduciary duty, improprieties in its investment decisions, and derelict oversight

disqualifies that movant.  In addition, here, there are still more concerns regarding Central States'

ability to act as a fiduciary for the Class, as evidenced by the fact that its participants are currently

suing Central States, its Board of Trustees, and its Executive Director for breaching their fiduciary

duties by failing to consider a proposal that would have improved Central States' funding situation

("Breach of Duty Suit").  *See* Cecchi Decl., Ex Q ¶¶1-15.  According to the Breach of Duty Suit,

---

[11] This investigation is in addition to another GAO investigation that is examining the DoL's oversight of Central States, and whether the DoL was properly overseeing Central States.  *See* Cecchi Decl., Ex. O.

in April 2015, Kroger Co. (the national grocery store chain) presented a proposal to Central States. *See id.* ¶87. The proposal would allow Kroger employees to create a new defined benefit plan and transfer all liabilities for paying their benefits from Central States to the new plan. *See id.* ¶¶74, 82. In addition to transferring all liabilities to the new plan, Central States would be allowed to keep all the assets that have been contributed by the Kroger employees to fund those benefits. *See id.* ¶76.

This proposal was beneficial to Central States. It would have improved Central States' financial position by transferring a significant amount of liabilities without any corresponding diminishment in plan assets and provided Kroger employees with a fully-funded retirement plan, resulting in nearly complete benefit security. *See id.* ¶¶78-81. Central States failed to even consider this proposal. To the contrary, Central States rejected it in just four days, and never entered negotiations with Kroger, despite its willingness to bargain. *See id.* ¶¶84-89. Instead, Central States simply stated that it "has a firm policy against facilitating employer withdrawals in any way" and was concerned about "perceptions or inferences drawn from a withdrawal by Kroger." *Id.* ¶89. Significantly, Central States apparently did not: investigate or vet Kroger's proposal; consider and weigh whether the proposal was in the best interests of its participants; consult with any experts; and request any additional information so that Central States could consider the proposal in more detail. *See id.* ¶93. Moreover, there is no evidence that Central States considered whether its "no facilitating withdrawals" policy, when applied to Kroger's proposal, was in the best interests of its participants, or whether the "concern" Central States expressed that other participating employers might follow Kroger's lead had any basis. *Id.* Nor was there time to conduct such an analysis in the four days Central States took to reject the proposal. *See id.*

The plethora of issues plaguing Central States is proof that it is inadequate to represent the Class in this action.  Importantly, the Court need not resolve the merits of the allegations of breach of duty or other improper conduct levied against Central States or its Named Fiduciaries.  The Third Circuit has held that the simple *risk* that a movant's unique defenses are likely to become a major focus of the litigation is enough to defeat class certification.  Here, Central States' tortured history and current financial and legal situation is direct evidence of such a risk.  *See Beck*, 457 F.3d at 301; *Baker* at 5-6 (Cecchi Decl., Ex. K) (Central States inadequate given potential risk of funding deficiency); *SafeNet*, 2007 WL 7952453, at *3 (rejecting Central States when "reasonable doubts" existed regarding its adequacy); *Newman*, 209 F.R.D. at 504 (risk that movant's appointment "might imperil certification of a class in this case" is sufficient to deny motion); *Surebeam*, 2004 WL 5159061, at *7 ("Without comment or consideration of [representative's] guilt or innocence as to the underlying charges, this court finds that there is ***at least a potential*** that [movant] will be subject to unique defenses and will not fairly and adequately protect the interests of the class") (emphasis added).[12]  The questions about Central States' ability to act as a fiduciary present issues that will become a significant focus for Defendants in discovery, will needlessly increase costs and delay the prosecution of the Class' claims against Defendants, may be fatal to any motion for class certification, and will otherwise prejudice the Class.

In sum, these cases are hard fought and last for years.  It is not uncommon for complex securities class actions such as this to last for more than five years, and that is particularly true for

---

[12] *In re Safeguard Scientifics*, 216 F.R.D 577, 582 n.4 (E.D. Pa. Aug. 26, 2003) ("Although we do not resolve the issue of credibility at this stage of litigation, we do note its existence and its potential and likely adverse effect on the putative class' interests."); *Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989) ("whether these defenses will be successful is of no matter.  The fact that plaintiffs will be subject to such defenses renders their claims atypical of other class members").

cases that proceed into discovery and approach trial.  Indeed, one case that Bernstein Litowitz litigated recently as Co-Lead Counsel with Carella Byrne as Liaison Counsel in this District lasted twelve years—including a successful appeal to the U.S. Supreme Court—before a resolution was achieved.  *See In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, No. 2:05-cv-02367-SRC-CLW (D.N.J.) (recovering $1.06 billion for investors).  This case will certainly involve extensive international discovery—another complicating factor that could result in protracted litigation—given that Novo Nordisk is a Danish company.  To put Central States in a fiduciary position in this case ***alone*** given its demonstrated lack of oversight, violations of law and breaches of fiduciary duty, impending insolvency, and related government investigations, would place absent Class members at serious risk.  As Central States recognized correctly in other litigation, "[w]hy expose any class to this risk where, as here, a viable, cohesive group of investors exists which can insulate the class from such threats[.]"  Cecchi Decl., Ex. A at 9; *see also Baker* at 5-6 (Cecchi Decl., Ex. K) ("best interests of the class may not be served adequately" by appointing Central States); *SafeNet,* 2007 WL 7952453, at *3 (same); *Surebeam,* 2004 WL 5159061, at *7 (rejecting lead plaintiff movant that engaged in an unsuitable investment strategy); *Newman*, 209 F.R.D. at 504 (rejecting lead plaintiff movant that was of questionable moral character in light of prior financial misconduct).[13]  Central States cannot be trusted to represent the interests of absent Class members here.  Its motion should be denied.

---

[13] *See also Zemel Family Trust v. Philips Int'l Realty Corp.*, 205 F.R.D. 434, 436-37 (S.D.N.Y. 2002) (denying class certification given that lead plaintiff's "vulnerable credibility" arising from involvement in securities misconduct presented "unique[] [] defenses that may not be asserted against other class members"); *Amswiss Int'l Corp. v. Heublein, Inc.*, 69 F.R.D. 663, 669 (N.D. Ga. 1975) (denying motion for class certification when class representative engaged in improper conduct in a prior, unrelated case).

## II.   The Public Pension Funds' Selection of Lead and Liaison Counsel Should Be Approved

Finally, this Court should also approve the Public Pension Funds' selection of Bernstein Litowitz and Saxena White as Lead Counsel, and the selection of Carella Byrne to serve as Liaison Counsel for the Class.  As set forth more fully in the Public Pension Funds' moving brief, the PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to Court approval.  *See* ECF No. 8-1 at 13-16; 15 U.S.C. § 78u-4(a)(3)(B)(v).  Bernstein Litowitz, Saxena White, and Carella Byrne each have a long history of successfully litigating securities class actions on behalf of injured investors.  The firms have also worked together in the prosecution of numerous securities class actions in which they have obtained landmark results for class members.  Accordingly, the Court should approve the Public Pension Funds' selection of Bernstein Litowitz and Saxena White as Lead Counsel, and Carella Byrne as Liaison Counsel, for the Class.

## <u>CONCLUSION</u>

For the reasons stated herein, the Public Pension Funds respectfully request that the Court appoint them as Lead Plaintiff, approve their selection of Bernstein Litowitz and Saxena White as Lead Counsel for the Class, approve their selection of Carella Byrne as Liaison Counsel for the Class, consolidate all related actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, and grant such other relief as the Court may deem just and proper.

DATED:  April 3, 2017                                    Respectfully submitted,

**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**

*/s/ James E. Cecchi*
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, New Jersey 07068

24

Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com
decklund@carellabyrne.com

*Liaison Counsel for Proposed Lead
Plaintiff the Public Pension Funds and
Proposed Liaison Counsel for the Class*

**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**
Gerald H. Silk
(*pro hac vice* application forthcoming)
Hannah Ross
(*pro hac vice* application forthcoming)
Avi Josefson
(*pro hac vice* application forthcoming)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jerry@blbglaw.com
hannah@blbglaw.com
avi@blbglaw.com

*Counsel for Proposed Lead Plaintiff the
Public Pension Funds and Proposed
Co-Lead Counsel for the Class*

**SAXENA WHITE P.A.**
Maya Saxena
(*pro hac vice* application forthcoming)
Joseph E. White, III
(*pro hac vice* application forthcoming)
Lester R. Hooker
(*pro hac vice* application forthcoming)
5200 Town Center Circle
Suite 601
Boca Raton, FL 33486
Telephone: (561) 394-3399
Facsimile:  (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com

-and-

25

Steven B. Singer
(*pro hac vice* application forthcoming)
4 West Red Oak Lane, Suite 312
White Plains, New York 10604
Telephone: (914) 437-8551
Facsimile:  (888) 631-3611
ssinger@saxenawhite.com

*Counsel for Proposed Lead Plaintiff the
Public Pension Funds and Proposed
Co-Lead Counsel for the Class*