# EXHIBIT A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| GERALD BURGER, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No. 2:04-cv-00575-ALM-NMK |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| | ) | Judge Marbley |
| vs. | ) | Magistrate Judge King |
| | ) | |
| CARDINAL HEALTH, INC., et al., | ) | |
| | ) | |
| Defendants. | ) ) | |
| | ) | |

[Caption continued on following page.]

THE PENSION FUND GROUP'S FIRST REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF
AND ITS SELECTION OF LEAD COUNSEL

| | |
|---|---|
| TODD FENER, On Behalf of Himself and All Others Similarly Situated, | No. 2:04-cv-00579-EAS-NMK |
| | CLASS ACTION |
| Plaintiff, | Judge Sargus |
| vs. | Magistrate Judge King |
| CARDINAL HEALTH, INC., et al., | |
| Defendants. | |
| E. MILES SENN, Individually and On Behalf of All Others Similarly Situated, | No. 2:04-cv-00597-JDH-NMK |
| | CLASS ACTION |
| Plaintiff, | Judge Holschuh |
| vs. | Magistrate Judge King |
| CARDINAL HEALTH, INC., et al., | |
| Defendants. | |
| DAVID KIM, On Behalf of Himself and All Others Similarly Situated, | No. 2:04-cv-00598-JDH-TPK |
| | CLASS ACTION |
| Plaintiff, | Judge Holschuh |
| vs. | Magistrate Judge Kemp |
| CARDINAL HEALTH, INC., et al., | |
| Defendants. | |
| ARACE BROTHERS, Individually and On Behalf of All Others Similarly Situated, | No. 2:04-cv-00604-JDH-NMK |
| | CLASS ACTION |
| Plaintiff, | Judge Holschuh |
| vs. | Magistrate Judge King |
| CARDINAL HEALTH, INC., et al., | |
| Defendants. | |

[Caption continued on following page.]

| JOHN HESSIAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CARDINAL HEALTH, INC., et al.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | No. 2:04-cv-00635-JDH-NMK<br><br>CLASS ACTION<br><br>Judge Holschuh<br>Magistrate Judge King |
| CONSTANCE MATTHEWS LIVING TRUST, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CARDINAL HEALTH, INC., et al.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 2:04-cv-00636-JLG-MRA<br><br>CLASS ACTION<br><br>Judge Graham<br>Magistrate Judge Abel |
| MARISS PARTNERS, LLP, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CARDINAL HEALTH, INC., et al.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | No. 2:04-cv-00649-GCS-MRA<br><br>CLASS ACTION<br><br>Judge Smith<br>Magistrate Judge Abel |
| THE STATE OF NEW JERSEY, DEPARTMENT OF TREASURY, DIVISION OF INVESTMENT, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CARDINAL HEALTH, INC., et al.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 2:04-cv-00831-GCS-NMK<br><br>CLASS ACTION<br><br>Judge Smith<br>Magistrate Judge King |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT .................................................................................................................... 4

    A.    The Pension Fund Group Is the Most Adequate Plaintiff ........................................ 4

        1.    The Pension Fund Group's Financial Interest Is Larger than Either New Jersey's or Mississippi PERS' .............................................................. 4

        2.    The Pension Fund Group Will Fairly and Adequately Represent the Interests of the Class ............................................................................. 5

        3.    The PSLRA's Rebuttable Requires Proof, Not Speculation ...................... 10

    B.    New Jersey Is Presumptively Barred from Being Appointed Lead Plaintiff ......... 12

    C.    Mississippi PERS Should Not Be Appointed Lead Plaintiff ................................. 12

III. CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

Page

*Bell v. Ascendant Solutions, Inc.,*
Civ. A. No. 3:01-CV-0166-P, 2002 U.S. Dist. LEXIS 6850
(N.D. Tex. 2002)...........................................................................................................................6

*Bowman v. Legato Sys.,*
195 F.R.D. 655 (N.D. Cal. 2000)...................................................................................................7

*Chill v. Green Tree Fin. Corp.,*
181 F.R.D. 398 (D. Minn. 1998)....................................................................................................4

*Crawford v. Onyx Software Corp.,*
No. COI-1346L, 2002 WL 356760 (W.D. Wash. 2002) ................................................................7

*Ferrari v. Impath, Inc.,*
No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898
(S.D.N.Y. 2004)........................................................................................................................1, 10

*Godin v. FirstEnergy Corp.,*
No. 5:03-CV-1684 (N.D. Ohio 2003)............................................................................................6

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.,*
Civ. A. No. 04-0265, 2004 U.S. Dist. LEXIS 10200
(E.D. Pa. 2004)...............................................................................................................................6

*In re Am. Med. Sys.,*
75 F.3d 1069 (6th Cir. 1996) .........................................................................................................5

*In re Bisys Sec. Litig.,*
Civ. A. No. 04-CV-3840-LTS (S.D.N.Y. 2004)............................................................................5

*In re Cavanaugh,*
306 F.3d 726 (9th Cir. 2002) ..............................................................................................4, 5, 13

*In re Cendant Corp. Litig.,*
264 F.3d 201 (3d Cir. 2001), *cert. denied,*
*Mark v. Cal. Pub. Employees' Ret. Sys.,* 535 U.S. 929 (2002) .................................................4, 6

*In re Century Bus. Servs. Sec. Litig.,*
202 F.R.D. 532 (N.D. Ohio 2001) ........................................................................................6, 7, 13

*In re Donnkenny Inc. Sec. Litig.,*
171 F.R.D. 156 (S.D.N.Y. 1997) ...................................................................................................7

|  | Page |
|---|---|

*In re Enron Corp., Sec. Litig.,*
    206 F.R.D. 427 (S.D. Tex. 2002)..............................................................................10, 12

*In re Lucent Techs., Inc. Sec. Litig.,*
    221 F. Supp. 2d 472 (D.N.J. 2001) ...................................................................................8

*In re Neopharm, Inc. Sec. Litig.,*
    No. 02 C 2976, 2004 U.S. Dist. LEXIS 5814
    (N.D. Ill. 2004)...............................................................................................................9

*In re OfficeMax, Inc. Sec. Litig.,*
    No. 1:00cv2432 (N.D. Ohio 2000) ..................................................................................6

*In re Oxford Health Plans, Inc. Sec. Litig.,*
    182 F.R.D. 42 (S.D.N.Y. 1998) ....................................................................................13

*In re Razorfish, Inc. Sec. Litig.,*
    143 F. Supp. 2d 304 (S.D.N.Y. 2001).............................................................................7

*In re Sprint Corp. Sec. Litig.,*
    164 F. Supp. 2d 1240 (D. Kan. 2001).........................................................................5, 8

*In re Telxon Corp. Sec. Litig.,*
    67 F. Supp. 2d 803 .....................................................................................................7, 12

*In re Tyco Int'l, Ltd. Secs. Litig.,*
    MDL No. 00-MD-1335-B, 2000 U.S. Dist. LEXIS 13390
    (D.N.H. 2000) .................................................................................................................6

*In re UnumProvident Corp. Sec. Litig.,*
    Lead Case No. 1:03-CV-049, 2003 U.S. Dist. LEXIS 24633
    (E.D. Tenn. 2003) .......................................................................................................5, 12

*In re Versata, Inc.,*
    No. C 01-1439 SI, 2001 U.S. Dist. LEXIS 24270
    (N.D. Cal. 2001)......................................................................................................2, 6, 10

*In re Williams Sec. Litig.,*
    02cv72 SFH (N.D. Okla. 2002) ......................................................................................8

*Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.,*
    Civ. No. 00-3605 (DRD), 2000 U.S. Dist. LEXIS 16712
    (D.N.J. 2000)................................................................................................................6, 7

**Page**

*Newman v. Eagle Bldg. Techs.*,
    209 F.R.D. 499 (S.D. Fla. 2002)........................................................................................6, 7

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*,
    No. C01-20418-JW (PVT) (N.D. Cal. 2004)..................................................................3, 5

*Sakhrani v. Brightpoint, Inc.*,
    78 F. Supp. 2d 845 (S.D. Ind. 1999)...................................................................................7

*Steiner v. Frankino*,
    Case No. 1:98CV0264, 1998 U.S. Dist. LEXIS 21804
    (N.D. Ohio 1998) ................................................................................................................4

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) .......................................................................................6

*Wright v. Holbrook*,
    794 F.2d 1152 (6th Cir. 1986) ...........................................................................................4

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78u-4(a)(3)(B)(i) ...............................................................................................................1
    §78u-4(a)(3)(B)(iii)(II) .......................................................................................................4
    §78u-4(a)(3)(B)(vi)............................................................................................................12

Federal Rules of Civil Procedure
    Rule 23 ..............................................................................................................................3, 4
    Rule (a)(3)-(4).....................................................................................................................5

## I.   INTRODUCTION

In their original moving papers, The Public Employees' Retirement System of Mississippi

("Mississippi PERS") and the State of New Jersey Department of Treasury, Division of Investment

("New Jersey") *incorrectly* asserted that they each possessed the largest loss of any lead plaintiff

movant, *but correctly* acknowledged that the Private Securities Litigation Reform Act of 1995

("PSLRA") instructs courts to "appoint as lead plaintiff the member or members of the purported

plaintiff class that the court determines to be most capable of adequately representing the interests of

class members."[1] *See* 15 U.S.C. §78u-4(a)(3)(B)(i).

Now, realizing that the Pension Fund Group actually suffered the greatest loss, Mississippi

PERS and New Jersey disregard the position taken in their opening papers and ask the Court to

*ignore* the PSLRA's unambiguous language permitting the "member *or* members of the purported

plaintiff class" to serve as lead plaintiff. In doing so, they rely on innuendo and inference rather than

the "proof" necessary to rebut the Pension Fund Group's "most adequate plaintiff" presumption. *See*

*Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *21-*23

(S.D.N.Y. 2004). The Court should reject New Jersey's and Mississippi PERS' eleventh-hour

attempt to manipulate the statutory criteria Congress set forth for appointing lead plaintiffs, and

appoint the Pension Fund Group as lead plaintiff.

Mississippi PERS challenges the Pension Fund Group's lead plaintiff application on the

grounds that its members are purportedly "unrelated." However, given Mississippi PERS'

---

[1]    *See* Memorandum of Law in Support of Motion of The Public Employees' Retirement
System of Mississippi for the (1) Consolidation of All Related Securities Fraud Actions
(2) Appointment of Lead Plaintiff and (3) Approval of Its Selection of Counsel ("Mississippi PERS"
Mem.") at 6; Motion of the New Jersey Department of Treasury, Division of Investment, for the
Consolidation of All Related Cases, Appointment as Proposed Lead Plaintiff and for Approval of Its
Selection of Counsel Pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("NJ
Mem.") at 3.

concession that it "would be happy to serve" *in a group* with either First New York Securities L.L.C. ("First New York"), Wood Asset Management ("Wood Asset"), New Jersey *or* New Mexico, Mississippi PERS' challenge to the Pension Fund Group's appointment on this basis not only lacks statutory support, but credibility as well. *See* Response Memorandum of Law in Opposition to Competing Lead Plaintiff Motions and in Further Support of Motion of The Public Employees' Retirement System of Mississippi to Consolidate Actions, to be Appointed Lead Plaintiff and for Approval of Its Selection of Lead Counsel ("Mississippi PERS Opp.") at 5. Courts in this circuit (and across the country) hold that small groups of institutional investors with large losses *can and should* be appointed lead plaintiff *if*, of course, they have the largest loss. *See In re Versata, Inc.*, No. C 01-1439 SI, 2001 U.S. Dist. LEXIS 24270, at *19 (N.D. Cal. 2001) ("Requiring a pre-litigation relationship, though appealing in its simplicity, is too rigid; it is not the only way, or necessarily the best way, to ensure that the lead plaintiffs will 'actively represent the interests of the purported class.'");[2] *see also infra*, n.5. Here, the Pension Fund Group has the largest loss (*i.e.*, the largest financial interest in the relief sought by the class).

New Jersey's and Mississippi PERS' "unrelated" group arguments also ignore that our nation's securities markets involve impersonal market transactions by many thousands of investors from all over the United States. Because these investors operate individually and autonomously, it would be extraordinary for them to know one another or to act collectively prior to the onset of litigation such as this. Of course, once investors realize they have been defrauded, it then becomes logical for them to locate each other, come together, pool their resources and knowledge and to retain counsel to pursue those who defrauded them. Imposing an artificial pre-existing relationship requirement on the PSLRA's "group of persons" provision is inconsistent with market realities and

---

[2]     Here, as elsewhere, emphasis is added and citations and footnotes are omitted unless otherwise noted.

the PSLRA's expressed preference for "*groups*" of institutional investors to act as lead plaintiff in these types of cases.

New Jersey's arguments fare no better. In an effort to *manufacture* the largest loss, New Jersey asks the Court to ignore $2.1 million of the Pension Fund Group's $15.1 million loss because, conveniently, that "would result in *New Jersey* having a larger loss." *See* The State of New Jersey's Memorandum in Opposition to Other Motions for Appointment as Lead Plaintiff and in Further Support of Its Own Motion ("NJ Opp.") at 8. The argument New Jersey proffers to support its request, however, is based on a faulty premise – namely, that Pension Fund Group member Central States is not "capable of adequately fulfilling the duties of a lead plaintiff." *Id.* at 7. Just the opposite is true. Just recently, in the *Cisco Systems* securities litigation, the Honorable James Ware found that Central States was more than capable of adequately fulfilling the duties of lead plaintiff and, accordingly, *certified* Central States as a class representative under the *heightened* Fed. R. Civ. P. 23 standard required for class certification stage after previously appointing a small group, including Central States, as lead plaintiff. *See Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, No. C01-20418-JW(PVT), slip op. at 5, 6-7 (N.D. Cal. 2004), attached as Exhibit 1 to the Declaration of Joseph F. Murray in Support of the Pension Fund Group's First Reply Memorandum of Law in Further Support of Its Motion for Appointment as Lead Plaintiff and Its Selection of Lead Counsel ("Murray Reply Decl.").

As detailed below, the Pension Fund Group is the "most adequate plaintiff" to lead this litigation. Nothing that either Mississippi PERS or New Jersey now attempt to dredge up changes the fact that they both have smaller losses than the Pension Fund Group, that New Jersey is presumptively barred from being appointed lead plaintiff and that Mississippi PERS' opposition brief actually supports the appointment of applicants like the Pension Fund Group. *See* Mississippi PERS Opp. at 18 (asking to be appointed "in conjunction with another [any other] movant").

## II.   ARGUMENT

### A.   The Pension Fund Group Is the Most Adequate Plaintiff

The process for appointing a lead plaintiff begins with the court's determination of which movant has the largest loss. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). Once the court determines which movant possesses the largest loss, it must determine, on a preliminary basis, if that movant *prima facie* satisfies the requirements of Fed. R. Civ. P. 23. *Id.*; *In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001), *cert. denied, Mark v. Cal. Pub. Employees' Ret. Sys.*, 535 U.S. 929 (2002) ("[T]he court's initial [Rule 23] inquiry should be confined to determining whether such movants have stated a *prima facie* case of typicality and adequacy" and this inquiry "need not be extensive."). If the movant with the largest loss satisfies this *prima facie* Rule 23 inquiry, it is entitled to the presumption that it is the "most adequate plaintiff." *Cavanaugh*, 306 F.3d at 730.

Finally, if the other movants fail to adduce *evidence* – as opposed to speculation – sufficient to rebut that presumption, the court must appoint the presumptively most adequate plaintiff as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (most adequate plaintiff presumption "may be rebutted only upon proof").

### 1.   The Pension Fund Group's Financial Interest Is Larger than Either New Jersey's or Mississippi PERS'

Under the analysis used by New Jersey and Mississippi PERS in their original filings, the Pension Fund Group's $15.1 million loss is the largest among the competing movants.[3] *See Steiner*

---

[3]   While Mississippi PERS used FIFO to calculate its loss in its *original* moving papers, after it saw the size of the Pension Fund Group's loss it changed its position and now claims that "upon review of First New York's motion," FIFO may not be a "proper method to calculate financial interest." Mississippi PERS Opp. at 9-10. Because Mississippi PERS did not *itself* raise this argument in its original moving papers, the Pension Fund Group will defer its examination of this issue for its reply to First New York's Memorandum of Law in Opposition to All Other Competing Motions. *See Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986) (holding that an argument raised for the first time in a responsive brief should not be considered by the court); *see also Chill v.*

*v. Frankino*, Case No. 1:98CV0264, 1998 U.S. Dist. LEXIS 21804, at *16 (N.D. Ohio 1998) (appointing group with largest loss as lead plaintiff) (White, C.J.). Thus, the Court should begin its determination of the "most adequate plaintiff" with the Pension Fund Group. *See Cavanaugh*, 306 F.3d at 730; The Pension Fund Group's Consolidated Opposition to the Competing Motions for Lead Plaintiff ("Pension Fund Group Opp.") at 1 n.1. Next, because the Pension Fund Group satisfies the requirements of Rule 23, the Court should appoint the Pension Fund Group as lead plaintiff. *See Cavanaugh*, 306 F.3d at 732 ("[t]he court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order *if and only if* the presumptive lead plaintiff is found inadequate or atypical").

### 2. The Pension Fund Group Will Fairly and Adequately Represent the Interests of the Class

The Pension Fund Group *prima facie* satisfies the typicality and adequacy requirements of Rule 23. *See* Fed. R. Civ. P. 23(a)(3)-(4). Indeed, New Jersey and Mississippi PERS do not directly contest this point. *See In re Am. Med. Sys.*, 75 F.3d 1069, 1083 (6th Cir. 1996); *see also Cisco*, slip op. at 4 (Central States satisfies Rule 23) (Murray Reply Decl., Ex. 1); *In re Sprint Corp. Sec. Litig.*, 164 F. Supp. 2d 1240, 1244 (D. Kan. 2001) (PACE and Amalgamated Bank satisfy Rule 23); *In re Bisys Sec. Litig.*, Civ. A. No. 04-CV-3840-LTS (S.D.N.Y. 2004) (New Mexico satisfies Rule 23); *In re McDonald's Sec. Litig.*, Case No. 04-C-2422 (N.D. Il. 2004) (Central States and the California Ironworkers satisfy Rule 23).

Additionally, given that "[a]t this early stage of the proceedings, the plaintiffs seeking appointment need only make a *preliminary* showing that they satisfy the typicality and adequacy requirements of Rule 23(a)(3) and (a)(4)," New Jersey's attempt to manufacture the largest loss by

---

*Green Tree Fin. Corp.*, 181 F.R.D. 398, 411 (D. Minn. 1998) (applying FIFO to calculate a movant's loss).

smearing Central States is ill-considered. *See In re Tyco Int'l, Ltd. Secs. Litig.*, MDL No. 00-MD-1335-B, 2000 U.S. Dist. LEXIS 13390, at *20 (D.N.H. 2000).

Courts also hold that small groups of institutional investors, like the Pension Fund Group, can "'fairly and adequately protect the interests of the class.'"[4] *See In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, Civ. A. No. 04-0265, 2004 U.S. Dist. LEXIS 10200, at *12 (E.D. Pa. 2004) (the PSLRA "does not mandate 'that the members of a proper group be "related" in some manner; it requires only that any such group *"fairly and adequately* protect the interests of the class""'); *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 503-04 (S.D. Fla. 2002) ("There is no requirement contained in the PSLRA that the group of persons serving as lead plaintiff have a relationship among themselves. Instead, the PSLRA focuses on whether the person or group that is the proposed lead plaintiff can *fairly and adequately* serve as the lead plaintiff.").

It is for good reason, then, that neither New Jersey nor Mississippi PERS (or any other movant for that matter) cite a *single* reported case where a group of *institutional investors* with the largest loss was rejected *solely* on that basis.[5] *See In re OfficeMax, Inc. Sec. Litig.*, No. 1:00cv2432, slip op. at 14 (N.D. Ohio 2000) (O'Malley, J.) (appointing a group of previously unrelated investors)

---

[4]     *See Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*, Civ. No. 00-3605 (DRD), 2000 U.S. Dist. LEXIS 16712, at *4, *6-*14 (D.N.J. 2000) (appointing a group of five institutional investors with the largest combined loss, finding it could "fairly and adequately protect the interest of the class"); *Versata*, 2001 U.S. Dist. LEXIS 24270; *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001); *Bell v. Ascendant Solutions, Inc.*, Civ. A. No. 3:01-CV-0166-P, 2002 U.S. Dist. LEXIS 6850, at *15-*17 (N.D. Tex. 2002); *Godin v. FirstEnergy Corp.*, No. 5:03-CV-1684 (N.D. Ohio 2003); *see also In re Century Bus. Servs. Sec. Litig.*, 202 F.R.D. 532, 540 n.22 (N.D. Ohio 2001) ("The Court has *no intention* of setting a hard and fast rule with regard to [1] the size of lead plaintiff groups, or [2] the type of relationship necessary to satisfy the Reform Act.").

[5]     It is also worth noting that *counsel for New Jersey* achieved one of the largest recoveries in a securities class action ever with a group of unrelated institutional investors. *See Cendant*, 264 F.3d at 266 (approving the appointment of three pension funds as lead plaintiff and noting that the PSLRA "contains no requirement mandating that the members of a proper group be 'related' in some manner; it requires only that any such group 'fairly and adequately protect the interests of the class'"). Thus, that law firm's claim to the contrary here is curious.

(attached as Exhibit 3 to the Pension Fund Group Opp.); *Century Bus.*, 202 F.R.D. 532 (rejecting *separate* groups of *individual* investors formed by *cooperating* counsel after PSRLA's 60-day filing deadline); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803 (N.D. Ohio 1999) (O'Malley, J.) (rejecting 18 *individual* investors); *Crawford v. Onyx Software Corp.*, No. COI-1346L, 2002 WL 356760, at *2 (W.D. Wash. 2002) (rejecting four *individuals*); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304 (S.D.N.Y. 2001) (rejecting two *separate* investor groups that were *improperly joined by counsel* after the 60-day filing window); *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156 (S.D.N.Y. 1997) (same); *Bowman v. Legato Sys.*, 195 F.R.D. 655, 688 (N.D. Cal. 2000) (rejecting "a subset of a larger group of *more than 1,000 shareholders*"); *Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845, 853 (S.D. Ind. 1999) (rejecting group of *118* investors).[6]

    The distinction between appointing a large and inherently unwieldy group of individual investors and a small and cohesive group of *institutional* investors is important. Whereas small groups of institutional investors possess the sophistication and resources to oversee class counsel and thus lead securities class actions, groups of dozens or hundreds of individual investors obviously cannot. Here, the members of the Pension Fund Group are five *large and sophisticated institutional investors*, each of whom has a significant financial interest in the outcome of this litigation (several of which *do have* pre-existing relationships) and none of whom lack the ability to select, monitor and direct counsel and this litigation. *Honeywell*, 2000 U.S. Dist. LEXIS 16712, at *6-*14 (*rejecting* the argument that a competing movant with the purported "single" largest loss should be appointed lead plaintiff over a group with *the* largest loss).

---

[6]    Of the more than 1,500 cases interpreting the PSLRA's lead plaintiff provisions since its enactment in 1995, these represent the entire universe of reported authority relied on by *all* of the competing movants for the proposition that small groups of institutional investors are *per se* improper. *See, e.g., Newman*, 209 F.R.D. at 503-04 ("This Court does not find it appropriate to limit aggregation when the PSLRA specifically allows for a group of persons to serve as lead plaintiff.").

New Mexico manages over $18 billion in assets and provides the Pension Fund Group with the uniquely valuable insight that stems from its status as a public pension fund. Patricia Madrid, the elected Attorney General for New Mexico *will continue* to direct this litigation together with New Mexico's co-movants and proposed lead class counsel – Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin").

Amalgamated Bank is America's oldest union owned and operated Labor Bank with more than $8 billion in assets and Amalgamated Bank is an experienced fiduciary that has successfully prosecuted several securities litigations including the *Sprint* class action, which it prosecuted together with PACE and achieved a substantial financial recovery in addition to unprecedented corporate governance enhancements. *See supra*, 5-6.

Central States is one of the nation's largest Taft-Hartley Funds, with more than 150,000 active participants. It also provides benefit payments to more than 206,000 retirees and surviving spouses each month. Central States' assets exceeded $17 billion, and Central States was recently appointed lead plaintiff with the California Ironworkers in the *McDonald's* securities litigation and certified as a class representative in the *Cisco Systems* securities litigation. *See supra*, 5-6.

PACE has over $1.5 billion in assets and administers retirement benefits for over 75,000 plan participants and is an experienced fiduciary that is determined to prosecuting this case along with its co-movants on behalf of the class.[7] The California Ironworkers has approximately $1.6 billion in

---

[7]     Additionally, PACE is well aware that groups of investors bring value, confidence and continuity to securities class actions. Just recently, PACE moved to intervene to protect the interests of the class in *In re Williams Sec. Litig.*, 02cv72 SFH (N.D. Okla. 2002) – because the court in that case had appointed a *sole* lead plaintiff that withdrew in the middle of discovery and after *more than two years of litigation*. *See In re Lucent Techs., Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 483 (D.N.J. 2001) (appointing groups provides "additional representation [that] may benefit the class and *provide flexibility, if needed, in the future*").

     For present purposes, this issue may not be just a hypothetical. Recently, the Governor of New Jersey issued an Executive Order (which is to take effect October 15, 2004) *barring state*

total assets and provides retirement, health insurance and other benefits to more than 10,000 participants, including members of the Ironworkers Union in the states of California, Nevada and Arizona.

The danger of appointing a *sole* lead plaintiff like New Jersey or Mississippi PERS cannot be ignored. What if, for instance, New Jersey was appointed the sole lead plaintiff and later decided to withdraw? Given the recent political events in New Jersey, this is not simply an academic concern. *See infra* n.8. Such an event could throw the case into turmoil, requiring the location and appointment of a new lead plaintiff and new lead counsel – proceedings that take time and cause delay – especially if new lead counsel must get up to speed on the case. *See, e.g., In re Neopharm, Inc. Sec. Litig.*, No. 02 C 2976, 2004 U.S. Dist. LEXIS 5814, at *10 (N.D. Ill. 2004). There can be no doubt that the appointment of a single lead plaintiff also gives defendants a tempting prized target to attack on class certification and again at trial. If defects are uncovered against the *only* lead plaintiff, this can have disastrous effects – prejudicing the class' case in front of a jury, undermining the ability of that (impaired) lead plaintiff to negotiate vigorously on behalf of the class, or, if denied class certification, resulting in the demise of the litigation. Why expose any class to this risk where, as here, a viable, cohesive group of investors exists which can insulate the class from such threats:

> Indeed, the pre-litigation relationship approach focuses on a trait that is uncommon among investors.... [M]ost investors in a publicly traded company are strangers to each other, who invest their money anonymously and autonomously. Limiting the potential pool of lead plaintiffs to those with a pre-litigation relationship would foreclose the great majority of investors, who are willing and able to come together, to pursue a securities class action.

---

*agencies like New Jersey, Department of Treasury, Division of Investment, from awarding contracts to political contributors*. *See* Murray Reply Decl., Ex 2. Counsel for New Jersey is a regular political contributor in the State of New Jersey, including having donated $20,000 to the New Jersey Democratic State Political Action Committee. *See* Murray Reply Decl., Ex. 3. Given that New Jersey seeks appointment as *sole* lead plaintiff in this case, Governor McGreevey's Executive Order could have serious consequences for the class if New Jersey were ultimately appointed and then had to withdraw.

> Furthermore, the various problems with "professional plaintiffs" which Congress intended to eradicate may occur even in situations involving individuals with a pre-litigation relationship. Collusive lead plaintiffs with the requisite pre-litigation relationship may do as much harm to the class as any other fabricated group. ***In this regard, the class may benefit more from a small group with no prior relationship and no opportunity or ability to collude against the interests of the class***.

*Versata*, 2001 U.S. Dist. LEXIS 24270, at \*20-\*21. Together, the Pension Fund Group's members understand that they could have either sought lead plaintiff status individually or taken no action and remained absent class members. However, the Pension Fund Group believes that its collective resources, pre-litigation relationships and experience will inure to the benefit of the class. *See id.* Its members are actively working together with one another and with Lerach Coughlin in connection with their ***joint*** prosecution of the litigation and will ***continue*** to work together with counsel to provide the class with fair and adequate representation.

### 3.    The PSLRA's Rebuttable Requires Proof, Not Speculation

New Jersey's self-aggrandizing personal attack against Central States is misplaced. The PSLRA requires ***"proof,"*** not innuendo to rebut the Pension Fund Group's "most adequate plaintiff" presumption. *See Impath*, 2004 U.S. Dist. LEXIS 13898, at \*21-\*23 (rejecting as a "red-herring" attempts by counsel to use "innuendo and inferences rather than established fact" to rebut a proposed lead plaintiff group's most adequate plaintiff presumption). Nevertheless, New Jersey's attempts to bootstrap attacks against Central States into a legitimate challenge against the Pension Fund Group's status as the presumptive lead plaintiff are meritless, but not surprising – New Jersey's loss would be a mere \$70,000 larger than the Pension Fund Group's without Central States' involvement.[8]

---

[8]    "Alleged," "unsupported," "generic" or "speculative" claims of conflict cannot rebut the most adequate plaintiff presumption under the PSLRA. *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 446, 448 n.18 (S.D. Tex. 2002).

New Jersey claims that a consent decree entered into 22 years ago between Central States and the Department of Labor that governs the Fund's investment policies "could seriously impair the fund's ability to adequately represent the class in this litigation." *See* NJ Opp. at 7. This is completely wrong. Stemming from allegations nearly 30 years old, the consent decree simply ensures that Central States' trustees have and will fulfill their fiduciary duties *including* seeking to recover damages suffered as a result of securities fraud.[9]

Further, Central States' alleged "projected funding deficiencies" actually mitigate in favor of its appointment as lead plaintiff. First, there is no factual support (let alone evidence) to prove that Central States is on the brink of reorganization – and it is not. Second, the fact that a fund may be underfunded does not mean that it *lacks* incentive to pursue damages in connection with alleged securities fraud violations – in fact, it indicates just the opposite. A pension plan that has been damaged by securities fraud has *more* incentive (not less) to pursue claims against those it alleges have caused it harm. In fact, the primary reason Central States seeks to be appointed lead plaintiff is for the very reason that defendants negatively impacted the fund's assets.[10] If given the opportunity, representatives of Central States, the other members of the Pension Fund Group and its counsel

---

[9]    As identified in Central States' initial certification, detailing its $2.1 million loss, it has already been appointed as a lead plaintiff (and later *certified* as a class representative) in the well-publicized *Cisco Systems* securities litigation. *See supra*, 3. Thus, it is beyond dispute that Central States has the authority and ability to seek and serve as lead plaintiff in this suit.

[10]    Further, as just recently documented in the *Los Angeles Times*, the financial issues facing Central States are not unique. The Pension Benefit Guarantee Corp., the federal agency that backstops the retirement plans of more than 45 million American workers, reported a $11.2 billion deficit due to the recent downturns in the U.S. economy. Kathy M. Kristof, *U.S. Pension Agency Data Hint at Bailout; An $11.2 billion gap threatens the safety net for retirees and boosts the urgency of reform*, Los Angeles Times, Jan. 16, 2004, at C1 (Murray Reply Decl., Ex. 4).

would look forward to addressing this accusation at the possible hearing of this motion before this Court.[11]

**B.      New Jersey Is Presumptively Barred from Being Appointed Lead Plaintiff**

As set forth in §II.C. of the Pension Fund Group's opposition, New Jersey's motion should be denied because, in addition to not having the largest loss and lacking standing to assert strict liability claims under the Securities Act of 1933, it is presumptively barred by the PSLRA's prohibition against "professional plaintiffs." *See* 15 U.S.C. §78u-4(a)(3)(B)(vi); *Telxon*, 67 F. Supp. 2d at 820-21. New Jersey has served as lead plaintiff in *more than five cases* in the past three years, and thus cannot be appointed absent extraordinary circumstances — none of which are present here. *See* Pension Fund Group Opp. at 13-16; *see also In re UnumProvident Corp. Sec. Litig.*, Lead Case No. 1:03-CV-049, 2003 U.S. Dist. LEXIS 24633, at *19 (E.D. Tenn. 2003) ("the burden is upon the presumptively barred candidate to demonstrate why the bar should not be applied in a given case"). Thus, under the PSLRA's plain language and the case law interpreting it, New Jersey's motion for appointment as lead plaintiff should be denied. *See Enron*, 206 F.R.D. at 457; *Telxon*, 67 F. Supp. 2d at 819-21.

**C.      Mississippi PERS Should Not Be Appointed Lead Plaintiff**

By any measure, Mississippi PERS' financial interest in this litigation is dramatically less than that of the Pension Fund Group. As a result, it does not continue to maintain that it should be appointed sole lead plaintiff but rather hopes to be appointed co-lead plaintiff "with another

---

[11]      New Jersey's reliance on *Baker v. Arnold*, Case No. C 03-05642 JF (N.D. Cal. 2004), to support its attack on Central States is highly improper. The Honorable Jeremy Fogel specifically ordered his opinion "Not for Citation." In any event, the case is distinguishable because there, unlike here, the court found that, because of the facts of *that* case, counsel suffered from a conflict of interest. Perhaps even more importantly, New Jersey's present refusal to comply with Judge Fogel's order begs the question of whether New Jersey would respect *this* Court's orders if it were appointed lead plaintiff.

movant." Mississippi PERS Opp. at 18; *see Century Bus.*, 202 F.R.D. 532 (finding that the appointment of co-lead plaintiffs/counsel *formed by cooperating counsel after* the PSLRA's 60-day deadline does not further the purposes of the PSLRA). This effort to compel the Pension Fund Group and its counsel to be forcibly joined together as *co*-lead plaintiff or *co*-lead counsel should be rejected for what it is – an attempt by Mississippi PERS' *lawyers* to be appointed with someone (anyone) the Court deems fit. *See Cavanaugh*, 306 F.3d at 732 (a district court should "not depart from the statutory text because [it] believe[s] some other arrangement would better serve the legislative goals").

Further, the two or three cases that support the appointment of co-lead plaintiff was made to remedy *real* infirmities with the appointed lead plaintiff's adequacy and typicality. *See, e.g., In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (*sua sponte* appointing co-lead plaintiffs because the plaintiff with the largest financial loss suffered from a *potential conflict* when reasonable prospects for recovery would not exceed the costs).

Here, however, the Pension Fund Group and their chosen counsel possess the human and financial resources to ensure a vigorous prosecution of this case and do not suffer from *any* infirmities that would necessitate or justify the grafting of Mississippi PERS onto the Pension Fund Group or the appointment of co-lead plaintiffs/counsel. In fact, Mississippi PERS' attempt to be appointed with other movants is a tacit admission of the propriety and wisdom of the Pension Fund Group's decision to join each other *prior* to filing its motion in this case.

## III.    CONCLUSION

For the foregoing reasons, the Court should grant the Pension Fund Group's Motion for

Appointment as Lead Plaintiff and for Approval of Its Selection of Lead Counsel.

DATED: October 5, 2004                    Respectfully submitted,

MURRAY MURPHY MOUL + BASIL LLP
JOSEPH F. MURRAY (0063373)
GEOFFREY J. MOUL (0070663)
BRIAN K. MURPHY (0070654)


                          _____**s/Joseph F. Murray**_____
                                   JOSEPH F. MURRAY

326 S. High Street, Suite 400
Columbus, OH  43215
Telephone:  614/469-0400
614/469-0402 (fax)
E-mail:  murray@mmmb.com

[Proposed] Liaison Counsel

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
RAMZI ABADOU
401 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JEFFREY W. LAWRENCE
SYLVIA WAHBA KELLER
LUKE O. BROOKS
100 Pine Street, 26th Floor
San Francisco, CA  94111
Telephone: 415/288-4545
415/288-4534 (fax)

[Proposed] Lead Counsel for Plaintiffs

- 14 -

CAULEY, BOWMAN, CARNEY
  & WILLIAMS, LLP
S. GENE CAULEY
P.O. Box 25438
Little Rock, AR 72221-5438
Telephone: 501/312-8500
501/312-8505 (fax)

Additional Counsel for New Mexico

S:\CasesSD\Cardinal Health Secs\BRF00014243-Reply.doc

- 15 -

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2004, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system, which will send notification of such filing to the attorneys

denoted on the attached Service List. I hereby certify that I have caused to be mailed by the United

States Postal Service this document to the non-CM/ECF participants listed on the attached Service

List.

**s/Joseph F. Murray**

JOSEPH F. MURRAY (00063373)
[Proposed] Liaison Counsel
MURRAY MURPHY MOUL + BASIL LLP
326 S. High Street, Suite 400
Columbus, OH 43215
Telephone: 614/469-0400
614/469-0402 (fax)
E-mail: murray@mmmb.com

CARDINAL HEALTH SECS
Service List - 10/5/2004  (04-0282)
Page 1 of 5

**Counsel For Defendant(s)**

Mark A. Johnson
Baker & Hostetler LLP
Capitol Square, Suite 2100
65 East State Street
Columbus, OH 43215-4260
    614/228-1541
    614/462-2616 (Fax)

Paul P. Eyre
Baker & Hostetler LLP
666 Fifth Avenue
New York, NY 10103
    212/589-4200
    212/589-4201 (Fax)

Geoffrey J. Ritts
John M. Newman, Jr.
Jones Day
901 Lakeside Avenue, North Point
Cleveland, OH 44114
    216/586-3939
    216/579-0212 (Fax)

Brian G. Selden
J. Todd Kennard
J. Kevin Cogan
Jones Day
41 South High Street, Suite 1900
Columbus, OH 43215
    614/469-3939
    614/461-4198 (Fax)

**Counsel For Plaintiff(s)**

Mark C. Gardy
Stephen T. Rodd
Nancy Kaboolian
Abbey Gardy, LLP
212 East 39th Street
New York, NY 10016
    212/889-3700
    212/684-5191 (Fax)

Randall K. Pulliam
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
    214/521-3605
    214/520-1181 (Fax)

Leonard Barrack
Daniel E. Bacine
Mark R. Rosen
Barrack, Rodos & Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
    215/963-0600
    215/963-0838 (Fax)

Michael Braun
Braun Law Group, P.C.
12400 Wilshire Boulevard
Los Angeles, CA 90025
    310/442-7755
    310/442-7756 (Fax)

CARDINAL HEALTH SECS
Service List - 10/5/2004   (04-0282)
Page 2 of 5

S. Gene Cauley
Cauley Bowman Carney & Williams, LLP
P.O. Box 25438
Little Rock, AR  72221-5438
   501/312-8500
   501/312-8505(Fax)


John R. Climaco
Scott D. Simpkins
Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co.,
L.P.A.
1228 Euclid Avenue, 9th Floor
Cleveland, OH  44115
   216/621-8484
   216/771-1632(Fax)


David P. Meyer
David P. Meyer & Associates Co., LPA
401 North Front Street, Suite 350
Columbus, OH  43035
   614/224-6000
   614/224-6066(Fax)


Vincent R. Cappucci
Stephen D. Oestreich
Robert N. Cappucci
Entwistle & Cappucci LLP
299 Park Avenue, 14th Floor
New York, NY  10171
   212/894-7200
   212/894-7272(Fax)

Martin D. Chitwood
Nikole M. Davenport
Sara J. Biden
Chitwood & Harley, LLP
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, GA  30309
   404/873-3900
   404/876-4476(Fax)


Michael F. Colley
David I. Shroyer
Daniel N. Abraham
Colley Shroyer & Abraham Co., LPA
536 South High Street
Columbus, OH  43215
   614/228-6453
   614/228-7122(Fax)


John G. Emerson
Emerson Poynter LLP
2228 Cottondale Lane, Suite 100
Little Rock, AR  72202
   501/907-2555
   501/907-2556(Fax)


Lionel Z. Glancy
Michael Goldberg
Glancy Binkow & Goldberg LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA  90067
   310/201-9150
   310/201-9160(Fax)

CARDINAL HEALTH SECS
Service List - 10/5/2004   (04-0282)
Page 3 of 5

Steven O. Sidener
Joseph M. Barton
Gold Bennett Cera & Sidener LLP
595 Market Street, Suite 2300
San Francisco, CA  94105
   415/777-2230
   415/777-5189(Fax)

Richard L. Creighton, Jr.
Brian P. Muething
Keating, Muething & Klekamp
One East Fourth Street, Suite 1700
Cincinnati, OH  45202
   513/579-6400
   513/579-6457(Fax)

Leigh R. Lasky
Lasky & Rifkind, Ltd.
351 W. Hubbard, Suite 406
Chicago, IL  60610
   312/634-0057
   312/634-0059(Fax)

William S. Lerach
Darren J. Robbins
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
401 B Street, Suite 1700
San Diego, CA  92101-4297
   619/231-1058
   619/231-7423(Fax)

Stephen E. Chappelear
Hahn, Loeser & Parks, LLP
1050 Fifth Third Center
21 East State Street
Columbus, OH  43215-4224
   614/221-0240
   614/221-5909(Fax)

Jack  Landskroner
Landskroner Grieco Madden, Ltd.
1360 West 9th Street, Suite 200
Cleveland, OH  44113
   216/522-9000
   216/522-9007(Fax)

Richard B. Brualdi
Law Offices of Richard B. Brualdi
29 Broadway, Suite 1515
New York, NY  10006
   212/952-0602
   212/952-0608(Fax)

Jeffrey W. Lawrence
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA  94111-5238
   415/288-4545
   415/288-4534(Fax)

CARDINAL HEALTH SECS

Service List - 10/5/2004   (04-0282)

Page 4 of 5

Melvyn I. Weiss
David J. Bershad
Steven G. Schulman
Milberg Weiss Bershad & Schulman LLP
One Pennsylvania Plaza
New York, NY 10119
  212/594-5300
  212/868-1229(Fax)

Joseph F. Murray
Geoffrey J. Moul
Brian K. Murphy
Murray Murphy Moul + Basil LLP
326 S. High Street, Suite 400
Columbus, OH 43215
  614/469-0440
  614/469-0402(Fax)

Eric J. Belfi
Murray, Frank & Sailer LLP
275 Madison Avenue, Suite 801
New York, NY 10016
  212/682-1818
  212/682-1892(Fax)

Marc A. Topaz
Richard A. Maniskas
Tamara Skvirky
Schiffrin & Barroway, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
  610/667-7706
  610/667-7056(Fax)

Arthur L. Shingler III
Scott + Scott, LLC
401 B Street, Suite 307
San Diego, CA 92101
  619/233-4565
  619/233-0508(Fax)

Edmund W. Searby III
Walter W. Noss
Scott + Scott, LLC
33 River Street
Chagrin Falls, OH 44022
  440/247-8200
  440/247-8275(Fax)

David R. Scott
Neil Rothstein
Scott + Scott, LLC
108 Norwich Avenue
Colchester, CT 06415
  860/537-5537
  860/537-4432(Fax)

Scott Smith
Smith, Phillips & Associates Co., LPA
6660 North High Street, Suite 3F
Worthington, OH 43085
  614/846-1700
  614/846-3910(Fax)

CARDINAL HEALTH SECS

Service List - 10/5/2004   (04-0282)

Page 5 of 5

Richard S. Wayne
Thomas P. Glass
Joseph J. Braun
Strauss & Troy
Federal Reserve Building
150 East Fourth Street
Cincinnati, OH 45202-4018
  513/621-2120
  513/629-9426 (Fax)

Jules Brody
Stull, Stull & Brody
6 East 45th Street, 4th Floor
New York, NY 10017
  212/687-7230
  212/490-2022 (Fax)

Joseph C. Langston
The Langston Law Firm, P.A.
100 South Main Street, P.O. Box 787
Bonneville, MS 38829
  662/728-3138
  662/728-1992 (Fax)

Daniel R. Karon
Weinstein Kitchenoff Scarlato Karon & Goldman,
Ltd.
55 Public Square, Suite 1500
Cleveland, OH 44113-1998
  216/622-1851
  216/622-1852 (Fax)

Joseph H. Weiss
Weiss & Yourman
551 Fifth Avenue, Suite 1600
New York, NY 10176
  212/682-3025
  212/682-3010 (Fax)