SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
DAVID R. BUCHANAN
JENNIFER R. SCULLION (admitted *pro hac vice*)
550 Broad Street, Suite 920
Newark, NJ  07102
Telephone:  973/639-9100
973/639-9393 (fax)

Local Counsel

ROBBINS GELLER RUDMAN
& DOWD LLP
DANIELLE S. MYERS (*pro hac vice* request pending)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEHIGH COUNTY EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>NOVO NORDISK A/S, et al.,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

No. 3:17-cv-00209-BRM-LHG

<u>CLASS ACTION</u>

MOTION DAY: APRIL 17, 2017

[Caption continued on following page.]

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS
PENSION FUND'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF

DON ZUK, Individually and on Behalf of All Others Similarly Situated,

                Plaintiff,

   vs.

NOVO NORDISK A/S, et al.,

                Defendants.

No. 3:17-cv-00358-BRM-LHG

CLASS ACTION

---

JOSEPH R. ZALESKI, JR., Individually and on Behalf of All Others Similarly Situated,

                Plaintiff,

   vs.

NOVO NORDISK A/S, et al.,

                Defendants.

No. 3:17-cv-00506-BRM-LHG

CLASS ACTION

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................1

II.  ARGUMENT.........................................................................................3

    A.   The Pension Fund Is the Presumptive Lead Plaintiff...........................3

    B.   The Group's Attempt to Rebut the Presumption that the Pension
        Fund Is the Most Adequate Plaintiff Falls Short...................................7

III. CONCLUSION.....................................................................................15

1253447_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ark. Teacher Ret. Sys. v. Insulet Corp.*,
   177 F. Supp. 3d 618 (D. Mass. 2016)....................................................7

*Baker v. Arnold*,
   No. C 03-05642 (N.D. Cal. May 17, 2004) ...................................10, 11

*Bo Young Cha v. Kinross Gold Corp.*,
   2012 WL 2025850 (S.D.N.Y. May 31, 2012) ......................................3

*Bodri v. GoPro, Inc.*,
   2016 WL 1718217 (N.D. Cal. Apr. 28, 2016)......................................5

*Bristow v. Sunpower Corp.*,
   2016 U.S. Dist. LEXIS 170852 (N.D. Cal. Dec. 9, 2016)...................7

*BRS v. Volkswagen AG*,
   2016 WL 5930844 (N.D. Cal. Oct. 11, 2016) ...............................12, 15

*City of Westland Police and Fire Ret. Sys. v. MetLife Inc.*,
   No. 1:12-cv-00256 (S.D.N.Y. Mar. 29, 2012)....................................10

*Constr. Workers Pension Trust Fund v. Navistar Int'l Corp.*,
   2013 WL 3934243 (N.D. Ill. July 30, 2013) .........................5, 6, 7, 10

*Cortina v. Anavex Life Scis. Corp.*,
   2016 WL 1337305 (S.D.N.Y. Apr. 5, 2016) ........................................7

*Eichenholtz v. Verifone Holdings, Inc.*,
   2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ....................................4

*Ferrari v. Impath, Inc.*,
   2004 WL 1637053 (S.D.N.Y. July 20, 2004)........................13, 14, 15

*Garden City Emps.' Ret. Sys. v. Psychiatric Solutions, Inc.*,
   2010 WL 1790763 (M.D. Tenn. Apr. 30, 2010) .............................5, 6

*Garden City Emps.' Ret. Sys. v. Psychiatric Solutions, Inc.*,
   2012 WL 1071281 (M.D. Tenn. Mar. 29, 2012) ........................*passim*

**Page**

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ........................................................................*passim*

*In re HealthSouth Corp. Sec. Litig.*,
    No. CV-03-1500 (N.D. Ala. July 8, 2005) .........................................................10

*In re Razorfish, Inc. Sec. Litig.*,
    143 F. Supp. 2d 304 (S.D.N.Y. 2001) ..................................................................2

*In re Vicuron Pharm., Inc. Sec. Litig.*,
    225 F.R.D. 508 (E.D. Pa. 2004)..........................................................................5

*Karam v. Corinthian Colls., Inc.*,
    2011 U.S. Dist. LEXIS 157041 (C.D. Cal. Mar. 30, 2011).................................6

*Khunt v. Alibaba Grp. Holding Ltd.*,
    102 F. Supp. 3d 523, 534 (S.D.N.Y. 2015) .........................................................7

*Kuriakose v. Federal Home Loan Mortgage Co.*,
    2008 WL 4974839 (S.D.N.Y. Nov. 24, 2008).........................................9, 10, 11

*Macfarlan v. Ivy Hill SNF, LLC*,
    675 F.3d 266 (3d Cir. 2012) ................................................................................5

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)..............................................................................................5

*Nicolow v. Hewlett Packard Co.*,
    2013 WL 792642 (N.D. Cal. Mar. 4, 2013) .........................................................5

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v.
    LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) .......................................................................14

*Plumbers & Pipefitters Local 572 Pension v. Cisco Sys.*,
    2004 WL 5326262 (N.D. Cal. May 27, 2004)................................................9, 10

*Police and Fire Ret. Sys. of the City of Detroit v. SafeNet, Inc.*,
    2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007) ...............................................10, 11

**Page**

*Richman v. Goldman Sachs Grp., Inc.*,
   274 F.R.D. 473 (S.D.N.Y. 2011) ...................................................................6

*Robb v. Fitbit Inc.*,
   2016 WL 2654351 (N.D. Cal. May 10, 2016)...................................................5

*Roby v. Ocean Power Techs.*,
   2015 WL 1334320 (D.N.J. Mar. 17, 2015) .......................................................4

*Selbst v. McDonald's Corp.*,
   No. 04 C 2422 (N.D. Ill. July 21, 2004) .........................................................10

*United States v. Griffin*,
   84 F.3d 912 (7th Cir. 1996) ...........................................................................2

*West Palm Beach Police Pension Fund v. DFC Global Corp.*,
   2014 WL 1395059 (E.D. Pa. Apr. 10, 2014).....................................................3

*Westchester Putnam Cntys. Heavy & Highway Laborers Local 60*
   *Benefit Funds v. Brixmor Prop. Grp., Inc.*,
   2016 U.S. Dist. LEXIS 164682 (S.D.N.Y. Nov. 29, 2016)................................7

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
   2015 WL 1311073 (S.D.N.Y. Mar. 23, 2015)...................................................13

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §78u-4(a)(3)(B)(iii)(II) .................................................................................8

Federal Rules of Civil Procedure
   Rule 23 ..........................................................................................................9

26 C.F.R.
   §1.432(e)(9)-1 ..............................................................................................14

## I.      INTRODUCTION

The only opposition to Central States, Southeast and Southwest Areas Pension Fund's motion comes from a random grouping of pension funds from Clearwater, FL, Boston, MA, Lehigh County, PA, and Oklahoma whose only common tie is their Novo Nordisk investment and the two law firms that admittedly joined the funds together solely (and improperly) in an attempt to amass the largest aggregated loss.[1] Ironically, the Group's moving papers highlight a case (*MF Global*) in which one member, Boston Retirement System, *served alongside the Pension Fund as lead plaintiff and advocated the Pension Fund's adequacy*.[2]  Even more important, the *MF Global* **court rejected the very arguments the Group recycles here**.

Tellingly, in dredging up these arguments, the Group relies on a pair of cases Boston distinguished as inapposite in *MF Global*: a 2004 decision clearly marked "Not for Citation" and a decade old decision that assessed a long-since amended provision in a thirty-five year old Consent Decree.  The Group also fails to inform the Court that the Pension Fund has been appointed lead plaintiff in *five* securities cases since 2008 and "been found by *six* other district courts . . . to be an adequate class representative."[3]   The Pension Fund has a proven track record of achieving

---

[1]   Longview Firemen's Relief & Retirement Fund filed a Notice of Non-Opposition to the competing motions.  *See* Dkt. No. 19.  Brian Lundstrom recognized that the Pension Fund "appears to have the largest loss of $3.98 million" and "believes that Central States is the presumptive and most adequate plaintiff."  Dkt. No. 25 at 3-4. All emphasis is added and all citations omitted unless otherwise indicated.

[2]   *See* Dkt. Nos. 8-1 at 12; 8-3, ¶9; *see also* Declaration of Christopher A. Seeger ("Seeger Reply Decl."), Ex. A at 4.

[3]   *Garden City Emps.' Ret. Sys. v. Psychiatric Solutions, Inc.*, 2012 WL 1071281, at *38-*39 (M.D. Tenn. Mar. 29, 2012) ("conclud[ing], as have other courts, that Central

outstanding results in securities cases, recovering nearly $1 billion for investors.  The incontrovertible fact is that none of these courts gave any credence to the arguments the Group proffers here.  The Group's arguments thus "recall an oft-quoted adage: If the law is against you, argue the facts; if the facts are against you, argue the law; and if they both are against you, pound the table and attack your opponent."[4]

Rather than admit the Pension Fund's greater financial interest under every metric (including the metric the Group used in their own motion), the Group's opposition switches gears to advocate a new method (LIFO).  Even under LIFO, however, the Pension Fund's loss far surpasses any Group member's loss:

| Movant | Shares Purchased | Net Funds Expended | Approximate FIFO Loss | Approximate LIFO Loss |
|---|---|---|---|---|
| **Pension Fund** | **314,721** | **$6.6 million** | **$3.98 million** | **$2.15 million** |
| Clearwater | 53,046 | $2.9 million | $1.1 million | $1.1 million |
| Oklahoma | 48,172 | $746,992 | $972,000 | $734,000 |
| Boston | 38,060 | $523,217 | $523,217 | $523,217 |
| Lehigh | 18,822 | $857,489 | $202,000 | $202,000 |

The Group strains mightily to make the argument that it should be appointed lead plaintiff by abandoning its initial loss estimate **and** combining the disparate interests of four different entities brought together "by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) (explaining that such groups should be "disqualif[ied]") (citing *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001)

---

States is an adequate class representative").

[4]   *United States v. Griffin*, 84 F.3d 912, 927 (7th Cir. 1996).

(refusing to appoint as lead plaintiff a group that was "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff,' which can then select the equally artificial grouping of counsel as 'lead counsel'")).[5]

When the relevant facts and law are properly considered, it is readily apparent that the Pension Fund is the presumptive lead plaintiff.  Its motion should be granted.

## II.   ARGUMENT

### A.    The Pension Fund Is the Presumptive Lead Plaintiff

In its motion, the Group repeatedly emphasizes it suffered "approximately $3 million in losses," which represents the Group's aggregated loss calculated pursuant to the first in, first out ("FIFO") method.  *See* Dkt. Nos. 8-1 at 2, 7; 8-7.[6]  The Pension Fund also represented its loss as "nearly $4 million" pursuant to the FIFO method. *See* Dkt. Nos. 12-1 at 7; 12-5.  The Pension Fund's larger FIFO loss is bolstered by the fact that the Pension Fund also has a greater interest measured by ***all*** of the factors the Third Circuit has held that "courts should consider."  *Cendant*, 264 F.3d at 262.[7]

---

[5]    Notably, the Group relies exclusively on decade-old, superseded law both in arguing against the Pension Fund's motion and in support of its plainly lawyer-driven composition.  *See* Dkt. No. 26 at 9 (citing cases from 2000-2005).  The Pension Fund's opposition shows that the current law in this District and around the country overwhelmingly prohibits lawyers from aggregating group members to claim the largest financial interest and be selected as lead counsel – exactly what was done here. *See* Dkt. No. 27 at 7-18 (citing cases from 2008-present); *see also* Dkt. No. 8-3, ¶7 (declaring that counsel orchestrated the group's formation).

[6]    Under FIFO, stock acquired first is assumed to be sold first in calculating losses, while under LIFO, stock acquired most recently is assumed to be sold first.  *Bo Young Cha v. Kinross Gold Corp.*, 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012).

[7]    It is misleading to suggest that these factors are irrelevant when the Third Circuit and the Group's own authority hold otherwise.  *Cendant*, 264 F.3d at 262; *West Palm*

Indeed, the Group has a smaller interest under *every* factor:

| Movant | Shares Purchased | Net Funds Expended | Approximate FIFO Loss |
|---|---|---|---|
| **Pension Fund** | **314,721** | **$6.6 million** | **$3.98 million** |
| Clearwater | 53,046 | $2.9 million | $1.1 million |
| Oklahoma | 48,172 | $746,992 | $972,000 |
| Boston | 38,060 | $523,217 | $523,217 |
| Lehigh County | 18,822 | $857,489 | $202,000 |
| Total: | 158,100 | $5.1 million | $2.83 million |

*See* Dkt. No. 12-5; Dkt. No. 8-7; *see also Roby v. Ocean Power Techs*., 2015 WL 1334320, at *5 (D.N.J. Mar. 17, 2015) (finding movant possessed largest financial interest "based on the factors enumerated by the Third Circuit" including "the largest number of shares, and . . . most net funds" and because it "suffered the largest loss").

Facing a clear (but undesired) outcome under Third Circuit precedent, the Group has now abandoned its $3 million FIFO loss in favor of a new LIFO calculation that ***reduces its own losses by nearly half a million dollars***.  Dkt. No. 26 at 1.  The Court should be skeptical of this ploy.  First, the Group's gamesmanship ***reduces*** its own members' – and the entire class's – loss.  As courts have recognized, "it is unclear why a plaintiff would argue for" a position that "would have the effect of ***reducing*** the class size and limiting the potential amount of damages, ***unless it was in the best interest of that particular plaintiff only***."  *Eichenholtz v. Verifone Holdings, Inc*., 2008 WL 3925289, at *2, *4 (N.D. Cal. Aug. 22, 2008) (using method that "maximizes" potential losses).

---

*Beach Police Pension Fund v. DFC Global Corp.*, 2014 WL 1395059, at *3 (E.D. Pa. Apr. 10, 2014) (identifying the "factors court should consider when making this determination" and citing *Cendant*).

- 4 -

Second, the Group "shift[ed] its argument only after [the Pension Fund] came forward with larger [FIFO] losses." *Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013). "This fact alone counsels in favor of adopting the [FIFO] methodology, as opposed to the [LIFO] methodology." *Bodri v. GoPro, Inc.*, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016) (rejecting new method advanced in opposition filing).[8]  In fact, the Third Circuit "'prevent[s] a litigant from asserting a position inconsistent with one that [it] has previously asserted in the same . . . proceeding.'" *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 272 (3d Cir. 2012); *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (rule exists to "'prohibit parties from deliberately changing positions according to the exigencies of the moment'").

This exact maneuver – switching loss metrics mid-briefing – was previously attempted against the Pension Fund by similarly unaffiliated groups in both *Garden City Emps.' Ret. Sys. v. Psychiatric Solutions, Inc.*, 2010 WL 1790763 (M.D. Tenn. Apr. 30, 2010) and *Constr. Workers Pension Trust Fund v. Navistar Int'l Corp.*, 2013 WL 3934243 (N.D. Ill. July 30, 2013).  Like here, in *Psychiatric Solutions*, the Pension Fund had the largest financial interest based on the *Cendant* factors, including the greatest FIFO loss, while a group claimed a marginally larger aggregate LIFO loss.  2010 WL 1790763, at *4.  As here, the group in *Psychiatric Solutions* argued LIFO "is more widely used."  *Id.*  The *Psychiatric Solutions* court rejected the group's

---

[8]    *See also Robb v. Fitbit Inc.*, 2016 WL 2654351, at *5 n.8 (N.D. Cal. May 10, 2016) (court was "not persuaded" by movant's "alternative loss calculations" raised in "its opposition and reply briefs"); *In re Vicuron Pharm., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) (noting that movant did not argue for application of certain metrics in its motion, but rather "focused solely on financial loss in initially arguing it had the largest financial loss in its motion" and declining to use new metrics).

transparent effort to shrink the Pension Fund's loss because the new "method was not argued by the Group until its response to Central States's motion" and "the Court does not ascertain any practical need for an alternate method." *Id.* (explaining that "[o]ther Courts have rejected [the LIFO] method of calculating plaintiffs' losses") (citing *Cendant*, 264 F.3d at 266-67); *see also Navistar*, 2013 WL 3934243, at *3 ("It was only after Retirement Funds discovered that it did not have the largest loss amount when compared to other Plaintiffs that Retirement changed its position in later filings as to the proper loss calculation . . . .").[9]   This Court should likewise reject the Group's effort to manipulate the metrics here.

Third, the FIFO/LIFO debate is a red herring because the Pension Fund's loss far exceeds that of any Group member regardless of the method applied:

| *Movant* | *Approximate FIFO Loss* | *Approximate LIFO Loss* |
|---|---|---|
| **Pension Fund** | **$3.98 million** | **$2.15 million** |
| Clearwater | $1.1 million | $1.1 million |
| Oklahoma | $972,000 | $734,000 |
| Boston | $523,217 | $523,217 |
| Lehigh | $202,000 | $202,000 |
| Total: | $2.83 million | $2.59 million |

---

[9]   This is not the first time the Group's counsel has employed an "evol[utionary]" approach to financial interest.  In *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473 (S.D.N.Y. 2011), counsel "initial[ly] argued that [its clients] should be selected as the lead plaintiff because it had the largest loss." *Id.* at 477.  But, "[w]hen the Pension Fund showed that it had the largest loss, [counsel] shifted gears and attacked the composition of the Pension Fund loss." *Id.*  As *Richman* noted, "the test is changed and adjusted, depending on conditions, so that the lead plaintiff status (and the right to select counsel) may be achieved." *Id.* (adopting the original loss metric); *Karam v. Corinthian Colls., Inc.*, 2011 U.S. Dist. LEXIS 157041, at *2 (C.D. Cal. Mar. 30, 2011) (declining to adopt counsel's mid-briefing attempt to reduce competing movant's financial interest, finding the arguments "more than a bit artificial").

*See* Dkt. No. 12-5; Dkt. No. 8-7; Dkt. No. 26 at 2.  As such, the Court does not need to resolve this phantom dispute because all of the *Cendant* factors and both methods confirm the Pension Fund possesses the greatest financial interest.[10]

Finally, even if the Court were to allow the Group to shift its loss metric mid-briefing and consider LIFO, the Pension Fund would still be the presumptive lead plaintiff because the Group was created by counsel solely to attain the largest financial interest, in direct contravention of *Cendant*.  *See* Dkt. No. 27 at 7-18.[11]

### B.   The Group's Attempt to Rebut the Presumption that the Pension Fund Is the Most Adequate Plaintiff Falls Short

The statutory presumption "may be rebutted ***only upon proof*** . . . that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the

---

[10]   *See Cortina v. Anavex Life Scis. Corp.*, 2016 WL 1337305, at *2 (S.D.N.Y. Apr. 5, 2016) ("The Court need not resolve these disputes, however, because it finds that, even if all of them were resolved in Din's favor, the *Lax* factors ultimately weigh in Truong's favor."); *Ark. Teacher Ret. Sys. v. Insulet Corp.*, 177 F. Supp. 3d 618, 622 (D. Mass. 2016) (finding one movant, represented by one of the Group's counsel here, "has the largest financial interest in this case" because it "purchased the most net shares, expended the most net funds, and suffered the greatest losses under both a FIFO and a LIFO calculation"); *see also Westchester Putnam Cntys. Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Prop. Grp., Inc.*, 2016 U.S. Dist. LEXIS 164682, at *5 (S.D.N.Y. Nov. 29, 2016) (finding movant's slightly smaller LIFO loss was not outcome determinative where "[t]he other factors . . . overwhelmingly favor[ed]" that movant).

[11]   *See also Navistar*, 2013 WL 3934243, at *4 (finding "even if" court determined a group had a larger loss, that "Central States has rebutted the presumption that Retirement Funds would be the proper lead Plaintiff"); *Bristow v. Sunpower Corp.*, 2016 U.S. Dist. LEXIS 170852, at *7 (N.D. Cal. Dec. 9, 2016) (declining to resolve financial interest dispute when group failed to show "that courts do, or properly may, allow aggregations of plaintiffs to serve as lead in instances where there is an otherwise completely qualified and suitable plaintiff whose losses undisputedly exceed those of any of the individuals in the group"); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 534 (S.D.N.Y. 2015) (declining to aggregate group's losses because individual movant had a larger financial stake "under any analysis").

interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). Importantly, the Third Circuit holds that "[a]llegations of impropriety are not proof of wrongdoing" for "[i]f they were, then any class member (or lawyer seeking to be appointed lead counsel) could disable any presumptive lead plaintiff by making unsupported allegations of impropriety." *Cendant*, 264 F.3d at 270. Yet, unsupported allegations, speculation, and innuendo are all the Group offers here.

The Group's assertions are particularly meritless considering that ***Boston served with the Pension Fund as lead plaintiff in MF Global and successfully defeated nearly identical assertions*** to those the Group, including Boston, makes here. *See* Dkt. Nos. 8-1 at 12; 8-3,¶9. In *MF Global*, a competing movant challenged the Pension Fund's adequacy based on the same three-decade old Consent Decree stemming from activities in the 1960's and 1970's that the Group cites here. In response, the Pension Fund and Boston explained that "the notion that the consent decree has left Central States hamstrung and without the independence to make its own decisions is simply untrue" and the Fund trustees "are even free to terminate the consent decree if and when they choose." *See* Seeger Reply Decl., Ex. A at 4; *see also* Declaration of James P. Condon ("Condon Decl."), ¶¶3-5 (attached to the Seeger Reply Decl. as Ex. B). Moreover, "the Consent Decree has been further amended to place a larger portion of the Fund's assets in accounts for which the Fund's Trustees have a more direct role without recourse to 'named fiduciaries' selected by the Trustees and approved by the Court." Condon Decl., ¶7. [12] At the end of the day, the

---

[12] Group members are likewise restricted by policies that prohibit the funds from making their own investment decisions. *See* Seeger Reply Decl., Exs. C-E. And, one member does not select its investment managers, a consultant does. *Id.*, Ex. E. The

Group's desperate and ill-conceived effort to throw stones at a competing movant calls into question the commitment of the Group and its lawyers to serve the interests of the plaintiff class in this case as opposed to their own narrow interests.

Identical challenges have been repeatedly rejected by courts appointing the Pension Fund as lead plaintiff and also as a class representative pursuant to Rule 23. *See* Condon Decl., ¶¶2, 8. For example, in *Plumbers & Pipefitters Local 572 Pension v. Cisco Sys.*, 2004 WL 5326262 (N.D. Cal. May 27, 2004), the court appointed the Pension Fund as a class representative over defendants' same arguments, expressly stating that the "deposition testimony of Central States' Deputy General Counsel, James Condon, confirms that Central States is aware of the responsibilities of a class representative and has been meeting those responsibilities." *Id.* at *4. The Pension Fund's efforts and proven ability as a court-appointed lead plaintiff in *Cisco*, where it obtained a $100 million recovery for the class, plainly contradicts the Group's accusation that the Pension Fund is incapable of adequately serving as a lead plaintiff.

More recently, a competing movant in *Kuriakose v. Federal Home Loan Mortgage Co.*, 2008 WL 4974839 (S.D.N.Y. Nov. 24, 2008) ("*Freddie Mac*") made the same arguments as in *Cisco*, *MF Global*, and again by the Group here. In rejecting the arguments and appointing the Pension Fund as the sole lead plaintiff, the court recognized the Consent Decree "does not place any restrictions whatsoever on Central States' conduct of litigation or ability to serve as lead plaintiff." *Id.* at *6. Indeed, the Pension Fund has served as lead plaintiff in five securities cases since

---

Group's attack regarding Northern Trust (Dkt. No. 26 at 19) is curious considering that Northern Trust has been Clearwater's custodian since 2003. *Id.*, Ex. F.

2008 without *any* impediment. *See* Condon Decl., ¶9 ("there is no requirement under the Consent Decree that litigation decisions (or the commencement of litigation) be approved by the Court overseeing the Consent Decree").[13]

The *Freddie Mac* court also distinguished the same two cases the Group cites here. *See* Dkt. No. 26 at 17. The *Freddie Mac* court noted that in *Police and Fire Ret. Sys. of the City of Detroit v. SafeNet, Inc.*, 2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007), the Pension Fund "was not the presumptively most adequate plaintiff" and that "court gave a very brief discussion of the fund's adequacy, without specifying how the consent decree might impact the fund's performance as lead plaintiff." *Freddie Mac*, 2008 WL 4974839, at *6. The *Freddie Mac* court also distinguished *Baker v. Arnold*, No. C 03-05642 (N.D. Cal. May 17, 2004) – which is prominently marked "NOT FOR CITATION" (Dkt. No. 26-12) and was undermined a mere ten days later by *Cisco* at the far more rigorous class certification stage – because the Pension Fund's "imminent funding deficiency" in 2004 "was averted in July 2005 when the [IRS] granted Central States a ten-year extension for amortizing its unfunded liabilities." *Freddie Mac*, 2008 WL 4974839, at *6. That is still the case as "the IRS approved a modification of Central States' amortization extension on April 28, 2016 that remains

---

[13]   In addition to *Cisco*, *MF Global*, and *Freddie Mac*, the Pension Fund was appointed lead plaintiff in *Selbst v. McDonald's Corp.*, No. 04 C 2422 (N.D. Ill. July 21, 2004), *In re HealthSouth Corp. Sec. Litig.*, No. CV-03-1500 (N.D. Ala. July 8, 2005), *Psychiatric Solutions*, *City of Westland Police and Fire Ret. Sys. v. MetLife Inc.*, No. 1:12-cv-00256 (S.D.N.Y. Mar. 29, 2012), and *Navistar*. Notably, the Pension Fund was certified as a class representative in *Cisco, HealthSouth, MF Global, Psychiatric Solutions*, and *Navistar* and has never been denied class representative status in a PSLRA action. Combined, these cases recovered nearly $1 billion for the benefit of the classes the Pension Fund dutifully and capably served. *See* Condon Decl., ¶8.

in effect." *See* Condon Decl., ¶¶10-11 (stating that "the continued existence of the Consent Decree at this time is largely within the control of the Fund itself, and this too was a circumstance that did not exist at the time of the *Baker* or *SafeNet* decisions").[14]

The Group's effort to portray the Pension Fund as a poor fiduciary mirrors the same arguments the *Freddie Mac* court held were contradicted by an Independent Special Counsel's Quarterly Report, which stated "that the fund's financial situation has improved in recent years, that the amortization extension continues to prevent a statutory funding deficiency, and that the fund has adopted a rehabilitation plan." 2008 WL 4974839, at *6 n.4. The most recent publicly available Independent Special Counsel's Quarterly Report by Retired U.S. District Judge David H. Coar similarly confirms the "reasonable measures" taken by the Trustees, that "[i]n more recent years, the Fund has enjoyed significant investment gains" and its assets as of September 30, 2016 were approximately $15.7 billion. *See* Condon Decl., Ex. B at 2-3. As such, the record reflects that the Pension Fund "has the requisite resources to fund this litigation." *Psychiatric Solutions*, 2012 WL 1071281, at *38 (rejecting defendants' contention that the Pension Plan's "financial woes" impacted adequacy).

The Group's "poor fiduciary" argument has been repeatedly rejected by courts appointing other funds as lead plaintiff as well. Recently, Boston argued (as it does here) that a Puerto Rico pension fund with a larger loss was inadequate because the Puerto Rico fund was "'embroiled in legislative and legal action'" and was "'in dire

---

[14]   The Group's fixation on the Pension Fund's "'funding deficienc[ies]'" is curious given that half of the Group's members are also facing serious underfunding challenges. *See* Seeger Reply Decl., Exs. G-H (evidencing that Oklahoma is only 65.9% funded and Boston is only 57%-61% funded depending on the method used).

legal and financial straits.'" *BRS v. Volkswagen AG*, 2016 WL 5930844, at *4 (N.D. Cal. Oct. 11, 2016).[15]   As here, Boston asserted that "'[g]iven [Puerto Rico's] historical mismanagement and resulting central involvement in debt restructuring efforts, [Puerto Rico] is in no position to effectively serve as the fiduciary over the Class . . . as [Puerto Rico] stares down certain litigation should those efforts fail.'" *Id.* at *5.   The court rejected these assertions, finding Boston "fails to identify what, if any, defenses would be specific to [Puerto Rico]" or how its "alleged financial mismanagement is related to [Puerto Rico's] purchase of Volkswagen Bonds such that it would affect this action." *Id.* (finding Boston's concerns "speculative").   As the Pension Fund's stellar service as lead plaintiff evidences and Mr. Condon's Declaration confirms, none of the Group's unsubstantiated concerns will impact this case. Thus, none are sufficient to rebut the presumption in favor of the Pension Fund.

The Group also half-heartedly points to a complaint filed by eleven Kroger Co. employees as indicia that the Pension Fund will be a poor fiduciary here. *See* Dkt. No. 26 at 20-21.  Yet, as Mr. Condon explains, the Group's conclusory description of unproven allegations is misleading, as the Independent Counsel's Report states that:

- Judge Zagel denied the Kroger plaintiffs' preliminary injunction on June 30, 2016 – six months before the Group's opposition was filed – because "'(1) plaintiffs had not shown a probability of success on the merits (2) they had requested a form of final, irrevocable relief in their preliminary injunction motion, and (3) they had failed to show irreparable harm.'"

---

[15]   An article published six months before the *BRS* decision was issued reported that the Puerto Rico fund was "virtually penniless" and, along with another Puerto Rico retirement plan, the "96 percent combined [funding] shortfall is among the biggest of any U.S. state pension this century."  *See* Nick Brown, *Puerto Rico's Other Crisis: Impoverished Pensions,* REUTERS (Apr. 7, 2016), available at http://www.reuters.com/ investigates/special-report/usa-puertorico-pensions/ (last visited Apr. 8, 2017).

- The Fund's Trustees "'presented a counter-proposal to Kroger on July 15, 2016 and met with Kroger representatives on July 18 to discuss that proposal.'" *Id*. Thereafter, on October 1, 2016, Kroger submitted a counter-offer and the Fund submitted a further revised offer to Kroger on November 4, 2016, to which Kroger has yet to respond to. *Id*.

*See* Condon Decl., ¶12 (citing Ex. B at 5). Thus, contrary to the Kroger plaintiffs' allegations the Group adopts as proven fact, "it may have been a breach of fiduciary duty if the Fund had accepted Kroger's initial offer (which the Central States Trustees believed was not sufficiently beneficial to the Fund or its participants) or for the Fund to not continue negotiating, as it has, to obtain the best agreement possible." *Id.*

Importantly, the Third Circuit has expressly held that mere "[a]llegations of impropriety are not proof of wrongdoing." *Cendant*, 264 F.3d at 270. As such, courts regularly reject challenges to a presumptive lead plaintiff's adequacy based on mere allegations of breach of fiduciary duty. For example, in *Woburn Ret. Sys. v. Salix Pharm., Ltd*., 2015 WL 1311073 (S.D.N.Y. Mar. 23, 2015), a competing movant contended that the presumptive lead plaintiff "cannot be effective fiduciaries of the class because these directors . . . have been sued for, *inter alia*, breach of fiduciary duty" relating to the Madoff Ponzi scheme. *Id.* at *9. Notably, one of the Group's counsel here vigorously argued there that misplaced allegations in a complaint for which there has been no finding of wrongdoing do not satisfy the PSLRA's stringent requirement of proof to rebut the strong presumption in its client's favor. *See Woburn*, No. 14-CV-8925, Dkt. No. 54 at 3-6 (S.D.N.Y. Feb. 2, 2015). The court agreed that "mere allegations of wrongdoing, without a finding established on the record, are insufficient to rebut Pentwater's presumption of adequacy." *Id.* at *9.

Similarly, in *Ferrari v. Impath, Inc*., 2004 WL 1637053 (S.D.N.Y. July 20,

2004), Group member Oklahoma (represented by Bernstein Litowitz) argued that a competing pension fund should be disqualified because its chairman breached his fiduciary duty. The court dismissed this contention as a "red herring" because "there [was] no affirmative evidence of wrongdoing" and Oklahoma "cite[d] no case law in which such a paucity of evidence sufficiently rebutted the PSLRA presumption." *Id.* at *6 (finding it "telling" that Oklahoma relied "solely on innuendo and inferences rather than established fact"). The Group here does the same thing and should fare no better in attempting to rebut the presumption that the Pension Fund is the most adequate plaintiff. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 416 (S.D.N.Y. 2004) (finding it "inappropriate" to reject a candidate because the challenger "does not demonstrate that any of the underlying wrongdoing was actually proven or otherwise established on the record").

The Group also emphasizes the Treasury's rejection of a plan to stabilize the Pension Fund's finances as one of the "plethora of issues plaguing Central States." Dkt. No. 26 at 4, 18-22. Rhetoric aside, the Group conveniently ignores that the "Treasury Department's *May 6*, 2016 denial of Central States' application in large measure relied upon regulations that . . . became effective only the day before Treasury issued its ruling. *See* 26 C.F.R. §1.432(e)(9)-1 (*effective date: May 5*, 2016)." Condon Decl., ¶13. "Thus, as a matter of basic logic, Central States had no real chance to comply with the regulation that the competing movants accuse the Fund of 'violating.'" *Id.* Moreover, the Group does "not explain how Treasury's denial of Central States' application poses a 'risk' to the putative class in this case" because that "circumstance only leaves the Fund with more, and not less, motivation to vigorously

- 14 -

pursue recovery of any losses it has sustained, including losses arising from the matters at issue in this case." *Id.* Indeed, the Pension Fund has recovered nearly $1 billion serving as lead plaintiff since 2001. *See id.*, ¶8.[16]

While the Group certainly presents cherry-picked facts in the most unflattering light possible, the Group's opposition largely adopts the same flawed tactics Boston and Oklahoma unsuccessfully used in *BRS* and *Ferrari*: heavy on innuendo, light on proof. As the *Psychiatric Solutions* court held in certifying the Pension Fund as a class representative over defendants' opposition, "***Central States has been found by six other district courts . . . to be an adequate class representative***." 2012 WL 1071281, at *38. Consequently, the Group's unsubstantiated allegations and rejected legal arguments do not rebut the presumption in the Pension Fund's favor.

## III.   CONCLUSION

The Pension Fund's nearly $4 million loss (the largest of any movant) and exemplary service as a lead plaintiff and class representative in several securities cases, recovering nearly $1 billion for investors, confirm the Pension Fund is an adequate candidate and the presumptive lead plaintiff. Its motion should be granted.

DATED:  April 10, 2017                    Respectfully submitted,


                                   _____
                                        s/ Christopher A. Seeger
                                   CHRISTOPHER A. SEEGER

---

[16]   With respect to the Government Accounting Office ("GAO") review, Mr. Condon states that "the Fund has already complied with all of the GAO's requests and is continuing to dutifully respond to supplemental requests for information, as the Fund would do here in cooperating with defendants' discovery requests." *Id.*, ¶14.

SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
DAVID R. BUCHANAN
JENNIFER R. SCULLION
550 Broad Street, Suite 920
Newark, NJ  07102
Telephone:  973/639-9100
973/639-9393 (fax)

Local Counsel

ROBBINS GELLER RUDMAN
& DOWD LLP
DANIELLE S. MYERS
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiff

1253447_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 10, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses of counsel of record as recorded in the CM/ECF system.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 10, 2017.

 s/ CHRISTOPHER A. SEEGER
CHRISTOPHER A. SEEGER

SEEGER WEISS LLP
550 Broad Street, Suite 920
Newark, NJ  07102
Telephone:  973/639-9100
973/639-9393 (fax)

E-mail:       cseeger@seegerweiss.com

1253447_1