UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| IN RE NOVO NORDISK SECURITIES LITIGATION | : : : : : | Case No. 3:17-cv-00209-BRM-LHG<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is: (1) the motion of Defendants Novo Nordisk A/S ("Novo"), Lars Rebien Sorensen ("Sorensen"), Jesper Brandgaard ("Brandgaard"), and Jakob Riis ("Riis") (collectively, "Defendants") to exclude expert testimony of Plaintiffs' expert (ECF No. 146-1); and (2) Plaintiffs Central States, Southeast and Southwest Areas Pension Fund, Lehigh County Employees' Retirement System, Oklahoma Firefighters Pension and Retirement System, Boston Retirement System, and Employees' Pension Plan of the City of Clearwater (collectively, "Plaintiffs") Motion to Certify Class. (ECF No. 136-1.) Both Motions are opposed. (ECF Nos. 147 152.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, Defendants' Motion to Exclude Plaintiffs' Expert's Report is **DENIED,** and Plaintiff's Motion to Certify Class is **GRANTED.**

I.  **BACKGROUND**

Following the Court's consolidation of related cases (ECF No. 42), Plaintiffs filed an Amended Complaint on August 4, 2017. (ECF No. 71.) Plaintiffs assert claims for (1) violations of Section 10(b) and Rule 10b-5 of the Exchange Act against all Defendants (Count I), and (2) violations of Section 20(a) of the Exchange Act against Individual Defendants (Count II). Defendants filed a Motion to Dismiss the Amended Complaint, and, following oral argument, the

Court denied Defendants' Motion to Dismiss. (ECF No. 99.) A more detailed account of the facts can be found in that opinion; only the relevant facts are included below.

In this federal securities class action, Plaintiffs allege Novo made "a series of material misstatements and omissions about Novo's sales of its core insulin drugs in the United States." (ECF No. 71 ¶ 4.) Specifically, Plaintiffs contend Novo falsely attributed its revenue and growth to its innovation, "when in fact they were the result of a scheme whereby Novo paid increasingly large kickbacks to Pharmacy Benefit Managers" ("PBMs"). (*Id.* ¶ 4.) "PBMs are the middlemen between manufacturers and health insurers who controlled market access in exchange for placement on their formularies (i.e., the lists of covered drugs recommended to providers)." (*Id.*) Novo is a global healthcare company that derives roughly 80% of its revenue from insulin-based medications and roughly 54% of its revenue from the U.S. insulin market. (*Id.* ¶ 3.) Sorensen was Novo's President and CEO at all times relevant to this action until December 31, 2016. (*Id.* ¶ 35.) Brandgaard was at all relevant times, and remains, Novo's Executive Vice President and CFO. (*Id.* ¶ 36.) Riis was Novo's Executive Vice President for North America and President of Novo Nordisk Inc., Novo's U.S. subsidiary, from September 2016 through March 2017. (*Id.* ¶ 37.) Riis was also Novo's Executive Vice President for China, Pacific & Marketing from January 2013 to September 2016, and Novo's Senior Vice President of Global Marketing from January 2006 through September 2016. (*Id.*) A more detailed account of the facts of the case can be found in the Court's denial of Defendants' Motion to Dismiss the Verified Complaint. (ECF No. 99.)

Plaintiffs bring their claims pursuant to Federal Rule of Civil Procedure 23 on behalf of a purported class (the "Class") of all persons and entities "who purchased or otherwise acquired Novo American Depository Receipts ('ADRs') between February 3, 2015 and February 2, 2017, inclusive (the 'Class Period')." (*Id.* ¶ 2.) In its Motion, Plaintiffs argue the Class should be certified

because it satisfies the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy, and the Rule 23(b) requirements of predominance and superiority. (ECF No. 136-1 at 10.) Further, they request the Court appoint Plaintiffs as Class representatives; and appoint Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Bernstein Litowitz Berger & Grossman LLP ("Bernstein Litowitz") as Class Counsel, and Seeger Weiss LLP ("Seeger Weiss") and Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. ("Carella Byrne") as Co-Liaison Counsel. (*Id.*)

Defendants, however, argue the Court should deny Plaintiff's Motion to Certify because Plaintiffs have not demonstrated they are adequate Class representatives, nor have they shown common issues predominate. (ECF No. 147 at 6-7.) Additionally, Defendants move to exclude the report and opinions of Plaintiffs' expert, Dr. Steven F. Feinstein ("Feinstein Report") (ECF No. 136-3). (ECF No. 146-1.)

## II. STANDARD OF REVIEW

### A. Admissibility of Expert Opinion

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588, (1993). The Third Circuit has held "Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80 (3d Cir. 2017) (quoting *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994))).

> First, the witness must be qualified to testify as an expert. Qualification requires that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that a broad range of knowledge, skills, and training qualify an expert as such. Second, the testimony must be reliable. In other words, the expert's opinion must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the

> expert must have good grounds for his or her belief. An assessment of the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity. Third, the expert testimony must fit, meaning the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact.

*Calhoun v. Yamaha Motor Corp.*, U.S.A., 350 F.3d 316, 321 (3d Cir. 2003) (quotations and citations omitted).

### B. Class Certification

The Third Circuit has consistently observed that "Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and counsel's ability to fairly and adequately protect class interests." *In re Comm. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 799 (3d Cir. 1995) (alterations omitted)). Rule 23 contains two sets of requirements. First, a party seeking class certification must demonstrate the class satisfies the requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy].

Fed. R. Civ. P. 23(a).

Second, plaintiffs must show that the requirements of one of the provisions of Rule 23(b) are met. Because Plaintiffs here seek certification under Rule 23(b)(3), the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are

known as predominance and superiority. *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009).

Importantly, the Third Circuit has instructed that "each Rule 23 component [must] be satisfied" for a court to certify a class. *In re Hydrogen Peroxide*, 552 F.3d 305, 310 (3d Cir. 2008) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 630 (1997)). In that regard, "[c]lass certification is an especially serious decision, as it 'is often the defining moment in class actions (for it may sound the 'death knell' of the litigation on the part of plaintiffs, or create unwarranted pressure to settle [non-meritorious] claims on the part of defendants)." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 162 (3d Cir. 2001). In *Hydrogen Peroxide*, the Third Circuit urged district courts, where appropriate, to "delve beyond the pleadings to determine whether the requirements for class certification are satisfied." 552 F.3d at 316 (quoting *Newton*, 259 F.3d at 167). "An overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met." *Id.* Importantly, the predominance inquiry is especially dependent upon the merits of a plaintiff's claim, since "the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual." *Id.* at 310-11 (citations omitted). "If proof of the essential elements of the cause of action requires individual treatment," then predominance is defeated and a class should not be certified. *Id.* (quoting *Newton*, 259 F.3d at 172); *see In re Constar*, 585 F.3d at 780.

**III. DECISION**

    **A.    Defendants' Motion to Exclude Lead Plaintiffs' Expert Report**

Here, Lead Plaintiffs use the Feinstein Report to establish market efficiency and create a methodology for calculating damages. Because the Feinstein Report involves issues directly related to class certification, the Court first analyzes the report's admissibility.

5

### 1. Expert Qualifications

Defendants do not challenge Dr. Feinstein's qualifications. His credentials and experience qualify him to offer an expert opinion in this case. (*See* ECF No. 136-3 ¶¶ 6-16.) Additionally, this Court has previously found Dr. Feinstein to be credible to offer expert opinions on market efficiency, loss causation, and damages in securities-fraud cases. *City of Sterling Heights Gen. Employees' Ret. Sys. v. Prudential Fin., Inc.*, No. 12-5275, 2015 U.S. Dist. LEXIS 115287 at *5 (D.N.J. August 31, 2015). Therefore, the Court finds Dr. Feinstein qualified.

### 2. Reliability

Defendants dispute the reliability of Dr. Feinstein's Report on two grounds. First, they argue Dr. Feinstein "fails to offer a functioning damages methodology." (ECF No. 146-1 at 11.) Second, Defendants argue Dr. Feinstein's Report "makes no real attempt to fit his damages proposal with plaintiffs' theory of liability or with a proper measure of claimed damages." (*Id.*)

Specifically, Defendants contend Dr. Feinstein's Report is not reliable because he concedes he is unable to construct an actual damages model until discovery is complete and the record is fully developed. (*Id.* at 13.) Additionally, Defendants urge the Court to follow the Northern District of Ohio's ruling in finding a similar report submitted by Dr. Feinstein unreliable. (ECF No. 146-1 at 13.) In recognizing that case is not binding, the Court finds Defendant's argument premature. At this stage of litigation, Plaintiffs are not required to produce a detailed damages model. *See Li v. Aeterna Zentaris*, No. 14-7081, 2018 U.S. Dist. LEXIS 37811 at *7 (D.N.J. Feb. 28, 2018); *see also Prudential*, 2015 U.S. Dist. LEXIS 115287 at *20, 34-36 (citing *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 373-75 (3d Cir. 2015). Nevertheless, Dr. Feinstein's event study approach has been approved as a methodology in previous cases. *See, e.g.*, *WM High Yield Fund v. O'Hanlon*, No. 04-3423, 2013 U.S. Dist. LEXIS 90323, at *11 (E.D. Pa. June 27, 2013); *Aeterna Zentaris*, 2018 WL 1143174, at *2; *In re DVI, Inc. Sec. Litig.*, No. 03-05336, 2010 U.S. Dist.

LEXIS 92888, at *13 (E.D. Pa. Sep. 3, 2010). Because the Court need not consider the reliability of Dr. Feinstein's damages model at this stage, Plaintiffs have satisfied the reliability requirement under FRE 702.

### 3. Fit

To satisfy the third requirement, expert testimony must be "relevant for the purposes of the case" and be helpful to the factfinder. *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The Third Circuit has explained the "fit" requirement is one of relevance, and the standard for this factor "is not that high." *United States v. Schiff*, 602 F.3d 152, 172-72 (3d Cir. 2010) ("[E]xpert evidence which does not relate to an issue in the case is not helpful."). At this stage, all that is required is for Dr. Feinstein's model to be helpful in establishing Plaintiffs' case.

Plaintiffs' theory of liability arises from alleged misrepresentations and omissions that caused artificial inflation in Novo's stock price. (ECF No. 71 ¶ 4.) Dr. Feinstein's model isolates and identifies the artificial inflation for those who purchased Novo shares during the Class Period. (*See* ECF No. 136-3 ¶¶ 196-205.) Specifically, Dr. Feinstein proposes a three-step method of calculating damages on a per share basis. First, Dr. Feinstein proposes using "valuation tools, which would include [an] event study analysis" to measure the artificial inflation in the stock due to the alleged misrepresentations and omissions. (*Id.* ¶ 203.) Second, Dr. Feinstein proposes creating an "inflation ribbon," or a "time series of the difference between an ADR's actual price observed in the marketplace, and the estimated price that the ADR would have traded at each day had there been a full disclosure from the outset of the Class Period." (*Id.*) Finally, Dr. Feinstein would calculate damages for each Class member by determining "the difference between the inflation on the date the ADRs were purchased and the inflation on the date those same ADRs were subsequently sold, excluding any inflation dissipation caused by factors other than corrective disclosure." (*Id.*) This exact three-step model has been accepted by other courts. *See Wilson v.*

7

*LSB Indus.*, No. 15-7614, 2018 U.S. Dist. LEXIS 138832, at *48 (S.D.N.Y. Aug. 13, 2018); *see also Aeterna Zentaris*, 2018 U.S. Dist. LEXIS 37811, at *6.

Additionally, while Dr. Feinstein concedes his model requires the "full development of the record," he has presented a model which may be "adjusted to isolate misrepresentations and omissions that the trier of fact ultimately deems fraud-related." (ECF No. 152 at 59, *see also* ECF No. 136-3 ¶¶ 203, 205.) Nevertheless, Dr. Feinstein is not required to produce a detailed damages model at this time. *See Prudential*, 2015 U.S. Dist. LEXIS 115287, at *20; *see also In re JPMorgan Chase & Co. Sec. Litig.*, 2015 U.S. Dist. LEXIS 132181, at *7 (S.D.N.Y. Sept. 29, 2015). Accordingly, Defendants' Motion to Exclude Dr. Feinstein's Report is **DENIED**, and the Court will consider it in Plaintiffs' Motion for Class Certification**.**

### B. Lead Plaintiffs' Motion for Class Certification

#### 1. Rule 23(a) Inquiry

First, the Court must determine whether Plaintiffs have satisfied the prerequisites for maintaining a class action as set forth in Rule 23(a). In their arguments against class certification, Defendants only address adequacy under Rule 23(a). Specifically, Defendants argue Plaintiffs are not adequate Class representatives and their counsel cannot fairly and adequately represent the class. (ECF No. 147 at 6.) Nevertheless, the Court will address all elements.

##### i. Numerosity

With respect to numerosity, a party need not precisely enumerate the class members to proceed as a class action. *In re Lucent Tech. Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 640 (D.N.J. 2004). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir.

2001) (citing 5 James Wm. Moore et al., Moore's Federal Practice S 23.22[3][a] (Matthew Bender 3d ed. 1999)).

Numerosity "is readily met in securities cases involving an issuer whose stock trades publicly on the NYSE." *Prudential*, 2015 U.S. Dist. LEXIS 115287 at *8. Novo stock trades with an average weekly volume of 10.07 million ADRs. (ECF No. 136-3 ¶¶ 57, 88.) As such, it is clear joinder of all members would be impractical, and the Court finds numerosity is satisfied.

ii. **Commonality**

Commonality requires there to be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold for establishing commonality is straightforward: "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 596-97 (3d Cir. 2009) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). Indeed, as the Third Circuit pointed out, "It is well established that only one question of law or fact in common is necessary to satisfy the commonality requirement, despite the use of the plural 'questions' in the language of Rule 23(a)(2)." *In re Schering Plough*, 589 F.3d at 97 n.10. Therefore, there is a low threshold for satisfying this requirement. *Newton*, 259 F.3d at 183; *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986) (highlighting that the threshold of commonality is not high (citations omitted)).

Moreover, this requirement does not require all putative class members to share identical claims, *see Hassine v. Jeffes*, 846 F.2d 169, 176-77 (3d Cir. 1988), as "factual differences among the claims of the putative class members do not defeat certification." *Baby Neal*, 43 F.3d at 56. In that regard, class members can assert a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are subject to the same harm will suffice.

9

*Hassine*, 846 F.2d at 177-78. "Even where individual facts and circumstances do become important to the resolution, class treatment is not precluded." *Baby Neal*, 43 F.3d at 56.

This case presents numerous questions of law and fact that are common to all members. Specifically, the Amended Complaint alleges a "common course of conduct arising from materially false and misleading statements and omissions Defendants made to the investing public in Novo's SEC filings and press releases and on conference calls." (ECF No. 136-1 at 15.) Insofar as Plaintiffs allege the course of conduct violated the Exchange Act, those violations and related remedies would apply to all Class members.

### ii. Typicality

Rule 23(a)(3) requires that the representative's claim be typical of the members of the class. "The concepts of commonality and typicality are broadly defined and tend to merge, because they focus on similar aspects of the alleged claims." *Newton*, 259 F.3d at 182. "Both criteria seek to assure that the action can be practically and efficiently maintained and that the interests of the absentees will be fairly and adequately represented." *Baby Neal*, 43 F.3d at 56; *see Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Despite their similarity, commonality—like numerosity—evaluates the sufficiency of the class itself, and typicality—like adequacy of representation—evaluates the sufficiency of the named plaintiff. *See Hassine*, 846 F.2d at 177 n.4; *Weiss v. York Hosp.*, 745 F.2d 786, 810 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060 (1985).

Specifically, Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims of the class." *See* Fed. R. Civ. P. 23(a)(3). Typicality acts as a bar to class certification only when "the legal theories of the named representatives potentially conflict with those of the absentees." *Georgine v. Amchem Prods.*, 83 F.3d 610, 631 (3d Cir. 1996); *Newton*, 259 F.3d 183. "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." *Id.* at 184. In

other words, the typicality requirement is satisfied as long as representatives and the class claims arise from the same event or practice or course of conduct and are based on the same legal theory. *Brosious v. Children's Place Retail Stores*, 189 F.R.D. 138, 146 (D.N.J. 1999).

Here, typicality is clearly satisfied because Plaintiffs' claims arise from the same course of conduct that gave rise to the claims of all other Class members and are based on the same legal theory. Therefore, the typicality requirement of Rule 23(a)(3) is met.

### iii. Adequacy

A class may not be certified unless the representative class members "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Rule 23(a)'s adequacy of representation requirement 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 343 (3d Cir. 2010) (quoting *Amchem*, 521 U.S. at 625). Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* (citation omitted).

This requirement has traditionally entailed a two-pronged inquiry: first, the named plaintiff's interests must be sufficiently aligned with the interests of the absentees; and second, the plaintiff's counsel must be qualified to represent the class. *Gen. Motors*, 55 F.3d at 800. A named plaintiff is "adequate" if his interests do not conflict with those of the class. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998). Pursuant to Rule 23(g), adequacy of class counsel is considered separately from the determination of the adequacy of the class representatives.

Defendants argue Plaintiffs are inadequate Class representatives because the "formation and composition of the plaintiff group—an amalgam of five dissimilar and unrelated pension funds . . . prevents the group from fairly and adequately representing the [C]lass." (ECF No. 147 at 30.) Further, Defendants argue Plaintiffs are inadequate Class representatives because their "lack of

11

involvement and engagement in the prosecution . . . demonstrates that the lawyers rather than plaintiffs are driving the litigation."

"[A] class representative 'need only possess a minimal degree of knowledge necessary to meet the adequacy standard.'" *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 296 F.R.D. 299, 316 (D.N.J. 2013) (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)). "[A] proposed representative's lack of particularized knowledge concerning the dispute at issue 'does not render [a class representative] inadequate . . . [if] she has retained adequate counsel to represent her.'" *Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 120 (D.N.J. 2003) (quoting *Ettinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 122 F.R.D. 177, 182 (E.D. Pa. 1988)).

The Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), expressly provides a group of plaintiffs may be deemed most adequate plaintiffs. *In re Nice Sys. Secs. Litig.*, 188 F.R.D. 206, 220 (D.N.J. 1999). Here, proposed Lead Plaintiffs consist of five pension funds—Central States, Southeast and Southwest Areas Pension Fund; Lehigh County Employees' Retirement System; Oklahoma Firefighters Pension and Retirement System; Boston Retirement System; and Employees' Pension Plan of the City of Clearwater. Collectively, these funds "invest approximately $22.5 billion in assets on behalf of nearly 450,000 participants. (Decl. of Christopher A. Seeger in Support of Plaintiffs' Motion for Class Certification, ECF No. 136-2, Ex. 2 ¶ 2, Ex. 3 ¶ 2, Ex. 4 ¶ 2, Ex. 5 ¶ 2, Ex. 6 ¶ 2.) In assessing whether a group satisfies the adequacy prong of Rule 23, a court must determine whether it "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001)

(quoting *Hassine*, 846 F.2d at 179). Additionally, because Plaintiffs are a group of investment funds, the Court must also determine whether the group is too large to represent the Class in an adequate manner. *In re Cendant Corp. Litig.*, 264 F.3d at 267.

Plaintiffs argue they have satisfied the adequacy prong of Rule 23 because, primarily, "the interests of Plaintiffs are perfectly aligned with those of the Class." (ECF No. 136-1 at 19.) Plaintiffs, like all Class members, "purchased Novo ADRs at inflated market prices during the Class Period and were injured by Defendants' misconduct." (*Id.*) Because of this, Plaintiffs argue, they are "incentivized to establish Defendants' liability and maximize their recovery, and by doing so, [they] will necessarily do the same for absent Class members." (*Id.*) Further, when "[l]ead [p]laintiffs have a strong interest in establishing liability under federal securities law, and seek similar damages for similar injuries, the adequacy requirement can be met." *In re Schering-Plough Corp.*, No. 9-397, 2012 U.S. Dist. LEXIS 138078 at *21 (D.N.J. Sep. 25, 2012) (*quoting La. Mun. Police Employees Ret. Sys. v. Dunphy*, No. 3-4372, 2008 U.S. Dist. LEXIS 19616 at *6 (D.N.J. March 13, 2008)). Additionally, Plaintiffs argue they have demonstrated the ability to vigorously serve as Class representatives because they have "demonstrated [their] commitment to this litigation through [their] active participation in the discovery process, including [] receiving and reviewing periodic updates . . . from counsel, reviewing pleadings and other documents. . . producing documents and providing responses to . . . interrogatories . . . and participating in discussions with counsel." (ECF No. 136-1 at 19-20.) Defendants do not dispute Plaintiffs have interests aligned with members of the purported Class. (*See generally*, ECF No. 147.) Therefore, based on Plaintiffs' active participation in litigation, their shared interests with the purported Class, and their appointment of qualified counsel, the Court is satisfied Plaintiffs have the ability and incentive to represent these claims vigorously.

13

Indeed, because Plaintiffs are a group of investment funds, the Court must also determine whether the group is too large to represent the Class in an adequate manner. *In re Cendant Corp. Litig.*, 264 F.3d at 267. While the Third Circuit has determined the PSLRA simply requires that any such group "fairly and adequately protect the interests of the class," there is a point where a group of plaintiffs may become "too large for its members to operate effectively as a single unit." *Id.* Indeed, there is not a "hard-and-fast rule," and therefore a common sense "rule of reason prevails." *Id.* Nevertheless, the Third Circuit generally agrees with the Securities and Exchange Commission's presumption that groups with more than five members are too large to work effectively. *Id.* The group of lead plaintiffs here consists of a group of five pension funds, which is not presumptively too large under Third Circuit jurisprudence. Therefore, and considering the rule of reason, the group of entities purported to be Class representatives is not too large as to fail the adequacy requirement.

Plaintiffs have made a threshold showing of adequacy based on their commitment to litigation, shared interests with members of the purported Class, and hiring of experienced counsel. Additionally, the Court finds the group of five pension funds is not too large to adequately represent the interests of the Class. As such, Plaintiffs have demonstrated their adequacy class representatives under Rule 23(a).

Defendants attempt to rebut the presumption that Plaintiffs are adequate as lead plaintiffs. However, this presumption "may be rebutted only upon proof *by a member of the purported plaintiff class* that the presumptively most adequate plaintiff (a) will not fairly and adequately protect the interests of the class; or (b) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). Because Defendants are not members of the purported Class, the Court may not consider

arguments to rebut the presumption of Plaintiffs' adequacy. *In re Cendant Corp. Litig.*, 264 F.3d at 268 (*citing Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 550 (N.D. Tex. 1997) ("The statute is clear that only potential plaintiffs may be heard regarding he appointment of a Lead Plaintiff.").

    **2.    Rule 23(b)(3) Factors: Common Questions Predominate and the Class Is Superior to Other Methods of Adjudication**

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish the proposed class meets the requirements of Rule 23(b)(3). To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to the members of the class predominate over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3) requires that "a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In this case, both considerations weigh in favor of class certification.

    **i.    Predominance under Rule 23(b)(3)**

Here, Plaintiffs satisfy the predominance and superiority criteria of Rule 23(b)(3). In determining whether common questions predominate, courts have focused on the claims of liability against defendants. *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977); *Smith v. Suprema Specialties, Inc.*, No. 02-168, 2007 WL1217980, at * 9 (D.N.J. 2007) (citations omitted) ("The focus of the predominance inquiry is on liability, not damages."). When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d, § 1788, at 528 (1986).

In this action, Defendants' alleged liability arises from materially false misrepresentations and omissions about Novo's growth and revenue that caused those who purchased Novo ADRs

15

during the Class Period to suffer losses. (ECF No. 136-1 at 8.) Plaintiffs are pursuing claims under §§ 10(b) and 20(a) of the Exchange Act, which requires a showing of "(1) a material misrepresentation of omission by the defendant[s]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation of omission; (5) economic loss; and (6) loss causation." (*Id.* at 23 (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013)).) Defendants do not dispute that the claims pursued by Plaintiffs are common to all members of the class. However, to certify a class under Rule 23(b), the Court must determine whether Lead Plaintiffs establish entitlement to the basic presumption of reliance. *Prudential*, 2015 U.S. Dist. LEXIS 115287 at *26.

To establish reliance, Plaintiffs put forth a fraud-on-the-market theory. (ECF No. 136-1 at 25.) The premise of the fraud-on-the-market reliance theory is that reliance on a misleading statements may be presumed where the company's stock is traded "in an open and developed securities market." *Basic, Inc. v. Levinson*, 486 U.S. 224, 242 (1988). This is because "the price of a company's stock is determined by the available material information regarding the company and its business . . . misleading statements will therefore defraud purchaser of stock even if the purchasers do not directly rely on those misstatements." *Id.*

To invoke the basic presumption, Plaintiffs must prove Novo stock trades in an efficient market. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 283 (2014). If the Court finds the basic presumption does not apply—either because market efficiency was not established or because Defendants proved there was no price impact—then individual issues of reliance would predominate over common issues, and therefore class certification would be inappropriate. *Id.* at 282.

Plaintiffs have proven market efficiency. Primarily, Novo's stock trades on the NYSE, "one of the most efficient capital markets in the world." *In re PHP Healthcare Corp.*, 128 F. App'x 839, 848 (3d Cir. 2005); *see also In re DVI Inc. Sec. Litig.*, 639 F.3d 623, 634 (3d Cir. 2011) (trading on the NYSE strongly supports a finding of market efficiency). Additionally, Dr. Feinstein establishes each of the *Cammer* and *Krogman* factors weigh in favor of market efficiency. *See Feinstein Rpt.* ¶¶ 73-195. Defendants do not dispute this. Because Plaintiffs have established market efficiency, and Defendants do not offer any arguments against this, Plaintiffs are entitled to the basic presumption.

Defendants do, however, argue Plaintiffs cannot meet the predominance requirement because Plaintiffs have not met their burden in showing by a preponderance of the evidence that "damages can be determined on a Class-wide basis using the same model and formula for all Class members." (ECF No. 147 at 41 (citing ECF No. 136-1 at 17-18).)

Class certification will not necessarily be defeated where there are individual issues with respect to the calculation of damages. *Prudential*, 2015 U.S. Dist. LEXIS 115287 at *35. Additionally, "in securities cases . . . where all other issues are provable by common evidence, denial of class certification solely on the basis of individual damages calculations would be an 'abuse of discretion.'" *Id.* (quoting *Neal*, 794 F.3d at 375). The Court finds—and Defendants do not dispute—common issues predominate all other issues of law and fact in this case. Therefore, the Court "need not assess the validity of Plaintiffs' damages model at this stage." *Id.* As such, Plaintiffs have satisfied the predominance requirement under Rule 23(b).

### ii. Superiority Under Rule 23(b)(3)

The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re*

*Prudential Ins. Co.*, 148 F.3d at 316 (internal citations omitted); *In re Warfarin*, 391 F.3d at 532-33. In its assessment, the Court must weigh: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

In considering those factors, the Court concludes class action is superior than any other method of adjudication. Specifically, class actions are appropriate in securities cases where a significant number of investors with relatively small losses would likely have decreased motivation to pursue their claims individually. *See Krangel v. Golden Rule Res., Ltd.*, 194 F.R.D. 501, 506 (E.D. Pa. 2000). Additionally, the Court is unaware of any related individual actions, and concentrating litigation here is desirable for efficient and consistent adjudication. Further, there is no indication there will be any difficulties managing this case. Accordingly, Plaintiffs' Motion to Certify Class is **GRANTED**.

### III. CONCLUSION

For the reasons set forth above: (1) Defendants' Motion to Exclude Lead Plaintiffs' Expert Report is **DENIED** and (2) Plaintiffs' Motion to Certify Class is **GRANTED**.

**Date: January 31, 2020**         */s/ Brian R. Martinotti*
                                    **HON. BRIAN R. MARTINOTTI**
                                    **UNITED STATES DISTRICT JUDGE**