## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE NOVO NORDISK SECURITIES LITIGATION<br><br>This Document Relates To:<br>    ALL ACTIONS | Master File No. 3:17-cv-00209-BRM-LHG<br><br><u>CLASS ACTION</u> |

## APPLICATION FOR THE ISSUANCE OF
## <u>INTERNATIONAL LETTER OF REQUEST (LETTER ROGATORY)</u>

Co-Lead Plaintiffs Central States, Southeast and Southwest Areas Pension Fund, Lehigh County Employees' Retirement System, Oklahoma Firefighters Pension and Retirement System, Boston Retirement System, and Employees' Pension Plan of the City of Clearwater ("Plaintiffs") respectfully petition this Court pursuant to the provisions of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555, 847 U.N.T.S. 231, 28 U.S.C. § 1781 (the "Hague Evidence Convention"), for the issuance of a Letter of Request in the form annexed hereto in English as Exhibit A and translated into Danish as Exhibit B, addressed to the Ministry of Justice, Procedural Law Division of Denmark (the "Ministry of Justice"), requesting that the Ministry of Justice cause the Letter of Request to be served upon the designated recipient, Jesper Høiland ("Høiland"), the former President of Novo Nordisk, Inc., Defendant Novo Nordisk A/S's ("Novo" or "the Company")) U.S.-based subsidiary, located in

Plainsboro Township, New Jersey ("NNI").  The Court's approval and issuance of a Letter of Request to the Ministry of Justice (the relevant authority in Denmark) is the requisite first step in requesting evidence from Høiland, a witness who possesses information highly relevant to this case.  Plaintiffs understand that in considering this Application, the Court is not passing judgment on the ultimate merits of any claim or defense.  In support thereof, Plaintiffs respectfully represent as follows:

## BACKGROUND

As the Court is aware, on August 4, 2017, Plaintiffs filed the Consolidated Amended Class Action Complaint in the above-captioned Action (the "Complaint").[1]  ECF No. 71.  Plaintiffs assert claims under Sections 10(b) and 20(a) of the Exchange Act, and allege that Defendants Novo and certain of its former and current officers (the "Individual Defendants") made materially false and misleading statements about Novo's sales of its core insulin drugs in the United States.

Plaintiffs allege that during the Class Period, Defendants falsely attributed Novo's successful financial results and projected growth in the United States insulin market to the purported qualities of the Company's insulin drugs, when in truth Novo's market access for its insulin drugs was dependent on paying ever-increasing "rebates" to pharmacy benefit managers ("PBMs"), the middlemen between the

---

[1] All references to "¶ __" are to the Complaint.

manufacturers and health insurers, who determined whether the insurers would provide reimbursement for purchasers of Novo's insulin drugs or Novo's competitors' drugs, and at what reimbursement levels. ¶¶ 4-12. Defendants falsely asserted that Novo's insulin drugs warranted "premium pricing" and market access even in a challenging market, thus insulating Novo and its financial results from the negative market climate that its competitors were experiencing and openly acknowledged. ¶¶ 14-16. Plaintiffs allege that, in truth, Novo's products were not sufficiently differentiated from other insulin drugs to command any premium pricing, and that the PBMs would not agree to Novo's demands for premium pricing for its insulin drugs. ¶ 17. As a result, the Company's ability to maintain its market share depended not on the quality of its products, but on the size of the rebates it would pay to the PBMs in exchange for placement of the PBMs' list of recommended drugs for providers. ¶ 18. However, the ever-growing rebates Novo had to pay to PBMs in exchange for market access significantly reduced its profits and meant that the Company could not maintain its positive financial results or meet its publicly forecasted growth targets. ¶¶ 19-21.

Following the Court's denial of the Defendants' motion to dismiss, the parties have been engaged in fact discovery, and have produced numerous documents and taken depositions of several relevant witnesses. These witnesses include several present and former employees of Denmark-based Novo—including present and

Filed Under Seal Per Local Rule 5.3

former employees of Novo's U.S.-based subsidiary, NNI. Defendants' counsel have thus far represented all former and present Novo employees in connection with their depositions, including with regard to scheduling and at the depositions themselves, and regardless of whether the witnesses are located in the United States, Denmark, or elsewhere. On March 3, 2020, after a handful of depositions had already occurred and with the COVID-19 pandemic looming, Plaintiffs provided Defendants' counsel with a list of witnesses Plaintiffs intended to depose, broken into tranches, the first of which "include[d] individuals [Plaintiffs] would like to take as soon as practicable"—including Høiland. Ex. 1 (3/3/20 Stein email).

Shortly thereafter, COVID-related lockdowns necessitated delaying then-scheduled depositions and caused the parties to temporarily hold off on scheduling additional depositions. The parties continued to discuss deposition scheduling, including emails from Plaintiffs on April 9 and 24 refining their witness list and indicating their intention "to move forward with depositions in the sequence discussed below, including virtual depositions where necessary," and a response from Defendants' counsel on May 4, 2020 that they promptly "intend[ed] to provide plaintiffs with dates for . . . Jesper Hoiland" and other witnesses. Ex. 1 (5/4/20 Blakemore email). The parties have since agreed to a new schedule that the Court entered on May 20, 2020 (ECF No. 190), taken several depositions remotely, and

Filed Under Seal Per Local Rule 5.3

scheduled additional depositions of witnesses located in the United States and Denmark.

Plaintiffs were accordingly surprised to learn from Defendants' counsel just recently, on June 18, 2020, more than one month after stating that they would provide a date for Høiland's deposition, that Høiland, NNI's former President of North American operations, had moved from the United States to Denmark and "does not intend to appear voluntarily for a deposition in this matter." Ex. 2 (6/18/20 Blakemore email). Even more surprising, on June 24, 2020, counsel for Defendants emailed informing Plaintiffs, for the first time, that they do not represent Høiland, and moreover have never represented him—but only "hoped/expected that Davis Polk would represent Mr. Hoiland," and that Høiland "has his own counsel." Ex. 2 (6/24/20 Blakemore email).[2] Upon receipt of this critical information and without delay, Plaintiffs contacted Høiland's counsel, who confirmed that Høiland does not

---

[2] In response, Plaintiffs requested further information from Defendants concerning Defendants' counsel's communications with Høiland. Defendants contend that those communications are shielded by a "common interest" privilege, but have provided only the unsupported assertion that they "entered into an oral common interest agreement on September 21, 2017." Ex. 2 (6/29/20 Blakemore email); Ex. 3 (7/14/20 Blakemore email). That showing is inadequate to invoke such protections. *See, e.g.*, *Net2Phone, Inc. v. Ebay, Inc.*, 2008 WL 8183817, at *8 (D.N.J. June 26, 2008) (no common-interest privilege where "there was no common legal interest" and party asserting privilege retained separate counsel from third party); *TC Tech. LLC v. Sprint Corp.*, 2018 WL 6584122, at *2 (D. Del. Dec. 13, 2018) (for common-interest privilege to apply, "[t]he interests must be identical, not similar, and be legal, not solely commercial" (quotation marks omitted)).

intend to voluntarily sit for a deposition.  Lead Plaintiffs now seek a Letter of

Request from the Court, under the Hague Evidence Convention, in order to obtain

Høiland's testimony through a deposition.[3]

## HØILAND'S TESTIMONY IS HIGHLY RELEVANT

There is no dispute that, as President of Novo's North American operations

during the Class Period and a key figure in the Complaint and document production,

Høiland possesses highly relevant information.  Ex. 2 (6/29/20 Blakemore email)

(Defendants "do not disagree that Mr. Hoiland possesses discoverable information

and . . . do not expect to oppose plaintiffs' efforts to seek his testimony through a

letter of request").

---

[3] As Plaintiffs have told Defendants, Plaintiffs reserve all rights to seek appropriate relief, "including "reimbursement for costs and fees that Plaintiffs must now expend in order to obtain Mr. Hoiland's testimony, and adverse inferences and factual findings as appropriate to the extent Mr. Hoiland's testimony cannot be obtained." Ex. 2 (6/26/20 Stein email).  *See, e.g.*, Fed. R. Civ. P. 30(d) (authorizing the Court to impose sanctions "including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates he fair examination of the deponent); *MOSAID Techs. Inc. v. Samsung Elec. Co., Ltd.*, 348 F. Supp. 2d 332, 338 (D.N.J. 2004) (allowing spoliation inference to "protect[] the integrity of [the Court's] proceedings and the administration of justice" where "a party has notice that evidence is relevant to an action, and either proceeds to destroy that evidence or allows it to be destroyed by failing to take reasonable precautions" imposing adverse inference for destruction of evidence); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 169 F.R.D. 598, 615 (D.N.J. 1997) (drawing adverse inference for "haphazard and uncoordinated" approach to discovery that 'denies . . . party opponents potential evidence to establish facts in dispute").

Filed Under Seal Per Local Rule 5.3

Plaintiffs allege that Defendants defrauded Novo's investors by making materially false and misleading statements concerning the Company's exposure to and ability to withstand pricing pressures in the U.S. insulin-drug market, which was key to maintaining the Company's earnings and growth.  ¶ 4.  Among other things, unbeknownst to investors, senior Novo executives in the United States, including Høiland, internally warned the Company's senior management in Denmark that Novo's financial performance and forecasts were unstainable given those pressures. ¶¶ 23, 111, 149.  Indeed, Novo shareholder and former employee Brian Lundstrom has filed a whistleblower complaint with the SEC stating that Høiland relayed multiple conversations with senior Novo executives before and during the Class Period, including during regular trips to meet with Novo's senior management in Denmark, concerning the unsustainability of Novo's financial forecasts.  ¶¶ 110, 147-49, 234.  Rather than make truthful public statements reflecting those market pressures, however, Novo's senior management threatened Høiland that it was his responsibility to ensure U.S. sales met the Company's forecasts and, if he failed, he would be fired.  ¶ 150.  Defendants followed through on that threat, and fired Høiland—to be replaced by Defendant Jakob Riis—on September 1, 2016. ¶ 252.

Internal Company documents and sworn testimony from other Novo executives confirm Høiland's central role in the facts underlying this action and that he is uniquely situated to testify about key aspects of Defendants' alleged fraudulent

misconduct.  Høiland, as Novo's senior U.S. executive, was well informed about the pressures Novo faced in the U.S. market and the downside those pressures represented to the Company's financial condition.[4]   Documentary evidence corroborates Høiland's role as the go-between communicating with global management in Denmark and U.S. executives.[5]  In that capacity, Høiland repeatedly

---

[4] *See, e.g.*, Exs. 4 (4/9/15 email to Høiland, discussing ███████████ ▪ ▪ ▪ █████ ██████████); 5 (1/19/16 email to Høiland discussing █████████ ████████████████████████████); 6 (3/12/16 email to Novo Pricing Committee, including Høiland, that "█████████████████████████████████████ █████████████████████████████████████████████████████████████████" (emphases in original)); 7 (7/26/16 email to Høiland ███████████████████████ ██████████████████████████████").

[5] *See, e.g.*, Exs. 8 (3/19/15 email from C. Lee to S. Phillips stating that █████████ ████████████████████████████████████████"); 9 (4/27/15 email from Høiland to Defendant Sørensen ██████████████"); 10 (5/29/15 email from Høiland to Sørensen and others stating that █████████████████████████████████████████████████████████████"); 11 (Sørensen forwarded to Høiland executives email; ██████████████████████████████████████████"); 12 (10/22/15 email from Høiland to Novo Executive Management ████████████████████); 13 (4/12/16 email from Høiland to Sørensen that ████████████████████████████████████ ; 14 (6/14/16 email from Sørensen discussing "████████████████████████████████████████████████████████").

Filed Under Seal Per Local Rule 5.3

warned senior Novo executives about the Company's inability to meet sales goals in the U.S. due to market pressures.[6]

Further, as Novo's Vice President of Diabetes Marketing during the Class Period, George McAvoy, testified, Høiland "██████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████" Ex. 18 (McAvoy Tr.) at 149:4-10, 153:9-14. McAvoy confirmed that Høiland "████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████." *Id*. at 147:18-24.

Given the central role that Høiland had in the events underlying this case, as well as the ample evidence corroborating Plaintiffs' allegations, Plaintiffs respectfully request that the Court issue Plaintiffs' Letter of Request to the Ministry of Justice so that Plaintiffs may obtain highly relevant evidence from Høiland.

---

[6] *See, e.g.*, Exs. 15 (6/11/14 email from Høiland ████████████████████████ ████████████████████"); 16 (6/11/14 email from Høiland ████████████████████████████"); 17 (8/26/15 emails from Høiland to Sørensen that "[██████████████████████████████████████████████████ ██████████ … !"").

## RELIEF REQUESTED

Plaintiffs respectfully request that this Court issue the Proposed Order, attached hereto as Exhibit C:

(a) Providing for this Court to sign the Letter of Request and affix the seal of the United States District Court for the District of New Jersey over said signature in the Letter of Request;

(b) Requiring that the Clerk of the Court return the original, signed Letter of Request to Plaintiffs, so that the Letter of Request may be delivered to Ministry of Justice in Denmark, which is the domicile of the designated recipient from whom evidence is sought; and

(c) Directing counsel for Plaintiffs to transmit the original, signed Letter of Request to Denmark's Ministry of Justice, so that Plaintiffs may obtain for use at trial potential evidence material to the claims and defense at issue in the above-captioned litigation.

Nothing in this application or in the Proposed Order will affect Plaintiffs' rights or defense as to the admissibility of the evidence sought, and Plaintiffs expressly reserve such rights and defenses.

Plaintiffs have considered the requirements of the Courts of Denmark with respect of letters of request, including the form in which the Letter of Request should

Filed Under Seal Per Local Rule 5.3

be presented to Denmark's Ministry of Justice and its permissible content.  Plaintiffs

believe that the attached Letter of Request is consistent with those requirements.

Dated: July 23, 2020

<div style="margin-left: 40%;">

**BERNSTEIN LITOWITZ BERGER &**
    **GROSSMANN LLP**
SALVATORE J. GRAZIANO
KATHERINE M. SINDERSON
ADAM D. HOLLANDER
JAMES M. FEE
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

**ROBBINS GELLER RUDMAN**
**& DOWD LLP**
SPENCER A. BURKHOLZ
LUKE O. BROOKS
RYAN A. LLORENS
ERIC I. NIEHAUS
ANGEL P. LAU
JEFFREY J. STEIN
ERIKA OLIVER
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Tel: (619) 231-1058
Fax: (619) 231-7423

**ROBBINS GELLER RUDMAN**
**& DOWD LLP**
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
58 South Service Road, Suite 200
Melville, NY 11747
Tel: (631) 367-7100
Fax: (631) 367-1173

</div>

Filed Under Seal Per Local Rule 5.3

*Co-Lead Counsel for the Class*

**SEEGER WEISS LLP**
CHRISTOPHER A. SEEGER
DAVID R. BUCHANAN
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Tel: (973)639-9100
Fax: (973) 639-9393

**SEEGER WEISS LLP**
JENNIFER R. SCULLION
77 Water Street, 26th Floor
New York, NY 10005
Tel: (212) 584-0700
Fax: (212) 584-0799

**CARELLA, BYRNE, CECCHI,
OLSTEIN,
BRODY & AGNELLO, P.C.**
JAMES E. CECCHI
5 Becker Farm Road
Roseland, NJ 07068
Tel: (973) 994-1700
Fax: (973) 994-1744

*Co-Liaison Counsel and Executive
Committee Members for the Class*

**SAXENA WHITE P.A.**
JOSEPH E. WHITE, III
BRANDON T. GRZANDZIEL
DIANNE M. PITRE
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel: (561) 394-3399
Fax: (561) 394-3382

Filed Under Seal Per Local Rule 5.3

**SAXENA WHITE P.A.**
STEVEN B. SINGER
10 Bank Street, 8th Floor
White Plains, NY 10606
Tel: (914) 437-8551
Fax: (888) 631-3611

*Executive Committee Member*

Filed Under Seal Per Local Rule 5.3