SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
DAVID R. BUCHANAN
JENNIFER R. SCULLION
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: 973/639-9100
973/639-9393 (fax)

CARELLA, BYRNE, CECCHI, OLSTEIN,
  BRODY & AGNELLO, P.C.
JAMES E. CECCHI
5 Becker Farm Road
Roseland, NJ 07068
Telephone: 973/994-1700
973/994-1744 (fax)

Co-Liaison Counsel and Executive Committee Members for the Class

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re NOVO NORDISK SECURITIES LITIGATION | Master File No. 3:17-cv-00209-BRM-LHG |
| This Document Relates To: | CLASS ACTION |
| ALL ACTIONS. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL NON-PARTY PRICEWATERHOUSECOOPERS LLP TO PRODUCE DOCUMENTS RESPONSIVE TO PLAINTIFFS' SUBPOENA**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................1

II. BACKGROUND ..................................................................................3

    A. The Underlying Litigation..................................................................3

    B. The Subpoena Served on PwC ............................................................4

III. ARGUMENT ........................................................................................6

    A. PwC Has a Duty to Search for and Produce the Requested
       Documents.............................................................................................6

          1. PwC Should Produce Relevant and Responsive
              Communications, Including Those Involving PwC-
              Denmark....................................................................................8

          2. PwC Should Produce the PwC-Denmark Workpapers.............11

          3. PwC Must Produce All Workpapers for Sales, Rebates,
              and Reserves ...........................................................................15

    B. PwC Has Not and Cannot Meet Its Burden of Demonstrating
       that the Requests Are Overbroad, Burdensome, or Oppressive..........19

IV. CONCLUSION...................................................................................21

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alcan Int'l Ltd. v. S.A. Day Mfg. Co., Inc.*,
  176 F.R.D. 75 (W.D.N.Y. 1996) ........................................................................13

*APG-Int'l, Inc. v. MERO-TSK, Inc. GmbH & Co. KG*,
  No. 08-6028-JEI-KMW, 2012 WL 13018967
  (D.N.J. Jan. 12, 2012) ........................................................................12

*Bell v. Lockheed Martin Corp.*,
  270 F.R.D. 186 (D.N.J. 2010),
  *aff'd*, No. 08-6292, 2010 WL 3724271
  (D.N.J. Sept. 15, 2010) ........................................................................7

*Bridgeport Music Inc. v. UMG Recordings, Inc.*,
  No. 05 Civ. 6430(VM)(JCF), 2007 WL 4410405
  (S.D.N.Y. Dec. 17, 2007) ........................................................................8

*Ceuric v. Tier One, LLC*,
  325 F.R.D. 558 (W.D. Pa. 2018) ........................................................................11

*Cipollone v. Liggett Grp., Inc.*,
  785 F.2d 1108 (3d Cir. 1986) ........................................................................20

*Dixon v. Williams*,
  No. 13-CV-02762, 2016 WL 631356
  (M.D. Pa. Feb. 17, 2016) ........................................................................12, 14

*E.E.O.C. v. Beauty Enter., Inc.*,
  No. 01CV378 (AHN), 2008 WL 3359252
  (D. Conn. Aug. 8, 2008) ........................................................................18

*Food Lion, Inc. v. United Food & Com.*
  *Workers Int'l Union, AFL-CIO-CLC*,
  103 F.3d 1007 (D.C. Cir. 1997) ........................................................................8

*Goodman v. Wagner*,
  553 F. Supp. 255 (E.D. Pa. 1982) ........................................................................19

4852-8828-2827.v2

Public Version Filed Pursuant to Sealing Order, Dkt. No. 229

**Page**

*Harding v. Dana Transport, Inc.*,
   914 F. Supp. 1084 (D.N.J. 1996)......................................................................17

*Hay v. Somerset Area Sch. Dist.*,
   No. 16-cv-229, 2017 WL 2829700
   (W.D. Pa. June 29, 2017)............................................................................17

*Hickman v. Taylor*,
   329 U.S. 495 (1947)....................................................................................7

*Hite v. Peters*,
   No. 07-4492-RMB-AMD, 2009 WL 1748860
   (D.N.J. June 19, 2009) ................................................................................7

*HMV Indy, LLC v. Inovateus Solar, LLC*,
   No. 20-mc-52-JDW, 2020 WL 3498259
   (E.D. Pa. June 29, 2020) ............................................................................18

*In re Currency Conversion Fee AntiTrust Litig.*,
   No. 1409, 2004 WL 848171
   (S.D.N.Y. Apr. 21, 2004).............................................................................19

*Josephs v. Harris Corp.*,
   677 F.2d 985 (3d Cir. 1982) .......................................................................19

*Keefer v. Erie Ins. Exch.*,
   No. 13-CV-1938, 2014 WL 901123
   (M.D. Pa. Mar. 7, 2014)..............................................................................19

*Kenyon v. Simon & Schuster, Inc.*,
   No. 16 Misc. 327 (P1), 2016 WL 5930265
   (S.D.N.Y. Oct. 11, 2016) ............................................................................20

*NE Techs., Inc. v. Evolving Sys., Inc.*,
   No. 06-6061 (MLC), 2008 WL 4277668
   (D.N.J. Sept. 12, 2008) ..............................................................................17

*Neuberger and Scott v. Shapiro*,
   196 F.R.D. 286 (E.D. Pa. 2000)...................................................................7

- iii -

Public Version Filed Pursuant to Sealing Order, Dkt. No. 229

**Page**

*Nippon Steel & Sumitomo Metal Corp. v. POSCO*,
    No. 12-2429 (SLC)(CLW), 2014 WL 3447111
    (D.N.J. July 10, 2014) ........................................................................13

*Plastic the Movie Ltd. v.*
    *John Doe Subscriber Assigned IP Address, 24.0.105.163*,
    No. 15-2446 (JHR/JS), 2015 WL 4715528
    (D.N.J. Aug. 7, 2015) .........................................................................19

*Steel Software Sys., Corp. v. DataQuick Info. Sys., Inc.*,
    237 F.R.D. 561 (D. Md. 2006) ..........................................................12

*Trask v. Olin Corp.*,
    298 F.R.D. 244 (W.D. Pa. 2014) ........................................................6

*United States ex. rel. Parikh v. Premera Blue Cross*,
    No. 06MC097, 2007 WL 852080
    (S.D. Oh. Mar. 16, 2007) ...................................................................20

*Westchester Fire Ins. Co. v. Household Int'l Inc.*,
    167 F. App'x 895 (3d Cir. 2006) .........................................................7

*Younes v. 7-Eleven, Inc.*,
    312 F.R.D. 692 (D.N.J. 2015).............................................................17

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78j(b)..............................................................................................3, 4
    §78t(a)..............................................................................................3, 4

**Page**

Federal Rules of Civil Procedure
    Rule 26(b) ...................................................................................................6
    Rule 26(b)(2)(B) ........................................................................................19
    Rule 26(c) ..................................................................................................20
    Rule 34 ..........................................................................................8, 12, 13
    Rule 34(a) ...................................................................................................6
    Rule 37(a)(4) ...............................................................................................7
    Rule 45 ..........................................................................................8, 12, 13

## LEGISLATIVE HISTORY

Sarbanes-Oxley Act of 2002,
    Pub. L. 107-204 (July 30, 2002) .......................................................13, 14
    §102 ..........................................................................................................13
    §105 ..........................................................................................................13
    §106 ..........................................................................................................14

## SECONDARY AUTHORITY

PCAOB AU, *Working Papers*
    §339A.03 ...................................................................................................12

4852-8828-2827.v2

Public Version Filed Pursuant to Sealing Order, Dkt. No. 229

# I.   INTRODUCTION

On April 23, 2020, Plaintiffs properly served a subpoena *duces tecum* (the "Subpoena") on nonparty PricewaterhouseCoopers LLP seeking, among other things[1]:

- documents sufficient to identify all services performed by PwC for Novo Nordisk A/S ("Novo") during the Relevant Period[2];

- all documents including workpapers, concerning revenue, rebates, rebate reserves, pricing and assumptions, price protection, gross-to-net calculations, contracting with pharmacy benefit managers ("PBMs"), forecasting, and personnel reductions at Novo during the Relevant Period; and

- communications with other audit or accounting firms performing audit services or other business-advisory services for Novo related to workforce reductions, contracting with PBMs, and business forecasting.

Ex. A at 12-14 (Request Nos. 1, 3, 8). Given those requests and the fact that PwC employees located in both Denmark and the United States performed relevant work for Novo during the Relevant Period, the Subpoena calls for the production of documents in the possession of PwC and its subsidiaries in both Denmark ("PwC-Denmark") and the United States ("PwC-US").[3]  In the almost five months since Plaintiffs served the Subpoena, PwC has outright refused to produce any documents

---

[1]   Terms not defined herein have the same meaning as set forth in the Consolidated Amended Class Action Complaint (ECF No. 71) (the "Complaint"). Additionally, all "¶_" and "¶¶_" references are to the Complaint.

[2]   The Subpoena seeks documents for a time period from January 1, 2015 through May 3, 2017 (the "Relevant Period"). Ex. A at 12. All "Ex. _" references herein are to the Declaration of Jeffery J. Stein in Support of Plaintiffs' Motion to Compel Non-Party PricewaterhouseCoopers LLP to Produce Documents Responsive to Plaintiffs' Subpoena ("Stein Decl."), filed concurrently herewith.

[3]   PwC-Denmark audited the parent corporation, Novo Nordisk A/S.  PwC-US audited Novo Nordisk Inc. ("NNI"), Novo's U.S. subsidiary.

and workpapers from PwC-Denmark based on its purported inability to do so. Additionally, PwC has refused to produce any internal communications between it and PwC-Denmark.  Moreover, PwC-US's production of 489 documents representing 1,313 pages is woefully deficient because it has not produced all the responsive workpapers related to sales, rebates, and rebate reserves, among other relevant documents as called for in the Subpoena.

Plaintiffs have met and conferred with PwC, requesting PwC's production of additional responsive documents in its possession and control, in an attempt to resolve this dispute without judicial intervention.  But PwC has maintained its objections, offered no counterproposal to limit or narrow the scope of the documents to be produced in response to the Subpoena, and was unresponsive to Plaintiffs' efforts to engage in productive discussions concerning the requests to PwC, routinely taking weeks to respond to Plaintiffs' requests for dates and times to meet and confer.

Plaintiffs accordingly move this Court for an order compelling PwC to produce: (1) PwC-Denmark's responsive workpapers[4]; (2) all responsive communications concerning Novo by PwC-US and PwC-Denmark; and (3) a complete set of responsive workpapers for sales, rebates, and reserves and the 2016 Management Letter.[5]

---

[4]   Respectively, Request Nos. 1-3 and 5-8.  *See generally* Ex. A.

[5]   "Management Letter" means a letter prepared by an auditor that discusses, among other management issues, findings and recommendations for improvements in internal

- 2 -

## II.   BACKGROUND

### A.   The Underlying Litigation

This case alleges violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 against Novo and three of its executive officers.  *See generally* Complaint. Novo is a global healthcare pharmaceutical company focused on diabetes care and is one of the largest producers of insulin medications.  ¶¶3, 34, 40-42.

Plaintiffs allege that investors who purchased Novo ADRs during the Class Period suffered losses due to Defendants' materially false and misleading representations and omissions concerning Novo's revenues, growth, and insulin drugs. For example, Plaintiffs have alleged false representations, which the Court sustained, that include Defendants' May 5, 2015 statement that "[t]he sales outlook has been updated and we've narrowed the range, so now we expect the sales growth of 7% to 9%"; February 10, 2016 statement that "we have set the long-term target for operating profit growth at 10%, underlining our confidence in the growth outlook for the company"; and May 3, 2016 statement that "[t]he financial outlook for 2016 in local currencies is maintained both for sales and operating profit at a growth level of 5% to 9%."  ¶¶177, 203, 216.

As Novo's auditors during the Relevant Period, PwC-Us and PwC-Denmark reviewed and audited Novo's quarterly and yearly financial reports.  Accordingly,

---

control, that were identified during the audit, but not included in the auditor's report. *Law Insider*, Chapter 5, ¶5.28.

4852-8828-2827.v2

PwC lies at the center of this action and the documents and communications related to PwC's audit of Novo, which are in PwC's exclusive possession, are highly relevant. Such issues include whether Novo's revenue and earnings metrics were inflated based on false forecasts and guidance that were materially overstated and lacked a sufficient basis, and whether Novo failed to make required disclosures regarding the rebates Novo paid to PBMs, which substantially impacted Novo's reported U.S. revenues and operating profit. *See* ¶¶228-235.

### B.    The Subpoena Served on PwC

On April 23, 2020, Plaintiffs served PwC with a subpoena to produce documents. Ex. A. The Subpoena included eight document requests concerning a time period from January 1, 2015 to May 3, 2017 (the "Requests"). *See generally id.*

On May 7, 2020, PwC replied to the Subpoena by objecting broadly to all of Plaintiffs' requests, but offered to meet and confer to discuss the requests and PwC's objections. Ex. B. Plaintiffs and PwC then met and conferred on May 19, 2020 in an effort to resolve the dispute without seeking assistance from the Court. At that time, Plaintiffs offered to discuss each request individually and to explain the relevance of the documents they requested. Stein Decl., ¶4. However, PwC declined. *Id.* Plaintiffs then continued to provide a high-level summary of the case and gave examples of the types of documents Plaintiffs believe exist and would be relevant and responsive to the Subpoena. *Id.* At the end of the call, Plaintiffs emphasized their

- 4 -

willingness to continue to discuss narrowing the scope of the requests to reduce PwC's purported burden to resolve the Subpoena. *Id.*

When PwC ultimately produced documents on June 22, 2020, PwC did not produce, among other things: (1) any documents from PwC-Denmark (as requested in definition 16 of the Subpoena); (2) relevant communications concerning: (i) personnel reductions, contracting with PBMs, of business forecasting; (ii) regulatory agencies, such as the SEC; and (iii) interactions with other audit or accounting firms (as requested in Request Nos. 3, 6 and 8); (3) drafts of Novo's Forms 6-K and 20-F (as requested in Request No. 1)[6]; or (4) a complete set of workpapers and documents related to revenue, rebates, and reserves and accruals (as requested in Request No. 3).[7] On July 24, 2020, Plaintiffs sent PwC a list of the deficiencies it had identified in PwC's June 22 production and requested another meet-and-confer. Ex. C. After PwC failed to respond, Plaintiffs again requested to meet-and-confer on both July 30, 2020 and then again on August 5, 2020. *Id.*

---

[6]   PwC contends that it does not have any documents pertaining to Novo's draft Forms 20-F or 6-K or presentations to Novo's board of directors. ███████████████████████████████████████████████████ *See* Ex. D.

[7]   Some examples of documents that exist, but were not produced include: (1) the Company's 2016 Management Letter; (2) materials from meetings between the Company and PwC (Ex. E); (3) PwC's joint affiliate visit programme (Ex. F); (4) first quarter workpapers; (5) presentations and communications with the audit committee and board of directors; (6) documentation and workpapers responding to control deficiencies (Ex. G); and (7) consulting documents and workpapers (Ex. H).

PwC finally responded on August 5, 2020, contending that: (1) its June 22, 2020 production was not deficient; (2) PwC-US would not produce workpapers or other documents from PwC-Denmark; and (3) PwC maintained its wholesale objection to producing emails.  Ex. I.  PwC did not provide dates or times to continue to meet and confer. *Id.*

On August 13, 2020, PwC provided a small supplemental production of 64 pages.  Ex. J.  That second production, like the first, failed to produce numerous responsive documents or otherwise adequately respond to the Subpoena.  Plaintiffs accordingly contacted PwC on August 26, 2020 regarding PwC's continued deficiencies.  Ex. K.  Two weeks later, PwC responded that the requested documents were provided in PwC's second production and that it did not have audit workpapers concerning Novo's Forms 20-F or 6-K.  *Id.*

Given  PwC's refusal to adequately respond to Plaintiffs' Subpoena or to meet and confer in any further attempt to resolve the Subpoena, Plaintiffs now move to compel PwC's production of documents in response to the Subpoena.

## III.   ARGUMENT

### A.   PwC Has a Duty to Search for and Produce the Requested Documents

Rule 34(a) provides that "a party may serve a request for the production of documents that contain relevant information, within Rule 26(b), and that are 'in the responding party's possession, custody, or control.'"  *Trask v. Olin Corp.*, 298 F.R.D.

- 6 -

Public Version Filed Pursuant to Sealing Order, Dkt. No. 229

244, 259 (W.D. Pa. 2014).[8]   "The party resisting discovery has the burden of clarifying, explaining, and supporting its objections." *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 191 (D.N.J. 2010), *aff'd*, No. 08-6292 (RBK/AMD), 2010 WL 3724271 (D.N.J. Sept. 15, 2010).   "An evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).   "'Once the party resisting discovery meets this requirement, however, the burden is placed on the proponent of the discovery request to show that the information . . . is relevant.'"   *Bell*, 270 F.R.D. at 191.

Courts generally afford considerable latitude in discovery in order to ensure that litigation proceeds with "the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947); *see also Westchester Fire Ins. Co. v. Household Int'l Inc.*, 167 F. App'x 895, 899 (3d Cir. 2006) (noting that the Third Circuit "employs a liberal discovery standard").   Further, "relevancy is more liberally and broadly construed at the discovery stage than at trial." *Hite v. Peters*, No. 07-4492-RMB-AMD, 2009 WL 1748860, at *3 (D.N.J. June 19, 2009); *Neuberger and Scott v. Shapiro*, 196 F.R.D. 286, 287 (E.D. Pa. 2000) ("[a]dmissibility as competent evidence is not the hallmark of discoverability; the discovery standard is less stringent – it requires only a reasonable likelihood that the discovered information will bring about the production of relevant evidence").   PwC's status as a non-party to

---

[8]   All emphasis is added and citations omitted unless otherwise noted.

4852-8828-2827.v2

this litigation does not change the standard for discoverable information. *See* Fed. R. Civ. P. 45 advisory committee's notes to 1991 amendment (noting that a non-party witness subpoenaed pursuant to Rule 45 "is subject to the same scope of discovery . . . as a party to whom a request is addressed pursuant to Rule 34"); *see also Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1012 (D.C. Cir. 1997) ("'Rule 26(b) of the Federal Rules of Civil Procedure . . . makes no distinction in this regard between information in the hands of parties and that held by nonparties.'"); *Bridgeport Music Inc. v. UMG Recordings, Inc.*, No. 05 Civ. 6430(VM)(JCF), 2007 WL 4410405, at *3 (S.D.N.Y. Dec. 17, 2007) ("'the obligations of a nonparty under Rule 45 of the Federal Rules of Civil Procedure are equivalent to the duties of parties responding to discovery under other rules'").

### 1.   PwC Should Produce Relevant and Responsive Communications, Including Those Involving PwC-Denmark

PwC's internal communications and communications with other auditors and accountants concerning Novo will contain critical information concerning Novo's forecasted growth, which is highly probative of Plaintiffs' securities fraud claims. As Novo's component and lead auditor during the Relevant Period, PwC-US and PwC-Denmark's communications will contain information concerning the basis for the financial guidance Novo provided to the market, which is directly relevant to Plaintiffs' claims that Novo's guidance was materially overstated, lacked a sufficient

basis, and omitted material information necessary to make Novo's public disclosures not misleading.  Further, Plaintiffs' request for communications to and from PwC-Denmark concerning PwC's work for Novo regarding: (1) forecasts; (2) pricing pressures; (3) net sales; (4) rebates and discounts; and (5) rebate reserves and accruals are relevant to underlying factual questions concerning the information Novo provided to PwC, whether that information was audited, and whether and when the information that Plaintiffs allege was false and/or omitted was known to Novo or should have been known to Novo.  Additionally, the requested communications will identify the relevant persons acting on behalf of PwC during the Relevant Period.

One example of the relevancy of PwC internal communications is



*Id.*  Communications, including those with PwC-Denmark and outside auditors and accountants, are highly

4852-8828-2827.v2

probative of Plaintiffs' theories of fraud and liability, including concerning representations regarding the Company's revenue and growth.[9]

Moreover, PwC's communications concerning Novo are directly relevant to the defenses Defendants have asserted.  In their Answer, Defendants raised the defenses that: (1) Defendants did not make any statements that were false or misleading when made, or omit to state any material facts necessary to make any statements made by defendants false or misleading; (2) Defendants had no duty to disclose, or cause the disclosure of, any allegedly omitted material information; (3) the allegedly false or misleading statements or omissions were not material; and (4) Plaintiffs' claims are barred by the absence of fraudulent intent or scienter on the part of the Defendants. *See* Answer of Defendants Novo Nordisk A/S, Lars Rebien Sørensen, Jesper Brandgaard and Jakob Riis (ECF No. 112) (the "Answer") at 1, 5, 8, 9.  PwC's internal communications, including with PwC-Denmark, concerning Class Period revenue and profit forecasts, pricing pressures, rebates, and reserves are relevant to the underlying factual questions of what information regarding the alleged misstatements and omissions was known to and provided to Defendants.

PwC primarily objects that Plaintiffs' request for internal communications is "overly broad, unduly burdensome, and because it seeks documents that are not

---

[9]    Sales rebates, reserves, and price protection are a material component of Novo's revenue calculation.  Ex. M at 63-64.

- 10 -

relevant to any party's claim or defense." Ex. B.  But "'[s]imply objecting'" to a request as overly broad without showing specifically "'"how each question is overly broad . . ."' is inadequate to "voice a successful objection.'"'" *Ceuric v. Tier One, LLC*, 325 F.R.D. 558, 561 (W.D. Pa. 2018).  Further, it is plain that the Requests are not "overly broad" as they are limited to only relevant information.  Request No. 1 is bounded by the listed sub-topics and Request Nos. 6 and 8 are limited in nature seeking only communications with or concerning regulatory agencies regarding Novo or PwC's services for Novo and communications with other accounting firms that provided services to Novo related to workforce reductions.  Ex. A at 12-15. Moreover, as discussed above, the requested communications are highly relevant to key issues in this case.  Accordingly, as the relevance of these communications cannot be denied and PwC has not disclosed any basis for its conclusory assertion that the requests are irrelevant, overly broad, or vague in nature, PwC should be compelled to produce responsive communications involving both PwC-US and PwC-Denmark.

## 2. PwC Should Produce the PwC-Denmark Workpapers

During the meet-and-confers, PwC did not dispute the relevance of the PwC-Denmark workpapers.[10]  Instead, PwC has objected on the ground that PwC-US "the

---

[10] "Workpapers" or "working papers" means all documents concerning the procedures applied, work performed, evidence obtained and conclusions reached in the engagement by any auditor, practitioner, consultant or any other person working on PwC's behalf.  Workpapers for any audit or attestation include, but are not limited to: "records kept by the auditor [or practitioner] of the procedures applied, the tests performed, the information obtained, and the pertinent conclusions reached in the

4852-8828-2827.v2

United States member firm of the PricewaterhouseCoopers global network" on which the Subpoena was served, "cannot produce work papers or other documents of PwC-Denmark." Ex. I at 1. In other words, the substantive basis of PwC's objection is that it lacks possession, custody, and control of the PwC-Denmark workpapers. That objection is without merit.

Plaintiffs "should not be forced to accept [PwC's] naked averments regarding its lack of possession, custody, or control of responsive documents," *APG-Int'l, Inc. v. MERO-TSK, Inc. GmbH & Co. KG*, No. 08-6028-JEI-KMW, 2012 WL 13018967, at *4 (D.N.J. Jan. 12, 2012). Under Rules 34 and 45, documents are considered to be under a party's control when that party has the "'legal right, authority, or ability to obtain upon demand documents in the possession of another.'" *Dixon v. Williams*, No. 13-CV-02762, 2016 WL 631356, at *3 (M.D. Pa. Feb. 17, 2016). Indeed, courts regularly order corporate entities to produce documents in the possession of affiliates such as parent, sibling, or subsidiary corporations. *See, e.g.*, *Steel Software Sys., Corp. v. DataQuick Info. Sys., Inc.*, 237 F.R.D. 561, 564 (D. Md. 2006).

Here, as PwC-US and PwC-Denmark are member firms underneath the world-wide umbrella of PricewaterhouseCoopers International and ***both firms audited Novo***

---

engagement. Examples of working papers are audit programs, analyses, memoranda, letters of confirmation and representation, abstracts of company documents, and schedules or commentaries prepared or obtained by the auditor. Working papers also may be in the form of data stored on tapes, films, or other media." PCAOB AU §339A.03, *Working Papers*.

4852-8828-2827.v2

*at the same time*, "it is 'inconceivable' that [PwC-US] would not have access to th[e] information and the ability to obtain it." *Alcan Int'l Ltd. v. S.A. Day Mfg. Co., Inc.*, 176 F.R.D. 75, 78-79 (W.D.N.Y. 1996) ("custody and control" focuses on "the nature of the relationship between the two corporations"; compelling production of documents because both "SPC and Solvay Fluor are corporate members of a unified worldwide business entity known as the 'Solvay Group'"). PwC's formal structure as a global network of member firms does not alter the primary question under Rules 34 and 45: whether PwC has the "legal right" or "ability" to obtain upon demand, documents in possession of PwC-Denmark. *Nippon Steel & Sumitomo Metal Corp. v. POSCO*, No. 12-2429 (SLC)(CLW), 2014 WL 3447111, at *7 (D.N.J. July 10, 2014). Here, where PwC-US worked alongside PwC-Denmark performing PwC's work for Novo, PwC-US has the ability to obtain workpapers from PwC-Denmark.

Indeed, as an international accounting firm, PwC must have custody and control over foreign workpapers as it would be required to produce if subpoenaed by the SEC or the Public Company Accounting Oversight Board ("PCAOB"). Three provisions in the Sarbanes-Oxley Act directly address the discovery of foreign audit workpapers: (1) §102 requires foreign accounting firms that "prepare or issue, or . . . participate in the preparation or issuance of, any audit report with respect to any issuer" to register with the PCAOB; (2) §105 grants the PCAOB authority to obtain "audit work papers" from a "registered public accounting firm . . . *wherever domiciled*" and allows it to

make the audit workpapers so obtained "available to the Commission"; and (3) §106

provides that any "foreign public accounting firm" that "issues an opinion or

otherwise performs material services upon which a registered public accounting firm

relies" is deemed to have consented to: (i) "produce its audit workpapers for the Board

or the Commission" upon request; and (ii) "be subject to the jurisdiction" of a U.S.

court for purposes of enforcing such request.  Sarbanes-Oxley Act of 2002, Pub. L.

107-204 (July 30, 2002).  PwC-Denmark's workpapers cannot reasonably be said to

be out of PwC-US's control where, if subpoenaed by the SEC or PCAOB, PwC-US

would be required to produce those documents.[11]

For those reasons, the Court should compel PwC-US to produce the PwC-

Denmark workpapers.  *See Dixon*, 2016 WL 631356, at *3 (granting motion to compel

as "it appears that Plaintiff does have the authority and ability to obtain upon demand"

the requested documents).

---

[11] Further, the PCAOB has a Cooperative Agreement with the Denmark Business Authority that allows it to obtain an auditor's workpapers for inspection. *See* Statement of Protocol Between the Public Company Accounting Oversight Board of the United States of America and the Danish Business Authority of Denmark on Cooperation and the Exchange of Information Related to the Oversight of Auditors ("A party may ask for and obtain copies of Information held by an Auditor in the other Party's jurisdiction, which will be provided to it in accordance with this Statement."). "Information" is defined as "(1) reports on the outcome of Inspections, including the results of firm-wide quality control reviews and engagement reviews, provided that the reports relate to firms that are subject to the regulatory jurisdictions of both the PCAOB and the AOB, and (2) audit working papers or other documents held by firms, provided that the documents relate to matters that are subject to the regulatory jurisdictions of both the PCAOB and AOB." *See Id.*, Article II.

4852-8828-2827.v2

### 3.   PwC Must Produce All Workpapers for Sales, Rebates, and Reserves

Request Nos. 1 and 3 seek a complete set of PwC's documents and workpapers regarding Novo's sales, rebates, and reserves during the Relevant Period and its 2016 Management Letter.  Ex. A at 12-14.  Those requests seek relevant information concerning some of Plaintiffs' core allegations, including inflated forecasts, misstated financials, and false and misleading disclosures regarding diminishing sales due to ever increasing rebates and pricing pressures from PBMs.  *See* ¶¶4-6, 14-15, 48, 61-62, 91-118.  Despite the relevance of PwC's workpapers on those topics, however, PwC has failed to produce a complete set of workpapers regarding its auditing of the Company's sales, rebates, and reserves.

PwC's documents that delineate the work performed, evidence obtained, and conclusions reached by PwC during the Relevant Period go to the core of Plaintiffs' allegations that Novo's sales and profit forecasts were materially overstated.  More specifically, Novo's public sales forecasts and disclosures during the Class Period were materially misleading because they failed to disclose known trends and risks associated with rebates and other pricing pressures.  PwC does not dispute that they reviewed and audited the Company's rebates, yet they did not produce ***all*** of their documents and workpapers on this topic.  For example, █████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████

4852-8828-2827.v2



Ex. N.  This email communication demonstrates that █████████████████

████████████████████████████████████████████████ – yet

no such presentations, supporting documents or workpapers has been produced.

In another example, ████████████████████████████████████

████████████

Ex. O at 279.  Again, however, PwC has not produced any documents or workpapers

regarding ███████████████████████████████████████████

██████████████████

PwC has offered no colorable argument concerning its failure to provide all

workpapers called for by the Subpoena, and no basis for its unilateral determination to

produce some documents and workpapers on these topics, but not others.  And, PwC's

generic objections asserting that the request is irrelevant, overly broad, unduly

burdensome, and because the request is "vague and ambiguous" are insufficient to

support refusal of these highly probative documents.  Ex. B.  *See, e.g.*, *NE Techs., Inc. v. Evolving Sys., Inc.*, No. 06-6061 (MLC), 2008 WL 4277668, at *5 (D.N.J. Sept. 12, 2008) ("[w]hen objecting to a discovery request, an objecting party must state with specificity the grounds for the objection, and not the 'familiar litany that an interrogatory or document production request is "overly broad, burdensome, oppressive and irrelevant"'"); *Harding v. Dana Transport, Inc.*, 914 F. Supp. 1084, 1102 (D.N.J. 1996) ("[b]road-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request"); *Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 704 (D.N.J. 2015) (holding that it is "well-settled" that "boilerplate objections" "results in the waiver of the objection").

In addition, there is nothing "overly broad" about the Request, which seeks a discreet set of documents completely within the possession, custody, and control of PwC and there is nothing vague and ambiguous about the term "workpapers," particularly when the Subpoena specifically defines the term and provides examples of the types of documents sought.

PwC should be compelled to produce a complete set of workpapers concerning Novo's sales, rebates, and reserves, as such documents are directly relevant to issues relating to falsity and materiality, and additionally form the basis of Novo's financial forecasts during the Relevant Period. *See Hay v. Somerset Area Sch. Dist.*, No. 16-cv-

- 17 -

Public Version Filed Pursuant to Sealing Order, Dkt. No. 229

229, 2017 WL 2829700, at *3 (W.D. Pa. June 29, 2017) (granting a motion to compel "in light of the obvious relevance of the requested evidence" and because the nonmoving party did not explain why the request would be "especially burdensome").

PwC has also not produced its 2016 Management Letter. Previously produced management letters contain ███████████████████████████████

████████████████████████████████████████████████████ [12]

In response, PwC has again set forth a baseless blanket objection to produce this management letter, contending it is not relevant and that the request is overbroad and vague. *See HMV Indy, LLC v. Inovateus Solar, LLC*, No. 20-mc-52-JDW, 2020 WL 3498259, at *2 (E.D. Pa. June 29, 2020) (holding that the objecting party has a "'heavy' burden" of demonstrating that the subpoena is "'unreasonable'" and "boilerplate objections come nowhere close to satisfying this burden").

PwC's production of other management letters effectively conceded that the 2016 Management Letter is relevant, and Plaintiffs' request is not vague or overbroad. And Plaintiffs' request for a single document within the exclusive custody and control of PwC poses no undue burden. PwC should be compelled to complete its production and produce the 2016 Management Letter. *See E.E.O.C. v. Beauty Enter., Inc.*, No. 01CV378 (AHN), 2008 WL 3359252, at *4 (D. Conn. Aug. 8, 2008) ("Because . . .

---

[12] PwC produced its 2015 Management Letter. Ex. P.

BEI already has produced some documents responsive to this request, BEI shall produce the remaining documents plaintiff-intervenors seek in their request.").

### B. PwC Has Not and Cannot Meet Its Burden of Demonstrating that the Requests Are Overbroad, Burdensome, or Oppressive

"On a motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). In order to establish an undue burden, a subpoenaed nonparty must show a "clearly defined and serious injury." *Plastic the Movie Ltd. v. John Doe Subscriber Assigned IP Address, 24.0.105.163*, No. 15-2446 (JHR/JS), 2015 WL 4715528, at *2 (D.N.J. Aug. 7, 2015); *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982) (holding that the objecting party must demonstrate in specific terms why a particular discovery request does not fall within the broad scope of discovery).

PwC, one of the largest accounting firms in the world, has made absolutely no showing that the production of the requested documents and communications would pose an undue burden or cause the global firm a clearly defined and serious injury. *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982); *Keefer v. Erie Ins. Exch.*, No. 13-CV-1938, 2014 WL 901123, at *2 (M.D. Pa. Mar. 7, 2014). Nor could it. The production of the requested documents and internal communications would not pose an undue burden on PwC. *See In re Currency Conversion Fee AntiTrust Litig.*, No.

1409, 2004 WL 848171, at *1 (S.D.N.Y. Apr. 21, 2004) ("[A] sophisticated company with vast experience in litigation of all types . . . can certainly undertake [a] production with a minimum of disruption to its normal practices.").

Here, what PwC describes as an undue burden is "merely the typical process for a corporation responding to document requests," which is not a legitimate basis to withhold discoverable documents. *See Kenyon v. Simon & Schuster, Inc.*, No. 16 Misc. 327 (P1), 2016 WL 5930265, at *5 (S.D.N.Y. Oct. 11, 2016). Moreover, PwC's generic and unsubstantiated claims of burden do not support PwC's blanket refusal to produce documents. *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.").

PwC's claim of undue burden regarding its search for communications is belied by the fact that PwC has made no showing of the actual volume of e-mails at issue. *See United States ex. rel. Parikh v. Premera Blue Cross*, No. 06MC097, 2007 WL 852080, at *2 (S.D. Oh. Mar. 16, 2007) (granting motion to compel PwC to produce e-mails as it did not provide the court "with any standard by which to measure or assess the burden"). Indeed, PwC has failed to identify any specific burdens or make any concrete proposal to minimize any such purported burden, such as identifying core custodians and running a list of limited, concise search terms.

4852-8828-2827.v2

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel should be granted and

the Court should enter an order compelling PwC to produce: (1) PwC-Denmark's

workpapers; (2) all relevant and responsive communications involving PwC-US or

PwC-Denmark; and (3) a complete set of workpapers for sales, rebates, and reserves

and the 2016 Management Letter.

DATED:  September 25, 2020          Respectfully submitted,

                                   SEEGER WEISS LLP
                                   CHRISTOPHER A. SEEGER
                                   DAVID R. BUCHANAN
                                   JENNIFER R. SCULLION


                                   _____s/ CHRISTOPHER A. SEEGER_____
                                       CHRISTOPHER A. SEEGER

                                   55 Challenger Road, 6th Floor
                                   Ridgefield Park, NJ  07660
                                   Telephone:  973/639-9100
                                   973/639-9393 (fax)

                                   CARELLA, BYRNE, CECCHI, OLSTEIN,
                                     BRODY & AGNELLO, P.C.
                                   JAMES E. CECCHI
                                   5 Becker Farm Road
                                   Roseland, NJ  07068
                                   Telephone:  973/994-1700
                                   973/994-1744 (fax)

                                   Co-Liaison Counsel and Executive
                                   Committee Members for the Class

4852-8828-2827.v2

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
LUKE O. BROOKS
RYAN A. LLORENS
ERIC I. NIEHAUS
ANGEL P. LAU
JEFFREY J. STEIN
ERIKA OLIVER
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

BERNSTEIN LITOWITZ BERGER &
  GROSSMANN LLP
SALVATORE J. GRAZIANO
HANNAH ROSS
AVI JOSEFSON
KATHERINE M. SINDERSON
ADAM D. HOLLANDER
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212/554-1400
212/554-1444 (fax)

Co-Lead Counsel for the Class

SAXENA WHITE P.A.
JOSEPH E. WHITE, III
BRANDON T. GRZANDZIEL
DIANNE M. ANDERSON
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: 561/394-3399
561/394-3382 (fax)

- 22 -

Public Version Filed Pursuant to Sealing Order, Dkt. No. 229

SAXENA WHITE P.A.
STEVEN B. SINGER
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: 914/437-8551
888/631-3611 (fax)

Executive Committee Member

4852-8828-2827.v2

Public Version Filed Pursuant to Sealing Order, Dkt. No. 229

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on September 25, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record. I further caused a copy of the foregoing to be served by email on counsel for PriceWaterhouseCoopers.

s/ CHRISTOPHER A. SEEGER
CHRISTOPHER A. SEEGER

SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  973/639-9100
973/639-9393 (fax)

E-mail:  cseeger@seegerweiss.com

Public Version Filed Pursuant to Sealing Order, Dkt. No. 229