October 26, 2020

<u>VIA ECF</u>

Hon. Lois H. Goodman
United States Magistrate Judge
District of New Jersey
402 East State Street, Court Room 7E
Trenton, New Jersey 08608

     Re:    *In re Novo Nordisk Sec. Litig.*, No. 17-cv-209-BRM-LHG (D.N.J.)

Dear Judge Goodman:

     The parties submit this joint letter in accordance with Local Rule 37.1(a) and the Court's Order Amending Certain Discovery Deadlines (ECF No. 207). The parties are prepared to discuss these issues with the Court at the telephonic status conference scheduled for November 5, 2020.[1]

## I.    PLAINTIFFS' AFFIRMATIVE POSITION

     As the Court is aware, this case concerns allegedly false and misleading representations made by Defendants concerning, among other things, Novo Nordisk's insulin drugs and the Company's exposure to market pricing pressures, including pressure on Novo to pay ever-greater rebates to pharmacy benefit managers ("PBMs") in exchange for formulary placement.[2] On August 21, 2020, Plaintiffs served their Second Set of Interrogatories to Defendants (the "Rogs"), attached hereto as Exhibit A, requesting relevant information concerning, among other things, Novo's rebates to PBMs and levels of formulary access, as well as requests that Defendants identify relevant witnesses and evidence they contend support their defenses. As discussed below, several of the responses in Defendants' Responses and Objections to the Rogs, dated October 12, 2020 (the "R&Os"), attached

---

[1]    The parties met and conferred telephonically regarding these issues on October 19, 2020 (the "October 19 Meet and Confer"). "Defendants" refers to defendants Novo Nordisk A/S, Lars Rebien Sørensen, Jesper Brandgaard, and Jakob Riis. Further, unless otherwise indicated, all "¶_" and "¶¶_" references and capitalized terms not defined herein, refer to paragraphs and defined terms as set forth in the Consolidated Amended Class Action Complaint (the "Complaint") (ECF 71). All citations are omitted and emphasis added unless otherwise indicated.

[2]    PBMs are the middlemen between manufacturers and insurers that control market access for drugs by deciding which drugs will be covered by insurance plans and the terms of the coverage, including co-pay amounts and other restrictions.

October 26, 2020
Page 2

hereto as Exhibit B, either improperly invoke Federal Rule of Civil Procedure 33 by referring to incomplete or incoherent documents, or neglect to respond to all or part of a proper interrogatory. [3]

As discussed herein, Plaintiffs respectfully request that the Court order Defendants to supplement their responses to certain of the Rogs.

### A.   Defendants Should Provide Affirmative Responses to Interrogatory Nos. 13 & 15

In Rog No. 13, Plaintiffs requested that Defendants identify certain specific details concerning rebates that Novo paid in order to secure formulary access for Novo's drug Tresiba.  Ex. A at 5-6.  In Rog No. 15, Plaintiffs requested that Defendants identify certain specific details concerning the formulary placement of Tresiba.  *Id*. at 6.  The requested information is readily available to Defendants and solely in their possession, and Defendants do not claim that providing direct responses to these interrogatories presents any undue burden.   Nevertheless, Defendants have provided opaque responses in lieu of clear ones, improperly invoked Fed. R. Civ. P. Rule 33(d), and directed Plaintiffs to documents that provide conflicting and incomplete information.  *See* Ex. A at 8-9, 11.

Here, before identifying a series of Bates numbers, Defendants improperly referred Plaintiff to Defendants' five-million-page production, stating, "information relevant to Interrogatory No. [X] can be found throughout Defendants' production, including, but not limited to, documents bearing the following bates numbers[.]"  *See, e.g.*, Ex. B at 12.  Those answers do not provide the specificity that Rule 33 requires.  Responding parties may answer interrogatories by referring to documents only "if the burden of deriving or ascertaining the answer will be substantially the same for either party."  Fed. R. Civ. P. 33(d).  This option is not available where the responding party has "superior knowledge of and facility with the business records referenced."  *Graco, Inc. v. PMC Glob., Inc*., No. 08-1304 (FLW), 2011 WL 1114233, at *36 (D.N.J. Mar. 24, 2011); *see also Matthews v. USAir, Inc*., 882 F. Supp. 274, 275 (N.D.N.Y. 1995) (Rule 33 "does not permit a party to answer simply by directing the seeking party to an undifferentiated mass of business records which may or may not answer the interrogatory.").  Indeed, "'***Rule 33(c) is not an available alternative if an interrogatory can be responded to more readily and conveniently by written answer***.'"  *MacGillivray v. Consol. Rail Corp.*, No. 91-0774, 1992 WL 57915, at *2 (E.D. Pa. Mar. 17, 1992); *see also Kates v. Packer*, No. 13-CV-01525, 2017 WL 3118774, at *2 (M.D. Pa. July 21, 2017) ("'[I]f an answer is readily

---

[3]   Exhibits C-H have been excerpted to save space.

October 26, 2020
Page 3

available in a more convenient form, Rule 33([d]) should not be used to avoid giving the ready information to a serving party.'").

Plaintiffs respectfully request an order directing Defendants to supplement their responses to Rog Nos. 13 and 15 with complete, affirmative representations.

### 1.     Defendants Should Provide the Values of "Leveraged" Rebates – Interrogatory No. 13

Rog No. 13 asks Defendants to "[i]dentify all Rebates relating to Novo Drugs other than Tresiba that Novo paid as part of an agreement to secure formulary access for Tresiba."  Ex. A at 5-6.

Throughout the Class Period, Novo assuaged investors' concerns about increasing market pressures by assuring them that Tresiba would achieve - and did achieve - a net-price premium over Novo's older basal insulin, Levemir.  ¶115.  Defendants likewise have represented to the Court that Novo secured formulary access for Tresiba at a premium price over Levemir.  *E.g.*, ECF No. 91 at 20 ("Moreover, as noted *supra*, Tresiba® did sell at a premium . . . .").  Novo however never provided investors with further detail or quantified Tresiba's purported net-price premium, as Novo and PBMs kept details about net prices, rebates, and other discounts as "carefully guarded secrets."  ¶¶46, 53. During discovery, Plaintiffs learned that, in order to secure access for Tresiba on certain formularies,

Ex. C at 3, 11, 15.[4]   Plaintiffs also learned that

Ex. D at 176:16-177:19 (Deposition Transcript of Steve Albers, dated June 8, 2020)

Rog No. 13 requests highly relevant facts about the value of the rebates Novo paid with respect to other drugs in order to secure access for Tresiba.  The requested facts comprise: (a) the PBM that received the rebate; (b) the applicable formulary or channel; and (c) the value of the rebate on a quarterly basis.  Defendants do not dispute they can provide unequivocal responses to these straightforward interrogatories with minimal burden.  Yet, Defendants injected ambiguity into their

---

4     Exs. C, E-H are Bates stamped discovery documents.

October 26, 2020
Page 4

responses by invoking Rule 33(d) and opaquely referred Plaintiffs to various PBM contracts and other documents from their production, suggesting that the answers lay somewhere within them.

Defendants' response was improper, because "[w]here an interrogatory asks for specific figures it is no answer to the interrogatory to make records available so that the other party to the litigation can do the work of ascertaining the true answers to the interrogatories." *Austin Theatre, Inc v. Warner Bros Pictures, Inc.*, 22 F.R.D. 302, 303-04 (S.D.N.Y. 1958). Affirmative answers to interrogatories are necessary when the documents the responding party points to do not "reasonably facilitate [the requesting party]'s ability to answer its questions from the information [the responding party] has made available," but the responding party nevertheless "completely and accurately" maintains the requested information, such that it is "readily known to [the responding party] enabling it to respond without undue administrative burden." *See Nagele v. Elec. Data Sys. Corp.*, 193 F.R.D. 94, 108 (W.D.N.Y. 2000).

Defendants' response was also improper because the documents Defendants identified unnecessarily add confusion to their answers. ███████████████████████████████████
████████████████████████████████████████ which Plaintiffs requested in the Interrogatory. Ex. B at 8-9 [R&Os]. Moreover, ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *Compare* Ex. E at 23, Ex. F at 2 *with* Ex. G at 9.[5]

In addition, Defendants improperly and unilaterally narrowed the scope of their response by ████████████████████████████████████████████████████████████████████████████ Ex. B at 9. Plaintiffs requested and are entitled to a full response regarding "all rebates" during the Class Period.[6] Finally, even taken in combination, the documents do not address Plaintiffs' unambiguous and proper request for a "quarter-by-quarter" accounting of the Rebates paid. Ex. A at 6. This information is relevant to developing a complete and accurate record concerning Novo's rebates to secure Tresiba access, including the financial impact of those rebates on Novo's quarterly sales figures and other publicly disclosed financial metrics, and whether those figures accurately reflected Novo's performance and financial condition.

---

[5]   Exs. E-H are Bates stamped discovery documents.

[6]   The Rogs define the Relevant Period as January 1, 2014 to present, but as a compromise Plaintiffs accept Defendants' proposal to limit responses to the narrower Class Period, February 3, 2015 to February 2, 2017.

October 26, 2020
Page 5

Defendants have thus failed to provide a full and coherent response to Rog No. 13.  During the October 19 Meet and Confer, Defendants did not deny that they could have provided full affirmative responses without any undue burden.  They simply chose to reference an unhelpful and incomplete set of documents.  Plaintiffs respectfully request that the Court order Defendants to provide an affirmative response to Rog No. 13 by filling out the chart attached hereto as Appendix A.

## 2. Defendants Should Describe Tresiba's Level of Access During the Class Period – Interrogatory No. 15

Rog No. 15 requests straightforward information about Tresiba's "Level of Access," or formulary positioning and restrictions, for each major PBM in 2016 and the first quarter of 2017.[7]

PBMs typically separate the drugs on their formularies into tiers, with drugs on the top tiers benefiting from more access to patients, at a lower out-of-pocket cost to the patient, than available to competing drugs.  On lower tiers, access is impeded by higher copays at the pharmacy and more restrictions on use. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. D at 92:12-94:2.

Defendants could have and should have answered this interrogatory by providing responsive information, which is readily available to Defendants, including the tier Tresiba occupied, and the terms of any restrictions.  Defendants again do not claim that providing such a list presents any undue burden.  Yet, as with Rog No. 13, Defendants chose to improperly muddy the waters by referencing documents that do not provide a cogent or complete response.  *See Nagele*, 193 F.R.D. at 108 ("Plaintiff should not be required to guess at her peril as to the answer by perusing the file which may or may not contain the necessary information.").

First, the documents Defendants reference cover only January through November 2016, and provide no information about Tresiba's access during the rest of 2016 and the first quarter of 2017, as requested.  Second, the documents Defendants identified include inaccurate information.  Defendants identified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[7]   Plaintiffs understand that some PBMs have several different formularies, and each potentially had different "Levels of Access" for Tresiba. To address this concern, Plaintiffs are willing to limit their request to formularies in the Commercial and Part D channels that control at least 10% of the patients in that channel.

October 26, 2020
Page 6

█████████████████████████████████████████████████████████████ Ex. H at 24, 28. Four other
reports that Defendants identified include the same inconsistency. Defendants have again introduced
confusion that direct answers would have avoided. Absent documents that clearly provide the
information requested in Rog No. 15, Defendants are required to provide clear, affirmative answers
upon which Plaintiffs can rely. *See MacGillivray*, 1992 WL 57915, at *2.

Defendants have failed to identify documents that provide a clear answer, as Fed. R. Civ. P.
33 requires. Plaintiffs respectfully request that the Court order them to provide an affirmative
response by filling in the chart attached hereto as Appendix B.

### B. Identification of Relevant Witnesses - Interrogatory Nos. 17-24

Rog Nos. 17, 18, and 20-24 are "contention interrogatories" that seek "all facts, witnesses,
and documents" in support of certain of Defendants' contentions. Ex. A at 6-8. In response to each,
Defendants directed Plaintiffs to certain documents and facts, but failed to identify any witnesses.

At this stage in the litigation, Defendants must identify the witnesses they intend to rely on in
response to Plaintiffs' proper requests. *See Santos v. Carrington Mort. Servs.*, No. 15-cv-0864-
WHW-CLW, 2016 WL 7018523, at *2 (D.N.J. Nov. 30, 2016) (contention interrogatories appropriate
"in light of the substantial discovery conducted"); *In re Wilmington Tr. Sec. Litig.*, 2017 WL 2457456,
at *2 (D. Del. June 6, 2017) (holding that contention interrogatories "are not premature" when
discovery "is ***almost*** complete"). In their initial disclosures, Defendants identified just four witnesses
- the three Individual Defendants and one other person - who may support their claims and defenses,
and never expanded the list. *See* Defendants' Initial Disclosures Pursuant to Fed. R. Civ. P. 26(A)(1),
dated Nov. 20, 2018, attached hereto as Exhibit I. During the October 19 Meet and Confer, Plaintiffs
asked Defendants to confirm that they would not rely on witnesses outside of the 40 witnesses who
have been deposed in the case. Defendants declined to limit the pool of witnesses to deponents, and
yet maintained their improper refusal to provide the names of witnesses they intend to use to support
their case in response to the Rogs.

In order to avoid undue surprise, Plaintiffs respectfully request that the Court order
Defendants to identify all witnesses they intend to rely on for the topics discussed in Rog Nos. 17,
18, and 20-24, or restrict potential trial witnesses to those deposed in this litigation.

October 26, 2020
Page 7

### C. Evidence in Support of Affirmative Defenses - Interrogatory Nos. 19 and 25

Rog Nos. 19 and 25 request disclosure of the evidence Defendants contend supports the affirmative defenses they raised in their Answer (ECF No. 112) at 65-71. Interrogatories seeking "the factual basis" for affirmative defenses in a defendant's answer "go[] to the heart of th[e] litigation," and should be answered. *Phila. Nat'l Bank v. Dow Chem. Co.*, 106 F.R.D. 342, 344 (E.D. Pa. 1984); *see also American Civil Liberties Union v. Gonzale*s, 237 F.R.D. 120, 124 (E.D. Pa. 2006) ("'[T]here is no doubt that the federal rules allow a litigant to require an opponent to answer interrogatories asking for a delineation of legal theories so long as the question is calculated to serve a "substantial purpose" in prosecution of the suit, such as a narrowing of issues.'")

Here, despite their obligation to do so, Defendants did not provide a substantive response to Plaintiffs' interrogatories seeking the basis for their affirmative defenses. In Rog No. 19, Plaintiffs requested "all facts, witnesses, and documents" in support of Defendants' "truth on the market" defense. Ex. A at 7. Defendants made arguments based on that defense in their motion-to-dismiss and class-certification briefing, and are likely to raise those or substantially similar arguments at summary judgment and trial. ECF Nos. 81-1 at 28-30, 147 at 5-11. Likewise, in Rog No. 25, Plaintiffs requested that Defendants identify the "facts" that purportedly underlie the affirmative defenses in Defendants' Answer. Ex. A at 9. Those defenses include fact-intensive defenses such as the Third Defense, that "plaintiffs purchased Novo Nordisk's ADRs with actual or constructive knowledge of the risks involved," and the Seventh Defense, that "material information alleged to have been omitted from Novo Nordisk's public disclosures is a matter of public knowledge." ECF No. 112 at 65-66. With fact discovery closed and affirmative expert reports due November 13, 2020, Plaintiffs are entitled to know the evidence Defendants intend to present in support of their case and, importantly, the defenses Defendants no longer deem viable.

Plaintiffs request that, for the truth-on-the-market defense and each affirmative defense, the Court order Defendants to either answer the interrogatory as phrased or deem the defense waived. *See Jordan v. Mirra*, No. 14-CV-01485-GAM, 2019 WL 2127788, at *19 (D. Del. Feb. 27, 2019) (precluding evidence not disclosed in interrogatories because a party "cannot be forced to defend against claims that he had no knowledge of prior to evidence being presented at trial").

October 26, 2020
Page 8

## II.     DEFENDANTS' RESPONSE[8]

On Monday, October 12, defendants served responses to plaintiffs' second set of interrogatories.  The responses spanned 46 pages, including nearly 40 pages of substantive responses. For various interrogatories, defendants provided extensive narrative answers.  For certain others, defendants referred plaintiffs to specific documents in defendants' production, identified by bates number, as contemplated by Federal Rule of Civil Procedure 33(d).  Defendants' responses fully respond to plaintiffs' questions, and fully satisfy defendants' obligations under the Federal Rules of Civil Procedure.

In a meet and confer discussion that occurred one week after the responses were served, it became clear that plaintiffs do not like the answers that they have received not because the answers are incomplete, but because they eviscerate plaintiffs' case.  As a result, with fact discovery coming to a close, plaintiffs would like defendants to help plaintiffs resurrect and present their case for them, repackaging data that is equally available to both parties in the way that plaintiffs believe will be most helpful to them.  But Rule 33 requires no such thing.

It is well established that "in responding to interrogatories, 'a party cannot ordinarily be forced to prepare its opponent's case.'"  *Bayview Loan Servicing, LLC v. Boland*, 259 F.R.D. 516, 518–19 (D. Colo. 2009) (quoting 8A Wright, Miller & Marcus § 2174)).

### A.     Defendants' Responses to Interrogatory Nos. 13 & 15 Fully Comply With Federal Rule of Civil Procedure 33(d)

Plaintiffs first ask the Court to order defendants to supplement their responses to Interrogatory Nos. 13 & 15.  Contrary to plaintiffs' misleading contentions otherwise, defendants did not simply respond to these interrogatories by referring plaintiffs to defendants' "five-million page production" (*see supra* at 2).  Defendants specifically directed plaintiffs to discrete lists of specific documents, or examples of documents, that contain the information responsive to the requests.  *See* Ex. B at 8–9, 10-11.

---

[8] By agreement, plaintiffs served their opening portion of this letter on defendants midday on Thursday, October 22.  Defendants responded mid-day on Monday, October 26.  Plaintiffs will be adding a reply prior to filing.  Per agreement, defendants will have no opportunity to comment on that reply, or to modify their portion of the letter.  Defendants will be prepared at the upcoming conference to address plaintiffs' reply, and to answer any questions that the Court may have about the matters raised herein.

October 26, 2020
Page 9

Defendants' responses to Interrogatories Nos. 13 & 15 fully comply with Federal Rule of Civil Procedure 33(d).  Under that Rule, "[i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records . . . and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed . . . and (2) giving the interrogating party a reasonable opportunity to examine . . . the records[.]"  Fed. R. Civ. P. 33(d); *see also Arena v. RiverSource Life Ins. Co.*, 2017 WL 6513056, at *2 (D.N.J. Dec. 19, 2017).  To satisfy Rule 33(d), "the specification must be made with sufficient detail that will allow the discovering party to locate and identify the records from which the answer may be obtained."  *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 108 (D.N.J. 1990); *see Mickley v. Sunrise Senior Living.*, 2010 WL 11570194, at *1 (D.N.J. May 12, 2010).  Once defendants "exercise[] the Rule 33([d]) option, plaintiffs ha[ve] the burden to show that the burden of deriving or ascertaining the answers is not substantially the same for both parties."  *Petroleum Ins. Agency, Inc. v. Hartford Acc. & Indem. Co.*, 111 F.R.D. 318, 320 (D. Mass. 1983); *see also Versatile Metals, Inc. v. Union Corp.*, 1987 WL 7686, at *2 (E.D. Pa. Mar. 10, 1987) ("The party seeking to show that answers to interrogatories are insufficient has the burden of proving that the answers are incomplete, inadequate, or false.").  "While an interrogated party will always be more familiar with its own records than the interrogating party, *familiarity with the records cannot be the sole test*.  The inquiry is whether the relative burdens are substantially the same, not whether they are precisely equal."  *United States ex rel. Martino-Fleming v. S. Bay Mental Health Ctr., Inc.*, 332 F.R.D. 1, 9 (D. Mass. 2019) (emphasis added) (citation omitted).  "Defendants certainly are not required to compile or analyze information where no previous compilation or analysis has been done," *Lapeire v. Volkswagen AG*, 1989 WL 52477, at *1 (E.D. Pa. May 15, 1989), nor is "the plight of an individual litigant faced with the considerable time and expense required to review extensive documentary evidence" a basis to object to a party using Rule 33(d).  *Saddler v. Musicland-Pickwick Int'l, Inc.*, 1980 WL 333, at *2 (E.D. Tex. 1980); *see Webb v. Westinghouse Elec. Corp.*, 81 F.R.D. 431, 436 (E.D. Pa. 1978) (declining to "shift the cost of preparing this case for trial to defendant" where the "information requested by the plaintiffs can be obtained from the records that defendant has made available").

As set forth below, plaintiffs have not come close to meeting their burden of showing that defendants' responses are inadequate.

### 1.   Interrogatory 13

***Background Regarding Tresiba® and Its Role in the Case***

Interrogatory No. 13 is plaintiffs' latest attempt to bolster allegations in the Complaint that the Company overpromised and under-delivered with respect to the launch of a new insulin named Tresiba®.  In the Complaint, plaintiffs alleged that Novo Nordisk did not obtain "'premium pricing' for the newly launched Tresiba" and "offer[ed] deep rebates that resulted in net price on par with

October 26, 2020
Page 10

Levemir . . . [which] had already been on the market for over a decade since 2005." Compl. ¶ 19.[9]
Document after document, and witness after witness, have disproved this theory. In addition to the
documentary and testimonial record, defendants' response to separate Interrogatories—Nos. 7 and
19, which are not at issue in this Joint Letter—have provided detailed support for the fact that Novo
Nordisk "secured a premium list or net price for Tresiba® over Levemir®."

The parties' history regarding Interrogatory No. 7 is illustrative of plaintiffs' intransigence as
to their debunked Tresiba® theory. This interrogatory originally asked for all "historical Rebates
paid to PBMs." In response, on June 24, 2019, defendants produced exactly that from their records—

Ex. L; Ex. M.

Over a year after defendants produced this data, plaintiffs complained that they could not interpret it
and declared the production insufficient. For the first time, plaintiffs then claimed that Interrogatory
No. 7 required defendants to provide a chart showing numerous different pieces of information related
to the average realized prices of Novo Nordisk's products. Defendants disagreed. But mindful of
the Court's emphasis on cooperation, and consistent with the approach defendants have employed to
date, defendants tried to work with plaintiffs in the hopes of avoiding the Court's intervention.
Between July and mid-October, defendants provided additional deliverables, including:



- Ex. N.

- Ex. O.

---

[9] In the Letter, plaintiffs also repeat the allegation that "Novo [Nordisk] assuaged investors' concerns
about increasing market pressures by assuring them that Tresiba would achieve—and did achieve—
a net-price premium over . . . Levemir." *Supra* at 3 (citing Compl. ¶ 115). The public disclosures—
including the disclosures that plaintiffs cite in the Complaint (*see* ¶ 115)—speak for themselves and
demonstrate that the Company not only never promised any particular levels of sales performance or
premium, it repeatedly informed investors of the risks associated with the U.S. launch, including the
potential that pricing terms would not be favorable. *See, e.g.*, Ex. J at 2-3, 42-43 (Novo Nordisk A/S
2015 Annual Report); Ex. K at 6, 9-11 (Novo Nordisk A/S Special Call Transcript).

October 26, 2020
Page 11

-  Ex. P;
Ex. Q.

Each time defendants produced another piece of detailed information, plaintiffs claimed it was not good enough and requested something new.

It is now clear that plaintiffs are dissatisfied with defendants' robust discovery responses not because they are deficient, but because they disprove plaintiffs' claims. Ultimately, the documentary records, witness testimony, and interrogatory responses regarding Tresiba®'s pricing and sales demonstrate that Tresiba®'s launch in the United States was a success, and Novo Nordisk was able to (i) obtain a list and net premium for Tresiba® over Levemir®, (ii) exceed internal sales expectations for Tresiba®,[10] and (iii) achieve better-than-forecasted access.[11]  Plaintiffs do not like and cannot seem to accept this factual reality.

### *Current Dispute*

Unable to substantiate the Complaint's contention that Tresiba® was a failure, plaintiffs have now pivoted to try to show that its success hinged on a decision by the Company to rob Peter to pay Paul—i.e., to discount other products in order to secure Tresiba®'s access.  Plaintiffs are apparently looking for Novo Nordisk to examine records of rebates that it paid to payers during the relevant period and to attempt to divine the portion of those rebates, if any, that might be attributable to "extra" discounts that Novo Nordisk supposedly had to offer in order to secure formulary access for Tresiba®.  But Novo Nordisk does not have any such information about rebate claims and cannot include it in a verified interrogatory response.  To the extent that plaintiffs want to retain an expert to try to model an answer, presumably they can attempt to do so.  But defendants are in no better position to do this work than plaintiffs, who have access to the same documentation.  There is only one exception,  In its response to Interrogatory No. 15, Novo Nordisk furnished information about these adjustments and also identified relevant documents.

As an initial matter,

---

[10] *See, e.g.*, Ex. R at 23-24 .

[11] *See, e.g.*, Ex. S .

October 26, 2020
Page 12

[REDACTED] Ex. T, Sørensen Dep. Tr. at 277:7-14; 203:19-204:13. [REDACTED]

[REDACTED] *see, e.g.*, Ex. U at 23 [REDACTED], including documents showing that [REDACTED] *see* Ex. V at 3.  And, as several witnesses have explained, to a limited extent, [REDACTED] *See, e.g.*, Ex. W, Bøggild Dep. Tr. at 174:16-175:15; Ex. X, Langa Dep. Tr. at 144:14-146:15; Ex. Y, Albers Dep. Tr. 190:13-191:7.  As a general matter, such horse trading was not uncommon and it would often occur as part of the back-and-forth negotiations between payers and Novo Nordisk, Inc. that would have led up to the final agreement.[12]  To the extent such terms were actually agreed to and made their way into the final memorialized agreement between Novo Nordisk, Inc. and any particular payer, plaintiffs have the agreements.  So if plaintiffs are interested in understanding the ways in which Novo Nordisk, Inc. "leveraged inline brands" in its negotiations with payers, as they claim, *supra*, they can assess the agreements on their own in the same way defendants can because the payer contracts show the actual, bargained-for conditions under which Tresiba® achieved formulary access during the relevant time period.

But what plaintiffs seem to want by way of detail is something that does not exist—and the Company thus could not verify—because [REDACTED] Contrary to plaintiffs' assertions, defendants have disputed and still do dispute whether we can "provide unequivocal responses to" this interrogatory, let alone "with minimal burden."  *See supra* at 3.  The Company's adjudication of rebate claims ties each rebate to specific products.  Plaintiffs know (or should know) this because defendants produced to plaintiffs nearly 16 months ago evidence of *every payer rebate transaction for relevant products during the class period*.  The rebate claims data does not

---

[12] To the extent that a given agreement does not explain the genesis of a particular discount—i.e., Novo Nordisk proposed a 30% rebate for Levemir® but subsequently increased the rebate offer to 31% in the course of multi-product negotiations in order to secure access for Tresiba® (or for any other reason)—Novo Nordisk has no way to reconstruct the bidding history, and the reasons for each interim decision, other than by reviewing thousands of emails, committee materials, and speaking to dozens of witnesses who interact with relevant payers.  Even that, however, would not answer the question that plaintiffs have posed.  It might suggest what factors were important to a given rebating decision.  But it would not allow Novo Nordisk to quantify in a verified answer the amount of rebates that were paid on Levemir® to allow Tresiba® to secure access.

October 26, 2020
Page 13

disaggregate each individual product rebate into separate buckets that reflect the terms of each contract.  Given the complex matrix of terms common in these payer contracts, defendants are not aware of any way to connect a particular rebate (or a portion of a rebate) to a specific contract term.

Take the ███████████████ that plaintiffs refer to, *supra* at 4, as an example.  *See* Ex. F.



*Id.* at 2.

As a result, it is not feasible to provide plaintiffs with internal claims data reflecting the quarter-by-quarter "amount of the Rebate" that Novo Nordisk purportedly paid, if any, "relating to Novo Drugs other than Tresiba that Novo paid as part of an agreement to secure formulary access for Tresiba."  Ex. A at 5-6.

What Novo Nordisk did track—and what defendants have provided in response to this interrogatory ████████████████████████████████████████████████████████████ *See* Ex. W, Bøggild Dep. Tr. at 185:5-187:3.  As witness testimony has shown, ████████████████████████████████████████████████████████████

*Id.*  The purpose and amount of this adjustment is clearly spelled out in the documents that defendants referred to in their interrogatory response.  *See, e.g.*, Ex. Z ████████████████████ That is, in late 2015, as it was building its budget, ██████████████████████████████████████████████████

October 26, 2020
Page 14



referred to in the defendants' response to Interrogatory No. 13, we are not aware of any other similar adjustments.  In this response,

(Ex. G),

*see, e.g.*, Ex. AA.

and plaintiffs have both the background and the figures that demonstrate as much.[13]

Plaintiffs' fishing expedition must come to end.  Defendants have properly responded to this interrogatory.  Defendants and should not be required to provide further substantive responses in a form that plaintiffs want but that does not exist, and which defendants cannot construct, simply because the information responsive to the request, already provided, hurts plaintiffs' case.

2.      **Interrogatory 15**

The Court should also reject plaintiffs' request to order defendants to supplement their response to Interrogatory No. 15, which requests information about Tresiba® formulary placement during the class period.  In response to Interrogatory No. 15, defendants identified list of 35 exemplar documents, including (1)

(2)

and  (3)

Defendants have not simply directed plaintiffs to an "an undifferentiated mass of business records which may or may not answer the interrogatory."  *Matthews v. USAir, Inc.*, 882 F. Supp. 274, 275 (N.D.N.Y. 1995) (internal quotation marks and citation omitted).   Instead, these

---

[13] There is no inconsistency between the documents to which defendants have directed plaintiffs; they simply reflect different ways of expressing a direct and fact-based response to the question plaintiffs are asking regarding the                                  Ex. AA at 1.

October 26, 2020
Page 15

contemporaneous documents comprise the primary universe of documents from which the information responsive to this interrogatory can be derived.[14]

Contrary to plaintiffs' argument, these documents are indeed a "cogent [and] complete" (*see supra* at 5) response to Interrogatory No. 15, and one that falls well within the bounds of Rule 33(d). Indeed, the documents that defendants identified █████████████████████████████ ████████████████████████████████████████████████████████████████ *Compare* Appendix B, *with, e.g.*, Ex. BB at 28 and Ex. CC at 13.

The upshot of these documents is that plaintiffs can see, as of the date of the document, Tresiba®'s formulary status *at all of the major PBMs in the commercial and Part D channels, as well as any new and recent contract events*. Accordingly, the burden of ascertaining the answer to Interrogatory No. 15 from the documents identified "is the same for both Plaintiff and Defendant. It would require either party to review the documents produced to ascertain a definitive answer." *New Skies Satellites, B.V. v. Home2Us Commc'ns, Inc.*, 2017 WL 11492220, at *2 (D.N.J. Oct. 20, 2017). Defendants have fully "complied with Rule 33(d) by specifying the records to be reviewed in sufficient detail to allow [plaintiffs] to identify them as easily as [defendants] (i.e., the documents produced) and by giving [plaintiffs] the opportunity to review them." *Id.* Nothing more is required.

Plaintiffs make two criticisms of defendants' response to Interrogatory No. 15. Neither demonstrates that defendants' response fails to comply with Rule 33(d).

*First*, plaintiffs contend that the documents defendants reference "cover only January through November 2016" rather than through the final two months of the class period, which ends in February 2017. *Supra* at 5. But defendants explained that the list of documents referenced in the interrogatory response was not exhaustive. It is equally burdensome for plaintiffs as for defendants to run further searches through the production to look for similar documents. Had plaintiffs done so, they could have found changes implemented through February 1, 2017. *See, e.g.*, Ex. DD ███████████ ████████████████████████████████████. Had plaintiffs conducted the rudimentary diligence of

───────────────────

[14] For this reason, this is also not a situation where plaintiffs are "required to guess at [their] peril as to the answer by perusing the file[s] which may or may not contain the necessary information." *Nagele v. Elec. Data Sys. Corp.*, 193 F.R.D. 94, 108 (W.D.N.Y. 2000).

October 26, 2020
Page 16

searching their productions for documents similar to the ones that defendants identified in their Interrogatory responses, they would have located the information that they now claim is missing.[15]

*Second*, plaintiffs contend that the documents defendants identified provide "conflicting information" about Tresiba®'s status on Express Scripts Part D formulary as of a single point in time in June 2016. *Supra* at 5. Plaintiffs have not referred to any other purported inconsistencies in their letter, and they raised none with defendants when the parties conferred.[16] And a simple review of the documents to which defendants referred plaintiffs makes it clear that Express Scripts added Tresiba® to its Part D formulary in the lowest-branded co-pay tier as of April 1, 2016. *See* Ex. H at 24; Ex. EE at 6, 13. That is the information—i.e., the "Level of Access"—that plaintiffs purport to care about regarding Interrogatory No. 15. In other words, the "conflicting information" appears to be a typographical error in the underlying documents. It should not necessitate defendants needing to try to build plaintiffs' case for them.

**B.      Defendants Do Not Have to Identify All of the Witnesses They Will Rely on at Trial at This Stage of the Case (Interrogatory Nos. 17-24)**

Plaintiffs' request that the Court order defendants to "identify all witnesses they intend to rely on [related to the interrogatories] or restrict potential trial witnesses to those deposed in this litigation" (*supra* at 6) is premature and inappropriate. More than a year ago, during the meet-and-confer process as to the number of depositions that plaintiffs would be permitted to take, the parties expressly agreed that "if any proposed trial witness has not previously sat for a deposition, the parties will work in good faith to make that witness available for a pretrial deposition." Ex. FF at 1 (8/28/2019 emails between N. Potischman and L. Brooks). The agreement served both sides interests and reflected the reality that parties frequently identify potential trial witnesses as trial approaches. Accordingly, and contrary to plaintiffs' claims of potential prejudice and their professed need to "avoid undue surprise," the parties have already built in a stipulated mechanism to ensure a fair opportunity for each side to examine the other's trial witnesses, including any witness that defendants would call to speak to the topics covered by the interrogatories.

---

[15] Moreover, because Novo Nordisk's receipt of data related to the impact of new contracting decisions and formulary positions tends to lag by at least a month, information related to December 2016 and January 2017 is much less likely to have been possessed by Novo Nordisk during the class period. To the extent plaintiffs wanted information from outside the class period, they should have raised this issue long before the discovery was set to close.

[16] Plaintiffs' claim that "[f]our other reports . . . include the same inconsistency" (*supra* at 6) but do not identify the documents.

October 26, 2020
Page 17

Even without that agreement, this request would be unduly burdensome at this stage of the case. Plaintiffs seemingly want to lock down defendants' witness list long before any trial is reasonably likely to occur. But Federal Rule of Civil Procedure 26(a) does not require the disclosure of witness lists until "at least 30 days before trial," Fed. R. Civ. P. 26(a)(3)(B), and there is no reason to accelerate that schedule to the extent plaintiffs demand. *See Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 15 (D.D.C. 2004) (interrogatory asking defendant to identify the witnesses expected to be called at trial was "premature" because a party need not provide that information "until it makes its pretrial disclosures"); *IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 323 (D. Kan. 1998) (interrogatory asking defendant to identify witnesses was "unduly burdensome on its face" because "[t]he court addresses the matter of identification of witnesses by all parties in its scheduling and pretrial orders"); *see also Bosh v. Cherokee Cty. Governmental Bldg. Auth.*, 2014 WL 1123493, at *2 (E.D. Okla. Mar. 20, 2014) (describing interrogatory asking defendant to identify witnesses as "overly broad" (citation omitted)).

It is simply too early at this time for defendants to identify all of the witnesses that they may use to support the diverse topics discussed in these interrogatories. Not only are defendants still reviewing the contents of their productions to plaintiffs, which comprised nearly 2 million documents and over 5.5 million pages, but the parties have also conducted 23 depositions in the last 4 months (with at least 1 more deposition still to come). It will take considerable time to review the final transcripts and exhibits from those depositions and do follow-up analysis before arriving at firm decisions as to likely trial witnesses. And, it is unclear how plaintiffs can claim that lack of disclosure will prejudice them at this stage when fact discovery has closed and the applicable federal rule does not contemplate such disclosure until one month before trial.

Neither of the cases plaintiffs cite support their request. Indeed, the cases do not even discuss the relevant issue—witness identification—but instead address only when a party should provide substantive responses to contention interrogatories. *See In re Wilmington Tr. Sec. Litig.*, 2017 WL 2457456, at *2 (D. Del. June 6, 2017) (addressing contention interrogatories but not identification of witnesses); *Santos v. Carrington Mort. Servs.*, 2016 WL 7018523, at *2 (D.N.J. Nov. 30, 2016) (same). And there is no indication in either opinion that the propounding party even requested the responding party to identify any witnesses, much less that the courts ruled that the responding party had to identify witnesses. Here, there is no dispute that defendants did provide plaintiffs with detailed, substantive responses to all of plaintiffs' proper contention interrogatories. There is therefore no basis for the Court to compel defendants to do more.

October 26, 2020
Page 18

### C.    Interrogatories Seeking "All Facts" That Support Defendants' Defenses Are Improper (Interrogatory Nos. 19 & 25)

The Court should also reject plaintiffs' request that the Court order defendants to answer "as phrased" Interrogatory Nos. 19 & 25, which purport to "request disclosure of the evidence defendants contend supports the affirmative defenses they raised in their Answer." *Supra* at 7. These interrogatories are nothing more than "impermissible 'blockbuster' interrogator[ies] of a nature repeatedly condemned by trial courts." *Grynberg v. Total S.A.*, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) (rejecting motion to compel response to interrogatory seeking all facts in support of the defendant's affirmative defenses); *see also, e.g.*, *Nieman v. Hale*, 2013 WL 6814789, at *11 (N.D. Tex. Dec. 26, 2013) (same); *Big Baboon, Inc. v. Dell, Inc.*, 2010 WL 11459799, at *3 (C.D. Cal. Mar. 16, 2010) (same). As courts have recognized, these types of interrogatories "do not comport with the just, speedy, and inexpensive determination of the action [and] [t]o require answers to them would more likely cause delay and unreasonable expense of time, energy, and perhaps money." *Grynberg*, 2006 WL 1186836, at *6 (quoting *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997)).

The cases on which plaintiffs rely are inapposite. In *Philadelphia National Bank v. Dow Chemical Co.*, the plaintiff served thirteen separate interrogatories seeking the factual basis for each of the defendant's "thirteen affirmative defenses." 106 F.R.D. 342, 344 (E.D. Pa. 1984). Here, by contrast, plaintiffs have served *two* interrogatories seeking "all facts" in support of *all* of defendants' affirmative defenses. Such requests are overbroad, improper, and often an effort to evade the numerical limitation on interrogatories imposed by the Federal Rules. *See, e.g.*, *Big Baboon*, 2010 WL 11459799, at *3 (concluding that an interrogatory "seeking all facts in support of all affirmative defenses" was "both overbroad and included improper subparts"). In *ACLU v. Gonzales*, the court was remarking on the propriety of contention interrogatories generally, not the propriety of the type of overbroad "blockbuster" interrogatories at issue here. 237 F.R.D. 120, 124 (E.D. Pa. 2006).[17] But defendants have not objected to contention interrogatories as such; indeed, we responded in detail to each of the seven more tailored ones plaintiffs served here. But these two interrogatories are a different species given their significant overbreadth.

---

[17] Indeed, the language plaintiffs quote from *Gonzales* comes from an earlier case, *Hockley v. Zent, Inc.*, 89 F.R.D. 26, 31 (M.D. Pa. 1980), where the court explained that the 1970 amendments to the Federal Rules of Civil Procedure clarified that contention interrogatories were generally permissible, which was a change from the more restrictive approach pre-amendment courts had taken. Neither *Gonzales* nor *Hockley* provide support for Interrogatory Nos. 19 or 25.

October 26, 2020
Page 19

Plaintiffs' request as to Interrogatory No. 19 also fails for an additional reason: defendants did respond to the Interrogatory "as phrased." It may well be that plaintiffs now wish that they drafted this interrogatory differently, or better. But defendants responded to the interrogatory that was propounded. Interrogatory No. 19 states, "*If you contend the truth of any alleged misrepresentation in the Complaint was known to the market at the time it was made*, identify the statement and list all facts, witnesses, and documents in support of your contention." Ex. B at 23 (emphasis added). Defendants contend that each of the "alleged misrepresentations in the Complaint" were not misrepresentations at all. That is, defendants contend that each of those alleged misrepresentations was a *truthful statement*. As a result, and as defendants responded, the truth of each of the statements was known to the market at least as of the time it was made.[18] *Id.* at 24.

It may be that Interrogatory 19 reflects a simple drafting error: one in which plaintiffs intended to ask about *omissions*, rather than misstatements. Plaintiffs are capably represented and defendants have no obligation to answer hypothetical interrogatories that were not propounded. Simply put, if plaintiffs wanted a different response, they should have propounded a different interrogatory.[19]

## III.   PLAINTIFFS' REPLY

Plaintiffs provide this brief reply in response to Defendants' arguments *supra*.

### A.   Rog Nos. 13 and 15

Plaintiffs have served timely interrogatories seeking affirmative representations from Defendants about: (i) the discounts Novo paid to secure formulary access for Tresiba; and (ii) the

---

[18] Indeed, the interrogatory is objectionable because any substantive response requires admission of a false premise—i.e., that the truth of a *false statement* was known to the market. Defendants dispute that any of the allegedly actionable statements in plaintiffs' complaint were in fact false. For this reason as well, defendants should not be required to provide any further response to this interrogatory.

[19] There is also no basis for plaintiffs' request that the Court "deem the defense waived" if the Court overrules defendants' objections. *Supra* at 7. In *Jordan v. Mirra*, the case plaintiffs cite, the court ordered the defendant to supplement certain interrogatory responses within 60 days. 2019 WL 2127788, at *19 (D. Del. Feb. 27, 2019). Only if the defendants failed to do so did the court state that it would preclude the defendant from offering certain evidence at trial. *Id.* Here, defendants believe they have satisfied their obligation as to all interrogatories 19 and 25 (and all other interrogatories that are the subject of this submission). However, if the Court disagrees, defendants should be permitted an opportunity to provide whatever supplemental information the Court may deem appropriate before the extreme and prejudicial measure of striking a defense is taken.

October 26, 2020
Page 20

formulary positioning of Tresiba during the Class Period.   Plaintiffs sent these interrogatories after spending nearly two years reviewing Defendants 5.5-million-page production and finding no clear answers.  To assist with Defendants' responses, Plaintiffs have created and shared two simple one-page charts, attached hereto as Appendices A and B, that Defendants can utilize to answer the interrogatories in a satisfactory way.  Defendants do not contend that filling in the charts creates any burden at all.  Yet, inexplicably, Defendants contend that Plaintiffs should forego clear responses from Defendants and instead accept a smattering of Bates numbers they admit do not answer the questions posed.  The Court should order Defendants to provide direct responses, as the Federal Rules require.

### 1.      Rog No. 13

Defendants concede that Novo agreed to make significant rebate payments to PBMs—for established drugs already on the market—in exchange for putting the Company's new drug, Tresiba, on their formularies.  Yet, Defendants refuse to provide a direct answer to Rog No. 13, which asks Defendants to quantify these discounts, which were material financial concessions PBMs required in order to make Tresiba available to patients.  Defendants' argument *supra* reveals how they intend to weaponize the ambiguity they have created by withholding direct answers to this interrogatory.  Defendants point to vague, unquantified information about discounts, and then use that opacity to support dramatic overstatements about the success of Tresiba while inhibiting Plaintiffs' ability to contradict that claim with clear and complete information.

For instance, Defendants claim that Novo has "eviscerate[d] plaintiffs' case" with evidence that Tresiba "obtain[ed] a list and net premium . . . over Levemir," "exceed[ed] internal sales expectations," and "achieve[d] better-than-forecasted access."  *Supra* at 8, 11.   But even the incomplete information Plaintiffs have gathered about these discounts lays bare Defendants baseless claims.  The documents identified by Defendants indicate that ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████ Ex. GG (Bates stamped discovery document).  In other words, ███████████████████████████████████████████████████████████████████████████ ██████████████████████  This fact reveals that with respect to at least two of the major formularies, Tresiba was not a success in 2016, and in fact that it contributed to - rather than mitigated - the hugely disappointing financial results that sent Novo's ADR price plummeting and cost investors billions of dollars.

The fact that Novo had to take a net loss on Tresiba in order to secure formulary access with Humana and CVS also strongly suggests that it had to do the same with respect to other PBM formularies – Rog No. 13 simply seeks to complete the picture.  Indeed, Novo admits that it paid

October 26, 2020
Page 21

similar discounts to gain access for Tresiba on other formularies, but complains that it "is not feasible" to quantify the amounts of these discounts. *Supra* at 13. If Novo truly does not know the amount of rebates it paid to PBMs for other drugs in order to secure access for Tresiba, then it should provide the information it knows and then give an affirmative representation about its lack of knowledge on the rest. This is standard practice for interrogatories. *See, e.g., Rega v. Beard*, No. 08-156, 2010 WL 2404420, at *2 (W.D. Pa. June 10, 2010) ("Defendants may, in fact, properly respond that they do not recall, or that they lack the requested information, so long as they indicate what efforts they made to locate available information, or indicate a reason why such an effort was necessary.").

Defendants have not explained what they have done to seek the information requested, or provided adequate information supporting their claim that it cannot be found.  But if they persist in their assertion that Novo does not possess the information to provide a full and complete answer, Defendants should fill out the chart provided as Appendix A with the available information and then include the following representation, or something similar:

> Defendants have conducted a diligent search of Novo's records in an effort to obtain a full response to this interrogatory.  Defendants' search included the following efforts:  . . . .  This chart represents all of the known Rebates related to other Novo Drugs that Novo paid to secure access for Tresiba during the Class Period.  In addition to the amounts represented in the chart, Defendants believe that Novo paid additional Rebates related to other Novo Drugs to secure access for Tresiba on various Part D and Commercial formularies, but that these amounts were not recorded and cannot be quantified at this time.

In the absence of a complete response, this representation is important and necessary.  It is clear that Defendants will attempt to elicit testimony and argue at summary judgment and trial (as they did, *see supra*) that Tresiba's 2016 launch was an unmitigated success.  Plaintiffs should not be forced to respond to Defendants' arguments and cross-examine witnesses with one arm tied behind their back.  Instead, Plaintiffs should be provided with a clear response to Rog. No. 13 that they may use to show: (1) the level of discounts on other drugs Defendants were able to find; (2) that Defendants have not accounted for all of the discounts Novo paid to secure Tresiba's access; and (3) Defendants do not actually know whether (or by how much) Tresiba contributed to or detracted from the bottom line when all discounts were included.

### 2.      Rog No. 15

Rog No. 15 requests basic information about the formulary positioning of Tresiba during the Class Period.  Defendants ***concede*** that the documents they identified in response do not provide complete answers and include conflicting information about the formulary positioning - which Defendants classify as a "typographical error" - that further obscures their murky responses.

October 26, 2020
Page 22

Defendants then suggest that ***Plaintiffs*** should have "run further searches through Defendants' production" to fill in the gaps and clarify the inconsistencies created by Defendants' inappropriate response. *Supra* at 15, 16. But as the court held in *Jordan v. Mirra*:

> It is not Mr. Mirra's obligation to review Ms. Jordan's document production and guess which values may form the basis of her breach of warranty claim. Rather, Ms. Jordan must provide narrative responses to Mr. Mirra's contention interrogatories to set the stage for the parties' upcoming trial. To the extent Ms. Jordan needs to amend her answers following expert discovery, she may do so upon order of court.

2019 WL 2127788, at *18 (D. Del. Feb. 27, 2019).

Here, too, Defendants' attempt to create ambiguity about basic facts in this case should be rejected, and Defendants should be required to provide a narrative response to Plaintiffs' straightforward interrogatory.

**B.      Rog Nos.  17-24**

Rog Nos. 17-24 ask Defendants to identify the witnesses that support certain specific contentions Defendants have made or are expected to make.  Parties commonly request the identity of witnesses as part of contention interrogatories.  Indeed, Defendants' own late-served contention interrogatories in this case are no exception.  Ex. HH, (Defendants' Second Set of Interrogatories to Plaintiffs) ("Defs' Rogs") Nos. 14-22 (Defendants asking Plaintiffs to "list all facts, witnesses, and documents" in support of various contentions).

Rather than address the interrogatory directly, Defendants change the question.  They argue that they should not have to formally designate their trial witnesses pursuant to Fed. R. Civ. P. 26(a)(3)(B) until "30 days before trial."  But Plaintiffs do not seek Defendants' trial witness list. Rather, as clearly articulated in Rog Nos. 17-24, Plaintiffs ask that Defendants reveal the witnesses that they claim support certain discrete contentions they have made.  As with all interrogatories, Defendants are "required to fully and specifically answer the interrogatories based upon his present knowledge, information, or belief."  *Watkinson v. Great Atl. & Pac. Tea Co.*, No. 82-3312, 1984 U.S. Dist. LEXIS 24938, at *11 (E.D. Pa. Feb. 24, 1984).  If new information comes to light between now and trial that warrants the addition of previously undisclosed parties to the trial witness list, then the parties can address that at the time.  If Defendants are unwilling to relay this information, then they should not be able to ambush Plaintiffs at trial with witnesses they never disclosed during discovery despite direct requests to do so.

October 26, 2020
Page 23

### C.      Rog Nos. 19 and 25

Rog Nos. 19 and 25 seek evidence underlying Defendants' affirmative defenses.  Defendants flatly refuse to answer the interrogatories, citing *Grynberg v. Total S.A.*, an out-of-Circuit opinion that discourages "blockbuster interrogatories."  The *Grynberg* court defined "blockbuster" interrogatories as those that seek "all material facts," "all material persons who have knowledge of those facts," and "material documents and other tangible things" that support "each denial of a material allegation and each affirmative defense in your pleadings."  No. 03-cv-01280-WYD-BNB, 2006 WL 1186836, at *5 (D. Colo. May 3, 2006).  Defendants suggest that the same standard applies in this district, and ask the Court to block the "overbroad 'blockbuster interrogatories at issue here." *Supra* at 18.  Specifically, they suggest that Plaintiffs would need to serve one interrogatory per affirmative defense or otherwise narrow the ask in order to deserve an answer.

Notwithstanding the fact that *Grynberg* does not control this Court, Plaintiffs' interrogatories are much narrower than the interrogatories at issue there, and objectively satisfy the standard Defendants seek to impose.  Rog No. 19 asks for the "facts, witnesses, and documents" underlying a ***single affirmative defense*** - Defendants' truth-on-the-market defense - just as Defendants concede is appropriate.[20]   Rog No. 25 covers all Defendants' affirmative defenses but (unlike the *Grynberg* interrogatories) does not seek information concerning each denial in Defendants' 73-page answer. Instead, the interrogatory is confined to Defendants' affirmative defenses, and further substantially narrows the ask from all "facts, witnesses, and documents" in support of those defenses, to just the "facts."  The law is clear in this Circuit that Plaintiffs are entitled to the facts underlying Defendants' affirmative defenses. *Phila. Nat'l Bank v. Dow Chem. Co.*, 106 F.R.D. 342, 344 (E.D. Pa. 1984).

With fact discovery over, Defendants should indicate which affirmative defenses are still in play, and describe the facts they contend provide a basis for those affirmative defenses.  Defendants' insistence that doing so would be unduly burdensome is baffling.  Surely, they know by now which defenses they intend to pursue, and the factual basis for them; indeed, they should have known the basis for each defense when they were included in Defendants' responsive pleading.

---

[20]   Defendants disparage Plaintiffs for using the word "misstatements," arguing they should have said "omissions."   But, in the securities fraud context, the term "misstatement" encompasses statements that "omit[] material facts." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 189 (2015).  In any event, if Defendants had doubts about what the interrogatory requested, they could have asked for clarity during the parties' October 19 Meet and Confer.  They failed to do so.

October 26, 2020
Page 24

Respectfully submitted,

By:   s/ Michael R. Griffinger
Michael R. Griffinger
Brian J. McMahon
Samuel L. Portnoy
Calvin K. May, Esq.
**GIBBONS P.C.**
One Gateway Center Newark
Newark, New Jersey 07102-5310


James P. Rouhandeh
David B. Toscano, Esq.
Patrick W. Blakemore, Esq.
Daniel T. Finnegan, Esq.
Daniel S. Magy, Esq.
Anat Jordan Schraub, Esq.
Samantha J. Pfotenhauer, Esq.
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, New York 10017

Neal A. Potischman
Andrew Yaphe, Esq.
**DAVIS, POLK & WARDWELL LLP**
1600 El Camino Real
Menlo Park, California, 94025

***Attorneys for Defendants Novo Nordisk A/S,***
***Lars Rebien Sørensen, Jakob Riis and***
***Jesper Brandgaard***

By:   s/ Christopher A. Seeger
Christopher A. Seeger
David R. Buchanan
Jennifer Scullion
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660


Donald A. Ecklund
Michael A. Innes
**CARELLA, BYRNE, CECCHI,**
  **OLSTEIN,BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068

***Co-Liaison Counsel***

Spencer A. Burkholz
Luke O. Brooks
Ryan A. Llorens
Eric I. Niehaus
Angel P. Lau
Jeffrey J. Stein
**ROBBINS GELLER RUDMAN**
  **& DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

Samuel H. Rudman
Robert M. Rothman
**ROBBINS GELLER RUDMAN**
  **& DOWD LLP**
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

October 26, 2020
Page 25

*Co-Lead Counsel for the Class*

Salvatore J. Graziano
Katherine M. Sinderson
Adam D. Hollander
**BERNSTEIN LITOWITZ BERGER &
   GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212/554-1400
212/554-1444 (fax)

*Co-Lead Counsel for the Class*

Steven B. Singer
Kyla J. Grant
**SAXENA WHITE P.A.**
4 West Red Oak Lane, Suite 312
White Plains, NY 10604
Phone: (914) 437-8551
Fax: (888) 631-3611

Brandon T. Grzandziel
**SAXENA WHITE P.A.**
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Phone: (561) 394-3399
Fax: (561) 394-3382

*Member of Plaintiffs' Executive Committee*