January 15, 2021

VIA CM/ECF<br>UNDER SEAL

Hon. Lois H. Goodman
United States Magistrate Judge
District of New Jersey
402 East State Street, Courtroom 7E
Trenton, NJ  08608

  Re: *In re Novo Nordisk Sec. Litig.*, No. 17-cv-209-BRM-LHG (D.N.J.)

Dear Judge Goodman:

  The parties submit this joint letter in accordance with Local Rule 37.1(a).  The parties are prepared to discuss these issues with the Court at the telephonic status conference scheduled for January 19, 2021.[1]

## I. PLAINTIFFS' AFFIRMATIVE POSITION

  At the status conference on November 5, 2020 (the "November 5 Conference"), this Court ordered Defendants to supplement their responses to interrogatory nos. 13 and 15 from Plaintiffs' Second Set of Interrogatories to Defendants (the "Rogs") (ECF No. 221-3), dated August 21, 2020 – and, during the conference, Defendants agreed.  But Defendants' supplemental responses, served on November 30 and December 4, 2020 (the "Supplemental Responses") do nothing to resolve the deficiencies in Defendants' Responses and Objections to the Rogs (the "Initial Responses") (ECF No. 221-4), dated October 12, 2020, and raise more questions than they answer.[2]

---

[1] The parties met and conferred telephonically, and also exchanged correspondence on December 17, 2020, December 18, 2020, January 4, 2021, and January 5, 2021.  "Defendants" refers to defendants Novo Nordisk A/S ("Novo" or the "Company"), Lars Rebien Sørensen, Jesper Brandgaard, and Jakob Riis.  Further, all "Ex.__" citations are to Exhibits attached hereto and all citations are omitted and emphasis added unless otherwise indicated.

[2] The Supplemental Responses consist of the supplemental response to Rog. No. 15, served on November 30, 2020, attached hereto as Ex. A (also included in Ex. A is an email from Defendants dated November 30, 2020), and the supplemental response to Rog. No. 13, served on December 4, 2020, attached hereto as Ex. B.

**Error! Unknown document property name.**

Hon. Lois H. Goodman
January 15, 2021
Page 2

4842-8610-5046.v1

Accordingly, and as the Court indicated during the November 5 Conference would properly resolve this dispute, Plaintiffs respectfully request a Rule 30(b)(6) deposition on three discrete topics, in order to clarify the pervasive ambiguity from Defendants' Supplemental Responses: (1) the specific rebates Novo paid in connection with sales of other drugs in its portfolio in order to secure formulary access for Tresiba; (2) related budgetary adjustments; and (3) clarification of Defendants' supplemental response to Rog. No. 15.

### A. Legal Standard

It is axiomatic that the purpose of discovery is to make a trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible" (*United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)), as well as to narrow and clarify the issues in dispute. *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). Accordingly, controlling authorities require parties to provide true, express, responsive, complete, and candid answers to interrogatories. *See* Fed. R. Civ. P. 33(b)(1) (a party must answer each interrogatory "fully"); *see also Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D. Pa. 1996). If a party is unable to supply the requested information, the party may not simply refuse to answer, but must state under oath that he is unable to provide the information and "set forth the efforts he used to obtain the information." *Milner v. Nat'l Sch. of Health Tech.*, 73 F.R.D. 628, 632 (E.D. Pa. 1977); 4A James W. Moore, *Moore's Federal Practice*, ¶¶33.25, 33.26 (2d ed. 1996).

Rule 33(d) allows responding parties to answer interrogatories by referring to documents, but only "if the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed. R. Civ. P. 33(d). This option is not available where the responding party has "superior knowledge of and facility with the business records referenced." *Graco, Inc. v. PMC Glob., Inc.*, No. 08-1304 (FLW), 2011 WL 1114233, at *36 (D.N.J. Mar. 24, 2011). Indeed, "'Rule 33(d) is not an available alternative if an interrogatory can be responded to more readily and conveniently by written answer.'" *MacGillivray v. Consol Rail Corp.*, No. 91-0774, 1992 WL 57915, at *2 (E.D. Pa. Mar. 17, 1992).

### B. Interrogatory No. 13

In Rog No. 13, Plaintiffs requested that Defendants identify certain specific details about rebates Novo provided on its other drugs in order to secure formulary access for Tresiba, including the specific amounts of all such rebates, and the drugs, PBMs or other payers, and formularies to which they applied. ECF No. 221-3. In their Initial Response on October 12, 2020, Defendants invoked Rule 33(d) and provided an incomplete list of putative exemplar documents in lieu of providing affirmative answers. In particular, Defendants ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Hon. Lois H. Goodman
January 15, 2021
Page 3

4842-8610-5046.v1

▮ ECF No. 221-4 at 8-9.  However, as Plaintiffs noted in their portion of the October 26, 2020 Joint Letter (ECF No. 221), the referenced documents did not provide any information about: (1) the formulary; (2) the amount of the rebate (by percentage of list price) that Novo agreed to pay in order to secure formulary access for Tresiba; and (3) the PBM or other payer to which Novo paid the rebate.  ECF No. 221 at 3-5.  Defendants also referred to documents ▮

ECF No. 221-4 at 9. ▮

Unfortunately, the documents that Defendants referenced in their Initial Responses to Rog No. 13 do not cover all relevant PBMs and formularies, as Plaintiffs requested.  Defendants have since claimed that they cannot make similar calculations for other PBMs and formularies, though they have not explained why that is the case.  Instead, Defendants have explained only that the ▮ ECF No. 221 at 13.  In response to that representation, Plaintiffs suggested, consistent with the Court's guidance during the November 5 Conference, that if "Novo [did] not possess the information to provide a full and complete answer," then Defendants should provide an affirmative representation, including complete information about the efforts they undertook to answer Rog No. 13 and the information they do not possess, which ostensibly prevents Defendants from providing a complete response to Rog No. 13.  *Id.* at 21.  For Defendants' and the Court's benefit, Plaintiffs provided an exemplar representation that Defendants could use as a model.  *Id.*  During the November 5 Conference, the Court asked Defendants whether they could provide such a representation, and Defendants agreed to try.  The Court also mentioned, *sua sponte*, that a Rule 30(b)(6) deposition would likely appropriately resolve any outstanding ambiguities.

Following the November 5 Conference, the parties met-and-conferred several times, and in each instance discussed whether Defendants would provide an affirmative representation or, alternatively, would consent to the Rule 30(b)(6) deposition that the Court raised.  With regard to the affirmative representation, Plaintiffs repeatedly requested that the parties talk through the language in Plaintiffs' proposed representation to identify what portions Defendants could and could not make.  Defendants refused to engage or to provide any representation, and never articulated which portions it disagreed with.

Hon. Lois H. Goodman
January 15, 2021
Page 4

4842-8610-5046.v1

On December 4, 2020, Defendants served a supplemental response that made no effort to provide the affirmative representations requested by Plaintiffs and contemplated by the Court. Instead, Defendants' supplemental response to Rog No. 13 simply recited the same "rebate agreements" referenced in its deficient Initial Responses, along with page citations. Ex. B. Accordingly, the supplemental response to Rog No. 13 is deficient for all the same reasons as the Initial Response. During subsequent meet-and-confer calls and emails, Defendants refused to provide any reason why they could not provide the requested affirmative representation, claiming only that it would be "inappropriate" and that Plaintiffs' proposed language was "oversimplified." Ex. C at 1. In response, Plaintiffs requested that Defendants agree to produce a Rule 30(b)(6) witness so that Plaintiffs could investigate and ascertain what responsive information Defendants possess and can provide (and what they cannot, and why), and thereby clarify the complexity and nuance Defendants claim prevent them from making a representation. Defendants declined. *Id.* at 3-4.

Plaintiffs' proper Rog No. 13 remains unanswered. Because Defendants refuse to make an affirmative representation as contemplated during the November 5 Conference or otherwise provide all requisite sworn or verified information in response to Rog No. 13, Plaintiffs respectfully request an order directing Novo to produce a corporate representative under Rule 30(b)(6) on two narrowly tailored topics:

1. The rebates Novo paid on other drugs to secure formulary access for Tresiba, including the payer, formulary, drug, and quarter-by-quarter amount; and

2. With respect to "budgetary adjustments": (a) the relationship between the budgetary adjustments and leveraged rebates; (b) the method and reasons for calculating budgetary adjustments; and (c) all known budgetary adjustments, including the payer, formulary, drug, and quarter-by-quarter amount of such adjustments.

Plaintiffs reserve all rights with regard to Rog No. 13, including concerning any attempt by Defendants to introduce evidence responsive to Rog No. 13 that Defendants nevertheless have not produced, or to make arguments concerning the absence in the record of such information.

**C.     Interrogatory No. 15[3]**

---

[3] NOTE TO THE COURT: Shortly before this filing, the parties resolved their dispute regarding Rog No. 15, so the Court need not consider these arguments.

Hon. Lois H. Goodman
January 15, 2021
Page 5

4842-8610-5046.v1

      In Rog No. 15, Plaintiffs requested that Defendants provide straightforward information about Tresiba's "Level of Access," or formulary positioning and restrictions, for each major PBM in 2016 and the first quarter of 2017. ECF No. 221-3 at 6. Though Defendants could have answered the interrogatory by providing information readily in their possession concerning the tier on which Tresiba was placed in each PBMs' formularies and the terms of any applicable restrictions, Defendants chose again to reference documents that provided only inaccurate and inconsistent responses to the interrogatory. Furthermore, parroting their response to Rog No. 13, Defendants stated that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ECF No. 221-4 at 11.

      On November 30, 2020, Defendants provided their supplemental response to Rog No. 15 via email, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. A. But, as an apparent caveat, Defendants represented that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* Defendants have the information to provide an unequivocal response to this straightforward question. As written, however, Defendants' response creates ambiguity as to whether the documents they cite – produced after the close of discovery – reflect accurately the information sought. Furthermore, prior to that response, and despite the information's apparent relevance to this Action and to multiple discovery requests that Plaintiffs have served on Defendants throughout this litigation, Defendants had never mentioned ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Plaintiffs have since asked Defendants if they can represent that the information obtained from these sources is true and accurate, but Defendants have thus far failed to do so.

      Accordingly, Plaintiffs respectfully request an order directing Novo to produce a corporate representative under Rule 30(b)(6) to explain Defendants' responses to Rog No. 15, including the information sought by Rog No. 15, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and Novo's understanding of and reliance on the information provided in response to Rog No. 15.

## II. DEFENDANTS' RESPONSIVE POSITION

      The Court should reject plaintiffs' request for a 30(b)(6) deposition of Novo Nordisk on their proposed topics relating to defendants' supplemental responses to Interrogatory Nos. 13 & 15. Contrary to plaintiffs' position, defendants' supplemental responses to Interrogatory Nos. 13 & 15 fully comply with defendants' obligations under the Federal Rules, as well as this Court's guidance

Hon. Lois H. Goodman
January 15, 2021
Page 6

4842-8610-5046.v1

during the November 5 Conference. Indeed, the efforts that defendants have made to provide plaintiffs with robust and detailed information in response to these interrogatories are more than sufficient. When combined with the fact that Novo Nordisk has already provided corporate testimony from six different witnesses, including on these precise topics, plaintiffs have no credible basis to demand yet another bite at the apple to fill supposed gaps in the discovery record that they had literally years to assemble.

### A.  Novo Nordisk's Corporate Testimony to Date

In September 2019, plaintiffs served a 30(b)(6) notice that contained 31 topics, several including as many as 16 subtopics. Ex. D. Plaintiffs made the decision to take testimony of corporate representatives in advance of taking testimony from percipient witnesses. Ex. E. Defendants agreed to designate witnesses for substantially all of the topics covered. Before COVID-19 resulted in a temporary halt of discovery, plaintiffs took the depositions of three corporate representatives, including two depositions in Copenhagen. Indeed, three of the first five depositions that plaintiffs took in this case included corporate testimony. When discovery closed last fall, plaintiffs had taken corporate testimony from the following Novo Nordisk corporate representatives:

- Mads Thomsen – Executive Vice President & Chief Science Officer

- Hans Rommer – Vice President of Insights & Forecasting

- Jameson Ivens – Associate Director of Sales Reporting and Forecasting (2014-2016); Director of FP&A Sales Reporting & Forecasting (2016-2017)

- Steve Albers – Executive Director of Market Access (2014-2016); Vice President of National Accounts (2016-2017)

- Peter Hugreffe Ankersen – Head of Investor Relations

- Tim Slee – Corporate Vice President of Global Market Access

The list of 30(b)(6) topics encompassed by these corporate representatives was expansive and included (i) "Novo's negotiations and Communications with PBMs about rebates or formulary

4842-8610-5046.v1

access"; (ii) "Novo's ability to obtain premium pricing for Tresiba"; (iii) numerous reports and trackers related to Tresiba®'s market access, as well as the insulin market more generally; (iv) the prices of Novo Nordisk's products; and (v) Novo Nordisk's internal forecasting and budgeting. Ex. D at 6, 8-10. As is apparent from looking at the notice, these topics were designed to cover the waterfront of this case, and did so. They certainly subsumed the particular threads for which plaintiffs now claim to need yet another 30(b)(6) deposition.

In addition to the six corporate representatives who have testified for Novo Nordisk, plaintiffs have taken nearly two dozen depositions of other fact witnesses, 11 of which occurred *after* plaintiffs served Interrogatory No. 13. During many of these depositions, plaintiffs asked about the specific topics for which they now claim to need further corporate testimony. *See, e.g.*, ECF No. 221-25, Bøggild Dep. Tr. 174:16-175:20, 185:5-187:3; ECF No. 221-27, Albers Dep. Tr. 190:13-191:7; Ex. F, Golankiewicz Dep. Tr. 162:19-165:24; Ex. G, Langa Dep. Tr. at 144:14-147:15. And in some of these depositions, plaintiffs showed the witnesses documents that describe the very concepts that plaintiffs now claim require further clarification. *See, e.g.*, Ex. H at -106-108; Ex. I at -501.

### B. Interrogatory No. 13

In light of the extensive opportunities for discovery of these issues, including corporate testimony that plaintiffs already have taken from multiple witnesses, plaintiffs should not now be heard to complain about the state of the record and supposed "ambiguity" surrounding these topics. Plaintiffs are simply not entitled to repeated depositions on topics already covered or limitless opportunities to fill supposed gaps that they have had ample opportunity to address.

Under the Federal Rules, plaintiffs "must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2) . . . if the parties have not stipulated to the deposition and the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the plaintiffs . . ." or "the deponent has already been deposed in the case." Fed. R. Civ. P. 30(a)(2)(A). Both circumstances are present here. As stated above, plaintiffs have already deposed Novo Nordisk. Moreover, the parties stipulated in 2019 that plaintiffs would be able to take 22 depositions of current or former Novo Nordisk employees in this case, *see* ECF No. 221-34, and they have already taken those 22 depositions.[4]

---

[4] On January 29, 2021, plaintiffs will depose Jesper Høiland (*see* ECF No. 236), which will be their twenty-third deposition of a current or former Novo Nordisk employee.

Hon. Lois H. Goodman
January 15, 2021
Page 8

4842-8610-5046.v1

In deciding whether to grant or deny leave, "[a] court should apply the standards enunciated in [Rule] 26(b)(2)." *Melhorn v. New Jersey Transit Rail Operations, Inc.*, 203 F.R.D. 176, 180 (E.D. Pa. 2001). Rule 26(b)(2) gives courts the power to limit discovery for several reasons, including where "the discovery sought is unreasonably cumulative or duplicative" or "the person seeking discovery has had ample opportunity already to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C).

Plaintiffs have not established good cause to seek additional discovery on Interrogatory No. 13 for two independent reasons. First, as set forth above, plaintiffs have had ample opportunities to obtain corporate testimony related to the terms of Tresiba®'s pricing and market access from prior deponents. Second, and even more clearly, defendants' responses to Interrogatory No. 13—including the most recent supplement served on December 4, 2020—fully satisfy defendants' obligations under the Federal Rules.

Interrogatory No. 13 is plain. It asks Novo Nordisk to identify "all Rebates relating to Novo Drugs other than Tresiba that Novo paid as part of an agreement to secure formulary access for Tresiba," including the "amount of Rebate (by percentage of list price) that Novo agreed to pay in order to secure formulary access for Tresiba." Ex. B at 2. On its face, this interrogatory asks defendants to identify agreements in which Novo Nordisk provided an increased discount (in the form of a rebate) on its products other than Tresiba® in exchange for Tresiba®'s formulary access (at a level that would not be offered absent the discount). In other words, plaintiffs have asked for evidence of any quid pro quo relationship between Tresiba®'s access and rebate enhancements on other products.

In defendants' initial response to plaintiffs, defendants relied on Rule 33(d) and directed plaintiffs to the universe of 300+ rebate agreements that defendants had produced in this matter. *See* ECF No. 221-4 at 8. As defendants' explained in their portion of the joint letter prior to the November 5 Conference, defendants believed that the relevant information was equally available to both parties in those agreements. ECF No. 221 at 11-14.

At the November 5 Conference, the Court agreed that it was proper to direct plaintiffs to documents in answering this interrogatory but directed defendants to do more than identify examples of such documents. In particular, the Court concluded that defendants were not permitted to refer plaintiffs only to exemplar documents. Instead, the Court stated that in leveraging Rule 33(d) to respond to Interrogatory No. 13, defendants needed to specifically identify all of the rebate agreements responsive to the interrogatory and identify the page numbers of the agreements that contained the relevant information.

4842-8610-5046.v1

In their supplemental response to Interrogatory 13, defendants did exactly that. Defendants conducted a good faith review of all rebate agreements produced in discovery and identified every agreement that contained a term reflecting the type of quid pro quo trade that is the subject of the request. Specifically, defendants reviewed the 300+ rebate agreements produced in this litigation to determine which agreements reflected "Rebates relating to Novo Drugs other than Tresiba" that Novo Nordisk agreed to pay "as part of an agreement to secure formulary access for Tresiba." Ex. B at 1. In the supplemental response, defendants cited the responsive agreements, including by providing pin cites to the relevant pages. *Id.* at 2. These rebate agreements contain the identity of the payer, the relevant formulary and/or channel, the specific terms of any provision responsive to Interrogatory No. 13, and the applicable term of the rebate agreement—that is, they contain the precise information the interrogatory calls for.

It is not clear whether plaintiffs have even reviewed the documents identified in defendants' supplemental response. Plaintiffs complain that defendants supposedly have done nothing other than "*simply recit[ing] the same 'rebate agreements' referenced in its deficient Initial Responses*, along with page citations." *Supra* at 3 (emphasis added). But that statement is factually, and patently, wrong. Defendants did not simply add pin cites to the exemplars that they previously identified. As is clear from defendants' supplemental response, defendants reviewed the universe of agreements at issue and specifically identified *all agreements* that contain the relevant rebate provisions, as directed by the Court.[5]

Plaintiffs' secondary criticism is that defendants have not provided plaintiffs with the specific amounts of the rebate payments Novo Nordisk made on other products in order to secure Tresiba®'s access. But this argument fails to take into account defendants' detailed description of the rebate adjudication process provided in the prior joint letter. *See* ECF No. 221 at 11-14. Defendants long ago produced to plaintiffs ███████████████████████████████████ As defendants explained previously, and as plaintiffs know from that database, ███████████████████ ███████████████████████████ Defendants therefore were not obligated to include that information in an interrogatory response. *See Bayview Loan Servicing, LLC v. Boland*, 259 F.R.D. 516, 518-19 (D. Colo. 2009) ("[I]n responding to interrogatories, 'a party cannot ordinarily be forced to prepare its opponent's case.'") (quoting 8A Wright, Miller & Marcus Fed. Prac. & Proc. § 2174)); *Lapeire v.*

---

[5] Although defendants believe that they have identified all of the rebate agreements responsive to Interrogatory No. 13, they will further supplement their response to Interrogatory No. 13 if additional rebate agreements are identified. *See* Fed. R. Civ. P. 26(e).

Hon. Lois H. Goodman
January 15, 2021
Page 10

4842-8610-5046.v1
*Volkswagen AG*, 1989 WL 52427, at *1 (E.D. Pa. May 15, 1989) ("Defendants certainly are not required to compile or analyze information where no previous compilation or analysis has been done.").

Nevertheless, contrary to the implication in plaintiffs' portion of this letter—as well as the premise of their proposed, one-sided representation included in the last letter—plaintiffs are free to try to estimate the amount of these rebates, if they so choose. Indeed, plaintiffs have access to ████████████████████████████████████████ As explained in defendants' prior submission, defendants have provided substantial discovery to plaintiffs regarding this issue, including (1) ████████████████████████████████████████████████████████████████████████████████████████████████████████ ECF No. 221 at 10-11; *see also* ECF Nos. 221-14, 221-15, 221-16. Accordingly, if plaintiffs wish, they can attempt to perform an analysis exploring—based on the claims data and the contracts identified in the supplemental response—whether some portion of rebates actually paid by Novo Nordisk on drugs other than Tresiba® correspond to contract terms that offered additional rebates to secure Tresiba®'s access. But that is an exercise that would require the same burden for either side, because Novo Nordisk does not perform such calculations in the ordinary course. Importantly, this is also not the type of information where a 30(b)(6) deposition would move the needle because Novo Nordisk cannot be expected to prepare a witness to testify as a corporate representative regarding analyses that Novo Nordisk did not perform in the ordinary course of business.

Plaintiffs also contend that they are entitled to a 30(b)(6) deposition because defendants "refuse to make an affirmative representation as contemplated during the November 5 Conference." *Supra* at 4. That is also incorrect, both in terms of describing what happened at the conference and in terms of what the Federal Rules require. Defendants never represented that they would make such a representation, nor are they able to do so. During the November 5 Conference, defendants stated, as part of a good faith effort to minimize disputes, that they would *explore* whether they could make an affirmative representation along the lines that plaintiffs requested. Defendants explained that they were doubtful that they would able to do so. The Court recognized that defendants would have to consult internally on this issue. After considering plaintiffs' proposed representation following the November 5 Conference, defendants determined that they could not make the representation plaintiffs request—which asks the Company to confirm that "Novo paid additional rebates related to other Novo Drugs to secure access for Tresiba on various Part D and Commercial formularies, but that these amounts were not recorded and cannot be quantified at this time." For the reasons set forth above and in the prior joint letter, defendants will not agree to provide an affirmative representation that there is more out there to discover on this topic, let alone that, as plaintiffs request, the

4842-8610-5046.v1

information that is purportedly missing supports plaintiffs' theory of the case. Neither presumption is fair or accurate. The extensive record on these issues does not require supplementation. Nor is there a basis in the Federal Rules to require defendants to make such a representation.

Finally, plaintiffs contend that they need an additional 30(b)(6) deposition ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ in the Initial Responses. *Supra* at 4. This argument also fails. First, plaintiffs have already taken depositions that have covered this topic. *See, e.g.*, Ex. ECF No. 221-25, Bøggild Dep. Tr. at 185:5-187:3. Moreover, as set forth in defendants' portion of the October 26, 2020 joint letter (ECF No. 221 at 13-14), defendants have already provided plaintiffs with ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Ex. J at -174. There is nothing else to discover on this. Plaintiffs have all of the relevant information related to this adjustment, including the specific items that plaintiffs claim to need via a "narrowly tailored" interrogatory, *supra* at 4:

- ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (ECF No. 221-9);

- ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*See, e.g.*, Ex. K at 35, 39; Ex. L at 25, 29, 37); and

- ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (ECF No. 221-29).

Accordingly, plaintiffs are not entitled to anything else regarding this issue in the form of an interrogatory response or otherwise. Nor should plaintiffs have the opportunity to take yet another 30(b)(6) deposition on this issue when they have already had the opportunity to depose a corporate witness regarding the budget, as well as take individual testimony regarding the same. *See supra* at 5-7. Defendants' good faith efforts to direct plaintiffs to this information should not be punished by acceding to plaintiffs' requests that defendants do even more.

\* \* \*

Novo Nordisk went to enormous lengths to accommodate plaintiffs' discovery requests, particularly regarding depositions. Without Court intervention, Novo Nordisk agreed that plaintiffs could take 22 depositions of current or former company employees. *See* ECF No. 221-34. Soon after that agreement was struck, plaintiffs served Novo Nordisk with a 30(b)(6) notice that covered literally

4842-8610-5046.v1

dozens of topics. Novo Nordisk agreed to provide extensive testimony on the identified topics, and in good faith designated six appropriate representatives, giving plaintiffs further access to additional current company personnel.

At bottom, plaintiffs have provided no reason why they need an *additional* 30(b)(6) deposition to question Novo Nordisk on the same topics for which it has already provided testimony. *See* Fed. R. Civ. P. 30(a); *St. Fleur v. City of Linden, New Jersey*, 2017 WL 3448106, at *4 (D.N.J. Aug. 10, 2017) (denying a request to take second deposition of a party where the requesting party did not sufficiently justify why another deposition was necessary). Thus, because defendants' supplemental response to Interrogatory No. 13 complies with Federal Rule of Civil Procedure 33(d) and this Court's guidance at the November 5 Conference, the Court should deny plaintiffs' request for a 30(b)(6) deposition on their proposed topics relating to Interrogatory No. 13.

### C. Interrogatory No. 15

On November 30, 2020, defendants produced two documents showing Tresiba's formulary status and restrictions in the commercial and Part D channels in a manner nearly identical to what plaintiffs proposed as an exhibit attached to the parties' prior joint letter. At that time, defendants explained the source of the information and that Novo Nordisk Inc. commonly relied on that data for various tasks and processes. Plaintiffs asked that Novo Nordisk (i) make a representation as to its understanding of the accuracy of this data and (ii) describe how Novo Nordisk uses it. Earlier this week—after plaintiffs shared their affirmative portion of the joint letter—defendants responded to those inquiries by serving a further formal supplemental interrogatory response, which Novo Nordisk will verify. Ex. M. In light of defendants' supplemental response, defendants do not believe that plaintiffs have any basis for seeking additional discovery. Accordingly, defendants are optimistic that plaintiffs will withdraw that request. To the extent plaintiffs seek further information, that request should be denied. Novo Nordisk has responded to plaintiffs and satisfied its obligations under the Federal Rules and this Court's prior instructions.

### III. PLAINTIFFS' REPLY POSITION

After Defendants assured the Court at the November 5 Conference that they would supplement their initial response to Rog No. 13 to provide either (a) more information about the list of rebate agreements they included or (b) a representation that no other information existed, they have refused to do either and instead provided only another list of rebate agreements identified by Bates

Hon. Lois H. Goodman
January 15, 2021
Page 13

4842-8610-5046.v1

number.[6] This new list of contracts is deficient for all the same reasons as the last one – it does not include the amount of the rebates Novo paid on a quarter-by-quarter basis, and it does not address the rebates that Novo paid that were not memorialized in a contract. Defendants do not dispute that their supplemental response fails to fully answer the questions posed, or that sitting for a Rule 30(b)(6) deposition to fill in the remaining gaps, as the Court earlier suggested, would present any undue burden. Instead, they argue that Plaintiffs should be forced to accept their deficient response and forego a remedial deposition because Defendants participated in other, unrelated depositions. Defendants' position is inconsistent with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 33(b)(1) (a party must answer each interrogatory "fully").

Defendants' purported justifications for their inadequate response only highlight their failures meet their discovery obligations. **First**, Defendants suggest that Plaintiffs themselves should "try to estimate" the rebate amounts Defendants paid in order to secure Tresiba access ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ This suggestion is wholly inconsistent with Defendants' prior assertion that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ECF No. 221 at 12. And, if such calculations are possible, it is Defendants' responsibility – not Plaintiffs' – to perform them. *See Austin Theatre, Inc v. Warner Bros Pictures, Inc.*, 22 F.R.D. 302, 303-04 (S.D.N.Y. 1958) ("[w]here an interrogatory asks for specific figures it is no answer to the interrogatory to make records available so that the other party to the litigation can do the work of ascertaining the true answers to the interrogatories"); *Sanghavi v. Navient Corp.*, No. 18-233 (KM) (CLW), 2020 WL 2731091, at *3 (D.N.J. May 22, 2020) (ordering defendants to "explain the manner in which they 'determine, calculate, and/or allocate loan payments received from any borrower'"). This is especially true here, where internal Novo documents show that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ECF No. 221 at 13; *see* Fed. R. Civ. P. 33(d) (allowing responding party to identify records in lieu of an affirmative response only "if the burden of deriving or ascertaining the answer will be substantially the same for either party"). A Rule 30(b)(6) deposition will allow Plaintiffs to inquire about Novo's methodology for calculating these amounts, which would be necessary for

---

[6] Defendants point out *supra* that the most recent list of agreements is not the exact same as the prior list, which is both true and beside the point. The new list includes two of the same agreements from the prior list (NNAS-SEC_02706996 and NNAS-SEC_00017368), with some additions. *Compare* Initial Responses *with* Supplemental Responses. Neither list answers the Interrogatory.

4842-8610-5046.v1

Plaintiffs to derive accurate and complete information ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋[7] Further, the parties need a common and accurate understanding of the methodology used to account for the rebates developed in discovery in order to avoid a "trial within a trial" later on. . *See Barton v. RCI, LLC*, No. 10-3657 (PGS), 2013 WL 1338235, at *15 (D.N.J. Apr. 1 2013) (accepting plaintiff's argument that "the fact that 'there is no static equation of an RCI Point with a specific dollar amount . . . makes a thorough response . . . even more essential'").

Moreover, this information is highly relevant. In the few instances where Defendants have actually produced information ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋ *Compare* ECF 221-9 (Ex. G) *with* ECF 221-35 (Ex. GG). Without a complete response to Rog. No. 13 and the clarity it will provide, Plaintiffs will be prejudiced and without recourse, as Defendants will continue to tout the profitability of Tresiba untested. For example, in the October 26, 2020 Joint Letter, Defendants claimed that they have "eviscerate[d] plaintiffs' case" by producing "[d]ocument after document, and witness after witness" to "debunk" Plaintiffs' theory that "the Company overpromised and under-delivered with respect to the launch of a new insulin named Tresiba®." ECF 221 at 9-10. Again, the scant information Defendants have produced indicates that any supposed Tresiba profits came at the cost of deep discounts elsewhere in Novo's diabetes portfolio. Accordingly, Rog. No. 13 goes to a central issue in the case, and more transparency is sorely needed.

**Second**, Defendants do not even attempt to explain how their response addresses rebates that were paid to secure Tresiba access but were not memorialized in a contract. In the October 26, 2020 Joint Letter, Defendants conceded that their list of contracts covered leveraged rebates only "[t]o the extent such terms were actually agreed to and made their way into the final memorialized agreement." ECF No. 221 at 12. The discovery record demonstrates that Novo did pay such rebates without a corresponding contractual term. ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋ *Compare* ECF 221-9 (Ex. G) *with* Ex. B. Defendants response is accordingly insufficient, as Plaintiffs have requested information concerning "all" such rebates, not just those that were included in a contract.

---

[7] Defendants misleadingly assert *supra* that they have already disclosed "specific calculations and methodology" concerning these amounts. In reality, they have not disclosed their method for calculating the amounts themselves, but for applying simple arithmetic to add up the already-calculated amounts from three PBMs. *See* ECF 221-9 (Ex. G).

Hon. Lois H. Goodman
January 15, 2021
Page 15


4842-8610-5046.v1

      To the extent Defendants do not have information about every instance where it leveraged another drug to secure access for Tresiba, Plaintiffs are entitled to test the bounds of Defendants' knowledge, the reasons such information is unavailable, and the implications of that information gap. *See Net2phone v. eBay*, No. 06-2469 (KSH*)*, 2008 WL 11441985, at *1 n.2 (D.N.J. Feb. 22, 2008) ("[O]ne purpose of discovery is to test the scope of a person's knowledge."); *In re Newark Watershed Conservation & Dev. Corp*, 560 B.R. 129, 145 n.7 (Bankr. D.N.J. 2016) ("Although McKoy denies any such knowledge, the Debtor is entitled to test that denial through discovery.")*.* Plaintiffs initially suggested that Novo "provide the information it knows and then give an affirmative representation about its lack of knowledge on the rest." ECF No. 221 at 21. Defendants summarily rejected this proposal, claiming only that such a representation was "oversimplified." Ex. C at 1.[8] If, as Defendants claim, the information concerning these agreements with PBMs is too complicated and nuanced to be translated into a written representation, then a Rule 30(b)(6) deposition would likely be more effective at eliciting the highly relevant information.

      In lieu of providing a full response to Rog. No. 13, Defendants spend the first several pages of their response highlighting the "extensive opportunities for discovery" they provided to Plaintiffs in the form of depositions of corporate representatives, suggesting that past participation in discovery somehow exempts Defendants from providing complete and accurate responses to properly served interrogatories. But "a party is entitled to seek an order compelling discovery if they have properly served interrogatories and/or requests for production and the party upon whom served has failed to provide full, complete and timely responses." *Harris v. Donaldson*, No. 18-490 (MN), 2020 U.S. Dist. LEXIS 150994, at *2-3 (D. Del. Aug. 20, 2020). Defendants also omit that their purported "extensive opportunities" comprised unhelpful testimony from unprepared witnesses on the topic of leveraged rebates. For example, Steve Albers, the corporate representative designated to address "Novo's negotiations and Communications with PBMs about rebates or formulary access," testified as follows:

---

[8] Defendants' argument *supra* fails to shed any further light on their reasons for not providing an affirmative representation. Defendants explain only that they "could not make the representation that plaintiffs request," without addressing why they also refused to modify the language into a representation they could make.

4842-8610-5046.v1



Ex. N, Albers Deposition Transcript, dated June 8, 2020 at 154:5-19. Defendants also unfairly characterize Plaintiffs' request for a Rule 30(b)(6) deposition as a "demand [for] yet another bite at the apple to fill supposed gaps in the discovery record they had literally years to assemble." *Supra* at 5. Plaintiffs would have preferred – and would gladly consider – a clear affirmative representation from Defendants to resolve their insufficient responses. It is refusal and purported inability to provide the requested representation that have forced Plaintiffs to request a deposition.

Accordingly, Plaintiffs seek Rule 30(b)(6) deposition testimony regarding only the following two narrow open topics:

1. The rebates Novo paid on other drugs to secure formulary access for Tresiba, including the payer, formulary, drug, and quarter-by-quarter amount; and

2. With respect to "budgetary adjustments": (a) the relationship between the budgetary adjustments and leveraged rebates; (b) the method and reasons for calculating budgetary adjustments; and (c) all known budgetary adjustments, including the payer, formulary, drug, and quarter-by-quarter amount of such adjustments.

Respectfully submitted,

By: s/ Michael R. Griffinger
Michael R. Griffinger
Brian J. McMahon
Samuel L. Portnoy
Calvin K. May, Esq.
**GIBBONS P.C.**
One Gateway Center Newark
Newark, New Jersey 07102-5310

James P. Rouhandeh
David B. Toscano, Esq.
Patrick W. Blakemore, Esq.
Daniel T. Finnegan, Esq.
Daniel S. Magy, Esq.
Anat Jordan Schraub, Esq.
Samantha J. Pfotenhauer, Esq.
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, New York 10017

Neal A. Potischman
Andrew Yaphe, Esq.
**DAVIS, POLK & WARDWELL LLP**
1600 El Camino Real
Menlo Park, California, 94025

*Attorneys for Defendants Novo Nordisk A/S, Lars Rebien Sørensen, Jakob Riis and Jesper Brandgaard*

By: s/ Christopher A. Seeger
Christopher A. Seeger
Jennifer Scullion
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660

Donald A. Ecklund
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068

*Co-Liaison Counsel*

Spencer A. Burkholz
Luke O. Brooks
Ryan A. Llorens
Eric I. Niehaus
Angel P. Lau
Jeffrey J. Stein
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058

Samuel H. Rudman
Robert M. Rothman
**ROBBINS GELLER RUDMAN & DOWD LLP**
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100

6

*Co-Lead Counsel for the Class*

Salvatore J. Graziano
Katherine M. Sinderson
Adam D. Hollander
**BERNSTEIN LITOWITZ BERGER &
  GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212/554-1400
212/554-1444 (fax)

*Co-Lead Counsel for the Class*

Steven B. Singer
Kyla J. Grant
**SAXENA WHITE P.A.**
4 West Red Oak Lane, Suite 312
White Plains, NY 10604
Phone: (914) 437-8551
Fax: (888) 631-3611

Brandon T. Grzandziel
**SAXENA WHITE P.A.**
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Phone: (561) 394-3399
Fax: (561) 394-3382

*Member of Plaintiffs' Executive Committee*