# Exhibit D

SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
DAVID R. BUCHANAN
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  973/639-9100
973/639-9393 (fax)

CARELLA, BYRNE, CECCHI, OLSTEIN,
  BRODY & AGNELLO, P.C.
JAMES E. CECCHI
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)

Co-Liaison Counsel and Executive Committee Members for the Class

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re NOVO NORDISK SECURITIES LITIGATION | ) ) ) | Master File No. 3:17-cv-00209-BRM-LHG |
| This Document Relates To: | ) ) ) | <u>CLASS ACTION</u> |
| ALL ACTIONS. | ) ) ) | |

**CO-LEAD PLAINTIFFS' NOTICE OF DEPOSITION OF DEFENDANT NOVO NORDISK A/S PURSUANT TO FEDERAL RULE CIVIL PROCEDURE 30(b)(6)**

TO:   ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiffs Central States, Southeast and Southwest Areas Pension Fund, Lehigh County Employees' Retirement System, Oklahoma Firefighters Pension and Retirement System, Boston Retirement System and Employees' Pension Plan of the City of Clearwater ("Plaintiffs"), by their attorneys will take the deposition of Defendant Novo Nordisk A/S ("Novo"), through one or more designated officers, directors, managing agents or persons who consent to testify on Novo's behalf, with respect to the matters listed in the attached Schedule A (the "Topics").  The deposition will take place at the offices of Seeger Weiss LLP, 55 Challenger Road, 6th Floor, Ridgefield Park, NJ 07660 or such other location as agreed upon by the parties, on November 26, 2019 at 9:30 a.m., unless a different date and time is agreed upon by the parties.  The deposition will be taken before a notary public or some other person authorized by law to administer oaths pursuant to Federal Rule of Civil Procedure 28(a). The examination will continue from day to day, excluding Sundays, until completed. The examination will be recorded by stenographer, transcribed in LiveNote and will be videotaped.

Novo is requested to identify in writing by November 12, 2019 the name(s) of the person(s) who will testify on its behalf regarding the Topics, and the Topics on which each person will testify.

PLEASE TAKE FURTHER NOTICE that Plaintiffs reserve the right to take further depositions of Novo pursuant to Rule 30(b)(6) on additional Topics not addressed in the attached Schedule A and to the extent that Novo's designated representative(s) are not prepared to discuss the Topics.

DATED:  September 20, 2019

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
LUKE O. BROOKS
RYAN A. LLORENS
ERIC I. NIEHAUS
ANGEL P. LAU
JEFFREY J. STEIN
ERIKA OLIVER

JEFFREY J. STEIN

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

BERNSTEIN LITOWITZ BERGER &
  GROSSMANN LLP
SALVATORE J. GRAZIANO
HANNAH ROSS
AVI JOSEFSON
KATHERINE M. SINDERSON
ADAM D. HOLLANDER
1251 Avenue of the Americas
New York, NY  10020
Telephone:  212/554-1400
212/554-1444 (fax)

Co-Lead Counsel for the Class

SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
DAVID R. BUCHANAN
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  973/639-9100
973/639-9393 (fax)

SEEGER WEISS LLP
JENNIFER R. SCULLION
77 Water Street, 26th Floor
New York, NY  10005
Telephone:  212/584-0700
212/584-0799 (fax)

CARELLA, BYRNE, CECCHI, OLSTEIN,
  BRODY & AGNELLO, P.C.
JAMES E. CECCHI
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)

Co-Liaison Counsel and Executive
Committee Members for the Class

SAXENA WHITE P.A.
JOSEPH E. WHITE, III
BRANDON T. GRZANDZIEL
DIANNE M. ANDERSON
150 East Palmetto Park Road, Suite 600
Boca Raton, FL  33432
Telephone:  561/394-3399
561/394-3382 (fax)

SAXENA WHITE P.A.
STEVEN B. SINGER
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: 914/437-8551
888/631-3611 (fax)

Executive Committee Member

## DECLARATION OF SERVICE BY EMAIL

     I, Casey Reis, not a party to the within action, hereby declare that on September 20, 2019, I served the attached **CO-LEAD PLAINTIFFS' NOTICE OF DEPOSITION OF DEFENDANT NOVO NORDISK A/S PURSUANT TO FED. R. CIV. P. 30(B)(6)** on the parties in the within action by email addressed as follows:

## COUNSEL FOR PLAINTIFFS:

| NAME | FIRM | EMAIL |
|---|---|---|
| Spencer A. Burkholz | Robbins Geller Rudman & Dowd LLP | spenceb@rgrdlaw.com |
| Luke O. Brooks | Robbins Geller Rudman & Dowd LLP | lukeb@rgrdlaw.com |
| Ryan A. Llorens | Robbins Geller Rudman & Dowd LLP | ryanl@rgrdlaw.com |
| Eric I. Niehaus | Robbins Geller Rudman & Dowd LLP | ericn@rgrdlaw.com |
| Angel P. Lau | Robbins Geller Rudman & Dowd LLP | alau@rgrdlaw.com |
| Jeffrey J. Stein | Robbins Geller Rudman & Dowd LLP | jstein@rgrdlaw.com |
| Erika Oliver | Robbins Geller Rudman & Dowd LLP | eoliver@rgrdlaw.com |
| Samuel H. Rudman | Robbins Geller Rudman & Dowd LLP | srudman@rgrdlaw.com |
| Robert M. Rothman | Robbins Geller Rudman & Dowd LLP | rrothman@rgrdlaw.com |
| Christopher A. Seeger | Seeger Weiss LLP | cseeger@seegerweiss.com |
| David R. Buchanan | Seeger Weiss LLP | dbuchanan@seegerweiss.com |
| Jennifer R. Scullion | Seeger Weiss LLP | jscullion@seegerweiss.com |
| James E. Cecchi | Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. | jcecchi@carellabyrne.com |
| Donald A. Ecklund | Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. | decklund@carellabyrne.com |
| Salvatore J. Graziano | Bernstein Litowitz Berger & Grossmann LLP | sgraziano@blbglaw.com |
| Hanna Ross | Bernstein Litowitz Berger & Grossmann LLP | hannah@blbglaw.com |
| Avi Josefson | Bernstein Litowitz Berger & Grossmann LLP | avi@blbglaw.com |

| Katherine M. Sinderson | Bernstein Litowitz Berger & Grossmann LLP | katherinem@blbglaw.com |
| Adam D. Hollander | Bernstein Litowitz Berger & Grossmann LLP | adam.hollander@blbglaw.com |
| James Fee | Bernstein Litowitz Berger & Grossmann LLP | james.fee@blbglaw.com |
| Joseph E. White | Saxena White P.A. | jwhite@saxenawhite.com |
| Steve Singer | Saxena White P.A. | ssinger@saxenawhite.com |
| Dianne Anderson | Saxena White P.A. | danderson@saxenawhite.com |
| Brandon Grzandziel | Saxena White P.A. | brandon@saxenawhite.com |

## COUNSEL FOR DEFENDANTS:

| NAME | FIRM | EMAIL |
| --- | --- | --- |
| Michael R. Griffinger, Esq. | Gibbons P.C. | mgriffinger@gibbonslaw.com |
| Brian J. McMahon, Esq. | Gibbons P.C. | bmcmahon@gibbonslaw.com |
| Samuel I. Portnoy, Esq. | Gibbons P.C. | sportnoy@gibbonslaw.com |
| James P. Rouhandeh, Esq. | Davis Polk & Wardwell LLP | rouhandeh@davispolk.com |
| Neal A. Potischman, Esq. | Davis Polk & Wardwell LLP | neal.potischman@davispolk.com |
| David P. Toscano | Davis Polk & Wardwell LLP | david.toscano@davispolk.com |
| Patrick W. Blakemore | Davis Polk & Wardwell LLP | patrick.blakemore@davispolk.com |
| Tyler Ryan | Davis Polk & Wardwell LLP | tyler.ryan@davispolk.com |
| Yu, Felicia | Davis Polk & Wardwell LLP | felicia.yu@davispolk.com |

* Denotes service via hand delivery and email

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 20, 2019, at San Diego, California.

_____
CASEY REIS

## SCHEDULE A
### (Novo Nordisk)

**I.    DEFINITIONS**

Unless stated otherwise, the terms set forth below are defined as follows:

1.      "Action" refers to the lawsuit captioned above.

2.      "All," "any" and "each" shall each be construed as encompassing any and all.

3.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4.      "Communication" or "communications" means an in-person meeting, phone call, e-mail, text, letter (including attachments), chat log, recording or any other transmittal of information (in the form of facts, ideas, inquiries or otherwise).

5.      "Competitors" means companies other than Novo that sell insulin-related drugs in the United States, such as Sanofi S.A ("Sanofi") and Eli Lilly and Company ("Lilly").

6.      "Complaint" means the Consolidated Amended Class Action Complaint, filed in this Action on August 4, 2017 (ECF No. 71).

7.      "Defendants" refers to Novo, Lars Rebien Sørensen ("Sørensen"), Jesper Brandgaard ("Brandgaard") and Jakob Riis ("Riis"), and includes, without limitation, their agents, accountants, advisors or other persons occupying similar positions or performing similar functions.

8.      "Identify," with respect to persons, means to give, to the extent known, the person's full name, company acronym, present or last known physical address and present or last known e-mail address.

9.      "Individual Defendants" means Sørensen, Brandgaard and Riis.

10.     "NNA/S" refers to Novo Nordisk A/S, including all persons and entities acting or purporting to act on its behalf.

11.     "NNI" refers to Novo Nordisk, Inc., including all persons and entities acting or purporting to act on its behalf.

12.     "Novo" refers to Novo Nordisk A/S and NNI, including all persons and entities acting or purporting to act on their behalf, and its parents, subsidiaries (including Kroll), divisions, subdivisions, practice groups, departments, affiliates, predecessors, successors and joint ventures, and present and former officers, directors, partners, principals, employees, representatives, agents, attorneys and advisors (and all other individuals acting or purporting to act on its behalf).

13.     "Novo Drug" means an insulin-based or glucagon-like peptide drug sold by Novo, such as NovoLog, Levemir, Victoza and Tresiba.

14.     "PBM" or "PBMs" means pharmacy benefit managers, such as Express Scripts Holding Company, CVS Health, UnitedHealth Group/OptumRx and Prime Therapeutics LLP.

15.     "Rebate" refers to any rebate, credit, discount, concession fee or other reduction in the list price of a Novo Drug offered to a PBM.

16.     "Statements Concerning Earnings" means the false or misleading statements alleged in the Complaint in which Defendants reported Novo earnings or reassured investors that Novo's earnings were reliable, not subject to pricing pressures in the United States or not at risk. *See* ¶¶168-170, 173-175, 180-182, 184, 188-192, 194, 197-209, 212-216, 219-221, 224-226.

17.     "Statements Concerning Guidance" means the false or misleading statements alleged in the Complaint concerning Novo's growth and sales forecasts. *See* ¶¶168-170, 173-177, 180-184, 186, 188-192, 194, 197-209, 212-216, 219-221, 224-226.

2

18.     "Statements Concerning Markets" means the false or misleading statements alleged in the Complaint concerning the competitive environment in the insulin market, market access, and market share.  *See* ¶¶168-170, 176, 180-182, 184, 186, 188-192, 194, 197-199, 203, 212-214, 216, 219-221, 224-226.

19.     "Statements Concerning Novo Drugs" means the false or misleading statements alleged in the Complaint concerning the financial performance of Novo Drugs relative to Competitor's drugs, as well as Novo Drugs' efficacy.  *See* ¶¶173-176, 180-184, 188-192, 194, 197-199, 201-209, 212-216, 219-221, 224-226.

20.     "Statements Concerning Pricing" means the false or misleading statements alleged in the Complaint concerning pricing, pricing pressure and rebates in the U.S. marketplace for insulin-related drugs.  *See* ¶¶168-170, 176, 180-184, 186, 188-192, 194, 201-209, 215-216, 219-221, 226.

21.     "Statements Concerning Tresiba" means the false or misleading statements alleged in the Complaint concerning Tresiba's efficacy, expected price and sales and ability to insulate Novo from U.S. pricing pressures. *See* ¶¶173-176, 180-182, 186, 188-192, 194, 197-199, 201, 203-209, 212-216, 219-221, 224-226.

## II.     RELEVANT PERIOD

Unless otherwise specifically indicated, the topics herein cover the period from January 1, 2014 to present.

## III.    TOPICS

1.      The structure and organization of Novo and its subsidiaries, including the management reporting structure and the identities of individuals, positions, departments, committees or other groups that participated in or were responsible for: (a) Novo's interactions

3

with Sanofi, Lilly or PBMs; or (b) Novo Drug pricing, Novo Drug marketing, financial forecasting or financial reporting.

2.      The following groups, meetings, email groups or committees, including: (a) the purpose of each group, meeting, email group or committee; (b) the identities and job responsibilities of each member, attendee or presenter; (c) the frequency of any meetings; (d) the use of notes, agendas, presentations or other materials; and (e) any recording or documentation of meetings, including audio/video, notes or minutes:

   (i)      Brand;

   (ii)     Business Review Meeting (or "BRM");

   (iii)    Commercial Effectiveness;

   (iv)     Competitive Intelligence;

   (v)      Disclosure Committee;

   (vi)     Executive Management (or "ExecMan");

   (vii)    Global Pricing;

   (viii)   Managed Markets;

   (ix)     Management Board (or "ManBoard");

   (x)      Market Access;

   (xi)     NNI Executive Team (or "NNI ET");

   (xii)    NNI Advisory Committee;

   (xiii)   Pre-Pricing Committee;

   (xiv)    Pricing Committee;

   (xv)     Pricing Contracts Operations & Reimbursements (or "PCOR"); and

   (xvi)    Strategic Pricing.

3.      The identification and consideration of potential and proposed custodians in this Action.

4.     The identification and location of all electronic devices used by Novo's officers, directors, employees and agents, and all steps taken to preserve, retrieve, collect and gather electronic data from those devices in connection with this Action.

5.     Information relating to any missing, destroyed or lost documents related to Göran Ando and any other Novo personnel with knowledge pertinent to this Action, including: (a) the identities and job responsibilities of the person(s) whose documents were destroyed or are missing; (b) a description of the documents destroyed or missing; (c) the date of destruction or disappearance; (d) the reasons for the destruction or disappearance; (e) the identity of person(s) who made or approved the decision to destroy the documents; and (f) alternative sources of the missing documents.

6.     Novo's attempts and ability to recover or restore any data, email or documents stored on active or inactive servers, computers or back-up tapes, including the process, time and cost involved, and any process that Novo undertook to restore any media (including backup tapes) to search for responsive documents.

7.     The Statements Concerning Guidance, Statements Concerning Earnings, Statements Concerning Pricing, Statements Concerning Markets, Statements Concerning Tresiba and Statements Concerning Novo Drugs, including: (a) the identities and job responsibilities of the person(s) who made the statement; (b) the identities and job responsibilities the person(s) who directed or approved the statement; (c) the basis for each statement; (d) the basis for any change to prior statements or guidance; (f) the existence and content of any related materials (e.g., scripts or questions and answers or presentations); and (g) the identities and job responsibilities of the person(s) who prepared the statement, guidance or related materials.

4849-5944-6950.v1

8. Novo's preparation, review, approval and issuance of operating profit growth and sales growth projections for Novo Drugs, including: (a) the processes Novo undertook; (b) the identity of all persons at Novo involved in the processes; and (c) the bases and reasons for Novo's reported projections.

9. Novo's development, modification and monitoring of internal forecasting reports, such as Anchor Budgets, Rolling Estimates, Latest Estimates, Strategic Pricing Processes and Sales Guidance Forecasts, including: (a) the processes Novo undertook; (b) the identities and job responsibilities of all persons at Novo involved in the processes; and (c) the bases and reasons for the conclusions and changes Novo made in the reports related to Novo Drugs.

10. Novo's development, modification and monitoring of external guidance, including: (a) the processes Novo undertook; (b) the identities and job responsibilities of all persons at Novo involved in the processes; and (c) the bases and reasons for the conclusions and changes Novo made to the guidance relative to both: (i) prior guidance; and (ii) internal forecasts.

11. Novo's trackers and reports related to Novo's financial forecasts, external guidance and financial performance including: (a) the identities and job responsibilities of the person(s) who created or maintained the trackers and reports; (b) the identities and job responsibilities of the person(s) who had input into information included in the trackers and reports; (c) any information considered or included in the trackers and reports; (d) the manner in which the trackers and reports were disseminated or maintained and the frequency of any such dissemination; and (e) the purpose of each tracker or report including, without limitation:

      (i)      Anchor Budget Reports (*e.g.*, Novo Nordisk Anchor Budget: Memo to Executive Management) (*e.g.*, NNAS-SEC_00441318);

      (ii)      Benchmark Reports (*e.g.*, Quarterly Benchmark Analysis);

6

(iii)    Key Macro Dynamics (*e.g.*, NNAS-SEC_00146155);

(iv)    NN Risk Reports;

(v)    Rolling Estimate Reports (*e.g.*, Rolling Estimate: Memo to Senior Management Board);

(vi)    Monthly Management Reports;

(vii)    Novo Nordisk/Insulin Market Weekly Performance Reports (*i.e.*, Weekly Diabetes Review);

(viii)    Preliminary Sales Reports (*e.g.*, NNAS-SEC_00144790);

(ix)    Sales Guidance Forecast Reports (*e.g.*, NNAS-SEC_03338215)

(x)    US Daily Sales Reports (*e.g.*, NA Daily Sales); and

(xi)    US Weekly Sales Reports.

12.    Novo's retention and relationship with outside consultants regarding forecasts, external guidance or pricing (including but not limited to Charles River Associates, ZS Associates, IQVIA and the Analysis Group), including: (a) the reasons Novo retained or consulted them; (b) the scope of their work and responsibilities; and (c) the conclusions they reached and advice they gave to Novo.

13.    Communications between NNA/S and NNI concerning NNI's ability to hit its sales and growth targets, including: (a) the identities and job responsibilities of the person(s) involved in the communications for both companies; and (b) the frequency and duration of the communications.

14.    The processes and policies, preparation, drafting, review, approval and issuance of the 2014 and 2015 Annual Reports on Form 6-K or Form 20-F, and the financial reports for 1Q15, 2Q15, 3Q15, 4Q15, 1Q16, 2Q16 and 3Q16 on Form 6-K.

15.     Novo's decisions about whether or not to institute list price increases for Novo Drugs during the Class Period, including: (a) the related policies and processes; (b) the date and amount of each price increase; (c) the person(s) who contributed to the decision to make each price increase; and (c) the reasons and bases for each price increase.

16.     Novo's trackers and reports related to the pricing of Novo Drugs in effect during the Class Period, including: (a) the identities and job responsibilities of the person(s) who created or maintained the trackers and reports; (b) the identities and job responsibilities of the person(s) who had input into information included in the trackers and reports; (c) any information considered or included in the trackers and reports; (d) the identities and job responsibilities of the person(s) who had access to or received the trackers and reports; (e) the manner in which the trackers and reports were disseminated or maintained and the frequency of any such dissemination; and (f) the purpose of each tracker or report.  These trackers and reports may include, without limitation, the following:

> (i)      Price Approval Trackers;
>
> (ii)     Key Brand Performance Reports (*e.g.*, NNAS-SEC_00418368); and
>
> (iii)    Pricing Insights Reports (*e.g.*, NNAS-SEC_00141590).

17.     Communications between NNA/S and NNI concerning list price increases for Novo Drugs and their sustainability, including: (a) the identities and job responsibilities of the person(s) involved in the communications for both companies; and (b) the frequency and duration of the communications.

18.     Novo's negotiations and Communications with PBMs about rebates or formulary access, including: (a) the processes and policies governing such interactions; and (b) the person(s) at Novo and the PBMs who participated in the negotiations.

4849-5944-6950.v1

19.     Communications between NNA/S and NNI concerning negotiations with PBMs, including: the identities and job responsibilities of the person(s) involved in the communications for both companies.

20.     Communications between Novo and Competitors concerning the pricing of insulin-related drugs or negotiations with PBMs, including: (a) the processes and policies governing such interactions; and (b) the identities and job responsibilities of the person(s) at Novo and the PBMs who participated in the negotiations.

21.     Novo's trackers and reports related to the insulin-related drug market, including: (a) the identities and job responsibilities of the person(s) who created or maintained the trackers and reports; (b) the identities and job responsibilities of the person(s) who had input into information included in the trackers and reports; (c) any information considered or included in the trackers and reports; (d) the identities and job responsibilities of the person(s) who had access to or received the trackers and reports; (e) the manner in which the trackers and reports were disseminated or maintained and the frequency of any such dissemination; and (f) the purpose of each tracker or report.  These trackers and reports may include, without limitation, the following:

(i)      Contract Risk Trackers;

(ii)     CVS Commercial Basal Performance Trackers (*e.g.*, NNAS-SEC_00415694);

(iii)    Market Access Reimbursement Trackers;

(iv)    Market Share Trackers;

(v)     Price Monitor Reports (*e.g.*, NNAS-SEC_00462947); and

(vi)    Policy Radars (*e.g.*, IMS PharmaQuery under the Future Developments/Outlook and News).

4849-5944-6950.v1

22.     The characteristics and efficacy of Tresiba compared to other insulin-related drugs on the market, including: (a) any market research demonstrating Novo's ability to obtain premium pricing for Tresiba; (b) any instances where a PBM indicated it would pay a premium price for Tresiba; and (c) the reasons and bases for Novo's assertion that it could obtain premium pricing for Tresiba, or that Tresiba was or is a premium product.

23.     Novo's trackers and reports related to (a) Tresiba and/or (b) other Novo Drugs, including: (i) the identities and job responsibilities of the person(s) who created or maintained the trackers and reports; (ii) the identities and job responsibilities of the person(s) who had input into information included in the trackers and reports; (iii) any information considered or included in the trackers and reports; (iv) the identities and job responsibilities of the person(s) who had access to or received the trackers and reports; (v) the manner in which the trackers and reports were disseminated or maintained and the frequency of any such dissemination; and (vi) the purpose of each tracker or report.  These trackers and reports may include, without limitation, the following:

(i)      Tresiba® Global Weekly Launch Trackers;

(ii)     Tresiba® Global Monthly Launch Trackers;

(iii)    Tresiba® US Weekly Trackers (*e.g.*, NNAS-SEC_00140459); and

(iv)    the Levemir Flex Touch Launch Tracker.

24.     Communications between NNA/S and NNI concerning Tresiba's characteristics, efficacy and Novo's ability to obtain premium pricing for Tresiba, including: the identities and job responsibilities of the person(s) involved in the communications for both companies.

25.     Investigations, whether internal or external, into Tresiba's attributes, efficacy or its ability to earn premium pricing, including: (a) the identities and job responsibilities of the person(s) involved in the investigations; (b) the identities and job responsibilities of the person(s) targeted

10

or suspected of wrongdoing; (c) the scope of the investigations, including the allegations and time

period at issue; and (d) any findings or conclusions reached by the investigations.

26.     The details concerning the resignations, terminations or retirements of Lars

Sørensen and Jesper Høiland or of any Defendant or other Novo director, officer or employees, if

the resignation, termination or retirement in any way concerned any allegation in this Action,

including:

(i)     any communication(s) or meeting(s) concerning each of these individual's

departures from Novo;

(ii)    the reasons for each of these individual's departures from Novo;

(iii)   any communication(s) or meeting(s) by Novo's Board of Directors

concerning each of these individual's departures from Novo; and

(iv)    any severance, termination, indemnification or other agreement or contract

between each of these individuals and Novo.

27.     Non-privileged information concerning the indemnification of the Individual

Defendants in connection with this Action or any matter arising from the factual allegations

underlying this Action.

28.     All work-related travel to the United States by the Individual Defendants or

members of the NNA/S executive management, including but not limited to travel to any

Pharmaceutical Care Management Association ("PCMA") event or Novo Leadership Summit,

including: (a) the identities and job responsibilities of the person(s) who attended on behalf of

Novo; (b) the dates of such travel; (c) the purpose of such person's attendance at the event; and

(d) a summary of the subject matter(s) discussed at the event.

11

29.     The details concerning the reduction in workforce Novo announced on September 29, 2016, including: (a) the identities and job responsibilities of the person(s) and committee(s) who decided to make the reduction; (b) the dates Novo first considered any such (or similar) reduction in workforce and then decided to implement it; and (c) the reasons and bases for the reduction.

30.     Novo's belief or understanding as to the reason(s) for Novo's stock price movement on the following dates:

(i)     August 5, 2016;

(ii)    September 29, 2016;

(iii)   October 28, 2016; and

(iv)    February 2, 2017.

31.     Investigations, whether internal or external, into: (a) Novo's decisions to raise prices of Novo Drugs; and/or (b) the propriety or accuracy of Novo's financial forecasts or external guidance, including for each: (i) the identities and job responsibilities of the person(s) involved in the investigations; (ii) the identities and job responsibilities of the person(s) targeted or suspected of wrongdoing; (iii) the scope of the investigations, including the allegations and time period at issue; and (iv) any findings or conclusions reached by the investigations.

4849-5944-6950.v1