UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **In re NOVO NORDISK SECURITIES LITIGATION,** | Civil Action No. 17-00209 (BRM)(LHG) |
| | **ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL** |

## I. INTRODUCTION

Before this Court is a Motion to Compel Non-Party PricewaterhouseCoopers LLP to Produce Documents Responsive to Plaintiffs' Subpoena (the "Motion to Compel") [Docket Entry No. 210], filed by Plaintiffs Central States, Southeast and Southwest Areas Pension Fund, Lehigh County Employees' Retirement System, Oklahoma Firefighters Pension and Retirement System, Boston Retirement System, and Employees' Pension Plan of the City of Clearwater (collectively "Plaintiffs").  Accompanying the Motion to Compel is Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion to Compel Non-Party PricewaterhouseCoopers LLP to Produce Documents Responsive to Plaintiffs' Subpoena ("Brief in Support") [Docket Entry Nos. 211 (unredacted), 234 (redacted)].[1]

Non-Party PricewaterhouseCoopers LLP ("PwC-U.S.") filed a Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Non-Party PricewaterhouseCoopers LLP to Produce Documents Responsive to Plaintiffs' Subpoena ("Brief in Opposition") [Docket Entry Nos. 216 (unredacted), 230 (redacted)].

Plaintiffs filed a Reply In Support of Motion to Compel Non-Party

---

[1] Unless otherwise noted, citations to the briefings are to the redacted, public versions.

PricewaterhouseCoopers LLP to Produce Documents Responsive to Plaintiffs' Subpoena ("Reply") [Docket Entry Nos. 219 (unredacted), 248 (redacted)]. PwC-U.S. then filed a Sur-Reply ("Sur-Reply") [Docket Entry No. 231].

The Court has considered the Motion to Compel on the papers filed, without oral argument, pursuant to Fed. R. Civ. P. 78 and Local Civil Rule 78.1(b). For the reasons set forth below, the Motion to Compel is denied in part and granted in part.

## II.   BACKGROUND

The parties to this action are familiar with the underlying facts and procedural history of this case, and as such, the Court recites only those facts relevant to the reasoning of this Order.

Plaintiffs filed the instant litigation against Defendants Novo Nordisk A/S ("Novo") and individual executive officers, alleging violations of the Securities Exchange Act of 1934 based on false and misleading representations as to revenue and growth of the company. [Docket Entry No. 71] ("Amended Complaint"), ¶1. PwC-U.S., the United States member firm of the PricewaterhouseCoopers ("PwC") International Limited network, was the component auditor for Novo's U.S. subsidiary Novo Nordisk, Inc. ("NNI"), while PricewaterhouseCoopers Statsautoriseret Revisionspartnerselskab ("PwC-Denmark"), a PwC member firm in Denmark, was the lead auditor for Novo. Declaration of Richard J. DeMarco, Jr., in Support of the Opposition to Plaintiffs' Motion to Compel ("DeMarco Decl.") [Docket Entry No. 230-11], ¶¶2–3, 10–11. In a component audit, the lead auditor requests another auditor to audit one subsidiary or component of a business and decides whether to rely on and incorporate the component auditor's work into the overall report. Declaration of Jason C. Hegt, in Support of the Opposition to Plaintiffs' Motion to Compel ("Hegt Decl.") [Docket Entry No. 230-1], ¶5, Ex. 4, Auditing Standards of the Public Company Accounting Oversight Board ("PCAOB"), 1205.04–.05, .12; DeMarco Decl., ¶11. In this present Motion, Plaintiffs seek to compel PwC-U.S. to produce audit

documents—both in its possession and in the possession of PwC-Denmark—that relate to Defendants' alleged misrepresentations.

On April 24, 2020, Plaintiffs served a subpoena on non-party PwC-U.S. DeMarco Decl., ¶4, Ex. C. Plaintiffs sought, *inter alia*, all documents sufficient to identify services performed by PwC-U.S. for Novo during the relevant period of January 1, 2015 through May 3, 2017; all documents concerning personnel reductions, contracting with pharmacy benefit managers ("PBMs") or business forecasting at Novo during the same period; and "communications with other audit or accounting firms performing audit services or other business-advisory services for Novo related to workforce reductions, contracting with PBMs and business forecasting." Declaration of Jeffrey J. Stein, in Support of Motion to Compel ("Stein Decl.") [Docket Entry No. 234-1], Ex. A, at 12–14 (Requests No. 1, 3, 8).

PwC-U.S. objected, alleging that the requests were overbroad and unduly burdensome, that Plaintiffs sought documents that were irrelevant and not proportional to the needs of the case, and that the documents could be obtained from other sources. DeMarco Decl., ¶5, Ex. D. PwC-U.S. also objected on the grounds that Plaintiffs did not take steps to minimize its burden. *Id.*

Between May and September, the parties conferred to address the outstanding discovery and PwC-U.S.'s objections. DeMarco Decl., ¶¶15-22, Exs. F–L; Stein Decl., Exs. C, I–K. Because they were unable to resolve the issues, this Motion followed.

### III. ARGUMENTS OF THE PARTIES

#### A. Plaintiffs' Motion to Compel

Plaintiffs assert that communications between PwC-U.S. and PwC-Denmark are highly relevant to both their claims and Novo's defenses. Brief in Support at 9–10. Specifically, they would contain information concerning the basis for the financial guidance Novo provided to the market; this in turn would be relevant to their claims that such guidance was "materially overstated,

lacked a sufficient basis, and omitted material information necessary to make Novo's public disclosures not misleading." *Id.* at 8–9. Communications regarding forecasts, pricing pressures, net sales, rebates and discounts, and rebate reserves and accruals would also shine light on the information Novo provided during the audit. *Id.* at 9. These communications are also relevant to Novo's defenses to the alleged falsity of their statements and representations. *Id.* at 10.

Plaintiffs also challenge PwC-U.S.'s objection to producing PwC-Denmark's work papers. *Id.* at 12. As member firms in the PwC network, and as joint auditors of Novo during the same period, Plaintiffs argue that it is inconceivable that PwC-U.S. would not have access to the foreign firm's documents. *Id.* at 12–13. Further, since PwC-U.S. would be required to produce PwC-Denmark's work papers if audited by the Securities and Exchange Commission (the "SEC") or the PCAOB pursuant to Sections 102, 105, and 106 of the Sarbanes-Oxley Act (the "SOX"), 15 U.S.C. §§ 7212, 7215, 7216, Plaintiffs contend that PwC-U.S. has control over PwC-Denmark's work papers. Therefore, these Sections, as well as a Statement of Protocol ("Cooperative Agreement") between PCAOB and the Danish Business Authority ("DBA"),[2] support compelling PwC-U.S. to produce PwC-Denmark's documents. Brief in Support at 13–14.

Plaintiffs also argue that PwC-U.S. should be required to continue searching for documents regarding Novo's sales, rebates, and reserves, given Plaintiffs' view that PwC-U.S. has failed to produce a complete set. *Id.* at 15–17. Finally, Plaintiffs contend that PwC-U.S. has failed to establish undue burden as PwC-U.S. does not set forth the time and costs necessary for compliance. *Id.* at 19–20.

---

[2] The Cooperative Agreement between the PCAOB and the DBA governs the exchange of information related to the oversight of auditors. *See generally* Hegt Decl., ¶7, Ex. 6. Pursuant to the agreement, PCAOB and DBA may collect and share information related to auditors in their jurisdiction with the other party. *Id.* at 3–4.

### B. PwC-U.S.'s Opposition to Plaintiffs' Motion to Compel

PwC-U.S. first argues that Plaintiffs' Motion is procedurally improper. First, Plaintiffs should have sought the requested documents directly from PwC-Denmark to reduce the burden on PwC-U.S. Brief in Opposition at 11. Additionally, Plaintiffs did not make a good faith effort to confer with PwC-U.S. prior to filing the Motion. *Id.* at 14.

Next, PwC-U.S. denies having control over PwC-Denmark's documents. *Id.* at 15. PwC-U.S. asserts that the PwC network "is not a global partnership, a single firm, or a multinational corporation," and that member firms are separate legal entities and cannot act as an agent for each other. *Id.* at 16–17; DeMarco Decl., ¶2, Ex. A at 1–2, Ex. B at 4. Further, PwC-U.S. notes that it has no means to obtain PwC-Denmark's documents even though PwC-U.S.'s component audit of NNI and PwC-Denmark's audit of Novo occurred simultaneously. *Id.* at 18–19.

Addressing Plaintiffs' reliance on the SOX and the Cooperative Agreement, PwC-U.S. asserts that Section 106 of the SOX is the only provision that requires PwC-U.S. to produce PwC-Denmark's records for the SEC or PBOAC; even so, this provision would only be triggered if PwC-U.S. relied upon PwC-Denmark's work in "issuing an audit report, performing audit work, or conducting an interim review." *Id.* at 19–22. Furthermore, there would need to be an express agreement made in advance with PwC-Denmark for that production as a condition of reliance. *Id.* at 21. Because PwC-U.S. did not rely upon PwC-Denmark's work and there was no advance agreement, this section is inapplicable. *Id.* at 21–22.

Third, PwC-U.S. argues that Plaintiffs' request for email communications is irrelevant, duplicative, and unduly burdensome, given that Plaintiffs have already obtained discovery from Novo and other non-parties. *Id.* at 23–30. Plaintiffs have failed to articulate what relevant and non-duplicative documents they could obtain from PwC-U.S. Further, the burden on PwC-U.S.

to locate and produce the requested records is not proportional to the needs of the case. *Id.* at 27. In this regard, PwC-U.S. also notes that producing the requested communications would be especially burdensome, given that it had "identified approximately 31 individuals who charged more than 10 hours of time to [providing services for NNI] during the 2014, 2015, and 2016 audits." *Id.* at 28–29; DeMarco Decl., ¶25. As PwC-U.S.'s emails would contain limited relevant and non-duplicative information, Plaintiffs' request should be denied. Brief in Opposition at 27–29.

PwC-U.S. also asserts that it has produced responsive records on two separate occasions, thereby satisfying its obligations under the subpoena. *Id.* at 30-31; DeMarco Decl., ¶¶16–20 (pointing out that PwC-U.S. produced 478 documents consisting of 1253 pages, followed by 11 documents consisting of 65 pages). Specifically, PwC-U.S. states that personnel familiar with the work performed for NNI during the relevant period searched for and identified documents responsive to the topics raised during a May 19, 2020 meet-and-confer with Plaintiffs. Brief in Opposition at 31; DeMarco Decl., ¶14. They then produced documents based on a search of the database in which the audit papers are maintained; any documents that they were unable to locate, however, likely had not been retained. Brief in Opposition at 32–33; DeMarco Decl., ¶20. PwC-U.S. explains that upon completion of an audit, an auditor need only retain a complete set of audit documentation sufficient to show who performed and reviewed the work, and "the nature, timing, extent, and results of the procedures performed, evidence obtained, and conclusions reached." Hegt Decl., ¶5, Ex. 4, §§ 1215.04, .06, .15. As the scope of the procedures performed in a component audit varies based on the principal auditor's specified needs, the documents comprising a complete set can also vary. Brief in Opposition at 32–33.

### C. Plaintiffs' Reply and PwC-U.S.'s Sur-Reply[3]

On reply, Plaintiffs argue that it was PwC-U.S. that stonewalled discussions, not Plaintiffs. Reply at 2–4. Next, Plaintiffs reaffirm the relevance of the requested communications and their inability to obtain them from another party. *Id.* at 4, 5, 8. While maintaining that PwC-U.S. failed to establish that this request was unduly burdensome, Plaintiffs nevertheless note their willingness to limit the scope of the request. *Id.* at 7, 9, n.6. Plaintiffs also question PwC-U.S.'s inability to locate certain audit documents, especially given the lack of a detailed declaration setting forth PwC-U.S.'s search efforts. *Id.* at 11–12.

In response, PwC-U.S. denies that its responses were dilatory, noting that it produced relevant records while consistently maintaining its objections to producing PwC-Denmark's documents and communications. Sur-Reply at 2. Finally, PwC-U.S. rejects the notion that its supporting declarations failed to adequately set forth its search efforts. *Id.*

## IV. LEGAL STANDARD

The scope of discovery under the Federal Rules of Civil Procedure is broad. Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b). Information "need not be admissible in evidence to be discoverable." *Id.*

While the scope of discovery is broadly construed, it is not without its limits and may be circumscribed. *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). This is so especially where the information sought "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," the

---

[3] PwC-U.S. argues that the Court should not consider Plaintiffs' Reply because Plaintiffs did not first obtain leave to file. Sur-Reply at 1; *See* L. Civ. R. 37.1(b)(3). Alternatively, PwC-U.S. requests that the Court consider its response as a Sur-reply. Sur-Reply at 1. The Court has considered both submissions.

party seeking discovery has had "ample opportunity to obtain the information by discovery in the action," or the discovery is outside the scope permitted under Rule 26(b). Fed. R. Civ. P. 26(b)(2)(C).

Pursuant to Rule 45, a party may compel production of documents within the "possession, custody, or control" of non-parties. Fed. R. Civ. P. 45(d)(2)(B). The scope of discovery pursuant to Rule 45 is the same as Rule 26(b). *Miller v. Allstate Fire & Cas. Ins. Co.*, Civ. No. 07-260, 2009 WL 700142, at *2 (W. D. Pa. Mar. 17, 2009). The party "responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

Once the subpoenaing party has shown that the documents requested are relevant, the objecting party must demonstrate why discovery should nevertheless be denied. *Mallinckrodt LLC, v. Actavis Labs. Fl.*, Civ. No. 15-3800, 2017 WL 5476801, at *2 (D.N.J. Feb. 10, 2017). In addressing the reasonableness of the subpoena, the court may consider a number of factors, including:

> 1) relevance, 2) the need of the party for the documents, 3) the breadth of the document request, 4) the time period covered by it, 5) the particularity with which the documents are described, 6) the burden imposed, and 7) the subpoena recipient's status as a nonparty to the litigation.

*Biotechnology Value Fund, L.P. v. Celera Corp.,* Civ. No. 14-4046, 2014 WL 4272732, at *2 (D.N.J. Aug. 28, 2014).

V. **ANALYSIS**

    A. **Appropriateness of the Motion to Compel**

PwC-U.S. contends that Plaintiffs' Motion is procedurally improper because Plaintiffs failed to "avoid undue burden or expense" on PwC-U.S. and failed to meet and confer. *See* Brief in Opposition at 11–14. PwC-U.S. first asserts that Plaintiffs should have sought the requested

documents directly from PwC-Denmark, thereby minimizing any burden on PwC-U.S., as required by Rule 45(d)(1). *Id.* at 11–12. While Plaintiffs seek production of documents in the control of PwC-Denmark,[4] they also seek documents that are undeniably in PwC-U.S.'s possession. This Court finds that nothing in Rule 45 prevents Plaintiffs from seeking those records from PwC-U.S. directly.

Additionally, while PwC-U.S. and Plaintiffs each take issue with the other's efforts to meet and confer, it is clear that both parties made significant efforts to resolve the issues. *Id.* at 13–14; Reply at 2–4; Fed. R. Civ. P. 37(a)(1) (requiring counsel to confer in good faith prior to seeking to compel); *Wyeth v. Abbott Labs.,* Civ. No. 08-230, 2011 WL 2429318, at *4–5 (D.N.J. June 13, 2011) (declining to deny a motion to compel for failure to meet and confer when it was evident that the parties had made good faith efforts to resolve issues). As such, this Court will not deny the Motion on these procedural grounds but will instead turn to the merits of the Motion, addressing each category of documents sought in turn.

### B.  PwC-Denmark's Work Papers

Plaintiffs argue that PwC-U.S. has control over PwC-Denmark's audit work papers and should therefore be compelled to produce them. Brief in Support at 11–14; Reply at 12–15. This Court disagrees.

A Rule 45 subpoena may require a person to produce documents in that person's "possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). For purposes of this rule, control has been found where a party has the "legal right to obtain the documents required on demand." *Power Integrations, Inc., v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 145 (D. Del. 2005); *In re Novartis & Par Antitrust Litig.*, Civ. No. 19-00149, 2019 WL 5722055, at *6

---

[4]  Whether Plaintiffs may compel PwC-U.S. to produce PwC-Denmark's documents will be addressed in Section B.

(E.D. Pa. Nov. 5, 2019). The moving party has the burden to establish control. *Camden Iron & Metal, Inc., v. Marubeni Am. Corp.,* 138 F.R.D. 438, 441 (D.N.J. 1991).

Plaintiffs argue that as member firms of the PwC network, and having audited Novo during the same period, PwC-U.S. has control over PwC-Denmark's documents. Brief in Support at 12–13; Reply at 14. Additionally, Plaintiffs contend that PwC-U.S. would be required to produce PwC-Denmark's records pursuant to the SOX, meaning that PwC-U.S. has the legal right to obtain PwC-Denmark's records. Brief in Support at 11–14; Reply at 12–13.

The Court finds on this record that although PwC-U.S. and PwC-Denmark are both PwC network member firms, it is clear that they are separate legal entities. *See* DeMarco Decl., ¶2, Ex. A at 1–2, Ex. B at 4; *see In re Citric Acid Litig.,* 191 F.3d 1090, 1106–08 (9th Cir. 1999) (finding U.S. member firm had no legal control over foreign member firm's documents despite common branding). Contrary to Plaintiffs' argument, this is not akin to a case where an entity has been found to have control over the records of its parent, subsidiary, or sister corporation. *See, e.g., Camden Iron & Metal, supra.,* 138 F.R.D. at 441–44 (wholly-owned subsidiary found to have control over parent corporation's documents because the subsidiary could obtain documents in the normal course of business and because both entities acted as one in the underlying transaction); *Davis v. Gamesa Tech. Corp.,* Civ. No. 08-4536, 2009 WL 3473391, at *5 (E.D. Pa. Oct. 20, 2009) (control found where domestic corporation and foreign sister corporation acted as one).

Nor is this Court persuaded that the provisions of the SOX support Plaintiffs' position. Section 102 requires public accounting firms participating in the preparation or issuance of audit reports to register with PCAOB, while Section 105 grants PCAOB the authority to obtain work papers from a registered public accounting firm wherever domiciled and to make work papers available to the commission. 15 U.S.C. §§ 7212, 7215. Neither provision speaks to a

requirement that a domestic public accounting firm be required to produce a foreign firm's papers to PCAOB.

Section 106 is also inapplicable. It provides in relevant part:

> (2) Other production. Any registered public accounting firm that relies, in whole or in part, on the work of a foreign public accounting firm in issuing an audit report, performing audit work, or conducting an interim review, shall-
> (A) produce the audit work papers of the foreign public accounting firm and all other documents related to any such work in response to a request for production by the Commission or the Board; and
> (B) secure the agreement of any foreign public accounting firm to such production, as a condition of the reliance by the registered public accounting firm on the work of that foreign public accounting firm.

15 U.S.C. § 7216(b)(2). Based on the plain language, a U.S. firm is required to produce work papers of a foreign accounting firm in response to a request by the SEC and PCAOB when the U.S. firm relied on the foreign firm's work in "issuing an audit report, performing audit work, or conducting an interim review." *Id.* Here, however, it was the foreign firm—PwC-Denmark—that relied on the work of PwC-U.S., not vice versa. DeMarco Decl., ¶11; Hegt Decl., ¶5, Ex. 4 (noting that the lead auditor decides whether to rely on and incorporate the component auditor's work into the overall report). As PwC-U.S. aptly notes, even if it had relied upon the work of PwC-Denmark, there must be an agreement between PwC-U.S. and PwC-Denmark to produce PwC-Denmark's documents under this provision; there was none. *See* 15 U.S.C. § 7216(b)(2)(B).

Plaintiffs' reliance on the Cooperative Agreement is also misguided; the Agreement does not speak to PCAOB's ability to obtain PwC-Denmark's documents through PwC-U.S., an entity within PCAOB's own jurisdiction. Brief in Support at 14, n.11; *see* Hegt Decl., ¶7, Ex. 6, Cooperation Agreement at 2–3.

Plaintiffs have not met their burden of establishing that PwC-U.S. has control over PwC-Denmark's work papers. Therefore, Plaintiff's Motion to Compel PwC-U.S. to produce PwC-

Denmark's work papers is denied.

### C. PwC-U.S.'s Communications

Relevance is liberally construed especially during discovery. *In re EthiCare Advisors, Inc.*, Civ. No. 20-1886, 2020 WL 4670914, at *2 (D.N.J. Aug. 12, 2020). Plaintiffs anticipate that the communications at issue will contain information relevant to their claims regarding Novo's financial guidance to the market, and to Novo's defenses. Brief in Support at 8–10; Reply at 4–6. Here, PwC-U.S. and PwC-Denmark audited Novo's financial records—documents significant to the litigation—and as such, communications pertaining to the audit of those very records would likely be relevant to Plaintiffs' claims and Novo's defenses. The Court therefore agrees that Plaintiffs have set forth sufficient grounds to find that the communications sought are relevant.

Having found the communications relevant, the Court must now consider whether PwC-U.S. has met its burden of demonstrating why this portion of the discovery sought should nevertheless be denied. In this regard, PwC-U.S. argues that the burden involved in collecting, sorting, and producing these communications is not proportional to the needs of the case. Pursuant to Rule 26, courts have broad authority to impose limits on otherwise relevant discovery when the discovery sought is unreasonably cumulative, or where the burden or expense of discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b). This rule of proportionality "guard[s] against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Bowers v. NCAA*, Civ. No. 97-2600, 2008 WL 1757929, at *4–6 (D.N.J. Feb. 27, 2008) (quoting *Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 105 (D.N.J. 1989)) (employing the rule to bar "marginally relevant evidence").

PwC-U.S. argues that the information sought is duplicative and is best sought from a party. Brief in Opposition at 24–27. PwC-U.S. asserts that Plaintiffs have already conducted significant

discovery on these same issues, and as such, the Motion should be denied. Whether information is more easily obtained from a party is relevant in analyzing burden but is not, however, dispositive on its own. *Gould v. O'Neal*, Civ. No. 17-100, 2019 WL 4686991, at *4 (D.N.J. Sept. 26, 2019).

Here, the Court is not persuaded. The internal communications between non-parties PwC-U.S. and PwC-Denmark and other auditors are unlikely to be in the possession of another party to the litigation. That makes the instant case distinguishable from those relied upon by PwC-U.S. in which the information sought was equally available from a party. *See, e.g., Manning v. Herman*, Civ. No. 13-1426, 2016 WL 6135626, at *3 (M.D. Pa. Oct. 21, 2016); *New Life Homecare, Inc., v. Blue Cross of N.E. Pa.*, Civ. No. 06-2485, 2012 WL 580198, at *2 (M.D. Pa. Feb. 22, 2012); *Cooper Health Sys., v. Virtua Health, Inc.*, Civ. No. 09-735, 2009 WL 10727974, at *3 (D.N.J. July 1, 2009). Additionally, there "is no general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in [a party's] possession"; in fact, they "may yield different versions of documents, additional material, or perhaps, significant omissions." *Mallinckrodt*, *supra*, 2017 WL 5476801, at *4 (alteration in original).

PwC-U.S. also argues that having to search for and produce these communications would be unduly burdensome. While it is true that non-parties are entitled to broader discovery protections, there must be some showing that the burden imposed will be undue. *See Wyeth*, *supra*, 2011 WL 2429318, at *8. In *Wyeth*, for example, the court found that non-party Novartis had failed to establish that the discovery was unduly burdensome because it did not provide the court with sufficient information to make the determination, such as the number of records responsive to the requests, the time and cost involved in compiling the information, or "how complying with the document requests would interfere with Novartis's business operations." *Id.*; *see also Corradi v. N.J. State Parole Bd.*, Civ. No. 16-5076, 2019 WL 1795545, at *2 (D.N.J. Apr. 24, 2019) (failing to demonstrate undue burden, in part, because interested party did not "detail

the monetary or labor costs" of complying with the subpoena). The same is true here. PwC-U.S. asserts that it has identified thirty-one individuals who charged in excess of ten hours of time to the NNI audits during the relevant period. DeMarco Decl., ¶25. This alone, however, does not give the Court sufficient indication as to the burden production would likely impose. As a result, the Court does not find that the burden of complying outweighs Plaintiffs' need for these relevant communications.

Therefore, Plaintiffs' Motion is granted to the extent it seeks the communications at issue. The Court further notes that Plaintiffs have expressed a willingness to further limit the scope of this request to lessen any burden on PwC-U.S. The parties are therefore directed to meet and confer to narrow and limit the number of custodians to no more than ten to fifteen individuals and to identify a narrow list of search terms to be used.

### D. PwC-U.S.'s Work Papers for Sales, Rebates, Reserves

Plaintiffs assert that PwC-U.S. has failed to produce a complete set of its work papers and that PwC-U.S.'s search efforts were insufficient. Brief in Support at 15–18; Reply at 10–12.

PwC-U.S. counters that it has produced all responsive records located after conducting a reasonable search on two separate occasions. Brief in Opposition at 31; DeMarco Decl., ¶¶16–20, Ex. G, J. PwC-U.S. avers that personnel familiar with the work performed for NNI during the relevant years searched for documents responsive to the topics raised during the May 19, 2020 call, and that the searches were conducted in the database where audit papers are maintained. DeMarco Decl., ¶¶14, 20.

It is unclear from PwC-U.S.'s declarations alone whether its search efforts were reasonable. *See Fendi Adele v. Filene's Basement, Inc.*, Civ. No. 06-244, 2009 WL 855955, at *8 (S.D.N.Y. Mar. 24, 2009) ("[L]itigants have an obligation, when discovery is sought from them, to make reasonable efforts to locate responsive documents."). For example, the declarations do not

sufficiently explain the steps taken to locate responsive documents and to identify additional individuals with knowledge of the NNI audits. *See, e.g., In re Stadtwerke Frankfurt Am Main Holding GmbH,* Civ. No. 19-35, 2019 WL 3004150, at *2 (S.D.N.Y. July 19, 2019) (finding search reasonable where supporting declarations established that entity seeking to quash subpoena interviewed current employees and confirmed no former employees were involved in the relevant transaction). Instead, PwC-U.S. states in conclusory fashion that "based on a reasonable search of the database in which PwC U.S.'s relevant audit work papers are maintained, PwC U.S. was not able to locate" certain documents specifically sought by Plaintiffs. DeMarco Decl., ¶20. Plaintiffs should be given the opportunity to better understand what is meant by "a reasonable search."

The undersigned is, however, persuaded by PwC-U.S.'s explanation that a complete set of documents may not necessarily be within its possession. *See* Brief in Opposition at 32–33 (noting that the documents retained for an audit varies depending on the scope of the component audit). Obviously, PwC-U.S. cannot be compelled to produce what is not within its possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A); *see MDAdvantage Ins. Co. of N.J. v. Hasiuk,* Civ. No. 16-696, 2018 WL 3328049, at *2 (E.D. Pa. July 6, 2018) (finding plaintiff could not produce documents that did not exist). It may be that the search conducted was in fact adequate and that the documents Plaintiffs seek may no longer exist in PwC-U.S.'s files.

The parties are therefore directed to meet and confer within seven days of this Order as to the scope of responsive documents currently in PwC-U.S.'s possession, custody or control, as well as the sufficiency of the search that has been conducted. If the parties cannot agree as to the completeness of the production, PwC-U.S. may bring this issue back before the Court, with a supplemented record setting forth a detailed explanation of the search conducted and why Plaintiffs believe it was not adequate.

## VI. CONCLUSION

For the foregoing reasons, and for good cause shown,

**IT IS** on this **30th** day of **March, 2021,**

**ORDERED** that the Motion to Compel [Docket Entry No. 210] is **DENIED in part, and GRANTED in part**, as follows**:**

>The Motion to Compel, insofar as it seeks to compel PwC-U.S. to produce PwC-Denmark's work papers is DENIED,

>The Motion to Compel, insofar as it seeks to compel PwC-U.S. to produce all relevant and responsive communications between PwC-U.S. and PwC-Denmark and other auditors, is GRANTED subject to the Court's instructions set forth in this Order to confer and narrow the requests;

>The Motion to Compel, insofar as it seeks PwC-U.S.'s work papers for sales, rebates, and reserves, is DENIED without prejudice, subject to the Court's instructions set forth in this Order to confer as to the sufficiency of the previous search and production;

>and it is further

**ORDERED** that Plaintiffs and PwC-U.S. are instructed to meet and confer to discuss the requests within seven days from the date of this Order.

_____
LOIS H. GOODMAN
United States Magistrate Judge