SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
DAVID R. BUCHANAN
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  973/639-9100
973/639-9393 (fax)

CARELLA, BYRNE, CECCHI, OLSTEIN,
  BRODY & AGNELLO, P.C.
JAMES E. CECCHI
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)

Co-Liaison Counsel and Executive Committee Members for the Class

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re NOVO NORDISK SECURITIES LITIGATION | Master File No. 3:17-cv-00209-ZNQ-LHG |
| This Document Relates To: | <u>CLASS ACTION</u> |
| ALL ACTIONS. | |

## LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................1

II.    PROCEDURAL HISTORY OF THE LITIGATION ....................................4

    A.    Pretrial Proceedings..........................................................4

    B.    Investigation, Fact, and Expert Discovery ...........................6

    C.    Summary Judgment..........................................................7

    D.    Arm's-Length Settlement Negotiations ...............................8

III.    THE SETTLEMENT TERMS ........................................................8

IV.    THE SETTLEMENT RESULTED FROM ARM'S-LENGTH SETTLEMENT NEGOTIATIONS...............................................10

V.    PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW LEAD PLAINTIFFS TO NOTIFY THE CLASS ........................11

    A.    The Proposed Settlement Is Fair ......................................14

    B.    The Benefits Under the Settlement Are Adequate..............19

    C.    The Other Rule 23 (e)(2) Factors Are Met..........................22

        1.    The Proposed Method for Distributing Relief Is Effective ......23

        2.    Attorneys' Fees and Expenses ................................24

        3.    The Parties Have No Other Agreements Besides an Agreement to Address Requests for Exclusion ........................25

        4.    Class Members Are Treated Equitably ....................26

VI.    THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS...............................................................27

    A.    Retention of JND Legal Administration as Claims Administrator..................................................................27

    B.    Proposed Notice Procedures..............................................28

**Page**

VII.   PROPOSED SCHEDULE OF EVENTS .......................................................30

VIII.   CONCLUSION.................................................................................................31

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
No. 03-1519 (AET), 2013 WL 12153597
(D.N.J. Jan. 30, 2013) ........................................................................24

*Alves v. Main*,
No. 01-789 (DMC), 2012 WL 6043272
(D.N.J. Dec. 4, 2012),
*aff'd*, 559 F. App'x 151 (3d Cir. 2014) ...............................................17

*Bredbenner v. Liberty Travel, Inc.*,
No. 09-905 (MF), 2011 WL 1344745
(D.N.J. Apr. 8, 2011) ..........................................................................18

*Curiale v. Lenox Grp., Inc.*,
No. 07-1432, 2008 WL 4899474
(E.D. Pa. Nov. 14, 2008).....................................................................12

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ...............................................................26

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ...............................................................11

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) .......................................................*passim*

*Huffman v. Prudential Ins. Co. of Am.*,
No. 2:10-cv-05135, 2019 WL 1499475
(E.D. Pa. Apr. 4, 2019) ..................................................................14, 18

*In re Am. Bank Note Holographics*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................21

*In re AT&T Corp. Sec. Litig.*,
No. 00-5364 (GEB), 2005 WL 6716404
(D.N.J. Apr. 25, 2005),
*aff'd*, 455 F.3d 160 (3d Cir. 2006).......................................................15

**Page**

*In re Genworth Fin. Sec. Litig.*,
No. 3:14-cv-682-JAG, 2016 WL 7187290
(E.D. Va. Sept. 26, 2016)....................................................................25

*In re Ins. Brokerage Antitrust Litig.*,
282 F.R.D. 92 (D.N.J. 2012)..........................................................14, 19

*In re Ins. Brokerage Antitrust Litig.*,
297 F.R.D. 136 (D.N.J. 2013)................................................................24

*In re Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009).........................................................16

*In re PAR Pharm. Sec. Litig.*,
No. 06-3226 (ES), 2013 WL 3930091
(D.N.J. July 29, 2013)..................................................................19, 21

*In re Philips/Magnavox Television Litig.*,
No. 09-cv-3072 (CCC), 2012 WL 1677244
(D.N.J. May 14, 2012) ....................................................................17

*In re Schering-Plough/Merck Merger Litig.*,
No. 09-CV-1099 (DMC), 2010 WL 1257722
(D.N.J. Mar. 26, 2010)..............................................................14, 17

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ................................................12, 14, 17, 27

*In re Wilmington Trust Sec. Litig.*,
No. 10-cv-00990-ER, 2018 WL 6046452
(D. Del. Nov. 19, 2018) ....................................................................24

*In re WorldCom, Inc. Sec. Litig.*,
No. 02 CIV 3288 (DLC), 2004 WL 2591402
(S.D.N.Y. Nov. 12, 2004).................................................................16

*Jones v. Commerce Bancorp, Inc.*,
No. 05-cv-5600 (RBK), 2007 WL 2085357
(D.N.J. July 16, 2007)..................................................................13, 30

**Page**

*Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members,*
No. 08-00235 (CCC), 2019 WL 4877563
(D.N.J. Oct. 3, 2019) .........................................................................16

*Low v. Trump Univ., LLC,*
881 F.3d 1111 (9th Cir. 2018) ..........................................................26

*Sanders v. CJS Solutions Grp., LLC,*
No. 17 Civ. 3809 (ER), 2018 WL 1116017
(S.D.N.Y. Feb. 28, 2018) ...................................................................19

*Schuh v. HCA Holdings, Inc.,*
No. 3:11-cv-01033, 2016 WL 10570957
(M.D. Tenn. Apr. 14, 2016) ..............................................................25

*Varacallo v. Mass. Mut. Life Ins. Co.,*
226 F.R.D. 207 (D.N.J. 2005) ...........................................................17

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§78u-4(a)(4) ............................................................................4, 9, 24

Federal Rules of Civil Procedure
Rule 23 ..............................................................................30, 31
Rule 23(c)(2)(B) ...........................................................................28
Rule 23(e) ...........................................................................3, 11, 12, 28
Rule 23(e)(1)(B) ......................................................................12, 28
Rule 23(e)(2) .....................................................................*passim*
Rule 23(e)(2)(A) ............................................................................15
Rule 23(e)(2)(A)-(B) ......................................................................14
Rule 23(e)(2)(B) ............................................................................18
Rule 23(e)(2)(C)(i) ........................................................................19
Rule 23(e)(2)(C)(ii) .......................................................................23
Rule 23(e)(2)(C)(ii)-(iv) .................................................................23
Rule 23(e)(2)(C)(iii) ......................................................................24
Rule 23(e)(2)(C)(iv) .......................................................................25
Rule 23(e)(2)(D) ...........................................................................26
Rule 23(e)(3) ..........................................................................13, 29

**Page**

**SECONDARY AUTHORITIES**

Laarni T. Bulan and Laura E. Simmons, *Securities Class Action
    Settlements: 2020 Review and Analysis* (Cornerstone Research
    2021) ................................................................................................22

*Manual for Complex Litigation* (4th ed. 2004)
    §21.63................................................................................................12, 30

Lead Plaintiffs and Class Representatives Lehigh County Employees' Retirement System, Oklahoma Firefighters Pension and Retirement System, Boston Retirement System, Employees' Pension Plan of the City of Clearwater, and Central States, Southeast and Southwest Areas Pension Fund ("Lead Plaintiffs"),[1] by and through their undersigned counsel of record, respectfully submit this Memorandum of Law in Support of Motion for Preliminary Approval of Class Action Settlement.

## I.    INTRODUCTION

Lead Plaintiffs respectfully request that the Court grant preliminary approval of the parties' $100 million settlement.  The Settlement is the product of more than four years of hard-fought litigation among sophisticated parties and experienced counsel, and follows extensive, arm's-length mediation and settlement discussions overseen by experienced mediator the Honorable Layn R. Phillips (Ret.), assisted by the Honorable Harry G. Carroll (Ret.).  As set forth in the Stipulation, the Settlement provides for the payment of $100 million in cash to resolve this securities class action against all Defendants.  The Settlement is an excellent result for the Class, particularly when viewed in light of the risks of proceeding through further litigation.

---

[1]    Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation and Agreement of Settlement (the "Stipulation") attached as Exhibit 1 to the Declaration of Christopher A. Seeger in Support of Lead Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Seeger Decl.").  All citations and internal quotation marks are omitted and emphasis is added, unless otherwise indicated.

This securities class action arises out of Novo Nordisk's allegedly fraudulent misconduct pursuant to which the Company and certain senior executives made materially false and misleading statements and omissions concerning (i) the Company's exposure to market pressures in the United States that affected the pricing and profitability of Novo Nordisk's diabetes-drug portfolio, (ii) the prospects of Novo Nordisk's insulin drug Tresiba® to drive the Company's growth, and (iii) Novo Nordisk's inability to meet certain financial targets. Lead Plaintiffs allege that these alleged misstatements and omissions caused the Company's American Depositary Receipts ("ADRs") to trade at artificially inflated prices during the Class Period. Lead Plaintiffs allege that as the truth about Novo Nordisk's misrepresentations was revealed through a series of public disclosures, the price of Novo Nordisk ADRs fell dramatically, causing significant economic harm to Lead Plaintiffs and the Class. Defendants deny all of Lead Plaintiffs' allegations.

Lead Plaintiffs were well informed of the strengths and weaknesses of their claims and Defendants' defenses as they negotiated the Settlement. In addition to the Court's thorough rulings denying Defendants' motion to dismiss (ECF No. 99) and granting Lead Plaintiffs' motion for class certification (ECF No. 182), Lead Plaintiffs had developed a robust factual record through their extensive pre-filing investigation, thorough discovery, and analysis and insights from the parties' experts. The parties also fully briefed Defendants' motion for summary judgment. By the time of the

Settlement, Lead Plaintiffs' investigation and discovery included: (i) almost 5 million pages of documents produced from Defendants and 19 third parties; (ii) responses to written discovery; (iii) the taking or defending of over three dozen fact witness depositions; (iv) expert discovery, consisting of the retention of four experts, who produced reports and sat for depositions that Lead Plaintiffs defended, and taking the depositions of Defendants' six retained experts; (v) the full briefing of Defendants' motion for summary judgment; and (vi) three separate mediation sessions with Defendants, overseen by experienced mediators.

As detailed herein, the proposed Settlement before the Court is an excellent one, and Lead Plaintiffs respectfully request that the Court preliminarily approve it and approve the form and manner of providing notice of it to the Class.

At this first stage of settlement approval, courts are to evaluate whether they are likely to be able to approve the terms of a settlement under Rule 23(e), as amended in 2018, and under the *Girsh* standards. *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). As discussed below, the Settlement easily meets these standards because it is a fair, reasonable, and adequate resolution for the Class, and balances the objective of securing the highest possible recovery against the substantial risks and costs of continued litigation, including the risk that the Class could receive nothing or an amount equal to or less than the Settlement Amount years into the future. Accordingly, Lead Plaintiffs and Lead Counsel, who have litigated this case from

inception, believe that the Settlement is an outstanding result and is in the best interests of the Class.

Moreover, the Settlement is fair, reasonable and adequate because, under the Stipulation, each Class Member is treated equitably. Each Class Member that properly submits a valid Proof of Claim form will receive a *pro rata* share of the monetary relief based on the terms of the Plan of Allocation.

Lead Plaintiffs seek preliminary approval so that notice may be disseminated to the Class and a Settlement Hearing and other Settlement-related dates may be scheduled. In connection with the Settlement Hearing, Lead Plaintiffs will ask the Court to make final determinations as to (i) whether the Settlement is fair, reasonable, and adequate as a whole; (ii) whether the Plan of Allocation should be approved; and (iii) an award of attorneys' fees and expenses to Lead Counsel and amounts to be awarded to Lead Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class.

## II. PROCEDURAL HISTORY OF THE LITIGATION

### A. Pretrial Proceedings

Beginning on January 11, 2017, three related class action complaints were filed in the United States District Court for the District of New Jersey on behalf of investors in Novo Nordisk's ADRs. By order dated June 1, 2017, the Court consolidated those actions and any subsequently filed, removed or transferred actions, and appointed and

approved Lead Plaintiffs, Lead Counsel, Liaison Counsel and an Executive Committee for the putative Class.  ECF No. 42.

On August 4, 2017, Lead Plaintiffs filed the Amended Complaint (ECF No. 71).  The Amended Complaint alleged, among other things, that during the Class Period (February 3, 2015 through February 2, 2017, inclusive), Defendants made a series of material misrepresentations and omissions by allegedly misrepresenting and failing to disclose Novo Nordisk's true exposure to market pressures in the United States that affected the pricing and profitability of the Company's diabetes-drug portfolio and overstated the ability of Tresiba® to drive Novo Nordisk's growth, which allegedly caused Novo Nordisk's ADRs to trade at artificially inflated levels. The Amended Complaint further alleged that the price of Novo Nordisk ADRs declined when the true facts concerning Defendants' alleged misrepresentations and omissions were revealed, resulting in financial losses to those who purchased Novo Nordisk ADRs during the Class Period at the inflated prices.

On October 3, 2017, Defendants moved to dismiss the Amended Complaint. ECF No. 81.  Lead Plaintiffs filed their opposition to that motion on November 17, 2017 (ECF No. 87), and Defendants filed their reply on December 18, 2017 (ECF No. 91).  The Court held oral argument on the motion on July 25, 2018.  ECF No. 96.  On August 16, 2018, the Court issued an Opinion and accompanying Order denying

Defendants' motion to dismiss in its entirety.  ECF No. 99.  Defendants answered the Amended Complaint on October 1, 2018.  ECF No. 112.

On April 1, 2019, Lead Plaintiffs moved for class certification.  ECF No. 136. The Parties produced expert reports, deposed each other's experts, and filed opening, opposition, and reply briefs.  The Parties also fully briefed Defendants' motion to exclude the expert report of Lead Plaintiffs' market-efficiency expert.  ECF Nos. 146, 152, 161.  On January 31, 2020, the Court issued an Opinion and accompanying Order granting the motion for class certification and denying Defendants' motion to exclude. ECF Nos. 181, 182.

On July 20, 2020, the Court entered an Order granting Lead Plaintiffs' unopposed motion to approve the form and manner of providing notice of the pendency of this Action to potential Class Members.  ECF No. 192.  The Class Notice, including notice of the pendency of the Action and of the right to seek exclusion from the Class, was provided to Class Members during the summer of 2020. In response to the notice of pendency, 106 persons and entities timely requested exclusion from the Class, and one additional, untimely request for exclusion was submitted.  *See* Stipulation, Appendix 1.

## B.   Investigation, Fact, and Expert Discovery

Through their investigation and fact and expert discovery, Lead Plaintiffs developed substantial information and evidence in support of their claims.  Discovery

was broad, directed at all Defendants, 19 third parties, and each Lead Plaintiff, and included the production of nearly 5 million pages of documents, including written discovery, contention interrogatories.  The Parties engaged in numerous lengthy meet-and-confer sessions concerning multiple discovery disputes, some of which required Court resolution, with the majority resolved without Court intervention.

Expert discovery commenced in November 2020.  The Parties exchanged opening, rebuttal, and reply expert reports from ten total experts – four from Lead Plaintiffs and six from Defendants – covering a variety of fields, including pharmaceutical pricing and markets, Tresiba®'s clinical profile, accounting, regulatory disclosure requirements, disclosure practices in the United States, and loss causation and damages.  The Parties deposed all ten experts.

## C.    Summary Judgment

On April 20, 2021, Defendants served Lead Plaintiffs with their motion for summary judgment.  The Parties fully briefed and filed summary judgment materials by July 12, 2021, which included 161 pages of briefs, 1,270 pages of factual statements under District of New Jersey Local Civil Rule 56.1, and thousands of pages of exhibits.  Given the voluminous evidentiary record and legal argument assessed and discussed in connection with Defendants' summary judgment motion, by the time the Parties agreed to the Settlement, Lead Plaintiffs had an in-depth understanding of the likely evidence at any trial, including the testimony from key witnesses, the most

important documents, and the biggest points of contention among the experts.  All of this, combined with Lead Counsel's extensive experience in securities-fraud litigation, was more than sufficient for Lead Plaintiffs to evaluate the relative strengths weaknesses of their claims and Defendants' defenses.

### D.     Arm's-Length Settlement Negotiations

The Parties engaged the services of mediators Judge Phillips and Judge Carroll, who collectively have decades of experience mediating large complex class actions, including securities class actions.  The Parties engaged in three mediation sessions, the details of which are discussed more fully below in §IV.  Following the September 2, 2021 mediation session and subsequent discussions, Judge Phillips issued a mediator's proposal to settle all the claims in exchange for $100 million in cash, which the Parties accepted.  The Parties informed the Court of the Settlement on September 29, 2021. ECF No. 299.

## III.   THE SETTLEMENT TERMS

Under the agreed-upon terms of the Settlement, Defendants will pay or cause to be paid $100 million into the Escrow Account, which amount, plus accrued interest, constitutes the Settlement Fund.

First, the costs associated with providing notice to the Class, and subsequent settlement administration ("Notice and Administration Expenses"), will be funded out of the Settlement Fund.  Lead Plaintiffs propose that nationally recognized class

action settlement administrator JND Legal Administration, which the Court approved to provide notice of pendency of this Action as a class action (ECF No. 192), likewise be approved to provide notice and claims administration services in connection with the Settlement.

Second, because the Settlement Fund is a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1, the income earned on the Settlement Fund is taxable. All Taxes and Tax Expenses (such as expenses of tax attorneys and/or accountants) shall be paid out of the Settlement Fund.

Third, assuming the Court grants preliminary approval of the Settlement, Lead Plaintiffs will subsequently move, at the time the Court sets, for final approval of the Settlement. Concurrent with Lead Plaintiffs' final-approval motion, Lead Counsel will submit an application for an award of attorneys' fees not to exceed 30% of the Settlement Fund and payment of expenses and charges resulting from the prosecution of the Action not to exceed $3,300,000, which includes proposed awards to Lead Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class. Such awards and expenses shall be paid from the Settlement Fund upon entry of the order awarding such fees and expenses.

Fourth, once Notice and Administration Expenses, Taxes and Tax Expenses, Court-approved attorneys' fees and expenses and any award(s) to the Lead Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4), and any other fees or expenses approved by the

Court have been paid from the Settlement Fund, the remaining amount (the "Net Settlement Fund") shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.00.  Any amount remaining following that distribution shall be redistributed in an economically feasible manner.  The Plan of Allocation treats all Class Members equitably based on the timing of their Novo Nordisk ADR purchases and sales.

In exchange for the benefits provided under the Stipulation, Class Members will release any and all claims against Defendants based on, arising out of, or in connection with both: (i) the purchase of Novo Nordisk ADRs between February 3, 2015 and February 2, 2017, inclusive; and (ii) the facts, matters, statements, or omissions alleged in the Action.  Stipulation, ¶1(nn).

## IV.   THE SETTLEMENT RESULTED FROM ARM'S-LENGTH SETTLEMENT NEGOTIATIONS

The Parties engaged in extensive arm's-length negotiations.  The first in-person mediation session occurred on November 19, 2018.  In advance of that session, the Parties exchanged (and submitted to Judge Phillips and Judge Carroll) detailed initial and responsive mediation statements addressing liability and damages.  The mediation briefs addressed the specific evidence and legal arguments each side believed supported their respective claims and defenses.  Although the first mediation session ended without a settlement agreement and with the Parties far apart, the Parties remained in communication with the mediators while litigation continued.

Following the first mediation session, the Parties continued with the discovery and briefing described above. In addition, the Parties engaged in various teleconferences, phone calls, and e-mails with Judge Phillips concerning a potential resolution of the Action. The Parties held a second mediation session with Judge Phillips and Judge Carroll on April 24, 2020. Although the Parties negotiated in good faith, the Parties were still far apart and did not reach a settlement, and litigation continued.

The Parties held a third mediation session on September 2, 2021, and did not reach a settlement at the session. After the third mediation session, Judge Phillips continued discussions with the Parties. Following additional negotiations, Judge Phillips issued a mediator's proposal to resolve the Action for $100 million. The Parties accepted Judge Phillips's recommendation and, on September 24, 2021, executed the Term Sheet that, among other things, provided for an agreement to settle the claims alleged in the Action for $100 million.

## V.   PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW LEAD PLAINTIFFS TO NOTIFY THE CLASS

Rule 23(e) requires court approval for any compromise of claims brought on a class basis. Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval."). It is well established in this Circuit that the settlement of class-action litigation is both favored and encouraged. *See Ehrheart v. Verizon Wireless*,

609 F.3d 590, 594-95 (3d Cir. 2010) ("This presumption is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *Curiale v. Lenox Grp., Inc.*, No. 07-1432, 2008 WL 4899474, at *5 (E.D. Pa. Nov. 14, 2008) ("The law favors settlement particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").

The *Manual for Complex Litigation* describes a three-step process for approving a class action settlement: (1) preliminary approval of the proposed settlement; (2) ordering dissemination of notice of the settlement to class members; and (3) a final approval hearing. *See Manual for Complex Litigation* §21.63 (4th ed. 2004). At this juncture, Lead Plaintiffs request that the Court (1) enter the proposed Preliminary Approval Order; (2) order the dissemination of notice to the Class; and (3) set a time for the final approval hearing.

Pursuant to Rule 23(e), as recently amended, preliminary approval should be granted if the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."[2] Fed. R.

---

[2]   The Court certified the Class on January 31, 2020, and there is no difference between the Class previously certified and the Class that the proposed Settlement will bind.

Civ. P. 23(e)(1)(B); *see also Jones v. Commerce Bancorp, Inc.*, No. 05-cv-5600 (RBK), 2007 WL 2085357, at *2 (D.N.J. July 16, 2007) ("Courts make a preliminary evaluation of the fairness of the settlement, prior to directing that notice be given to members of the settlement class."). Rule 23(e)(2) provides:

> (2)    Approval of the Proposal.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

> (A)    the class representatives and class counsel have adequately represented the class;

> (B)    the proposal was negotiated at arm's length;

> (C)    the relief provided for the class is adequate, taking into account:

>> (i)    the costs, risks and delay of trial and appeal;

>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

>> (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

>> (iv)    any agreement required to be identified under Rule 23(e)(3); and

> (D)    the proposal treats class members equitably relative to each other.

These factors overlap with those set forth by the Third Circuit in *Girsh*, 521 F.2d at 157, which include:

> . . . (1) the complexity, expense and likely duration of the litigation . . .; (2) the reaction of the class to the settlement . . .; (3) the stage of the proceedings and the amount of discovery completed . . .; (4) the risks of establishing liability . . .; (5) the risks of establishing damages . . .; (6) the risks of maintaining the class action through the trial . . .; (7) the

- 13 -

ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . .; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. . . .[3]

The Third Circuit has held that there is an initial "presumption of fairness" of the Settlement if the Court finds that: "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Warfarin Sodium*, 391 F.3d at 535; *see also, e.g.*, *Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-cv-05135, 2019 WL 1499475, at *5 (E.D. Pa. Apr. 4, 2019) (granting final approval, analyzing amended Rule 23(e)(2) and the *Girsh* factors).

These factors warrant preliminary approval here.

## A.     The Proposed Settlement Is Fair

The first two factors for the Court's consideration under Rule 23(e)(2) are the adequacy of representation for the class and the arm's-length nature of the settlement negotiations.  *See* Rule 23(e)(2)(A)-(B).  These two factors dovetail into the third *Girsh* factor, which focuses on the stage of the proceedings and the amount of discovery completed.  *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 102 (D.N.J. 2012) ("a presumption of fairness exists where a settlement has been negotiated at

---

[3]     The *Girsh* factors "are a guide and the absence of one or more does not automatically render the settlement unfair." *In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), 2010 WL 1257722, at *5 (D.N.J. Mar. 26, 2010).

arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors").

Here, the Settlement is presumptively fair because it was the result of extensive arm's-length negotiations conducted by experienced counsel before highly respected independent mediators, and the Parties completed extensive discovery and thereby had an adequate understanding of the merits of the case.

*First*, Lead Plaintiffs and Lead Counsel have adequately represented the Class as required by Rule 23(e)(2)(A) by diligently prosecuting this Litigation on their behalf, including, among other things, drafting complaints, opposing and defeating Defendants' motion to dismiss, obtaining nearly 5 million pages of documents produced by Defendants and 19 third parties, propounding and responding to written discovery, collecting and producing substantial discovery from their own files, successfully moving for class certification and opposing Defendants' Rule 23(f) petition to the Third Circuit to appeal this Court's class-certification order, taking and defending 53 fact and expert depositions, concluding expert discovery, fully briefing Defendants' summary judgment motion, and engaging in three mediation sessions.

Lead Counsel are highly competent lawyers who possess substantial experience in prosecuting complex securities class actions in this Circuit and throughout the country, and have successfully prosecuted hundreds of securities class actions on behalf of damaged investors. *See In re AT&T Corp. Sec. Litig.*, No. 00-5364 (GEB),

2005 WL 6716404, at *9 (D.N.J. Apr. 25, 2005) ("Lead Counsel [Robbins Geller] are highly skilled attorneys with great experience in prosecuting complex securities action[s], and their professionalism and diligence displayed during [this] litigation substantiates this characterization."), *aff'd*, 455 F.3d 160 (3d Cir. 2006); *Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, No. 08-00235 (CCC), 2019 WL 4877563, at *3 (D.N.J. Oct. 3, 2019) (noting that Robbins Geller is "capable of adequately representing the class, both based on their prior experience in class action lawsuits and based on their capable advocacy on behalf of the class in this action"); *In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV 3288 (DLC), 2004 WL 2591402, at *18 (S.D.N.Y. Nov. 12, 2004) ("The quality of the representation given by Lead Counsel [including Bernstein Litowitz] is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation."); *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 255 (E.D. Va. 2009) ("[W]hen Class Counsel [including Bernstein Litowitz] are nationally recognized members of the securities litigation bar, it is entirely warranted for this Court to pay heed to their judgment in approving, negotiating, and entering into a putative settlement.").

Moreover, the Court-appointed Lead Plaintiffs are sophisticated institutional investors, overseeing hundreds of millions of dollars of investments. The collective experience, expertise, and tenacity of Lead Counsel, and the sophistication of Lead

Plaintiffs, led to this excellent result, which will provide significant and immediate relief to the Class.

Given the advanced stage of the litigation, there can be no doubt that "counsel had an adequate appreciation of the merits of the case before negotiating" the Settlement. *Warfarin Sodium*, 391 F.3d at 537; *Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *10. As detailed above in §II.A, by the time of Settlement, Lead Plaintiffs had engaged in extensive fact discovery, expert discovery, and motion practice, and therefore had a keen awareness of the risks of continued litigation, including the strength of the evidence that would be introduced at a trial. *See Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *10 (applying the *Girsh* factors and finding discovery efforts weighed in favor of approving settlement); *see also In re Philips/Magnavox Television Litig.*, No. 09-cv-3072 (CCC), 2012 WL 1677244, at *11 (D.N.J. May 14, 2012) ("Where this negotiation process follows meaningful discovery, the maturity and correctness of the settlement becomes all the more apparent.").

All of this, combined with Lead Counsel's extensive experience in securities fraud litigation, provided a strong base upon which to evaluate the relative strengths and weaknesses of the claims and defenses in this case. *See Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *Alves v. Main*, No. 01-

789 (DMC), 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("courts in this Circuit traditionally attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class"), *aff'd*, 559 F. App'x 151 (3d Cir. 2014); *Huffman*, 2019 WL 1499475, at *4 (the court should "give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action").

***Second***, the Settlement was negotiated at arm's length, as contemplated by Rule 23(e)(2)(B).  As detailed above in §IV, the Parties' settlement negotiations spanned more than three years and involved three mediation sessions with experienced mediators, as well as many follow up teleconferences, phone calls, and e-mail communications.  The negotiations were vigorous and adversarial, and the Defendants are represented by highly sophisticated counsel.  It was not until after these lengthy, contentious settlement negotiations that Judge Phillips issued a "mediator's proposal" that recommended the amount of the Settlement, which the Parties ultimately accepted.  Judge Phillips' direct participation further ensures that negotiations were non-collusive and conducted at arm's length. *Bredbenner v. Liberty Travel, Inc.*, No. 09-905 (MF), 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an

independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").[4]

### B.   The Benefits Under the Settlement Are Adequate

Rule 23(e)(2)(C)(i), which overlaps with *Girsh* in many respects (*i.e.*, factors 1, 4-9), instructs the Court to consider the adequacy of the settlement relief in light of the costs, risks, and delay that trial and appeal would inevitably impose.  *Compare* Fed. R. Civ. P. 23(e)(2)(C)(i) *with Girsh*, 521 F.2d at 157 (factor one focuses on the complexity, expense and likely duration of the litigation).   This aspect of Rule 23(e)(2)(C)(i) also weighs in favor of approval.

"Securities fraud class actions are notably complex, lengthy, and expensive cases to litigate."  *In re PAR Pharm. Sec. Litig.*, No. 06-3226 (ES), 2013 WL 3930091, at *4 (D.N.J. July 29, 2013).  Despite the advanced stage of the litigation, this case would still face a significant risk of substantial delay before ultimate resolution, including delays associated with an order on summary judgment, scheduling trial, and potential appeals that could last for years into the future.  *See Ins. Brokerage Antitrust Litig.*, 282 F.R.D. at 103 ("By reaching a favorable Settlement with most of the remaining Defendants prior to the disposition of Defendants' renewed dismissal motions or even an eventual trial, Class Counsel have avoided

---

[4]   *See also Sanders v. CJS Solutions Grp., LLC*, No. 17 Civ. 3809 (ER), 2018 WL 1116017, at *2 (S.D.N.Y. Feb. 28, 2018) ("[T]he settlement was negotiated for at arm's length with the assistance of an independent mediator, which reinforces the non-collusive nature of the settlement.").

significant expense and delay, and have also provided an immediate benefit to the Settlement Class."). The near-term relief that the Settlement provides to Class Members warrants approval in light of the delays inherent in continued litigation.

Further, the relief is fair, reasonable, and adequate considering the risks of continued litigation, which would require Lead Plaintiffs to prove (and defeat Defendants' counterarguments regarding) falsity, materiality, scienter, loss causation, and damages at trial. *See Girsh*, 521 F.2d at 157 (risks of establishing liability, damages and maintaining a class action support settlement approval).

Although Lead Plaintiffs believe their case is strong, they acknowledge, as they must, there are risks to litigation and ultimate recovery. Defendants' arguments, including the arguments in their summary judgment briefing, highlight the risks Lead Plaintiffs would face proving their claims. For example, Defendants have strenuously argued that Lead Plaintiffs have not adduced evidence to support jury findings that any alleged misstatements were false or misleading, including because (i) Novo Nordisk met its stated financial guidance during the relevant periods; (ii) Tresiba® commanded a premium price over other insulin products, as Defendants predicted; and (iii) Novo Nordisk properly publicly disclosed increased market pressures.

Defendants have also argued that Lead Plaintiffs could not establish the element of scienter, because the evidence did not support that any statements, even potentially misleading ones, were made with the requisite intent to defraud. And Defendants

have likewise challenged Lead Plaintiffs' theory of loss causation (and therefore recoverable damages), maintaining that losses on the alleged "corrective disclosure" dates were not caused by any alleged fraud; *i.e.*, nothing about the disclosures revealed to the market that any of Novo Nordisk's prior statements were false or misleading.  Instead, Defendants argue, the disclosures primarily represented the materialization of the risks that the Company previously and adequately disclosed both before and during the Class Period, such as the risk that market pressures would negatively impact the Company's financial performance.

Moreover, Lead Plaintiffs' claims would be subject to complex expert testimony, offered by Defendants' experts, that conflicts with Lead Plaintiffs' experts' analyses.  Indeed, the opinions of each side's experts vary substantially, and continued litigation poses the risks that Defendants would prevail in a "battle of experts." *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001).  Such a battle would increase the expense – as well as the risk – involved with advancing the litigation toward a positive resolution for Lead Plaintiffs and the Class, and a jury might credit Defendants' experts and accordingly reject Lead Plaintiffs' claims. *See In re PAR Pharm. Sec. Litig.*, 2013 WL 3930091, at *6 (noting "the inherent unpredictability and risk associated with damage assessments in the securities fraud class-action context").

The Settlement is a particularly strong result for the Class when balanced against those risks.  The $100 million recovery exceeds 6.7% of estimated reasonably recoverable damages, which assumes that Lead Plaintiffs would prevail on all of their arguments regarding the causes of the declines in Novo Nordisk's ADR price on the "corrective disclosure" dates Lead Plaintiffs alleged, among other issues.  This result exceeds the 3.2% average percentage recovery in securities class actions settled in 2020 where investor losses exceed $1 billion.  *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2020 Review and Analysis*, at 6, fig. 5, (Cornerstone Research 2021), Seeger Decl., Ex. 2.

Given the complexity of this case and the risks and delay inherent in continued litigation, the $100 million Settlement is an exceptional result.  Taking into account that the case has been litigated for more than four years, and the significant amount of the recovery, the Settlement here falls well within the range of reasonableness in light of the attendant risks and uncertainties of continued litigation, and should be preliminarily approved.  *See Girsh*, 521 F.2d at 157.

## C.     The Other Rule 23 (e)(2) Factors Are Met

Rule 23 (e)(2) also enumerates three additional factors for the Court to consider in approving a settlement:   (i) the effectiveness of the proposed method for distributing relief; (ii) the terms of the proposed attorneys' fees; and (iii) the existence

of any other "agreements." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) (am. 2018). These factors also weigh in favor of preliminary approval.

### 1. The Proposed Method for Distributing Relief Is Effective

As discussed below in §VI, the method of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) is effective and more than sufficient. The notice plan includes: (i) direct mail notice to all those who can be identified with reasonable effort, including those persons and entities who received the Notice of Pendency of Class Action provided in 2020, (ii) direct e-mail notification to hundreds of financial institutions that regularly monitor proposed securities class actions, and (iii) publication of the Summary Settlement Notice in *The Wall Street Journal*, *Investor's Business Daily*, and *PR Newswire*, an online newswire service. In addition, the case-specific website established for the Class Notice will be updated such that relevant deadlines and key Settlement documents, including the Stipulation, Settlement Notice, Proof of Claim Form, and Preliminary Approval Order, will be prominently posted.

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan of Allocation was prepared with the assistance of Lead

- 23 -

Plaintiffs' damages expert.  Calculations were based primarily on the expert's event-study analysis estimating the amount of artificial inflation in the prices of Novo Nordisk ADRs during the Class Period.  A thorough claim-review process, including how deficiencies will be addressed, is also explained in the Stipulation, ¶24.

### 2.   Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  The Settlement provides that Lead Counsel will apply to this Court for an award of attorneys' fees and expenses no later than 35 days prior to the Settlement Hearing.  *See* Preliminary Approval Order, ¶21.  As set forth in the proposed Notice, Lead Plaintiffs will request attorneys' fees not to exceed 30% of the Settlement Fund and litigation expenses not to exceed $3,300,000, which amount includes awards to Lead Plaintiffs in connection with their representation of the Class pursuant to 15 U.S.C. §78u-4(a)(4).

This fee request is consistent with attorneys' fees regularly approved in connection with large PSLRA securities class action settlements within this District and nationwide.  *See, e.g., In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery."); *Alaska Elec. Pension Fund v. Pharmacia Corp.*, No. 03-1519 (AET), 2013 WL 12153597 (D.N.J. Jan. 30, 2013), at *1 (awarding attorneys' fees of 27.5% and expenses of $3.4 million on $164 million recovery); *In re Wilmington Trust Sec.*

*Litig.*, No. 10-cv-00990-ER, 2018 WL 6046452, at *9 (D. Del. Nov. 19, 2018) (awarding 28% of $210 million settlement); *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033, 2016 WL 10570957, at *1 (M.D. Tenn. Apr. 14, 2016) (awarding 30% of $215 million settlement); *In re Pfizer Inc. Sec. Litig.*, No. 04-cv-09866 (LTS), ECF No. 727 at 2 (S.D.N.Y. Dec. 21, 2016) (awarding 28% of $486 million settlement); *In re Genworth Fin. Sec. Litig.*, No. 3:14-cv-682-JAG, 2016 WL 7187290, at *1-*2 (E.D. Va. Sept. 26, 2016) (awarding 28% of $219 million settlement).

Lead Counsel's notice of its maximum expense request of $3.3 million is based on the substantial expenses that counsel incurred over four years of litigation and allows for any additional expenses incurred prior to final approval.  The litigation included an extensive factual investigation; written discovery from Defendants, Lead Plaintiffs, and 19 third parties; 53 fact and expert depositions; and retention of four experts.  The expense amount likewise includes the costs for three separate mediations with Judge Phillips, one of the most highly regarded mediators in the United States.

### 3.    The Parties Have No Other Agreements Besides an Agreement to Address Requests for Exclusion

Rule 23(e)(2)(C)(iv) calls for the disclosure of any other agreements entered into in connection with the settlement of a class action.  The Parties have entered into a supplemental agreement that provides that if the Court permits Class Members a second opportunity to request exclusion from the Class, Defendants will have the right to terminate the Settlement in the event that timely and valid requests for exclusion

from the Class exceed the criteria set forth in the Supplemental Agreement. *See* Stipulation, ¶35. However, a second opportunity for Class Members to exclude themselves from the Class is unnecessary and unwarranted, after Class Members were given ample notice and opportunity to request exclusion and instructed in the Court-approved Class Notice that there would not be a second opt-out opportunity.[5] The Supplemental Agreement will be null and void in its entirety if the Court does not require a second opt-out opportunity in connection with the Settlement proceedings.[6]

### 4.   Class Members Are Treated Equitably

The final factor, Rule 23(e)(2)(D), concerns whether the Settlement treats Class Members equitably. As discussed above, all Class Members are treated equitably under the terms of the Stipulation, which provides that each Class Member that

---

[5]   On January 31, 2020, the Court certified the Class (ECF No. 182) and, thereafter, approved the proposed form and manner for providing the Class Notice (ECF No. 192). The Class Notice notified putative Class Members that "Class Members will not have another opportunity to exclude themselves or otherwise opt out of this Litigation" (*See* ECF No. 223, Ex. A at 4), and "IF YOU DO NOT EXCLUDE YOURSELF BY THE DEADLINE ABOVE, YOU WILL REMAIN PART OF THE CLASS AND BE BOUND BY THE ORDERS OF THE DISTRICT COURT IN THIS LAWSUIT, INCLUDING FINAL JUDGMENT" (*see id.* at 5). Over 350,000 copies of the Class Notice were mailed to potential Class Members; only 107 requested exclusion. *See* ECF No. 223, ¶¶8, 12; Stipulation, Appendix 1. Because the Class was provided an ample opportunity to opt out of the Class, and will receive notifications of the Settlement and the opportunity to object at a formal fairness hearing, there is no reason to require a second opt-out opportunity. *See, e.g.*, *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) (no second opt-out period required); *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) (same).

[6]   Also, as is standard in securities class actions, agreements of this kind are not made public to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the opt-out threshold to exact individual settlements. In accordance with its terms, the Supplemental Agreement may be submitted to the Court *in camera*.

properly submits a valid Proof of Claim Form will receive a *pro rata* share of the Net

Settlement Fund, calculated under the Plan of Allocation.

The Settlement satisfies each factor identified under Rule 23(e)(2) and the Third

Circuit's *Girsh* opinion is satisfied.  Moreover, pursuant to *Warfarin Sodium*, 391 F.3d

at 535, the Settlement is entitled to a presumption of fairness.  Given the litigation

risks involved, and the complexity of the underlying issues, the $100 million recovery

is an excellent one.  Therefore, Lead Plaintiffs and Lead Counsel respectfully submit

that the Settlement is fair, reasonable and adequate, preliminary approval should be

granted, and notice of the Settlement should be sent to the Class.

## VI.   THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

### A.   Retention of JND Legal Administration as Claims Administrator

The Court previously approved the appointment of JND Legal Administration

to provide the Notice of Pendency of the Action in 2020.  ECF No. 192.  JND is an

experienced administrator for class action settlements, and has implemented many

successful claims administration programs.  *See* www.jndla.com.  Lead Plaintiffs

request that the Court re-appoint JND as Claims Administrator to provide all notices

approved by the Court to Class Members, to process Proof of Claim Forms, and to

administer the Settlement.

### B.    Proposed Notice Procedures

Rule 23(e) governs notice requirements for settlements or "compromises" in class actions.  The Rule provides that a class action shall not be settled, dismissed, or compromised without the approval of the court, and notice of the proposed settlement, dismissal, or compromise shall be given to all members of the class in such a manner as the court directs.  Fed. R. Civ. P. 23(e).  The Rule provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  In addition, Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Here, the Parties have negotiated the form of the notices to be disseminated to all identified potential Class Members.   The proposed Settlement Notice and Summary Settlement Notice are attached to the proposed Preliminary Approval Order as Exhibits 1 and 3, respectively.

The proposed Settlement Notice apprises Class Members of (among other things) the nature of the Action, the definition of the Class, the claims and issues in the Action, and the claims that will be released in the Settlement.  The Settlement Notice also: (i) advises that a Class Member may enter an appearance through counsel if desired; (ii) describes the binding effect of a judgment on Class Members under

Rule 23(e)(3); (iii) states the procedures and deadline for Class Members to object to the proposed Settlement, the proposed Plan of Allocation, and the requested attorneys' fees and expenses; (iv) states the procedures and deadline for Class Members to submit a Proof of Claim Form to recover from the Settlement; and (v) provides the date, time, and location of the Settlement Hearing.  The Parties further propose to supplement the Notice with the Summary Settlement Notice, to be published once in the national edition of *The Wall Street Journal*, once in the *Investor's Business Daily*, and once via *PR Newswire*, a national online newswire service.  *See supra*, at §V.C.1.

The Settlement Notice and Summary Settlement Notice also satisfy the PSLRA's specific notice requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per-ADR basis; (ii) that the Parties do not agree on the average amount of damages per ADR that would be recoverable in the event Lead Plaintiffs prevailed at trial, and stating the issue(s) on which the Parties disagree; (iii) that Lead Counsel intends to make an application for an award of attorneys' fees and expenses, including the amount of the requested fees and expenses determined on an average per-ADR basis; (iv) contact information for Lead Counsel; and (v) the reasons the Parties are proposing the Settlement.

The proposed plan for providing notice is the same method used in numerous other securities class actions, including in connection with the Class Notice in this Action.  Courts routinely find that comparable notice programs represent the best

notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See Jones*, 2007 WL 2085357, at *5 ("the proposed distribution of notice to class members by first class mail is reasonable because no alternative method of distribution is more likely to notify class members"). For all of the foregoing reasons, the notice program should be approved by the Court.

## VII.   PROPOSED SCHEDULE OF EVENTS

The last step in the settlement approval process is to hold a Settlement Hearing at which the Court will hear argument and make a final decision about whether to approve the Settlement pursuant to Rule 23(e)(2). *See Manual for Complex Litigation*, *supra*, at §21.63.

Concurrent with this motion, Lead Plaintiffs have submitted a proposed agreed-upon Preliminary Approval Order ("PAO"), which was negotiated with Defendants, setting forth the proposed schedule of Settlement-related events through final approval. Specifically, Lead Plaintiffs propose the following schedule:

| | |
|---|---|
| Date for commencing the mailing of the Settlement Notice and Proof of Claim Form to the Class (the "Notice Date") | 15 business days after the PAO is signed and entered |
| Deadline for publishing the Summary Settlement Notice | 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | 35 days prior to the Settlement Hearing |
| Deadline for filing objections | 21 calendar days prior to the Settlement Hearing |

| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing |
| Deadline for Lead Counsel to serve on Defendants' counsel proof, by affidavit or declaration, of mailing and publishing Notice | 7 calendar days prior to the Settlement Hearing |
| Deadline for Class Members to file Proof of Claim Forms | 120 days after the Notice Date |
| Settlement Hearing | At least 100 calendar days after the PAO is signed and entered, at the Court's convenience |

This proposed schedule complies with Rule 23 and will allow Class Members to recover from the Settlement in a timely fashion.

## VIII.  CONCLUSION

Lead Plaintiffs have obtained an outstanding result for the Class, and now respectfully request that the Court grant their motion for preliminary approval and enter the Parties' proposed Order Preliminarily Approving Settlement and Providing for Notice, which is attached as Exhibit A to the Stipulation.

DATED:  November 23, 2021          Respectfully submitted,

SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
DAVID R. BUCHANAN


_/s/ Christopher A. Seeger_
CHRISTOPHER A. SEEGER

55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  973/639-9100
973/639-9393 (fax)

SEEGER WEISS LLP
JENNIFER R. SCULLION
100 Church Street, 8th Floor
New York, NY  10007
Telephone: 212/584-0700
212/584-0799 (fax)

CARELLA, BYRNE, CECCHI, OLSTEIN,
  BRODY & AGNELLO, P.C.
JAMES E. CECCHI
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)

Co-Liaison Counsel and Executive
Committee Members for the Class

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
ELLEN GUSIKOFF STEWART
LUKE O. BROOKS
RYAN A. LLORENS
ERIC I. NIEHAUS
ANGEL P. LAU
JEFFREY J. STEIN
ERIKA OLIVER
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

BERNSTEIN LITOWITZ BERGER &
  GROSSMANN LLP
SALVATORE J. GRAZIANO
HANNAH ROSS
AVI JOSEFSON
KATHERINE M. SINDERSON
ADAM D. HOLLANDER
1251 Avenue of the Americas
New York, NY  10020
Telephone:  212/554-1400
212/554-1444 (fax)

Co-Lead Counsel for the Class

SAXENA WHITE P.A.
JOSEPH E. WHITE, III
BRANDON T. GRZANDZIEL
DIANNE M. ANDERSON
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone:  561/394-3399
561/394-3382 (fax)

SAXENA WHITE P.A.
STEVEN B. SINGER
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: 914/437-8551
888/631-3611 (fax)

Executive Committee Member