SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
DAVID R. BUCHANAN
JENNIFER R. SCULLION
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  973/639-9100
973/639-9393 (fax)

CARELLA, BYRNE, CECCHI, OLSTEIN,
  BRODY & AGNELLO, P.C.
JAMES E. CECCHI
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)

Co-Liaison Counsel and Executive Committee Members for the Class

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re NOVO NORDISK SECURITIES LITIGATION | ) ) ) | Master File No. 3:17-cv-00209-ZNQ-LHG |
| This Document Relates To: | ) ) ) | <u>CLASS ACTION</u> |
| ALL ACTIONS. | ) ) ) ) | |

LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION

# TABLE OF CONTENTS

**Page**

I.    OVERVIEW ...................................................................................1

II.    PROCEDURAL HISTORY .........................................................3

    A.    Pretrial Proceedings...........................................................3

    B.    Investigation, Fact, and Expert Discovery ...........................5

    C.    Summary Judgment.............................................................6

    D.    Arm's-Length Settlement Negotiations ...............................7

III.    NOTICE HAS BEEN PROVIDED TO THE CLASS IN
COMPLIANCE WITH RULE 23, DUE PROCESS, AND THE
COURT'S PRELIMINARY APPROVAL ORDER .......................7

IV.    THE SETTLEMENT WARRANTS THE COURT'S FINAL
APPROVAL ...............................................................................11

    A.    The Settlement Satisfies the Requirements of Rule 23(e)(2)..............14

        1.    Lead Plaintiffs and Plaintiffs' Counsel Have More Than
Adequately Represented the Class............................................14

        2.    The Settlement Negotiations Were Conducted at Arm's
Length and Under the Oversight of Experienced
Mediators .................................................................17

        3.    The Settlement Is Adequate Considering the Costs,
Risks, and Delay of Trial and Appeal ......................................19

            a.    Risks of Establishing Liability and Damages.................19

            b.    The Ability of Defendants to Withstand a Greater
Judgment.......................................................................22

            c.    The Settlement Falls Well Within the Range of
Reasonableness .............................................................23

        4.    The Settlement Satisfies the Remaining Rule 23(e)(2)
Factors........................................................................25

**Page**

|   |   | a. | The Proposed Method for Distributing Relief Is Effective..........................................................................26 |
|---|---|---|---|
|   |   | b. | The Requested Attorneys' Fees Are Reasonable ...........26 |
|   |   | c. | The Parties Have No Other Agreements Besides an Agreement to Address Requests for Exclusion..............27 |
|   |   | d. | Class Members Will Be Treated Equitably, and the Reaction of the Class Supports Final Approval .............27 |
|   | B. | | The Settlement Satisfies the Applicable *Prudential* Factors .............28 |
| V. | | | THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION.......29 |
| VI. | | | CONCLUSION...............................................................................31 |

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alves v. Main*,
2012 WL 6043272 (D.N.J. Dec. 4, 2012),
*aff'd*, 559 F. App'x 151 (3d Cir. 2014) ............................................................. 16

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .............................................. 25, 29

*Dartell v. Tibet Pharms., Inc.*,
2017 U.S. Dist. LEXIS 100872
(D.N.J. June 29, 2017) ......................................................................................... 8

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ............................................................................. 11

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ..................................................................... *passim*

*Huffman v. Prudential Ins. Co. of Am.*,
2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) ...................................................... 22

*In re Aetna Inc.*,
2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ........................................................... 16

*In re AM Family Enters.*,
256 B.R. 377 (D.N.J. 2000) .............................................................................. 13

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .............................................................................. 27

*In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig.*,
795 F.3d 380 (3d Cir. 2015) .............................................................................. 14

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
2010 WL 547613 (D.N.J. Feb. 9, 2010) ........................................................... 22

*In re N.J. Tax Sales Certificates Antitrust Litig.*,
2016 WL 5844319 (D.N.J. Oct. 3, 2016) .......................................................... 23

**Page**

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
   307 F.R.D. 351 (E.D. Pa. 2015),
   *amended*, 2015 WL 12827803 (E.D. Pa. May 8, 2015),
   *aff'd*, 821 F.3d 410 (3d Cir. 2016)......................................................................16

*In re Nat'l Football League Players Litig.*,
   821 F.3d 410 (3d Cir. 2016) ...............................................................................13

*In re Ocean Power Techs., Inc.*,
   2016 U.S. Dist. LEXIS 158222
   (D.N.J. Nov. 15, 2016)..........................................................................17, 20, 21

*In re Par Pharm. Sec. Litig.*,
   2013 WL 3930091 (D.N.J. July 29, 2013) ......................................18, 19, 23, 30

*In re Philips/Magnavox Television Litig.*,
   2012 WL 1677244 (D.N.J. May 14, 2012)........................................................16

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Action*,
   148 F.3d 283 (3d Cir. 1998) .........................................................12, 13, 16, 28

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
   2012 WL 1964451 (D.N.J. May 31, 2012)........................................................29

*In re Valeant Pharms. Int'l Inc. Sec. Litig.*,
   2020 U.S. Dist. LEXIS 103675
   (D.N.J. June 15, 2020) ......................................................................................13

*In re Vicuron Pharms., Inc. Sec. Litig.*,
   512 F. Supp. 2d 279 (E.D. Pa. 2007).................................................................23

*In re ViroPharma Inc. Sec Litig.*,
   2016 WL 312108 (E.D. Pa. Jan. 25, 2016)..................................................*passim*

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ......................................................................*passim*

*Kanefsky v. Honeywell Int'l Inc.*,
   2022 U.S. Dist. LEXIS 80328
   (D.N.J. May 3, 2022) ................................................................................*passim*

*Li v. Aeterna Zentaris, Inc.*,
   2021 WL 2220565 (D.N.J. June 1, 2021)...........................................................23

**Page**

*Maley v. Del Global Tech. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................29

*Nyby v. Convergent Outsourcing, Inc.*,
  2017 U.S. Dist. LEXIS 122056
  (D.N.J. Aug. 3, 2017).........................................................................11, 29

*Pelletier v. Endo International PLC*,
  No. 2:17-cv-05114-MMB
  (E.D. Pa. Feb. 23, 2022) ....................................................................23

*Schuler v. Meds. Co.*,
  2016 U.S. Dist. LEXIS 82344
  (D.N.J. June 24, 2016) .......................................................................17

*Semerenko v. Cendant Corp.*,
  223 F.3d 165 (3d Cir. 2000) ...............................................................20

*Smith v. Dominican Bridge Corp.*,
  2007 U.S. Dist. LEXIS 26903
  (E.D. Pa. Apr. 11, 2007) .....................................................................20

*Utah Ret. Sys. v. Healthcare Servs. Grp.*,
  2022 U.S. Dist. LEXIS 5841
  (E.D. Pa. Jan. 12, 2022) ...............................................18, 22, 23, 27

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §78u-4(a)(4) .........................................................................................3, 26
  §78u-4(a)(7) .........................................................................................8

15 U.S.C.
  §78j(b)....................................................................................................20

**Page**

Federal Rules of Civil Procedure
    Rule 23(c)(2)(B)...............................................................................7, 8, 10
    Rule 23(e)....................................................................................*passim*
    Rule 23(e)(1)(B)..................................................................................7
    Rule 23(e)(2)...............................................................................*passim*
    Rule 23(e)(2)(A)...........................................................................14, 15
    Rule 23(e)(2)(B)...............................................................................16
    Rule 23(e)(2)(C)(i)............................................................................18
    Rule 23(e)(2)(C)(ii)-(iv) ....................................................................25
    Rule 23(e)(2)(D) ..........................................................................25, 26
    Rule 23(e)(3)....................................................................................12

## SECONDARY AUTHORITIES

Laarni T. Bulan and Laura E. Simmons, *Securities Class Action
    Settlements: 2021 Year in Review*
    (Cornerstone Research 2022)...............................................................24

Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities
    Class Action Litigation: 2021 Full-Year Review*
    (NERA Jan. 25, 2022)........................................................................24

Lead Plaintiffs and Class Representatives Lehigh County Employees' Retirement System, Oklahoma Firefighters Pension and Retirement System, Boston Retirement System, Employees' Pension Plan of the City of Clearwater, and Central States, Southeast and Southwest Areas Pension Fund ("Lead Plaintiffs")[1] respectfully submit this memorandum of law in support of their motion for final approval of the proposed $100 million all-cash settlement (the "Settlement") and approval of the Plan of Allocation.

## I.   OVERVIEW

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs seek final approval of an all-cash settlement of this Action in the amount of $100 million.  This Settlement, which resulted from arm's-length mediation overseen by the Honorable Layn R. Phillips (Ret.), assisted by the Hon. Harry G. Carroll (Ret.), represents an exceptional recovery for the Class and should be approved.  The Settlement followed more than four years of lengthy and hard-fought litigation, including the review of over five million pages of documents; the exchange of written discovery, including interrogatories and requests for admission; dozens of fact and expert depositions; extensive discovery, briefing, and argument concerning

---

[1]   Unless otherwise stated or defined, all capitalized terms used herein have the meanings provided in the Stipulation and Agreement of Settlement (the "Stipulation") dated November 23, 2021 (ECF 311-3).  All internal citations are omitted unless otherwise indicated.

class certification; the exchange of detailed expert reports on loss causation, damages, pharmaceutical industry access and pricing, diabetes treatment, and disclosure obligations; and thorough summary judgment briefing.  Through these efforts and the Court's comprehensive decisions at the motion to dismiss and class certification stages, as well as the Court's rulings on multiple discovery disputes, the Parties and their counsel gained a full understanding of all of the relevant issues, which they brought to bear in negotiating and ultimately agreeing to the Settlement.

The Settlement easily satisfies the requirements of Rule 23(e)(2), meets each of the *Girsh* factors,[2] and balances the objective of attaining the highest possible recovery against the risks and costs of continued litigation.  This includes the risk that, as in any complex case, the Class could receive nothing, or a far lower sum, after trial and any appeals, particularly in light of Novo Nordisk's strong defenses on liability and damages.  The Settlement has the support of each of the Lead Plaintiffs. *See* accompanying Declaration of Charles Lee; Declaration of Sarah M. Murray; Declaration of Jay Ravins; Declaration of Charles Rankin; and Declaration of Timothy J. Smyth (collectively, "Lead Plaintiff Declarations").  Likewise, the Plan of Allocation set forth in the Settlement Notice should be approved because it treats Class Members equitably and ensures that each Class Member that properly

---

[2]   *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

submits a valid Proof of Claim Form will receive a *pro rata* share of the monetary relief.

For the reasons set forth herein and in the accompanying Joint Declaration of Adam D. Hollander and Luke O. Brooks in Support of: (I) Motion for Final Approval of Settlement and Approval of Plan of Allocation; and (II) Motion for Attorneys' Fees and Litigation Expenses, and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Joint Decl."), Lead Plaintiffs respectfully request final approval of the proposed Settlement and approval of the Plan of Allocation.

## II.   PROCEDURAL HISTORY

### A.   Pretrial Proceedings

Beginning on January 11, 2017, three related class action complaints were filed in the United States District Court for the District of New Jersey on behalf of investors in Novo Nordisk's ADRs.  By order dated June 1, 2017, the Court consolidated those actions and any subsequently filed, removed, or transferred actions, and appointed and approved Lead Plaintiffs, Lead Counsel, Liaison Counsel, and an Executive Committee for the putative Class.  ECF 42.

On August 4, 2017, Lead Plaintiffs filed the Amended Complaint.  ECF 71. The Amended Complaint alleged, among other things, that during the Class Period (February 3, 2015 through February 2, 2017, inclusive), Defendants made a series of material misrepresentations and omissions by allegedly misrepresenting and

failing to disclose Novo Nordisk's true exposure to market pressures in the United States that affected the pricing and profitability of the Company's diabetes-drug portfolio and overstated the ability of Novo Nordisk's insulin drug Tresiba to drive Novo Nordisk's growth, which allegedly caused Novo Nordisk's ADRs to trade at artificially inflated levels.  The Amended Complaint further alleged that the price of Novo Nordisk ADRs declined when the true facts concerning Defendants' alleged misrepresentations and omissions were revealed, resulting in financial losses to those who purchased Novo Nordisk ADRs during the Class Period at inflated prices.

On October 3, 2017, Defendants moved to dismiss the Amended Complaint. ECF 81.  Lead Plaintiffs filed their opposition to that motion on November 17, 2017 (ECF 87), and Defendants filed their reply on December 18, 2017 (ECF 91).  The Court held oral argument on the motion on July 25, 2018.  ECF 96.  On August 16, 2018, the Court issued an Opinion and accompanying Order denying Defendants' motion to dismiss in its entirety.  ECF 99.  Defendants answered the Amended Complaint on October 1, 2018.  ECF 112.

On April 1, 2019, Lead Plaintiffs moved for class certification.  ECF 136.  The Parties produced expert reports, deposed each other's experts, and filed opening, opposition, and reply briefs.  The Parties also fully briefed Defendants' motion to exclude the expert report of Lead Plaintiffs' market-efficiency expert.  ECF 146, 152, 161.  On January 31, 2020, the Court issued an Opinion and accompanying

Order granting the motion for class certification and denying Defendants' motion to exclude.  ECF 181, 182.

On July 20, 2020, the Court entered an Order granting Lead Plaintiffs' unopposed motion to approve the form and manner of providing notice of the pendency of this Action to potential Class Members.  ECF 192.  The Class Notice, including notice of the pendency of the Action and of the right to seek exclusion from the Class, was provided to Class Members during the summer of 2020.  In response to the notice of pendency, 107 persons and entities requested exclusion from the Class.  *See* Stipulation, Appendix 1 (ECF 311-3).

**B.     Investigation, Fact, and Expert Discovery**

Through their investigation and fact and expert discovery, Lead Plaintiffs developed substantial information and evidence in support of their claims. Discovery was broad, directed at all Defendants, 19 third parties, and each Lead Plaintiff, and included the production of over five million pages of documents, written discovery, and contention interrogatories.  The Parties engaged in numerous lengthy meet-and-confer sessions concerning multiple discovery disputes, some of which required Court resolution, with the majority resolved without Court intervention.

Expert discovery commenced in November 2020.  The Parties exchanged opening, rebuttal, and reply expert reports from ten total experts – four from Lead

Plaintiffs and six from Defendants – covering a variety of fields, including pharmaceutical pricing and markets, Tresiba's clinical profile, accounting, regulatory disclosure requirements, disclosure practices in the United States, and loss causation and damages.  The Parties deposed all ten experts.

### C.    Summary Judgment

On April 20, 2021, Defendants served Lead Plaintiffs with their motion for summary judgment.  The Parties fully briefed and filed summary judgment materials by July 12, 2021, which included 161 pages of briefs, 1,270 pages of factual statements under District of New Jersey Local Civil Rule 56.1, and thousands of pages of exhibits.

Given the voluminous evidentiary record and legal argument assessed and discussed in connection with Defendants' summary judgment motion, by the time the Parties agreed to the Settlement, Lead Plaintiffs had an in-depth understanding of the likely evidence at any trial, including the testimony from key witnesses, the most important documents, and the biggest points of contention among the experts. All of this, combined with Lead Counsel's extensive experience in securities-fraud litigation, was more than sufficient for Lead Plaintiffs to evaluate the relative strengths and weaknesses of their claims and Defendants' defenses.

### D.    Arm's-Length Settlement Negotiations

The Parties engaged the services of mediators Judge Phillips and Judge Carroll, who collectively have decades of experience mediating large complex class actions, including securities class actions.  The Parties engaged in three mediation sessions, the details of which are discussed more fully below in §IV.A.2.

Following the September 2, 2021 mediation session and subsequent discussions, Judge Phillips issued a mediator's proposal to settle all the claims in exchange for $100 million in cash, which the Parties accepted.  The Parties informed the Court of the Settlement on September 29, 2021.  ECF 299.

On November 23, 2021, Lead Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement, the Stipulation, and a supporting Declaration. ECF 311.  The Court entered an Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") on March 8, 2022.  ECF 344. As detailed below, notice has been provided to the Class in accordance with the Court's Preliminary Approval Order.  Objections to the proposed Settlement are due by June 6, 2022.  *Id.*  To date, none have been filed.

### III.   NOTICE HAS BEEN PROVIDED TO THE CLASS IN COMPLIANCE WITH RULE 23, DUE PROCESS, AND THE COURT'S PRELIMINARY APPROVAL ORDER

Rule 23(e), which governs notice requirements for class action settlements, provides that "[t]he court must direct notice in a reasonable manner to all class

members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). In addition, Rule 23(c)(2)(B) requires that a certified class receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "'The Rule 23(e) notice is designed to summarize the litigation and the settlement and "to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation."'" *Dartell v. Tibet Pharms., Inc.*, 2017 U.S. Dist. LEXIS 100872, at *7 (D.N.J. June 29, 2017). *See also Kanefsky v. Honeywell Int'l Inc.*, 2022 U.S. Dist. LEXIS 80328, at *8-*9 (D.N.J. May 3, 2022).

Here, the Settlement Notice and Summary Settlement Notice were approved by the Court in the Preliminary Approval Order (ECF 344), and fully comply with Rule 23, both substantively and procedurally. Among other disclosures, the Settlement Notice apprises Class Members of the nature of this litigation, the definition of the Class, the claims and issues in the litigation, and the claims that will be released in the Settlement. The Settlement Notice also: (i) advises that a Class Member may enter an appearance through counsel; (ii) describes the binding effect of a judgment on Class Members; (iii) states the procedures and deadline for Class Members to object to the proposed Settlement, the Plan of Allocation, or the requested attorneys' fees and expenses; (iv) states the procedures and deadline for

submitting a Proof of Claim Form; and (v) provides the date, time, and location of the Settlement Hearing.  In addition, the Settlement Notice and Summary Settlement Notice satisfy the Private Securities Litigation Reform Act of 1995's disclosure requirements (15 U.S.C. §78u-4(a)(7)) by stating, among other things: (i) the amount of the Settlement determined in the aggregate and an average per-ADR basis; (ii) that the Parties[3] do not agree on the average amount of damages per-ADR that would be recoverable if Lead Plaintiffs prevailed at trial, and stating the issues on which the Parties disagree; (iii) that Lead Counsel intend to apply for an award of attorneys' fees and expenses, including the amount of the requested fees and expenses determined on an average per-ADR basis; (iv) contact information for Lead Counsel; and (v) the reasons the Parties are proposing the Settlement.  The contents of the Settlement Notice and Summary Settlement Notice therefore satisfy all applicable requirements.  *See Kanefsky*, 2022 U.S. Dist. LEXIS 80328, at *8-*9.

In the Preliminary Approval Order, the Court found that this notice program satisfies, in form and content, the requirements of Rule 23 and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto.  Preliminary Approval Order, ¶6. The notice program has since been carried out.  The Claims Administrator, JND

---

[3]   *See* Stipulation (ECF 311-3), ¶1(ff).

Legal Administration ("JND"), commenced mailing the Settlement Notice and the Proof of Claim Form (collectively, "Settlement Notice Packet") on March 29, 2022, to all Class Members who could be reasonably identified, as well as to JND's database of banks, brokers, and other nominees. *See* Declaration of Luiggy Segura Regarding: (A) Mailing of the Settlement Notice and Claim Form and (B) Publication of the Summary Settlement Notice ("Segura Decl."), ¶3, submitted herewith. As a result of these efforts, a total of 378,723 Settlement Notice Packets have been sent to potential Class Members or their nominees. *Id.*, ¶4. On April 11, 2022, JND caused the Summary Settlement Notice to be published in *The Wall Street Journal*, *Investor's Business Daily*, and over *PR Newswire*, and posted copies of the Settlement Notice, Proof of Claim Form, Stipulation, and Preliminary Approval Order on the website maintained for the Settlement, www.NovoNordiskSecuritiesLitigation.com. *Id.*, ¶¶5, 7.[4]

This combination of notice by mail to all Class Members who could be identified with reasonable effort, supplemented by publication in a widely circulated newspaper, over a newswire, and on a website, is typical of notice plans in securities class actions, and satisfies Lead Plaintiffs' obligations to provide "the best notice . . .

---

[4]   The settlement website has been updated to reflect that the date of the Settlement Hearing has changed from June 27, 2022 to June 28, 2022.

practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B); *Kanefsky*, 2022 U.S. Dist. LEXIS 80328, at *9.

## IV.   THE SETTLEMENT WARRANTS THE COURT'S FINAL APPROVAL

It is well established that the settlement of class action litigation is favored. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *Nyby v. Convergent Outsourcing, Inc.*, 2017 U.S. Dist. LEXIS 122056, at *7 (D.N.J. Aug. 3, 2017).  Settlement spares litigants the uncertainty, delay, and expense of a trial and appeals while simultaneously reducing the burden on judicial resources.  The Third Circuit Court of Appeals has reiterated the longstanding principle that there is a "strong presumption in favor of voluntary settlement agreements."  *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010).  "This presumption is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'"  *Id.* at 595.

Federal Rule of Civil Procedure 23(e) requires judicial approval of a class action settlement.

Rule 23(e)(2) identifies the following factors to be considered at final approval when determining that a settlement is "fair, reasonable, and adequate":

**(2)**   ***Approval of the Proposal***.   If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

   **(A)**   the class representatives and class counsel have adequately represented the class;

   **(B)**   the proposal was negotiated at arm's length;

   **(C)**   the relief provided for the class is adequate, taking into account:

      **(i)**   the costs, risks and delay of trial and appeal;

      **(ii)**   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      **(iii)**   the terms of any proposed award of attorney's fees including timing of payment; and

      **(iv)**   any agreement required to be identified under Rule 23(e)(3); and

   **(D)**   the proposal treats class members equitably relative to each other.

These factors are considered alongside, and largely overlap with, those set forth by the Third Circuit in *Girsh*:

"(1)   the complexity, expense and likely duration of the litigation . . .;
(2) the reaction of the class to the settlement . . .; (3) the stage of the proceedings and the amount of discovery completed . . .; (4) the risks of establishing liability . . .; (5) the risks of establishing damages . . .; (6) the risks of maintaining the class action through the trial . . .; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . .; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . ."

521 F.2d at 157.  The Third Circuit later expanded on the *Girsh* factors in *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Action*, 148 F.3d 283, 323 (3d Cir. 1998), adding additional factors that the court may consider where appropriate.[5] "'These factors are a guide and the absence of one or more does not automatically render the settlement unfair.'"  *Kanefsky*, 2022 U.S. Dist. LEXIS 80328, at *11 (quoting *In re AM Family Enters.*, 256 B.R. 377, 418 (D.N.J. 2000)).  "Rather, the Court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under *Girsh*."  *In re Valeant Pharms. Int'l Inc. Sec. Litig.*, 2020 U.S. Dist. LEXIS 103675, at *43 (D.N.J. June 15, 2020).

The Third Circuit has also explained that there is an initial presumption that a settlement is fair if: "'(1) the [settlement] negotiations occurred at arms length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced

---

[5]   The *Prudential* factors are: (1) "the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;" (2) "the existence and probably outcome of claims by other classes and subclasses;" (3) "the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved – or likely to be achieved – for other claimants;" (4) "whether class or subclass members are accorded the right to opt out of the settlement;" and (5) "whether any provisions for attorneys' fees are reasonable."  *In re Prudential*, 148 F.3d at 323.

in similar litigation; and (4) only a small fraction of the class objected.'" *In re Nat'l Football League Players Litig.*, 821 F.3d 410, 436 (3d Cir. 2016).

As set forth herein and in the Joint Declaration, the Settlement is an excellent result, is presumptively fair, and clearly satisfies each element of Rule 23(e)(2) and the *Girsh* and *Prudential* factors. This is especially so in light of the difficulties in proving the alleged statements were materially false, scienter, loss causation, and damages, discussed below in §IV.A.3.

### A. The Settlement Satisfies the Requirements of Rule 23(e)(2)

#### 1. Lead Plaintiffs and Plaintiffs' Counsel Have More Than Adequately Represented the Class

The first factor under Rule 23(e)(2) concerns the adequacy of representation provided by the class representatives and class counsel. *See* Rule 23(e)(2)(A). The determination of adequacy "primarily examines two matters: the interests and incentives of the class representatives, and the experience and performance of class counsel." *In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig.*, 795 F.3d 380, 392 (3d Cir. 2015). This overlaps with the third *Girsh* factor, which focuses on the stage of the proceedings and the amount of discovery completed. *See Girsh*, 521 F.2d at 157; *see also Warfarin*, 391 F.3d at 535 (noting similar considerations for applying presumption of fairness).

The Court has expressed confidence in the abilities of Lead Plaintiffs and Lead Counsel to pursue this litigation, first by appointing each to their respective positions

(ECF 42), and then by certifying the Class, which included an assessment that Lead Plaintiffs and Lead Counsel are able to fairly and adequately represent the Class's interests (ECF 182 at 13-14).  The Court's confidence was well placed, as Lead Counsel zealously pursued this litigation.  Among many other undertakings, Lead Counsel conducted a thorough investigation into the alleged violations of the federal securities laws; drafted a detailed amended complaint; successfully opposed Defendants' motion to dismiss; engaged in extensive discovery, including the review of over five million pages of documents and propounding and responding to interrogatories and requests for admission; negotiated discovery disputes, bringing them to the Court when necessary; deposed dozens of fact witnesses; defended the depositions of Lead Plaintiffs, filed multiple briefs in support of class certification, secured class certification, and opposed Defendants' Rule 23 (f) petition to the Third Circuit concerning class certification; produced expert reports and rebuttal expert reports; deposed Defendants' experts; opposed Defendants' motion for summary judgment; and engaged in settlement negotiations and mediation led by former Judges Phillips and Carroll.  *See generally* Joint Decl.  At each of these stages, Lead Counsel successfully advanced this case on behalf of the Class.

Lead Counsel brought substantial litigation experience to this case.  Lead Counsel have successfully prosecuted hundreds of securities class actions on behalf of investors.  In addition, Lead Plaintiffs are sophisticated institutional investors that

oversee millions of dollars of investments on behalf of their beneficiaries, and their support for the Settlement carries substantial weight as well.  *See* Lead Plaintiff Declarations.

Lead Plaintiffs and Lead Counsel have thus adequately represented the Class under Rule 23(e)(2)(A) and have secured "'an adequate appreciation of the merits of the case'" by means of substantial discovery and litigation.  *Warfarin*, 391 F.3d at 597.  "[C]ourts in this Circuit traditionally 'attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class.'" *Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014); *see also In re ViroPharma Inc. Sec Litig.*, 2016 WL 312108, at *11 (E.D. Pa. Jan. 25, 2016) (stating that courts "'afford[] considerable weight to the views of experienced counsel regarding the merits of the settlement'"); *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 387 (E.D. Pa. 2015) ("'A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.'"), *amended*, 2015 WL 12827803 (E.D. Pa. May 8, 2015), *aff'd*, 821 F.3d 410 (3d Cir. 2016).[6]  Bringing their experience and knowledge of this case to bear,

---

[6]   *See also In re Prudential*, 148 F.3d at 323 (identifying "the extent of discovery on the merits" as a relevant factor in evaluating class action settlements); *In re Philips/Magnavox Television Litig.*, 2012 WL 1677244, at *11 (D.N.J. May 14, 2012) ("'Where this negotiation process follows meaningful discovery, the maturity and correctness of the settlement become all the more apparent.'"); *In re Aetna Inc.*, 2001 WL 20928, at *7 (E.D. Pa. Jan. 4, 2001) ("That Defendants' summary

Lead Plaintiffs and Lead Counsel all believe that the Settlement is in the best interests of the Class.

> **2.    The Settlement Negotiations Were Conducted at Arm's Length and Under the Oversight of Experienced Mediators**

The second factor under Rule 23(e)(2) considers whether the Settlement was negotiated at arm's length. *See* Rule 23(e)(2)(B). A class action is considered presumptively fair where, as here, the parties, through capable counsel, informed by meaningful discovery and motion practice, have engaged in arm's-length negotiations. *See also Warfarin*, 391 F.3d at 535 (citing arm's-length negotiations as a factor in assessing presumption of fairness); *In re Ocean Power Techs., Inc.*, 2016 U.S. Dist. LEXIS 158222, at \*32 (D.N.J. Nov. 15, 2016); *Schuler v. Meds. Co.*, 2016 U.S. Dist. LEXIS 82344, at \*16 (D.N.J. June 24, 2016).

The Parties engaged in extensive arm's-length negotiations, including mediation conducted by the Honorable Layn R. Phillips (Ret.), a former U.S. Attorney, former U.S. District Court judge, and perhaps the most prominent and experienced mediator of securities class actions, assisted by the Hon. Harry G. Carroll (Ret.). The Parties engaged in three mediation sessions – in November 2019, April 2020, and September 2021. In advance of each mediation session, the Parties

---

judgment motions were ripe for decision at the time of the settlement further demonstrates that the parties had fully assessed the merits of the case prior to settlement.").

submitted mediation statements.  Further, the extensive supplemental mediation statements in advance of the third mediation session were extensively informed by the facts obtained through discovery that had by then been completed and the Parties' summary judgment briefing.

The Parties negotiated in good faith, but were unable to reach a resolution at any of the three mediation sessions, as the Parties' positions remained too far apart. Joint Decl., ¶6.  Following the third mediation, Judge Phillips worked closely with the Parties to achieve a settlement in this matter.  After extensive discussions and negotiations, Judge Phillips recommended a settlement of $100 million, and the Parties ultimately agreed to settle the case for that amount.  *See* Declaration of Layn R. Phillips in Support of Motion for Final Approval of Settlement, submitted herewith.

The mediators' direct participation helps ensure that negotiations were non-collusive and conducted at arm's length.  *See ViroPharma*, 2016 WL 312108, at *11 (approving settlement after arm's-length negotiation overseen by former Judge Phillips after parties "had fully briefed the main issues in the case and conducted merits-based . . . discovery"); *Utah Ret. Sys. v. Healthcare Servs. Grp.*, 2022 U.S. Dist. LEXIS 5841, at *19 (E.D. Pa. Jan. 12, 2022) (involvement of neutral mediator points to an arm's-length negotiation).

### 3.   The Settlement Is Adequate Considering the Costs, Risks, and Delay of Trial and Appeal

The third factor under Rule 23(e)(2), which overlaps with several of the *Girsh* factors (*i.e.*, factors 1, 4-9), concerns the adequacy of the Settlement in light of the costs, risks, and delay that trial and appeal would impose.   *See* Fed. R. Civ. P. 23(e)(2)(C)(i).   "Securities fraud class actions are notably complex, lengthy, and expensive cases to litigate."  *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013).   This case was filed over five years ago, and undoubtedly would face many risks and delays were litigation to continue, including at summary judgment, trial, and appeal.   At a minimum, proceeding through these stages of litigation would significantly prolong the time until any Class Member receives a financial recovery.   "The Court weighs the value of an immediate guaranteed settlement against the challenges that remain in proceeding with litigation." *Kanefsky*, 2022 U.S. Dist. LEXIS 80328, at *14.

### a.   Risks of Establishing Liability and Damages

Lead Plaintiffs and Lead Counsel believe that their case is strong but acknowledge that there would be risks involved in further litigation.   Defendants have maintained, for example, that the evidence adduced during discovery confirmed that their statements were neither false nor misleading, because: (i) Novo Nordisk met its stated financial guidance during the relevant periods; (ii) Tresiba commanded a premium price over other insulin products, as Defendants represented

- 19 -

would happen; and (iii) Novo Nordisk properly disclosed increased market pressures.  Joint Decl., ¶152.  Defendants also argued that the evidence did not support a finding that any statement, even a potentially misleading one, was made with the requisite intent to defraud and Defendants had no motive to commit fraud. *Id.*, ¶153.

A defendant's state of mind in a securities case is often the most difficult element of proof and one that is rarely supported by direct evidence such as an admission.  *ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at *35 ("'Since stockholders normally have "little more than circumstantial and accretive evidence to establish the requisite scienter," proving scienter is an "uncertain and difficult necessity for plaintiffs."'") (quoting *Smith v. Dominican Bridge Corp.*, 2007 U.S. Dist. LEXIS 26903, at *17 (E.D. Pa. Apr. 11, 2007)).

Further, Defendants argued that even if liability was established, Lead Plaintiffs' claims did not give rise to any cognizable damages.  Joint Decl., ¶157. The determination of damages is a complicated and uncertain process, involving the analysis of many subjective factors.  Damages for claims brought under §10(b) of the Securities Exchange Act are measured by "the difference between the purchase price and the 'true value' of the security [*i.e.*, value absent the fraud] at the time of the purchase."  *Semerenko v. Cendant Corp.*, 223 F.3d 165, 184 (3d Cir. 2000); *Ocean Power*, 2016 U.S. Dist. LEXIS 158222, at *61.  To prevail on their claims,

Lead Plaintiffs must show that the alleged false statements or omissions caused the damages (*i.e.*, loss causation).  *ViroPharma*, 2016 U.S. Dist. LEXIS 8626, at *36. Absent settlement, establishing loss causation could be a major risk faced by Lead Plaintiffs.

Defendants challenged Lead Plaintiffs' theory of loss causation, maintaining that losses on the alleged "corrective disclosure" dates were not caused by any alleged fraud, because nothing in the disclosures revealed to the market that any of Novo Nordisk's prior statements were false or misleading.  Joint Decl., ¶158. Rather, Defendants argued that the disclosures primarily represented the materialization of the risks that the Company previously and adequately disclosed both before and during the Class Period, such as the risk that market pressures would negatively impact the Company's financial performance.  *Id*.

At trial, expert testimony would have been critical to establish loss causation and damages.  Defendants' experts would have marshalled various arguments against loss causation and damages as to each of the disclosure dates at issue; Lead Plaintiffs' experts would have defended their own conclusions on those topics; and each expert's testimony would have relied on complex and, in some cases, highly technical economic arguments.  Such a "battle of the experts" would have necessarily involved substantial expenses and risks.  *See ViroPharma*, 2016 WL 312108, at *13 (stating that "this issue of causation directly impacts the difficulty in

proving damages"). "Thus, even if [Lead] Plaintiff prevailed on the issue of liability, significant additional risks would remain in establishing the existence of damages." *Ocean Power*, 2016 U.S. Dist. LEXIS 158222, at *63.[7]

While there are strong responses to Defendants' arguments on liability and damages, they pose undeniable risks. Any one of these arguments, if successful, could have resulted in the claims at issue being severely curtailed or even eliminated.[8] Moreover, any trial victory for Lead Plaintiffs would likely have been appealed by Defendants, which at a minimum would have resulted in substantial delays before any financial recovery. The risks associated with establishing liability and damages at trial, and preserving any trial victory through appeal, thus weigh in favor of approving the Settlement.

### b. The Ability of Defendants to Withstand a Greater Judgment

This *Girsh* factor is neutral. Although Defendants may be able to withstand a greater judgment, "where the other *Girsh* factors weigh in favor of approval, this

---

[7] The sixth *Girsh* factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarin*, 391 F.3d at 537. Defendants vigorously challenged class certification and would be expected to move to decertify the class or otherwise challenge the certification at trial. A class certification order may be reversed or amended at any time before entry of judgment. Therefore, this factor supports approval of the Settlement.

[8] *See Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475, at *4 (E.D. Pa. Apr. 5, 2019) (Courts should "'give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action.'").

factor should not influence the overall conclusions that the settlement is fair, reasonable, and adequate." *Healthcare Servs. Grp., Inc.*, 2022 U.S. Dist. LEXIS 5841, at *24-*25.

**c.     The Settlement Falls Well Within the Range of Reasonableness**

*Girsh* requires the Court to evaluate the proposed Settlement alongside "'a range of reasonable settlements in light of the best possible recovery (the eighth *Girsh* factor) and . . . in light of all the attendant risks of litigation (the ninth factor).'" *In re Merck & Co., Inc. Vytorin Erisa Litig.*, 2010 WL 547613, at *9 (D.N.J. Feb. 9, 2010). In making a "range of reasonableness" assessment, courts do not need to make a precise estimate of damages. *See In re N.J. Tax Sales Certificates Antitrust Litig.*, 2016 WL 5844319, at *8 (D.N.J. Oct. 3, 2016) (granting final approval where "it is not possible to predict the precise value of damages that Plaintiffs would recover if successful"). "These factors examine 'whether the settlement represents a good value for a weak case or a poor value for a strong case.'" *Healthcare Servs. Grp., Inc.*, 2022 U.S. Dist. LEXIS 5841, at *25 (quoting *Warfarin*, 391 F.3d at 538). It is not possible to quantify precisely the risks to recovery posed by Defendants' arguments as to falsity, materiality, scienter, loss causation, and damages described above. Nevertheless, the Settlement represents a substantial percentage of damages that could reasonably be expected to be proved at trial. Joint Decl., ¶159.

- 23 -

The recovery under the Settlement – $100 million – far surpasses many securities class action settlements in this Circuit involving pharmaceutical companies and is clearly within the range of reasonableness.  *See, e.g.*, *Pelletier v. Endo International PLC*, No. 2:17-cv-05114-MMB (E.D. Pa. Feb. 23, 2022) (approving $63.4 million settlement); *Li v. Aeterna Zentaris, Inc.*, 2021 WL 2220565, at *1 (D.N.J. June 1, 2021) (noting approval of settlement of $6.5 million); *ViroPharma*, 2016 WL 312108, at *14-*15 (approving settlement of $8 million); *Par Pharm.*, 2013 WL 3930091, at *9, *11 (approving settlement of $8.1 million); *In re Vicuron Pharms., Inc. Sec. Litig.*, 512 F. Supp. 2d 279, 281-82 (E.D. Pa. 2007) (approving settlement of $12.75 million).  In addition, the recovery here is several times larger than the median securities class action settlement values over the last ten years, which range from $7 million to $13 million.[9]

Moreover, the $100 million recovery exceeds 6.7% of estimated reasonably recoverable damages, which assumes that Lead Plaintiffs would prevail on all of their arguments regarding the causes of the declines in Novo Nordisk's ADR price on the "corrective disclosure" dates Lead Plaintiffs alleged, among other issues.  Joint Decl., ¶159.  This result exceeds the 4.2% average percentage recovery in

---

[9]   Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*, NERA Economic Consulting (Jan. 25, 2022), Fig. 20 at 20, *available at* https://www.nera.com/publications/archive/2022/recent-trends-in-securities-class-action-litigation--2021-full-y.html.

securities class actions settled in 2021 (and the 2.3% average for cases settled between 2012-2020) where investor losses exceed $1 billion.  *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2021 Year in Review*, at 6, fig. 5 (Cornerstone Research 2022), *available at* https://securities.stanford.edu/research-reports/1996-2021/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf.

Given the complexity of this case and the risks and delay inherent in continued litigation, the $100 million is an outstanding result.  Taking into account that this case has been litigated for more than five years, and the significant amount of the recovery, the Settlement here falls well within the range of reasonableness and should be approved.  *See Girsh*, 521 F.2d at 157.

### 4. The Settlement Satisfies the Remaining Rule 23(e)(2) Factors

The remaining factors of Rule 23(e)(2) require courts to consider: (i) the effectiveness of the proposed method for distributing relief; (ii) the terms of the proposed attorneys' fees, including the timing of payment; (iii) the existence of any other "agreements"; and (iv) whether the settlement treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv); Fed. R. Civ. P. 23(e)(2)(D).  These factors are met here.

### a.   The Proposed Method for Distributing Relief Is Effective

The proposed methods of notice and claims administration are effective and provide the Class Members with the necessary information to receive their *pro rata* share of the Settlement Fund.  The notice and claims processes are similar to those commonly used in securities class action settlements and provide for straightforward cash payments based on the trading information provided.  *See supra* §III (describing notice process).  The claims process is similar to that typically used in securities class action settlements.  *See Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *14 (S.D.N.Y. Oct. 16, 2019) ("This type of claims processing and method for distributing settlement proceeds is standard in securities and other class actions and is effective.").

### b.   The Requested Attorneys' Fees Are Reasonable

As set forth in more detail in accompanying Memorandum of Law in Support of Motion for Award of Attorneys' Fees and Litigation Expenses, and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Fee Brief"), Lead Counsel's request for an award of attorneys' fees is reasonable and appropriate.  Further, because this is an all-cash settlement that has already been fully funded, there is no real risk that counsel will be paid but Class Members will not.

c.    **The Parties Have No Other Agreements Besides an Agreement to Address Requests for Exclusion**

As discussed in connection with the motion for preliminary approval, Lead Plaintiffs and Defendants have entered into a standard supplemental agreement which provided that Defendants would have the right (but not the obligation) to terminate the Settlement in the event that, if the Court permitted a second opt-out opportunity, valid requests for exclusion from the Class in connection with the Settlement Notice exceeded the threshold set forth in that agreement.  Because no second opt-out opportunity was granted, the agreement is moot.  There are no other arguments between the Parties.

d.    **Class Members Will Be Treated Equitably, and the Reaction of the Class Supports Final Approval**

Rule 23(e)(2)(D) requires the Court to consider whether Class Members will be treated equitably.  All Class Members will be treated equitably under the terms of the Stipulation, which provides that each Class Member that submits a valid Proof of Claim Form will receive a *pro rata* share of the monetary relief based on the terms of the Plan of Allocation.  Lead Plaintiffs are subject to the same formula for distribution of the Net Settlement Fund as every Class Member.  *Healthcare Servs. Grp., Inc.*, 2022 U.S. Dist. LEXIS 5841, at *22-*23 (finding class members treated equally because "plan of allocation apportions the net settlement fund among class members based on when they purchased and sold their HCSG common stock.  This

method ensures that settlement class members' recoveries are based on the relative losses they sustained, and eligible class members will receive a *pro rata* distribution from the net settlement fund calculated in the same manner.").

Further, out of the thousands of potential Class Members, there have been no objections filed to date.  Joint Decl., ¶170.  "[W]hen objectors are few and the class members many, there is a strong presumption in favor of approving the settlement." *Healthcare Servs. Grp., Inc.*, 2022 U.S. Dist. LEXIS 5841, at *23.  "The absence of any objections by Class Members and the small number of opt-outs relative to the apparent size of the Class strongly weigh in favor of approval of the Settlement." *Kanefsky*, 2022 U.S. Dist. LEXIS 80328, at *12-*13.  "The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement . . . ."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001). To the extent that any objections to the Settlement are made subsequent to this filing, they will be addressed in Lead Plaintiffs' reply.

### B.   The Settlement Satisfies the Applicable *Prudential* Factors

In addition to the *Girsh* factors, the applicable *Prudential* factors support the Settlement.  Lead Plaintiffs had ample opportunity to make an informed decision about the appropriate settlement value of their claims; Class Members had an opportunity to opt out of the Class; the method for processing claims is fair and

reasonable; and, as explained in the Fee Brief, the requested attorneys' fees are fair and reasonable.  *See Kanefsky*, 2022 U.S. Dist. LEXIS 80328, at *16-*17.

Each factor identified in Rule 23(e)(2) and the Third Circuit's *Girsh* and *Prudential* opinions is satisfied.  Moreover, pursuant to *Warfarin*, the Settlement is entitled to a presumption of fairness.  391 F.3d at 535.  Given the litigation risks involved, and the complexity of the underlying issues, the $100 million recovery pursuant to the Settlement is outstanding, and could not have been achieved without the commitment of Lead Plaintiffs and the hard work of Lead Counsel.  Lead Plaintiffs and Lead Counsel respectfully submit that the Settlement is fair, reasonable, and adequate, and should be granted final approval.

## V.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

The Settlement Notice contains a Plan of Allocation, which details how the Settlement proceeds are to be divided among Class Members who submit claims. *See* Segura Decl., Ex. A (Settlement Notice).  The "'[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable, and adequate.'"  *Kanefsky*, 2022 U.S. Dist. LEXIS 80328, at *17. *See also Nyby*, 2017 U.S. Dist. LEXIS 122056, at *21.  "'In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable.'"  *Kanefsky*, 2022 U.S. Dist. LEXIS 80328, at *17.  In

determining whether a plan of allocation is fair, reasonable, and adequate, "courts give great weight to the opinion of qualified counsel." *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *6 (D.N.J. May 31, 2012) (approving plan of allocation). "As numerous courts have held, a plan of allocation need not be perfect" and "'need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'" *Yun Ma*, 2019 WL 5257534, at *15 (quoting *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358 at 367 (S.D.N.Y. 2002)).

Here, the proposed Plan of Allocation is fair and reasonable.  The Plan of Allocation was prepared with the assistance of Lead Counsel's loss causation and damages expert.  Joint Decl., ¶173.  The calculations were based primarily on that expert's event study analysis, which estimated the amount of artificial inflation in the prices of Novo Nordisk ADRs during the Class Period.  *Id*., ¶174.  The Plan of Allocation calls for the distribution of the Settlement Fund on a *pro rata* basis, as determined by the ratio between each valid claim and the sum of all valid claims. *Id*., ¶177.  The calculation of each claim will depend upon several factors, including when the ADRs were purchased, acquired, sold, or held.  *See id.*, ¶175.  Once each claim is calculated and verified, and the distribution ratio is determined, the Net Settlement Fund (*i.e.*, the Settlement Amount after the deduction of Notice and Administration Costs, Taxes and Tax Expenses, and all Court-approved attorney's

fees, litigation expenses, and class representative awards) shall be distributed to Authorized Claimants who are entitled to a distribution of at least $10.00.  Any amount remaining following the initial distribution will be further distributed among Authorized Claimants to the extent economically feasible.  If further re-distribution of funds remaining in the Net Settlement Fund would not be cost effective, the Plan of Allocation calls for any remaining balance to be contributed to a non-sectarian not-for-profit organization, to be recommended by Lead Counsel and approved by the Court.

This method of distributing settlement funds is fair and reasonable.  *See, e.g.*, *Par Pharm.*, 2013 WL 3930091, at *8 (approving similar plan of allocation); *ViroPharma*, 2016 WL 312108, at *15 (same).  To date, no Class Members have objected to the proposed Plan of Allocation.  For all of these reasons, the Plan of Allocation should be approved.

## VI.   CONCLUSION

The $100 million Settlement before the Court for approval is an excellent one, under any measure, and the proposed Plan of Allocation is an equitable method by which to distribute the Net Settlement Fund.  For all the reasons stated above and in the accompanying declarations, Lead Plaintiffs respectfully request that the Court grant their motion for final approval of the Settlement and the Plan of Allocation as fair, reasonable, and adequate.

DATED:  May 23, 2022

SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
DAVID R. BUCHANAN
JENNIFER R. SCULLION


*/s/ Christopher A. Seeger*
CHRISTOPHER A. SEEGER

55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  973/639-9100
973/639-9393 (fax)

CARELLA, BYRNE, CECCHI, OLSTEIN,
  BRODY & AGNELLO, P.C.
JAMES E. CECCHI
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)

Co-Liaison Counsel and Executive
Committee Members for the Class

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
ELLEN GUSIKOFF STEWART
LUKE O. BROOKS
RYAN A. LLORENS
ERIC I. NIEHAUS
ANGEL P. LAU
JEFFREY J. STEIN
ERIKA OLIVER
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

BERNSTEIN LITOWITZ BERGER &
  GROSSMANN LLP
SALVATORE J. GRAZIANO
HANNAH ROSS
KATHERINE M. SINDERSON
ADAM D. HOLLANDER
1251 Avenue of the Americas
New York, NY  10020
Telephone:  212/554-1400
212/554-1444 (fax)

Co-Lead Counsel for the Class

SAXENA WHITE P.A.
JOSEPH E. WHITE, III
DIANNE M. ANDERSON
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone:  561/394-3399
561/394-3382 (fax)

SAXENA WHITE P.A.
STEVEN B. SINGER
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: 914/437-8551
888/631-3611 (fax)

Executive Committee Member