SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
DAVID R. BUCHANAN
JENNIFER R. SCULLION
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  973/639-9100
973/639-9393 (fax)

CARELLA, BYRNE, CECCHI, OLSTEIN,
  BRODY & AGNELLO, P.C.
JAMES E. CECCHI
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)

Co-Liaison Counsel and Executive Committee Members for the Class

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re NOVO NORDISK SECURITIES LITIGATION | Master File No. 3:17-cv-00209-ZNQ-LHG |
| | |
| This Document Relates To: | CLASS ACTION |
| | |
| ALL ACTIONS. | |
| | |

## LEAD COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES, AND AWARDS TO LEAD PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4)

# TABLE OF CONTENTS

**Page**

I.    OVERVIEW ..................................................................................................1

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY..................4

III.  THE REQUEST FOR ATTORNEYS' FEES AND EXPENSES
      SHOULD BE APPROVED...........................................................................5

      A.   Plaintiffs' Counsel Are Entitled to a Fee From the Common
           Fund..................................................................................................7

      B.   The Court Should Award Attorneys' Fees Using the Percentage
           Approach ..........................................................................................8

      C.   The Requested Fee Is Presumptively Reasonable Because It
           Has Been Approved by the Court-Appointed Lead Plaintiffs .............9

      D.   The Requested Fee Is Fair and Reasonable Under the *Gunter*
           Factors ............................................................................................10

           1.   The Size of the Common Fund Created and the Number
                of Persons Benefited by the Settlement ...................................10

           2.   Reaction of Class Members to the Fee Request ......................12

           3.   The Skill and Efficiency of Counsel........................................13

           4.   The Complexity and Duration of the Litigation ......................15

           5.   The Risk of Non-Payment .........................................................16

           6.   The Significant Time Devoted to This Case............................19

           7.   The Range of Fees Typically Awarded ....................................20

      E.   The Requested Fee Is Reasonable Under a Lodestar Cross-
           Check...............................................................................................22

      F.   Reasonably Incurred Litigation Expenses Should Be Awarded.........25

      G.   Lead Plaintiffs Are Entitled to Awards Pursuant to 15 U.S.C.
           §78u-4(a)(4)....................................................................................27

IV.   CONCLUSION...........................................................................................29

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abrams v. Lightolier, Inc.*,
50 F.3d 1204 (3d Cir. 1995) ...............................................................25

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)............................................................................7

*Bodnar v. Bank of America, N.A.*,
No. 14-3224, slip op. (E.D. Pa. Aug. 4, 2016) ..................................23

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)........................................................................7, 8

*Bredbenner v. Liberty Travel, Inc.*,
2011 WL 1344745
(D.N.J. Apr. 8, 2011) .........................................................................27

*City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores*,
2019 WL 1529517 (W.D. Ark. Apr. 8, 2019) ...................................21

*Dartell v. Tibet Pharms., Inc.*,
2017 U.S. Dist. LEXIS 100872
(D.N.J. June 29, 2017) ...........................................................8, 11, 14

*Esslinger v. HSBC Bank Nev., N.A.*,
2012 U.S. Dist. LEXIS 165773
(E.D. Pa. Nov. 20, 2012).....................................................................23

*Fanning v. Acromed Corp.*,
2000 WL 1622741 (E.D. Pa. Oct. 23, 2000) ......................................9

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ................................................................22

*Grier v. Chase Manhattan Auto. Fin. Co.*,
2000 WL 175126 (E.D. Pa. Feb. 16, 2000).........................................9

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000) ......................................................*passim*

**Page**

*Hall v. Accolade, Inc.*,
  2020 WL 1477688 (E.D. Pa. Mar. 25, 2020) .......................................9

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)................................................................10

*High St. Rehab., LLC v. Am. Specialty Health Inc.*,
  2019 WL 4140784 (E.D. Pa. Aug. 29, 2019) ...............................12, 17

*In re Aetna Inc. Sec. Litig.*,
  2001 WL 20928 (E.D. Pa. Jan. 4, 2001).........................................21

*In re Alstom SA Sec. Litig.*,
  741 F. Supp. 2d 469 (S.D.N.Y. 2010) .............................................18

*In re AT&T Corp.*,
  455 F.3d 160 (3d Cir. 2006) ...............................................8, 22, 26

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) .............................................25

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) .......................................................12

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005) ........................................................8

*In re CIGNA Corp. Sec. Litig.*,
  No. 02-8088, slip op. (E.D. Pa. July 13, 2007)..................................28

*In re Computron Software, Inc.*,
  6 F. Supp. 2d 313 (D.N.J. 1998)..................................................13

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  2020 WL 256132 (N.D. Ga. Mar. 17, 2020),
  *aff'd in part, rev'd in part*,
  999 F. 3d 1247 (11th Cir. 2021) ..................................................24

*In re General Motors Corp. Pick-Up Truck Fuel
  Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ........................................................7

**Page**

*In re Ikon Office Sols., Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)....................................................*passim*

*In re Ins. Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009) .................................................................5

*In re Lithium Ion Batteries Antitrust Litig.*,
2019 WL 3856413 (N.D. Cal. Aug. 16, 2019),
*vacated in part*, 2020 WL 1481643 (9th Cir. 2020),
*aff'd*, 853 F. App'x 56 (9th Cir. 2021) .............................................24

*In re Lucent Techs., Inc. Sec. Litig.*,
327 F. Supp. 2d 426 (D.N.J. 2004) .......................................................9

*In re Lucent Techs., Inc. Sec. Litig.*,
No. 2:00-cv-621, slip op. (D.N.J. July 23, 2004) ..............................26

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
2016 WL 11575090 (D.N.J. June 28, 2016)........................................26

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
2010 WL 547613 (D.N.J. Feb. 9, 2010) ...............................................22

*In re Merck & Co., Vytorin/Zetia Sec. Litig.*,
2013 WL 5505744 (D.N.J. Oct. 1, 2013) ...............................21, 27, 29

*In re Oracle Corp. Sec. Litig.*,
2009 U.S. Dist. LEXIS 50995
(N.D. Cal. June 16, 2009),
*aff'd*, 627 F.3d 367 (9th Cir. 2010).....................................................18

*In re Par Pharm. Sec. Litig.*,
2013 WL 3930091 (D.N.J. July 29, 2013) ...........................................29

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) .........................................................22, 23

*In re S. Ohio Corr. Facility*,
175 F.R.D. 270 (S.D Ohio 1997)...........................................................27

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
2012 WL 1964451 (D.N.J. May 31, 2012)...................................17, 25

**Page**

*In re Veritas Software Corp. Sec. Litig.*,
    396 F. App'x 815 (3d Cir. 2010) ......................................................................23

*In re ViroPharma Inc. Sec. Litig.*,
    2016 WL 312108 (E.D. Pa. Jan. 25, 2016)................................................*passim*

*J.I. Case Co. v. Borak*,
    377 U.S. 426 432 (1964)................................................................................7

*Kanefsky v. Honeywell Int'l Inc.*,
    2022 U.S. Dist. LEXIS 80328
    (D.N.J. May 3, 2022) .......................................................17, 20, 25, 28

*Klein v. Altria Group, Inc.*,
    No. 3:20-cv-00075-DJN, slip op.
    (E.D. Va. Mar. 31, 2022) ..............................................................20

*Landmen Partners Inc. v. Blackstone Grp.*,
    2013 WL 11330936 (S.D.N.Y. Dec. 18, 2013) ..................................21

*Li v. Aeterna Zentaris Inc.*,
    2021 WL 2220565 (D.N.J. June 1, 2021)............................................29

*Loc. 703, I.B. of T. Grocery & Food Emps.*
    *Welfare Fund v. Regions Fin. Corp.*,
    2015 WL 5626414 (N.D. Ala. Sept. 14, 2015)....................................21

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)........................................................................24

*Moore v. GMAC Mortg.*,
    2014 WL 12538188 (E.D. Pa. Sept. 19, 2014) ....................................22

*Morrison v. Nat'l Austl. Bank Ltd.*,
    561 U.S. 247 (2010)........................................................................18

*P. Van Hove BVBA v. Universal Travel Grp.*,
    2017 U.S. Dist. LEXIS 97909
    (D.N.J. June 26, 2017) .....................................................................9

*Peace Officers' Annuity*
    *& Benefit Fund of Ga. v. Davita, Inc.*,
    2021 WL 29818070 (D. Colo. July 15, 2021) ....................................21

**Page**

*Schuh v. HCA Holdings, Inc.*,
    2016 WL 10570957 (M.D. Tenn. Apr. 14, 2016) ..............................................21

*Schuler v. Meds. Co.*,
    2016 U.S. Dist. LEXIS 82344
    (D.N.J. June 24, 2016) .........................................................................7, 8, 10, 23

*Stevens v. SEI Invs. Co.*,
    2020 WL 996418 (E.D. Pa. Feb. 28, 2020) ......................................................23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .............................................................................................7

*The Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cty.,*
    *Tennessee v. Momenta Pharms., Inc.*,
    2020 WL 3053467 (M.D. Tenn. May 29, 2020) ..............................................21

*Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*,
    2022 U.S. Dist. LEXIS 5841
    (E.D. Pa. Jan. 12, 2022) .............................................................................9, 16, 28

*Whiteley v. Zynerba Pharms., Inc.*,
    2021 WL 4206696 (E.D. Pa. Sept. 16, 2021) ...................................................20

*Yedlowski v. Roka Bioscience, Inc.*,
    2016 U.S. Dist. LEXIS 155951
    (D.N.J. Nov. 10, 2016) ........................................................................11, 14, 26

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78u-4(a)(4) ....................................................................................1, 6, 27, 29
    §78u-4(a)(6) ...............................................................................................5

Federal Rules of Civil Procedure
    Rule 23(h) ....................................................................................................5

Lead Counsel,[1] on behalf of all Plaintiffs' Counsel, respectfully submit this memorandum of law in support of their motion for attorneys' fees and litigation expenses, and awards to Lead Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) for their work on behalf of the Class.

## I.    OVERVIEW

This $100 million Settlement, which resulted from arm's-length mediation overseen by the Honorable Layn R. Phillips (Ret.) and the Honorable Harry G. Carroll (Ret.), represents an exceptional recovery for the Class.  The Settlement followed more than four years of lengthy and hard-fought litigation.  *See* Joint Declaration of Adam D. Hollander and Luke O. Brooks in Support of: (I) Motion for Final Approval of Settlement and Approval of Plan of Allocation; and (II) Motion for Attorneys' Fees and Litigation Expenses, and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Joint Declaration" or "Joint Decl."), at ¶¶18-145.

Lead Counsel's request for an award of attorneys' fees and litigation expenses, and Lead Plaintiffs' requests for class representative awards pursuant to 15 U.S.C. §78u-4(a)(4), are reasonable and well within the range approved in similar

---

[1]    Unless otherwise stated or defined, all capitalized terms used herein have the meanings provided in the Stipulation and Agreement of Settlement (the "Stipulation"), dated November 23, 2021 (ECF 311-3). All citations are omitted and emphasis is added unless otherwise indicated.

matters, and should be approved.  Plaintiffs' Counsel advanced costs and devoted substantial time on a contingent basis to this complex matter, despite not knowing how long the litigation would last or whether there would ultimately be any recovery. At each stage of the litigation, Plaintiffs' Counsel faced off against highly sophisticated defense counsel.  Since this suit was filed over five years ago, Plaintiffs' Counsel successfully opposed Defendants' motion to dismiss Lead Plaintiffs' claims, which motion the Court denied in its entirety; obtained class certification and defeated Defendants' Rule 23(f) petition for the Third Circuit Court of Appeals to review this Court's class certification grant; completed fact and expert discovery, including written, documentary, and deposition discovery; and thoroughly briefed Lead Plaintiffs' opposition to Defendants' motion for summary judgment.  Joint Decl., ¶5.  Discovery in this case was extensive: Defendants and third parties produced over five million pages of documents, more than three dozen fact witnesses were deposed, written discovery was exchanged and responded to, (including voluminous contention interrogatories and responses and requests for admission), and detailed expert reports were exchanged and expert depositions taken.  Plaintiffs' Counsel also engaged in multiple rounds of mediation and negotiations overseen by former Judges Phillips and Carroll.  All of this work resulted in the superb result presented here for final approval and supports Lead Counsel's fee and expense request.

Plaintiffs' Counsel firmly believe that the Settlement is the result of their strenuous, diligent, and creative efforts, as well as their well-earned reputations as attorneys who are unwavering in their dedication to the interests of the class and willing to zealously prosecute a meritorious case through trial and subsequent appeals.  Here, in a case asserting claims based on complex legal and factual issues that were opposed by highly skilled and experienced defense counsel, Plaintiffs' Counsel succeeded in securing an outstanding result for the Class under difficult and challenging circumstances.

Plaintiffs' Counsel dedicated a total of 123,862 hours of attorney and other professional staff time to bring the Action to this favorable resolution for Class Members.  Joint Decl., ¶188.  In class actions like this one, which are prosecuted on a contingent-fee basis, courts often award fees representing a positive "multiplier" of counsel's lodestar (often one to four times the amount of their lodestar) to compensate counsel for taking the risks of non-recovery and other factors.  Here, however, Plaintiffs' Counsel's requested fee is a "*negative*" lodestar multiplier of 0.47.  *Id.*, ¶189.  This means that, if awarded, the requested 29% fee will result in a discount – specifically a substantial 53% discount – on Plaintiffs' Counsel's total lodestar, which further supports the reasonableness of the requested fee.

Further, the requested fees have been approved by the Court-appointed Lead Plaintiffs.  *See* Declaration of Sarah M. Murray ("Murray Decl."), ¶7; Declaration

of Chase Rankin ("Rankin Decl."), ¶7; Declaration of Timothy J. Smyth ("Smyth Decl."), ¶7; Declaration of Jay Ravins ("Ravins Decl."), ¶7; Declaration of Charles Lee ("Lee Decl."), ¶7, submitted herewith.  Lead Plaintiffs evaluated the request for fees and expenses and have determined that the requested fees are warranted based on counsel's diligent and aggressive prosecution of the Action.  *Id.*  As a result, the fee request is entitled to a "presumption of reasonableness."  *In re ViroPharma Inc. Sec. Litig.*, 2016 WL 312108, at *15-*16 (E.D. Pa. Jan. 25, 2016) ("Where the Lead Plaintiff approves the Lead Plaintiff's counsel's request[ed] fee award – as Lead Plaintiff does here – the Court should afford the fee requested a presumption of reasonableness.").

For all the reasons set forth herein, in the Joint Declaration, and in Lead Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Settlement and Approval of Plan of Allocation ("Settlement Brief"), Lead Counsel respectfully submit that the requested attorneys' fees and expenses are fair and reasonable under the applicable legal standards and should be awarded by the Court. Likewise, the awards sought by Lead Plaintiffs are fully justified given their substantial efforts on behalf of the Class.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

To avoid repetition, Lead Counsel respectfully refer the Court to the accompanying Settlement Brief and the Joint Declaration for detailed discussions of

the factual background and procedural history of the litigation, the extensive efforts undertaken by Plaintiffs' Counsel and Lead Plaintiffs during the course of the litigation, the risks of the litigation, and the negotiations leading to the Settlement. *See generally* Joint Declaration.

In summary, however, in the more than four years that this case was actively litigated, the Parties briefed pleading motions and Lead Plaintiffs' motion for class certification; conducted extensive fact and expert discovery; retained experts and exchanged discovery and reports; briefed Defendants' motion for summary judgment and their motion to exclude one of Lead Plaintiffs' experts; and engaged in arms'-length settlement negotiations over the course of several years, overseen by two eminently qualified mediators.  *Id.*

## III.   THE REQUEST FOR ATTORNEYS' FEES AND EXPENSES SHOULD BE APPROVED

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).   The Private Securities Litigation Reform Act of 1995 (the "PSLRA") provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."   15 U.S.C. §78u-4(a)(6).  The ultimate determination of the proper amount of attorneys'

fees rests within the sound discretion of the court based on the facts of the case. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 280 (3d Cir. 2009).

Here, Lead Counsel request attorneys' fees of 29% of the Settlement Fund plus their litigation costs, charges, and expenses. Per the Stipulation, Lead Counsel will allocate the attorneys' fees among Plaintiffs' Counsel in a manner that Lead Counsel in good faith believe reflects the contributions of such counsel to the prosecution and resolution of the litigation. Stipulation, ¶16. Lead Counsel will also oversee allocation of the expense award based upon each firm's actual outlays. Also, Lead Plaintiffs Lehigh County, Oklahoma Firefighters, Boston, Clearwater, and Central States seek awards of $10,410.50, $3,237.50, $8,932.26, $5,343.79, and $12,095.00, respectively, for a total of $40,019.05, in connection with their representation of the Class pursuant to 15 U.S.C. §78u-4(a)(4).

These requests are fair and reasonable, and well within the range of fees, expenses, and class representative awards typically granted in similar matters. The Settlement is an exceptional result for the Class in the face of significant risks. This case involved substantial outlays of costs and attorney and staff time, with no guarantee of any ultimate recovery. Further, Plaintiffs' Counsel brought substantial experience to their work on this case, and skillfully overcame defense counsel's determined opposition. For these reasons, and as detailed below, Lead Counsel

respectfully request that these attorneys' fees, expenses, and class representative awards be approved.

### A. Plaintiffs' Counsel Are Entitled to a Fee From the Common Fund

It is well established that an attorney "who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also, e.g.*, *ViroPharma*, 2016 WL 312108, at *15 (same). Courts have recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund ensure that "'competent counsel continue to be willing to undertake risky, complex, and novel litigation.'" *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000); *Schuler v. Meds. Co.*, 2016 U.S. Dist. LEXIS 82344, at *25 (D.N.J. June 24, 2016). The Supreme Court has emphasized that private securities actions provide "'a most effective weapon in the enforcement'" of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426 432 (1964)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

Courts in this Circuit have consistently adhered to these teachings. *See, e.g.*, *ViroPharma*, 2016 WL 312108, at *15 ("'The common fund doctrine provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or

preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'") (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n. 39 (3d Cir. 1995)); *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefit they have bestowed on class members.").

**B.    The Court Should Award Attorneys' Fees Using the Percentage Approach**

The Supreme Court has recognized that it is appropriate to award counsel a reasonable percentage of a common fund as a fee. *See Boeing*, 444 U.S. at 478-79. Further, the Third Circuit has noted that "the PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005). This is because the percentage method aligns counsel's interests with those of the Class.

Courts in this Circuit recognize that the percentage-of-recovery method is preferred in common fund cases because it rewards counsel for success, penalizes counsel for failure, and ensures that "'competent counsel continue to be willing to undertake risky, complex, novel litigation.'" *Gunter*, 223 F.3d at 198. *See also Schuler*, 2016 U.S. Dist. LEXIS 82344, at *25; *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006) ("In common fund cases such as this one, the percentage-of-

recovery method is generally favored . . . ."); *see also Dartell v. Tibet Pharms., Inc.*, 2017 U.S. Dist. LEXIS 100872, at *19 (D.N.J. June 29, 2017) ("The percentage-of-recovery method is preferred in common fund cases because it 'rewards counsel for success and penalizes it for failure.'"); *P. Van Hove BVBA v. Universal Travel Grp.*, 2017 U.S. Dist. LEXIS 97909, at *28 (D.N.J. June 26, 2017) (same); *Hall v. Accolade, Inc.*, 2020 WL 1477688, at *10 (E.D. Pa. Mar. 25, 2020); *Fanning v. Acromed Corp.*, 2000 WL 1622741, at *5 (E.D. Pa. Oct. 23, 2000); *Grier v. Chase Manhattan Auto. Fin. Co.*, 2000 WL 175126, at *7 (E.D. Pa. Feb. 16, 2000).

### C.    The Requested Fee Is Presumptively Reasonable Because It Has Been Approved by the Court-Appointed Lead Plaintiffs

Lead Plaintiffs, each sophisticated institutional investors that took an active role in the litigation, support approval of the requested fee.  Lead Plaintiffs' endorsement of the fee request supports its approval.  *See, e.g.*, *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("Significantly, the Lead Plaintiffs, both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request.").  Indeed, while approval of the fee is left to the sound discretion of the Court, the fact the requested award has the support of Lead Plaintiffs affords it a "presumption of reasonableness."  *See ViroPharma*, 2016 WL 312108, at *15; *Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*, 2022 U.S. Dist. LEXIS 5841, at *29

(E.D. Pa. Jan. 12, 2022) ("Given that Lead Plaintiff, a sophisticated entity, reviewed and approved the fee, this presumption applies.").

### D. The Requested Fee Is Fair and Reasonable Under the *Gunter* Factors

Under Third Circuit law, district courts have considerable discretion on setting an appropriate percentage-based fee award in traditional common fund cases. *See, e.g.*, *Gunter*, 223 F.3d at 195 ("We give [a] great deal of deference to a district court's decision to set fees.").

Nonetheless, in exercising that broad discretion, the Third Circuit has also noted that a district court should consider, "among other things," the following factors in determining a fee award:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter*, 223 F.3d at 195 n.1. These factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest." *Id.*; *Schuler*, 2016 U.S. Dist. LEXIS 82344, at *26. Here, each factor supports the requested 29% fee award.

### 1. The Size of the Common Fund Created and the Number of Persons Benefited by the Settlement

In awarding fees, the "most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *ViroPharma*, 2016 WL 312108, at

*16 (same).  To assess this factor, courts "'consider[] the fee request in comparison to the size of the fund created and the number of class members to be benefitted.'" *Dartell*, 2017 U.S. Dist. LEXIS 100872, at *21 (quoting *Yedlowski v. Roka Bioscience, Inc*., 2016 U.S. Dist. LEXIS 155951, at *59 (D.N.J. Nov. 10, 2016)).

Here, the $100 million Settlement is an outstanding result that provides an immediate cash recovery to a large Class of investors.  There were substantial risks to proceeding and proving liability and damages.  Joint Decl., ¶¶151-162; Settlement Brief, §IV.A.3.a.  If this litigation were to continue absent the Settlement, insurance proceeds would continue to be depleted by defense costs, decreasing the likelihood of obtaining a comparable recovery in the future.  In light of these and other factors, after multiple rounds of discussions and negotiations, Judge Phillips recommended that the Parties accept a $100 million settlement amount, and they ultimately did so. *See* Declaration of Layn R. Phillips in Support of Motion for Final Approval of Settlement ("Phillips Decl."), ¶¶16-17, submitted herewith.  As discussed in the Settlement Brief (§IV.A.3.c.), that figure is far greater than many securities class action settlements involving pharmaceutical companies that have been approved in this Circuit, and several times the median values of securities class action settlements over the last ten years.

Additionally, the "number of class members to be benefitted" by the Settlement is undoubtedly large, since the Class includes all persons and entities who

purchased the American Depository Receipts ("ADRs") of Novo Nordisk between February 3, 2015 and February 2, 2017, inclusive (excluding those individuals and entities who are excluded by definition or who requested exclusion from the Class in connection with the Notice of Pendency of Class Action). Likely thousands of investors who bought Novo Nordisk ADRs during that period will benefit from the Settlement. *See* Settlement Brief, §III (Notice sent to nearly 380,000 potential Class Members). For these reasons, the first *Gunter* factor clearly weighs in favor of approving the negotiated fee.

### 2. Reaction of Class Members to the Fee Request

Notice of this Settlement, including the fee request, has been provided to nearly 380,000 potential Class Members. *See* Declaration of Luiggy Segura Regarding: (A) Mailing of the Settlement Notice and Claim Form and (B) Publication of the Summary Settlement Notice, ¶4, submitted herewith. To date, ***no*** objections to the fee request have been submitted. Joint Decl., ¶180. Thus, the reaction of the Class weighs in favor of approval of the requested fee. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (stating that "[t]he vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement"); *see also High St. Rehab., LLC v. Am. Specialty Health Inc.*, 2019 WL 4140784, at *4 (E.D. Pa. Aug. 29, 2019) ("A low number of

objectors or opt-outs is persuasive evidence of the proposed settlement's fairness and adequacy.").

### 3.    The Skill and Efficiency of Counsel

The third *Gunter* factor – the skill and efficiency of the attorneys involved – is measured by the "'quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *ViroPharma*, 2016 WL 312108, at *16 (quoting *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998)). Here, each of these considerations demonstrates the skill and efficiency of Plaintiffs' Counsel and supports the requested fee.

Among other things, Plaintiffs' Counsel investigated Defendants' conduct; drafted a detailed Amended Complaint; successfully opposed Defendants' motion to dismiss, which the Court denied in its entirety; obtained over five million pages of documents from Defendants and third parties; litigated discovery disputes; propounded and responded to written discovery; conducted over three dozen fact depositions; successfully moved for class certification and defeated Defendants' Rule 23(f) petition; served expert reports on topics relevant to class certification, liability and damages; and defended their experts' depositions and deposed Defendants' experts.   Plaintiffs' Counsel also fully briefed Lead Plaintiffs'

opposition to Defendants' motion for summary judgment, and drafted the attendant voluminous Rule 56.1 factual statements. Finally, Plaintiffs' Counsel engaged in contentious, arm's-length settlement negotiations with experienced mediators over several years, including three separate in-person mediation sessions. *See generally* Joint Decl. *See also* Phillips Decl., ¶¶6-19.

By any measure, Plaintiffs' Counsel's efforts have resulted in a highly favorable outcome for the benefit of the Class. The substantial and certain recovery obtained for the Class is the direct result of the significant efforts of highly skilled and specialized attorneys who possess substantial experience in the prosecution of complex securities class actions. Plaintiffs' Counsel's well-earned reputations as attorneys who will zealously litigate a meritorious case through the trial and appellate stages, as well as their demonstrated ability to vigorously develop the evidence in this Action, enabled them to negotiate the outstanding Settlement for the benefit of the Class.

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by plaintiffs' counsel. *See, e.g.*, *Ikon*, 194 F.R.D. at 194; *Dartell*, 2017 U.S. Dist. LEXIS 100872, at *23 ("'The quality and vigor of opposing counsel' is relevant when evaluating the quality of services rendered by Lead Counsel.") (quoting *Yedlowski*, 2016 U.S. Dist. LEXIS 155951, at *63). Defendants were represented by attorneys from Davis Polk & Wardwell LLP and

Gibbons P.C., prominent law firms with widely recognized experience and skill. The ability of Plaintiffs' Counsel to obtain such a favorable settlement for the Class in the face of such formidable opposition further confirms the superior quality of the representation.

### 4.     The Complexity and Duration of the Litigation

As detailed in the Joint Declaration and the Settlement Brief, this litigation has spanned more than five years and involved massive document discovery; dozens of depositions; full briefing on Defendants' motion to dismiss; discovery and extensive briefing regarding Plaintiffs' motion for class certification; extensive briefing regarding Defendants' motion for summary judgment; and detailed expert reports and depositions at the class certification and merits stages.

Each of these stages of litigation presented obstacles that Plaintiffs' Counsel skillfully overcame.  In order to secure this recovery, Plaintiffs' Counsel analyzed a large quantity of complex, technical documents concerning the pharmaceutical industry generally and Novo Nordisk's products in particular; secured key admissions in depositions; and used the fact and expert discovery record to assemble a narrative supporting Lead Plaintiffs' claims that Defendants' alleged misstatements were materially false and misleading.  Further, because this case involves multiple corrective disclosures, Plaintiffs' Counsel had to establish that each such disclosure in fact revealed corrective information to the market, and

marshalled expert opinion that the stock price declines on the relevant dates were not caused by other market-wide, industry-specific, or Novo Nordisk-specific factors.  Lead Plaintiffs' and Defendants' experts also differed as to the proper measure of damages as an economic matter, with Defendants maintaining (supported by expert opinion) that even if liability were established, Lead Plaintiffs' allegations did not give rise to any cognizable damages.

These and multiple other complex issues arose in the course of this Action. In light of the complexity and duration of this case, this factor favors approval of the requested attorneys' fees.  *See Healthcare Servs. Grp., Inc.*, 2022 U.S. Dist. LEXIS 5841, at *30 ("Regarding the fourth [*Gunter*] factor, securities litigation is inherently complex, expensive, and lengthy, usually requiring expert testimony on variety of issues.  Without a settlement, a significant amount of time and resources would be necessary to bring the case to a close.").

### 5.    The Risk of Non-Payment

Plaintiffs' Counsel prosecuted this case on a contingency fee basis.  Thus, without a settlement or a trial victory, they would go unpaid.  This created an incentive to litigate the case aggressively and seek the best recovery possible.  Unlike defendants, who are paid on an hourly rate and paid for their expenses on a regular basis, Plaintiffs' Counsel have not been compensated for any time or expense since this case began in 2017.  Since that time, Plaintiffs' Counsel have expended 123,862

hours in the prosecution of this Action and incurred $2,738,023.93 in litigation costs, charges, and expenses. "'Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval.'" *High St. Rehab.*, 2019 WL 4140784, at *13; *see also In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012) ("*Schering-Plough I*") (approving 33.3% fee; noting that "the risk created by undertaking an action on a contingency fee basis militates in favor of approval").

Even though Lead Plaintiffs' claims survived the pleading stage, Lead Plaintiffs still faced hurdles in prevailing on Defendants' pending summary judgment motion, and later, at trial. As set forth in more detail in the Settlement Brief and the Joint Declaration, at summary judgment Defendants argued that the discovery has confirmed that they did not make any materially false or misleading statement or omission, with scienter or otherwise. Joint Decl., ¶131; Settlement Brief, §IV.A.3.a. Likewise, Defendants have argued that there is no evidence to support loss causation or damages. Joint Decl., ¶¶157-159; Settlement Brief, §IV.A.3.a. In a "battle of the experts," the Court or jury could side with Defendants' experts and find no damages or only a fraction of the damages Lead Plaintiffs claimed. *Kanefsky v. Honeywell Int'l Inc.*, 2022 U.S. Dist. LEXIS 80328, at *29-*30 (D.N.J. May 3, 2022) (noting the various risks of nonpayment supporting the requested fee).

The risk of no recovery for the class and counsel in complex cases of this type is very real.  There are scores of hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, extensive professional efforts of members of the plaintiffs' bar produced no fee for counsel.  *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 16, 2009), *aff'd*, 627 F.3d 367 (9th Cir. 2010) (court granted summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million).  Even the most promising cases can be eviscerated by a sudden change in the law after years of litigation.  *See, e.g.*, *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (after completing significant foreign discovery, 95% of plaintiffs' damages were eliminated by the Supreme Court's reversal of some 40 years of unbroken circuit court precedents in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)).

Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result and that such a result would be realized only after considerable effort.  This factor strongly favors approval of the requested fee.

### 6.    The Significant Time Devoted to This Case

The significant time that counsel devoted to this case favors approval of the requested attorneys' fees.  Counsel collectively invested 123,862 hours of attorney and support staff time over the course of four-plus years and incurred $2,738,023.93 in expenses prosecuting this case for the benefit of the Class, without promise of payment of attorney's fees or expenses if Lead Plaintiffs did not prevail on their claims.  *See* Joint Decl., ¶¶192-193; *see also* Declaration of Ryan A. Llorens Filed on Behalf of Robbins Geller Rudman & Dowd LLP("Robbins Geller Fee and Expense Decl."), ¶¶4-6; Declaration of Adam D. Hollander Filed on Behalf of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz Fee and Expense Decl."), ¶¶5-6; Declaration of James E. Cecchi, Esq., Filed on Behalf of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. ("Carella Byrne Fee and Expense Decl."), ¶¶4-5; Declaration of Jennifer Scullion Filed on Behalf of Seeger Weiss ("Seeger Weiss Fee and Expense Decl."), ¶¶4-6; Declaration of Steven B. Singer Filed on Behalf of Saxena White P.A. ("Saxena Fee and Expense Decl."), ¶¶5-8; Declaration of Shannon L. Hopkins Filed on Behalf of Levi & Korsinsky, LLP ("Levi Korsinsky Fee and Expense Decl."), ¶¶4-6, submitted herewith.[2]

---

[2]    The time and expenses provided herein includes those of Levi & Korsinsky, LLP, counsel for lead plaintiff movant Brian Lundstrom, which performed work in the Action in connection with Mr. Lundstrom's deposition and at the direction of Lead Counsel.

As discussed above and in the Joint Declaration, this Action was actively litigated and vigorously defended for more than four years at the time the Parties agreed to the Settlement, and has been pending for more than five years. Defendants fought Lead Plaintiffs at every step of the Action. The successful resolution of this Action required Plaintiffs' Counsel to commit a significant amount of time and expense to the case.[3]

### 7. The Range of Fees Typically Awarded

"While there is no benchmark for the percentage of fees to be awarded in common fund cases, the Third Circuit has noted that reasonable fee awards in percentage-of-recovery cases generally range from nineteen to forty-five percent of the common fund." *Whiteley v. Zynerba Pharms., Inc.*, 2021 WL 4206696, at *12 (E.D. Pa. Sept. 16, 2021) (holding that this factor weighs in favor of approval where 33% fee request "fell in the middle" of the range of fees granted in comparable securities class actions in the Third Circuit); *see also Kanefsky*, 2022 U.S. Dist. LEXIS 80328, at *31 (finding 29.2% fee request "well within the reasonable range of awards approved by the Third Circuit and is consistent with similar class action settlements"); *ViroPharma*, 2016 WL 312108, at *17 (noting that "[i]n this Circuit,

---

[3]   Lead Counsel's efforts will not end at final approval of the Settlement. Many additional hours and resources will be expended assisting Class Members with claim administration. *Kanefsky*, 2022 U.S. Dist. LEXIS 80328, at *31.

'awards of thirty percent are not uncommon in securities class actions'") (quoting *Ikon*, 194 F.R.D. at 194) (citing cases).

Courts nationwide award fee percentages similar to the requested fee of 29% in this case. *See, e.g.*, *Klein v. Altria Group, Inc.*, No. 3:20-cv-00075-DJN, slip op. at 10 (E.D. Va. Mar. 31, 2022) (ECF 320) (awarded 30% of $90 million settlement, plus expenses); *Peace Officers' Annuity & Benefit Fund of Ga. v. Davita, Inc.*, 2021 WL 29818070 (D. Colo. July 15, 2021) (awarded fees of 30% of $135 million settlement, plus expenses); *The Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cty., Tennessee v. Momenta Pharms., Inc.*, 2020 WL 3053467 (M.D. Tenn. May 29, 2020) (awarded one third of $120 million settlement, plus expenses); *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores*, 2019 WL 1529517 (W.D. Ark. Apr. 8, 2019) (awarded 30% of $160 million recovery, plus expenses); *Schuh v. HCA Holdings, Inc.*, 2016 WL 10570957 (M.D. Tenn. Apr. 14, 2016) (awarded 30% of $215 million recovery, plus expenses); *Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 2015 WL 5626414 (N.D. Ala. Sept. 14, 2015) (awarded 30% of $90 million recovery, plus expenses); *In re Merck & Co., Vytorin/Zetia Sec. Litig.*, 2013 WL 5505744, at *3 (D.N.J. Oct. 1, 2013) (awarding attorney's fees of 28% on $215 million recovery); *Landmen Partners Inc. v. Blackstone Grp.*, 2013 WL 11330936 (S.D.N.Y. Dec. 18, 2013) (awarded fees of one-third of $85 million settlement, plus expenses); *In re Inc. Sec. Litig.*, 2001 WL

20928, at *13-*16 (E.D. Pa. Jan. 4, 2001) (awarding attorney's fees of 30% on $82.5 million recovery); *Ikon*, 194 F.R.D. at 192-97 (awarding attorney's fees of 30% on $111 million recovery).  Because the requested fee is reasonable in relation to fees typically awarded in similar cases, this factor favors approval of the requested fee award.[4]

### E.     The Requested Fee Is Reasonable Under a Lodestar Cross-Check

Courts in the Third Circuit may also use a "lodestar cross-check" to confirm the reasonableness of a percentage fee.  *See Moore v. GMAC Mortg.*, 2014 WL 12538188, at *2 (E.D. Pa. Sept. 19, 2014) (stating that the "lodestar cross-check is 'suggested,' but not mandatory").  If used, the lodestar cross-check "should not displace a district court's primary reliance on the percentage-of-recovery method." *AT&T*, 455 F.3d at 164.[5]

---

[4]   In evaluating attorneys' fee requests, courts in the Third Circuit have also considered factors such as whether the fee award "reflects commonly negotiated fees in the private marketplace," and any benefit received from the efforts of government agencies, or any innovative terms of settlement.  *In re Merck & Co., Inc. Vytorin Erisa Litig.*, 2010 WL 547613, at *12-*13 (D.N.J. Feb. 9, 2010).  These additional factors also favor approval of the requested fee here, as the advancement of this case was based upon the efforts of counsel, not government agencies, and a 29% fee is lower than commonly negotiated contingent fees.  *See id.*, at *13 (noting that contingent fees in the private marketplace are commonly 30% to 40%).  There are no "innovative" terms here.  The $100 million all-cash non-reversionary settlement amount has been deposited into an interest-bearing account and is currently earning interest for the benefit of the Class.

[5]   Placing too much emphasis on the lodestar method "may encourage attorneys to delay settlement or other resolution to maximize legal fees" and "may also compensate attorneys insufficiently for the risk of undertaking complex or novel

The Third Circuit has recognized that when used, the lodestar cross-check "need entail neither mathematical precision nor bean-counting," and "district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005). The lodestar cross-check involves simply comparing counsel's "lodestar" – *i.e.*, timekeepers' hourly rates multiplied by the number of hours spent on the case – to the fee resulting from the requested percentage award, and assessing the reasonableness of the resulting multiplier. The appropriate multiplier varies based on the specifics of each case and "'need not fall within any pre-defined range, provided that the [d]istrict [c]ourt's analysis justifies the award.'" *Schuler*, 2016 WL 3457218, at *10 (quoting *Rite-Aid*, 396 F.3d at 307).

The Third Circuit has recognized that percentage awards that result in ***positive*** multipliers "'ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.'" *In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815, 819 (3d Cir. 2010); *see also Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020) (approving multiplier of 6.16; noting that "multiples ranging from 1 to 8 are often used in common fund cases" to "compensate

---

cases on a contingency basis." *Ikon*, 194 F.R.D. at 193. Given its limited value, some courts consider a lodestar review "an inevitable waste of judicial resources." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49 (2d Cir. 2000).

counsel for the risk of assuming the representation on a contingency fee basis"). *See also Bodnar v. Bank of America, N.A.*, No. 14-3224, slip op. at 10 (E.D. Pa. Aug. 4, 2016) (ECF 90) (a 4.69 multiplier was "appropriate and reasonable"); *Esslinger v. HSBC Bank Nev., N.A.*, 2012 U.S. Dist. LEXIS 165773, at *49 (E.D. Pa. Nov. 20, 2012) (a 1.7 multiplier was acceptable "because of the high risk of non-recovery shouldered by Plaintiffs' Counsel, who worked on a contingency basis, for more than two years").

Here, the lodestar cross-check further demonstrates the reasonableness of the requested fee percentage because the fee request is ***substantially below*** Plaintiffs' Counsel's total lodestar. As detailed in the Joint Declaration, counsel spent 123,862 hours of attorney and other professional time prosecuting the Action for the benefit of the Class through November 23, 2021 (the date the Stipulation was executed). Joint Decl., ¶188. Counsel's lodestar, derived by multiplying the hours spent on the litigation by each attorney or other professional by his or her current hourly rate,[6] is $60,856,642.25.[7]

---

[6]   The Supreme Court has approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflation, and the loss of interest. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989).

[7]   Courts have noted that it is appropriate to consider further time in the lodestar crosscheck; for example, time that will be needed to administer the settlement. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *39 (N.D. Ga. Mar. 17, 2020) (noting that "[i]n addition to time spent through final approval, class counsel estimate they will spend [significantly more time] to implement and

Thus, the requested fee of 29% of the Settlement Fund, or $29 million (plus interest), represents a ***negative*** multiplier of 0.47 on counsel's lodestar.  In other words, counsel for Lead Plaintiffs will recover just 47% of the value of the time they dedicated to the Action for the past five years.  The fact that the requested fee is substantially less than the lodestar strongly supports its reasonableness.  *See In re Lithium Ion Batteries Antitrust Litig.*, 2019 WL 3856413, at *8 (N.D. Cal. Aug. 16, 2019) (finding requested fee "particularly appropriate where the lodestar cross-check results in a negative multiplier"), *vacated in part*, 2020 WL 1481643 (9th Cir. 2020), *aff'd*, 853 F. App'x 56 (9th Cir. 2021); *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (negative multiplier was a "strong indication of the reasonableness of the [requested] fee"). *See also Kanefsky*, 2022 U.S. Dist. LEXIS 80328, at *33 (29.2% fee was "reasonable" when lodestar multiplier was 0.78).

### F.   Reasonably Incurred Litigation Expenses Should Be Awarded

Lead Counsel also request payment of costs, charges, and expenses incurred by Plaintiffs' Counsel in connection with the prosecution of this litigation in the aggregate amount of $2,738,023.93.  Counsel in class actions are entitled to recover expenses that are "'adequately documented and reasonable and appropriately

---

administer the settlement"), *aff'd in part, rev'd in part*, 999 F. 3d 1247 (11th Cir. 2021).  Such additional time will reduce the multiplier.

incurred in the prosecution of the class action. *ViroPharma*, 2016 WL 312108, at *8 (quoting *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)); *Schering-Plough I*, 2012 WL 1964451, at *8 (approving litigation expenses and noting that "[t]his type of reimbursement has been expressly approved by the Third Circuit").

The expenses borne by Plaintiffs' Counsel are documented in the accompanying firm declarations. These expenses consist of typical categories, such as experts, travel, document hosting and production, research costs, mediation fees, filing fees, postage, copying, and delivery. *See* Robbins Geller Fee and Expense Decl., ¶6; Bernstein Litowitz Fee and Expense Decl., ¶6; Carella Byrne Fee and Expense Decl., ¶5; Seeger Weiss Fee and Expense Decl., ¶6; Saxena Fee and Expense Decl., ¶8; Levi Korsinsky Fee and Expense Decl., ¶6. These expenses were reasonable and necessary to Lead Plaintiffs' prosecution of the claims and achieving the Settlement and are of the same type routinely approved in securities class actions. *See ViroPharma*, 2016 WL 312108, at *18 (approving costs and expenses for, among other things, experts, travel, copying, postage, telephone, filing fees, and online and financial research); *Yedlowski v. Roka Bioscience, Inc.*, 2016 U.S. Dist. LEXIS 155951, at *70 (approving costs and expenses for experts, investigation, mediation, publishing notice, and online legal research, and noting that "[c]ourts have held that all of these items are properly charged to the [c]lass").

The requested expense amount is significantly lower than the expenses approved in many other securities class actions.  *See, e.g.*, *AT&T*, 455 F.3d at 169 (approving expenses of nearly $5.5 million); *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 2016 WL 11575090, at *5 (D.N.J. June 28, 2016) (approving award of $9.5 million in expenses); *Ikon*, 194 F.R.D. at 197 (approving award of over $3.5 million in expenses); *In re Lucent Techs., Inc. Sec. Litig.*, No. 2:00-cv-621, slip op. at 1 (D.N.J. July 23, 2004) (ECF 236) (approving award of $3.5 million in expenses). Further, the requested amount is less than the expense figure of up to $3.3 million set out in the Notice; to date, there have been no objections to that proposed figure. For all of these reasons, the requested expense award should be approved.

## G. Lead Plaintiffs Are Entitled to Awards Pursuant to 15 U.S.C. §78u-4(a)(4)

The Third Circuit has "favor[ed] encouraging class representatives, by appropriate means, to create common funds and to enforce laws." *In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at *37 (D.N.J. Oct. 1, 2013) ("*Schering-Plough II*").  The PSLRA makes clear that it does not "limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).  In enacting this provision, "Congress explicitly acknowledged the importance of awarding appropriate reimbursement to class representatives." *Schering-Plough II*, 2013 WL 5505744, at *37; *see also*

*Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011) ("The purpose of these payments is to compensate named plaintiffs for 'the services they provided and the risks they incurred during the course of class action litigation,' and to 'reward the public service' of contributing to the enforcement of mandatory laws.'") (quoting *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D Ohio 1997)). Thus, courts provide awards under 15 U.S.C. §78u-4(a)(4) to compensate class representatives for their time and effort in representing the class.

Lead Plaintiffs Lehigh County, Oklahoma Firefighters, Boston, Clearwater, and Central States seek awards of $10,410.50, $3,237.50, $8,932.26, $5,343.79, and $12,095.00, respectively, for a total of $40,019.05, for the time of Lead Plaintiffs devoted to supervising counsel and participating in the litigation (and individuals associated with a Lead Plaintiff who performed services on the Lead Plaintiff's behalf in support of Lead Plaintiffs' participation in the litigation). *See* Murray Decl., ¶¶8-9; Rankin Decl., ¶8-9; Smyth Decl., ¶¶8-9; Ravins Decl., ¶¶8-9; Lee Decl., ¶¶8-9. The declarations describe Lead Plaintiffs' and associated individuals' activities directly related to representing the Class, including: (a) consulting with counsel regarding the litigation and the Court's orders; (b) reviewing and commenting upon pleadings, motions, and briefs; (c) reviewing correspondence and status reports from counsel; (d) responding to discovery requests and collecting documents for production; (e) preparing for and participating in depositions; (f)

conferring with counsel concerning litigation strategy; and (g) monitoring settlement negotiations.  *Id.*

The requested class representative awards are reasonable and are less than or equal to awards in many similar cases.  *See, e.g.*, *Kanefsky*, 2022 U.S. Dist. LEXIS 80328, at *34-*35 (awarding $10,000 to each of two class representatives); *Healthcare Servs. Grp.*, 2022 U.S. Dist. LEXIS 5841, at *33 (awarding $12,500 to class representative); *In re CIGNA Corp. Sec. Litig.*, No. 02-8088, slip op. at 1-2 (E.D. Pa. July 13, 2007) (ECF 288) (approving awards to four lead plaintiffs totaling more than $130,000); *Schering-Plough II*, 2013 WL 5505744, at *37 (approving awards to four lead plaintiffs totaling more than $102,000); *id.*, at *56-*57 (in related matter, approving awards to four separate lead plaintiffs totaling more than $109,000); *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *11 (D.N.J. July 29, 2013) (approving award to lead plaintiff of $18,000); *Li v. Aeterna Zentaris Inc.*, 2021 WL 2220565, at *2 (D.N.J. June 1, 2021) (approving awards of $17,000 to each of the three lead plaintiffs).  Lead Plaintiffs respectfully request that the proposed awards be approved.

## IV.   CONCLUSION

For all the reasons stated above and in the accompanying declarations, Lead Counsel respectfully request that the Court: (i) award Plaintiffs' Counsel attorneys' fees of 29% of the Settlement Fund and payment of litigation expenses of

$2,738,023.93; and (ii) award Lead Plaintiffs a total of $40,019.05, in connection with their representation of the Class pursuant to 15 U.S.C. §78u-4(a)(4).

DATED:  May 23, 2022   Respectfully submitted,

          SEEGER WEISS LLP
          CHRISTOPHER A. SEEGER
          DAVID R. BUCHANAN
          JENNIFER R. SCULLION


            */s/ Christopher A. Seeger*
          CHRISTOPHER A. SEEGER

          55 Challenger Road, 6th Floor
          Ridgefield Park, NJ  07660
          Telephone:  973/639-9100
          973/639-9393 (fax)

          CARELLA, BYRNE, CECCHI, OLSTEIN,
           BRODY & AGNELLO, P.C.
          JAMES E. CECCHI
          5 Becker Farm Road
          Roseland, NJ  07068
          Telephone:  973/994-1700
          973/994-1744 (fax)

          Co-Liaison Counsel and Executive
          Committee Members for the Class

          ROBBINS GELLER RUDMAN
           & DOWD LLP
          SPENCER A. BURKHOLZ
          ELLEN GUSIKOFF STEWART
          LUKE O. BROOKS
          RYAN A. LLORENS
          ERIC I. NIEHAUS
          ANGEL P. LAU
          JEFFREY J. STEIN
          ERIKA OLIVER
          655 West Broadway, Suite 1900
          San Diego, CA  92101-8498
          Telephone:  619/231-1058
          619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

BERNSTEIN LITOWITZ BERGER &
  GROSSMANN LLP
SALVATORE J. GRAZIANO
HANNAH ROSS
KATHERINE M. SINDERSON
ADAM D. HOLLANDER
1251 Avenue of the Americas
New York, NY  10020
Telephone:  212/554-1400
212/554-1444 (fax)

Co-Lead Counsel for the Class

SAXENA WHITE P.A.
JOSEPH E. WHITE, III
DIANNE M. ANDERSON
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone:  561/394-3399
561/394-3382 (fax)

SAXENA WHITE P.A.
STEVEN B. SINGER
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: 914/437-8551
888/631-3611 (fax)

Executive Committee Member