# EXHIBIT 1

SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
DAVID R. BUCHANAN
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  973/639-9100
973/639-9393 (fax)

CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.
JAMES E. CECCHI
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)

Co-Liaison Counsel and Executive Committee Members for the Class

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re NOVO NORDISK SECURITIES LITIGATION | ) Master File No. 3:17-cv-00209-ZNQ-LHG ) ) |
| This Document Relates To:<br><br>ALL ACTIONS. | ) <u>CLASS ACTION</u> ) ) ) ) |

**DECLARATION OF LAYN R. PHILLIPS IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENT**

I, LAYN R. PHILLIPS, declare:

1. I submit this Declaration in my capacity as an independent mediator in the above-captioned securities class action ("Action") and in connection with the proposed settlement of claims asserted in the Action (the "Settlement").[1]  I make this Declaration based on personal knowledge and am competent to so testify.[2]

## I. BACKGROUND AND QUALIFICATIONS

2. I am a former United States District Judge, a former United States Attorney, and a former litigation partner with the firm of Irell & Manella LLP. I currently serve as a mediator and arbitrator with my own alternative dispute resolution company, Phillips ADR Enterprises ("Phillips ADR"), which is based in Corona Del Mar, California. I am a member of the bars of Oklahoma, Texas, California, and the District of Columbia, as well as the United States Courts of Appeals for the Ninth and Tenth Circuits and the Federal Circuit.

---

[1] Unless otherwise stated or defined in this Declaration, all capitalized terms used herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated as of November 23, 2021 (ECF No. 311-1).

[2] While the mediation process is confidential, the parties to the Settlement (the "Parties") have authorized me to inform the Court of the matters set forth in this Declaration in support of final approval of the Settlement. My statements and those of the Parties during the mediation process are subject to a confidentiality agreement and Federal Rule of Evidence 408, and there is no intention on either my part or the Parties' part to waive the agreement or the protections of Rule 408.

3. I earned my Bachelor of Science in Economics as well as my J.D. from the University of Tulsa. I also completed two years of L.L.M. work at Georgetown University Law Center in the area of economic regulation of industry. After serving as an antitrust prosecutor and an Assistant United States Attorney in Los Angeles, California, I was nominated by President Reagan to serve as a United States Attorney in Oklahoma, where I served for approximately four years. Thereafter, I was nominated by President Reagan to serve as a United States District Judge for the Western District of Oklahoma. While on the bench, I presided over more than 140 federal trials and sat by designation in the United States Court of Appeals for the Tenth Circuit. I also presided over cases in Texas, New Mexico, and Colorado.

4. I left the federal bench in 1991 and joined Irell & Manella LLP where, for 23 years, I specialized in alternative dispute resolution, complex civil litigation, and internal investigations. In 2014, I left Irell & Manella LLP to found my own company, Phillips ADR, which provides mediation and other alternative dispute resolution services.

5. Over the past 26 years, I have served as a mediator and arbitrator in connection with numerous large, complex cases, including securities cases such as this one.

## II. THE PARTIES' ARM'S-LENGTH SETTLEMENT NEGOTIATIONS

6. On November 19, 2018, counsel for Lead Plaintiffs, Defendants, and other interested parties participated in a full-day, in-person mediation session before me and retired New Jersey state Judge Harry G. Carroll in New York City (the "First Mediation"). The participants included: (i) attorneys from Co-Lead Counsel for Lead Plaintiffs, Bernstein Litowitz Berger & Grossmann LLP and Robbins Geller Rudman & Dowd LLP, and additional Plaintiffs' Counsel, Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C., Seeger Weiss LLP, and Saxena White P.A.; and (ii) attorneys from counsel for Defendants. Representatives of each of the Lead Plaintiffs were available during the mediation by phone.

7. In advance of the First Mediation, the Parties exchanged and submitted to me and Judge Carroll detailed mediation statements addressing liability and damages. The mediation briefs addressed the specific evidence and legal arguments each side believed supported their respective claims and defenses. During the First Mediation, counsel for Lead Plaintiffs and Defendants presented arguments regarding their clients' respective positions. The work that went into the mediation statements and competing presentations and arguments was substantial.

8. During the First Mediation, Judge Carroll and I engaged in extensive discussions with counsel on both sides in an effort to find common ground between the Parties' respective positions. During these discussions, we challenged each side

separately to address the weaknesses in each of their positions and arguments. The Parties were not able to reach any agreement during the First Mediation.

9. In the months following the First Mediation, I engaged in extensive discussions via teleconferences, phone calls, and e-mails with counsel for Lead Plaintiffs and Defendants in a continued effort to find common ground between the Parties' respective positions.

10. On April 24, 2020, counsel for Lead Plaintiffs and Defendants participated in a second mediation session before me and Judge Carroll using the Zoom videoconferencing platform (the "Second Mediation"). The participants included (i) Plaintiffs' Counsel; (ii) counsel for Defendants; (iii) representatives of Defendant Novo Nordisk; and (iv) representatives of Defendants' insurance carriers. Representatives of each of the Lead Plaintiffs were available during the mediation by phone.

11. In advance of the Second Mediation, the Parties exchanged and submitted supplemental mediation statements. The supplemental mediation statements further set out the relative merits of each side's positions.

12. Throughout the full-day, remote Second Mediation, Judge Carroll and I again engaged in extensive discussions with counsel and the representatives of Lead Plaintiffs and Defendants in a continued effort to find common ground between

the Parties' respective positions. However, the Parties were again unable to reach any agreement by the conclusion of the Second Mediation.

13. On September 2, 2021, counsel for Lead Plaintiffs and Defendants participated in a third mediation session before me (the "Third Mediation"). Some participants attended in person in New York City while others attended via Zoom. The participants included (i) Plaintiffs' Counsel; (ii) representatives of certain Lead Plaintiffs; (iii) counsel for Defendants; (iv) representatives of Defendant Novo Nordisk; and (v) representatives of Defendants' insurance carriers. Representatives of the Lead Plaintiffs who did not attend the Third Mediation were available during the mediation by phone.

14. In advance of the Third Mediation, the Parties exchanged and submitted supplemental mediation statements. The extensive supplemental mediation statements further set out the relative merits of each side's positions, informed by the facts obtained through discovery that had by then completed and the parties' summary judgment briefing.

15. Throughout the full-day Third Mediation, I again engaged in extensive discussions with counsel and the representatives of Lead Plaintiffs and Defendants in a continued effort to find common ground between the Parties' respective positions. However, the Parties were again unable to reach any agreement by the conclusion of the Third Mediation.

16.     Following additional negotiations, I issued a mediator's proposal to resolve the Action for $100 million in cash. The Parties accepted my recommendation and had an agreement in principle to settle the Action at $100 million. Thereafter, the Parties documented their agreement in a term sheet and the subsequently negotiated settlement agreement before the Court.

17.     The mediation process was an extremely hard-fought negotiation from beginning to end and was conducted by experienced and able counsel on both sides. Throughout the mediation process, the negotiations between the Parties were vigorous and conducted at arm's-length and in good faith. Because the Parties made their mediation submissions and arguments in the context of a confidential mediation process pursuant to Federal Rule of Evidence 408, I cannot reveal their content. I can say, however, that the arguments and positions asserted by all involved were the product of substantial work, were complex and highly adversarial, and reflected a detailed and in-depth understanding of the strengths and weaknesses of the claims and defenses at issue in this case.

### III.   CONCLUSION

18.     Based on my experience as a litigator, a former United States District Judge, and a mediator, I believe that the Settlement represents a recovery and outcome that is reasonable and fair for the Class and all parties involved. I further believe it was in the best interests of the Parties that they avoid the burdens and risks

associated with taking a case of this size and complexity to trial. I support the Court's approval of the Settlement in all respects.

19. Lastly, the advocacy on both sides of the case was excellent. All counsel displayed the highest level of professionalism in zealously and capably representing their respective clients.

I declare under penalty of perjury that the foregoing facts are true and correct and that this Declaration was executed this 17th day of May, 2022.

_____
LAYN R. PHILLIPS
Former U.S. District Judge